No. 23-1135

═══════════════════════════════════════

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

────────────

DARLENE GRIFFITH,

*Plaintiff-Appellant*,

v.

EL PASO COUNTY, COLORADO; BILL ELDER, in his individual and official capacities; CY GILLESPIE, in his individual capacity; ELIZABETH O'NEAL, in his individual capacity; ANDREW MUSTAPICK, in his individual capacity; DAWNE ELLISS, in her individual capacity; TIFFANY NOE, in her individual capacity; BRANDE FORD, in her individual capacity,

*Defendants-Appellees.*

────────────

On Appeal from the United States District Court
for the District of Colorado
No. 1:21-cv-00387-CMA-NRN
The Honorable Christine M. Arguello

────────────

**PLAINTIFF-APPELLANT'S APPENDIX**

────────────

Andrew McNulty                     Devi M. Rao
Mari Newman                        Meghan Palmer
KILLMER, LANE & NEWMAN             RODERICK & SOLANGE
1543 Champa St., Suite 400          MACARTHUR JUSTICE CENTER
Denver, CO 80202                   501 H St. NE, Suite 275
amcnulty@kln-law.com               Washington, DC 20002
(303) 571-1000                     devi.rao@macarthurjustice.org
                                   (202) 869-3449

*Counsel for Plaintiff-Appellant Darlene Griffith*

**ORAL ARGUMENT REQUESTED**

═══════════════════════════════════════

**A.1**

# TABLE OF CONTENTS

Docket, *Griffith v. El Paso County, et al.*, No. 1:21-cv-00378
(D. Colo.) .................................................................... A.3

Third Amended Complaint, Dkt. No. 124
(docketed Feb. 8, 2021) ............................................ A.26

Magistrate's Report and Recommendation, Dkt. No. 165,
(filed Feb. 27, 2023) ................................................. A.83

Order Adopting Report and Recommendation,
Dkt. No. 173 (filed March 27, 2023) .......................... A.126

Final Judgment, Dkt. No. 174 (filed March 27, 2023) ........... A.147

Notice of Appeal, Dkt. No. 175 (filed April 25, 2023) ........... A.149

ALLMTN,APPEAL,CONMAG,JD4,MJ CIV PP,STAYDI,TERMED

# U.S. District Court - District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: 1:21-cv-00387-CMA-NRN

Griffith v. El Paso County Colorado et al

Assigned to: Senior Judge Christine M. Arguello

Referred to: Magistrate Judge N. Reid Neureiter

Demand: $1,000,000

Case in other court: U.S. Court of Appeals, 10th Cir., 23-01135

Cause: 42:1983 Prisoner Civil Rights

Date Filed: 02/08/2021

Date Terminated: 03/27/2023

Jury Demand: Plaintiff

Nature of Suit: 555 Prisoner - Prison Condition

Jurisdiction: Federal Question

**Plaintiff**

**Darlene Griffith**    represented by    **Andrew Joseph McNulty**
Killmer Lane & Newman LLP
1543 Champa Street
Suite 400
Denver, CO 80202
303-571-1000
Email: amcnulty@kln-law.com
*ATTORNEY TO BE NOTICED*

**Mari Anne Newman**
Killmer Lane & Newman LLP
1543 Champa Street
Suite 400
Denver, CO 80202
303-571-1000
Fax: 303-571-1001
Email: mnewman@kln-law.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**El Paso County Colorado**    represented by    **Bryan E. Schmid**
El Paso County Attorney's Office
200 South Cascade Avenue
Suite 150
Colorado Springs, CO 80903
719-520-7032
Fax: 719-520-6487
Email: bryanschmid@elpasoco.com
*ATTORNEY TO BE NOTICED*

**Christopher Michael Strider**
El Paso County Attorney's Office
200 South Cascade Avenue

Suite 150
Colorado Springs, CO 80903
719-520-7264
Fax: 719-520-6487
Email: chrisstrider@elpasoco.com
*ATTORNEY TO BE NOTICED*

**Nathan James Whitney**
El Paso County Attorney's Office
200 South Cascade Avenue
Suite 150
Colorado Springs, CO 80903
719-520-6597
Fax: 719-520-6487
Email: nathanwhitney@elpasoco.com
*ATTORNEY TO BE NOTICED*

**Steven Ward Martyn**
El Paso County Attorney's Office
Civil Division
200 South Cascade Avenue
Suite 150
Colorado Springs, CO 80903-2208
719-520-7386
Fax: 719-520-6487
Email: StevenMartyn@elpasoco.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Wellpath LLC**                    represented by   **Ashlee B. Hesman**
*TERMINATED: 06/07/2022*                           Struck Love Bojanowski & Acedo, PLC
                                                    3100 West Ray Road
                                                    Suite 300
                                                    Chandler, AZ 85226
                                                    480-420-1600
                                                    Fax: 480-420-1695
                                                    Email: ahesman@strucklove.com
                                                    *TERMINATED: 08/11/2022*

                                                    **Catherine O'Brien Crum**
                                                    Nixon Shefrin Ogburn Drew, P.C.
                                                    5619 DTC Parkway
                                                    Suite 1200
                                                    Greenwood Village, CO 80111-3061
                                                    303-773-3500
                                                    Fax: 303-779-0740
                                                    Email: cobrien@hallboothsmith.com
                                                    *TERMINATED: 11/01/2021*

                                                    **Daniel Patrick Struck**
                                                    Struck Love Bojanowski & Acedo PLC
                                                    3100 West Ray Road
                                                    Suite 300
                                                    Chandler, AZ 85226

**A.4**

480-420-1600
Fax: 480-420-1699
Email: dstruck@strucklove.com
*TERMINATED: 08/11/2022*

**Kristina R. Rood**
Struck Love Bojanowski & Acedo, PLC
3100 West Ray Road
Suite 300
Chandler, AZ 85226
480-420-1600
Email: krood@strucklove.com
*TERMINATED: 08/11/2022*

**Lauren Elizabeth Kuhn**
Polsinelli PC
900 West 48th Place
Suite 900
Kansas City, MO 64112-1895
816-360-4372
Email: Lkuhn@polsinelli.com
*TERMINATED: 11/01/2021*

**Defendant**

**Christine Mohr**
*in her individual capacity*
*TERMINATED: 06/02/2022*

represented by **Ashlee B. Hesman**
(See above for address)
*TERMINATED: 08/11/2022*

**Daniel Patrick Struck**
(See above for address)
*TERMINATED: 08/11/2022*

**Kristina R. Rood**
(See above for address)
*TERMINATED: 08/11/2022*

**Defendant**

**Bill Elder**
*Sheriff*

represented by **Bryan E. Schmid**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher Michael Strider**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathan James Whitney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Ward Martyn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**A.5**

**Bill (I) Elder**
*Individual capacity*

represented by **Bryan E. Schmid**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher Michael Strider**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathan James Whitney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Ward Martyn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Cy Gillespie**
*Commander, in his individual capacity*

represented by **Bryan E. Schmid**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher Michael Strider**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathan James Whitney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Ward Martyn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Draper**
*Deputy, F/N/U, in his individual capacity*
*TERMINATED: 05/24/2022*

represented by **Christopher Michael Strider**
El Paso County Attorney's Office
200 South Cascade Avenue
Colorado Springs, CO 80903
719-520-7264
Fax: 719-520-6487
Email: chrisstrider@elpasoco.com
*ATTORNEY TO BE NOTICED*

**Nathan James Whitney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Terry Angela Sample**
El Paso County Attorney's Office
200 South Cascade Avenue
Colorado Springs, CO 80903
719-520-6485
Fax: 719-520-6487

**A.6**

Email: terrysample@elpasoco.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Cynthia Ayad**                          represented by   **Nathan James Whitney**
*Sgt.*                                                    (See above for address)
*TERMINATED: 04/19/2021*                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**Bradberry**
*Ms., Deputy*
*TERMINATED: 04/19/2021*

**Interested Party**

**CASE MANAGER/ INMATE**
**COORDINATOR OF: Darlene Griffith**

**Defendant**

**Pete Carey**
*E.P.C. Under Sheriff*
*TERMINATED: 03/04/2021*

**Defendant**

**Eric Carnell**
*Lieutenant*
*TERMINATED: 04/19/2021*

**Defendant**

**Aaron Earnheart**
*Sgt.*
*TERMINATED: 04/19/2021*

**Defendant**

**K. Forrell**
*Prea-Investigator*
*TERMINATED: 04/19/2021*

**Defendant**

**Francs**
*Mr., Deputy*
*TERMINATED: 04/19/2021*

**Defendant**

**James**
*Ms., Deputy; Jane Doe, Deputy; John Doe,*
*Deputy; John Doe, Sgt. for/Works Intake*
*TERMINATED: 04/19/2021*

**Defendant**

**Motta**
*Ms., Deputy*
*TERMINATED: 04/19/2021*

**A.7**

**Defendant**

**Liz O'Neal**
*Manager for Inmate Class*
*TERMINATED: 04/19/2021*

**Defendant**

**Andrew Prehm**
*E.P.C. Chief*
*TERMINATED: 03/04/2021*

**Defendant**

**Sterling**
*Mr., Deputy*
*TERMINATED: 04/19/2021*

**Defendant**

**Elizabeth O'Neal**                          represented by  **Bryan E. Schmid**
*in her individual capacity*                                  (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Nathan James Whitney**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Steven Ward Martyn**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Andrew Mustapick**                          represented by  **Bryan E. Schmid**
*in his individual capacity*                                  (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Nathan James Whitney**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Steven Ward Martyn**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Dawne Elliss**                              represented by  **Bryan E. Schmid**
*in her individual capacity*                                  (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Nathan James Whitney**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Steven Ward Martyn**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**A.8**

**Defendant**

| | | |
|---|---|---|
| **Tiffany Noe**<br>*in her individual capacity* | represented by | **Bryan E. Schmid**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Nathan James Whitney**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Steven Ward Martyn**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Brande Ford**<br>*in her individual capacity* | represented by | **Bryan E. Schmid**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Nathan James Whitney**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Steven Ward Martyn**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 02/08/2021 | 1 | PRISONER COMPLAINT against Pete Carey, Bill Elder, CY Gillespie, Andrew Prehm, filed by Darlene Griffith. (Attachments: # 1 Envelope)(alave, ) (Entered: 02/08/2021) |
| 02/08/2021 | 2 | Case assigned to Magistrate Judge Gordon P. Gallagher. Text Only Entry. (alave, ) (Entered: 02/08/2021) |
| 02/08/2021 | 3 | Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. 1915. by Plaintiff Darlene Griffith. (Attachments: # 1 Resident Account Statement)(alave, ) (Entered: 02/08/2021) |
| 02/08/2021 | 4 | Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. 1915. by Plaintiff Darlene Griffith. (alave, ) (Entered: 02/08/2021) |
| 02/09/2021 | 5 | ORDER Granting 3 Motion for Leave to Proceed Under 28 U.S.C. § 1915. The Clerk of Court send a copy of this order to the Business Office, Attn: Inmate Accounts, El Paso County Criminal Justice Center,Colorado Springs, Colorado. The Prisoner's Motion and Affidavit for Leave to Proceed on Appeal Pursuant to 28 U.S.C. § 1915 and Fed. R. App. P. 24 (ECF No. 4 ) is DENIED as improperly filed. By Magistrate Judge Gordon P. Gallagher on 02/09/2021. (athom, ) (mailed to facility as ordered) (Entered: 02/09/2021) |
| 02/11/2021 | 6 | ORDER DIRECTING PLAINTIFF TO FILE AMENDED COMPLAINT. If Plaintiff fails to file an amended complaint that complies with this order within the time allowed, some or all of this action may be dismissed without further notice based on the allegations of the original Prisoner Complaint. By Magistrate Judge Gordon P. Gallagher on 02/11/2021. (athom, ) (Entered: 02/11/2021) |

**A.9**

| 02/18/2021 | 7 | RESPONSE to 5 Order on Motion for Leave to Proceed in Forma Pauperis, by Plaintiff Darlene Griffith. (athom, ) (Entered: 02/19/2021) |
| 02/18/2021 | 8 | MOTION for Appointment of Counsel by Plaintiff Darlene Griffith. (athom, ) (Entered: 02/19/2021) |
| 03/04/2021 | 9 | AMENDED Prisoner COMPLAINT against Cynthia Ayad, Bradberry, Eric Carnell, Drapper, Aaron Earnheart, K. Forrell, Francs, Cy Gillespie, James, Motta, Liz O'Neal, Sterling, filed by Darlene Griffith. (athom, ) (Entered: 03/05/2021) |
| 03/11/2021 | 10 | MINUTE ORDER by Magistrate Judge Gordon P. Gallagher on 03/11/2021. Pursuant to D.C.COLO.LCivR 8.1, the Clerk of Court is directed to assign this matter to Senior Judge Lewis T. Babcock. The undersigned will remain as the assigned magistrate judge. (athom, ) (Entered: 03/11/2021) |
| 03/12/2021 | 11 | ORDER of Reference to United States Magistrate Judge Gordon P. Gallagher. By Judge Lewis T. Babcock on 03/12/2021. All future pleadings should be designated as 21-cv-00387-LTB-GPG. (athom, ) (Entered: 03/12/2021) |
| 03/12/2021 | 12 | RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE re 9 Amended Complaint filed by Darlene Griffith. By Magistrate Judge Gordon P. Gallagher on 03/12/2021. (athom, ) (Entered: 03/12/2021) |
| 03/24/2021 | 13 | MOTION for Emergency Preliminary Injunction and Permanent Injunction Relief by Plaintiff Darlene Griffith. (athom, ) (Entered: 03/25/2021) |
| 03/24/2021 | 14 | MOTION to Make this Action Class Action to Similarly Situated Persons by Plaintiff Darlene Griffith. (athom, ) (Entered: 03/25/2021) |
| 03/29/2021 | 15 | ORDER that Plaintiff's "Motion for Emergency Preliminary Injunction and Permanent Injunctive Relief" (ECF No. 13 ) and "Motion to Make this Action Class Action to Similarly Situated Person(s)"(ECF No. 14 ) are DENIED. That Plaintiff shall have 14 days from the date of this order to file any written objections to the Recommendation of United States Magistrate Judge (ECF No. 12 ), by Judge Lewis T. Babcock on 3/29/2021. (evana, ) (Entered: 03/29/2021) |
| 04/19/2021 | 16 | ORDER TO DISMISS IN PART AND TO DRAW CASE. The Recommendation of United States Magistrate Judge (ECF No. 12 ) is accepted and adopted. The Amended Prisoner Complaint (ECF No. 9 ) is dismissed without prejudice in part and drawn in part follows. The claims asserted against Defendants Jane Doe (Deputy), John Doe (Deputy), and Drapper (Deputy) are drawn to a presiding judge. See D.C.COLO.LCivR 8.1(c). The claims asserted Defendants ERIC CARNELL (LIEUTENANT), CYNTHIA AYAD (SGT.), CY GILLESPIE (COMMANDER FOR INMATE CLASS), LIZ O'NEAL (MANAGE FOR INMATE CLASS), AARON EARNHEART (SGT.), JOHN DOE (SGT. FOR INTAKE), MS. K FORRELL (PREA INVESTIGATOR), MR. STERLING (DEPUTY), MR. FRANCS (DEPUTY), MS. MOTTA (DEPUTY), MS. BRADBERRY (DEPUTY), and MS. JAMES (DEPUTY) are dismissed without prejudice for failure to comply with the pleading requirements of Rule 8, and these Defendants are dismissed as parties to this action. By Judge Lewis T. Babcock on 04/19/2021. This case is randomly reassigned to Magistrate Judge N. Reid Neureiter. All future pleadings should be designated as 21-cv-00387-NRN. (athom, ) (Entered: 04/19/2021) |
| 04/19/2021 | 17 | Magistrate Judge consent form issued pursuant to D.C.COLO.LCivR 40.1, direct assignment of civil actions to full time magistrate judges. (athom, ) (Entered: 04/19/2021) |
| 04/19/2021 | 18 | ORDER SETTING STATUS CONFERENCE FOR PRO SE PLAINTIFF by Magistrate Judge N. Reid Neureiter on 19 April 2021. Consent Form due by 5/25/2021. Status Conference set for 6/8/2021 10:30 AM in Courtroom C203 before Magistrate Judge N. |

| | | Reid Neureiter. The Status Conference will be conducted via telephone. The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time. (cmadr, ) (Entered: 04/19/2021) |
|---|---|---|
| 04/19/2021 | 19 | CERTIFICATE of Service by mail by Clerk of Court re 18 to CASE MANAGER/ INMATE COORDINATOR OF: Darlene Griffith #0275824 El Paso County Criminal Justice Center 2739 East Las Vegas Street Colorado Springs, CO 80906. Text Only Entry (cmadr, ) (Entered: 04/19/2021) |
| 04/21/2021 | 20 | CERTIFICATE of Service by Clerk of Court re 16 Order to Dismiss in Part and to Draw Case 9 Amended Prisoner Complaint, 12 Recommendation of United States Magistrate Judge 18 Order Setting Status Conference for Service of Process. (trvo, ) (Entered: 04/21/2021) |
| 04/28/2021 | 21 | WAIVER OF SERVICE Returned Executed. Drapper waiver sent on 4/21/2021, answer due 6/20/2021. (cmadr, ) (Entered: 04/28/2021) |
| 05/04/2021 | 22 | NOTICE of Entry of Appearance by Terry Angela Sample on behalf of DrapperAttorney Terry Angela Sample added to party Drapper(pty:dft) (Sample, Terry) (Entered: 05/04/2021) |
| 05/04/2021 | 23 | NOTICE of Entry of Appearance by Christopher Michael Strider on behalf of DrapperAttorney Christopher Michael Strider added to party Drapper(pty:dft) (Strider, Christopher) (Entered: 05/04/2021) |
| 05/25/2021 | 24 | CONSENT to Jurisdiction of Magistrate Judge by Defendant Drapper All parties do not consent.. (Sample, Terry) (Entered: 05/25/2021) |
| 05/26/2021 | 25 | CASE REASSIGNED pursuant to 24 Consent to Jurisdiction of Magistrate Judge. All parties do not consent. This case is randomly reassigned to Judge Christine M. Arguello. All future pleadings should be designated as 21-cv-00387-CMA. (Text Only Entry) (cmadr, ) (Entered: 05/26/2021) |
| 05/26/2021 | 26 | ORDER REFERRING CASE to Magistrate Judge N. Reid Neureiter. Magistrate Judge Neureiter is designated to conduct ALLMTN proceedings pursuant to 28 U.S.C. § 636(b) (1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b). The parties should expect to be given a firm trial setting that is 90 to 120 days from the date of the final pretrial conference and should be available for trial accordingly. Court-sponsored alternative dispute resolution is governed by D.C.COLO.LCivR 16.6. The Magistrate Judge, at his/her discretion, may convene such early neutral evaluation and/or settlement conferences and direct related procedures as may facilitate resolution of this case without the necessity of a motion or prior authorization of the undersigned. SO ORDERED by Judge Christine M. Arguello on 5/26/2021. Text Only Entry (cmasec) (Entered: 05/26/2021) |
| 05/26/2021 | 27 | MEMORANDUM regarding 8 MOTION to Appoint Counsel filed by Darlene Griffith. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 5/26/2021. Text Only Entry (cmasec) (Entered: 05/26/2021) |
| 06/08/2021 | 28 | APPOINTMENT ORDER by Magistrate Judge N. Reid Neureiter on 8 June 2021. It is hereby ORDERED that Plaintiff's Motion for Appointment of Counsel (Dkt. # 8 ) is GRANTED. Accordingly, it is further ORDERED that pursuant to D.C.COLO.LAttyR 15(f)(2), the Clerk shall select, notify, and appoint counsel to represent the unrepresented party in this civil matter. The Plaintiff is advised that the Clerk will select counsel from the Panel; however, there is no guarantee that Panel members will undertake representation in every case. The Court cautions Plaintiff that she remains responsible for all scheduled matters, including hearings, depositions, motions, and trial.(cmadr, ) (Entered: 06/08/2021) |

| | | |
|---|---|---|
| 06/08/2021 | 29 | COURTROOM MINUTES for proceedings held before Magistrate Judge N. Reid Neureiter: Telephonic Status Conference held on 6/8/2021. Telephonic Motion Hearing set for 8/24/2021 11:00 AM in Courtroom C203 before Magistrate Judge N. Reid Neureiter. The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time. FTR: Courtroom C203. (slibi, ) (Entered: 06/08/2021) |
| 06/15/2021 | 30 | CONSENT to Jurisdiction of Magistrate Judge by Defendant Drapper All parties consent.. (Sample, Terry) (Entered: 06/15/2021) |
| 06/15/2021 | 31 | ORDER OF REFERENCE TO 28 U.S.C. § 636(c). On May 25, 2021 and June 15, 2021, the parties notified the Court of their unanimous consent to disposition of the instant action by a United States Magistrate Judge (Docs. ## 24 , 30 ). The above action is referred for disposition to Magistrate Judge N. Reid Neureiter pursuant to 28 U.S.C. § 636(c), by Judge Christine M. Arguello on 6/15/2021. (evana, ) (Entered: 06/15/2021) |
| 06/18/2021 | 32 | MOTION to Dismiss by Defendant Drapper. (Strider, Christopher) (Entered: 06/18/2021) |
| 07/15/2021 | 33 | MOTION for Summary Judgment by Plaintiff Darlene Griffith. (evana, ) (Entered: 07/16/2021) |
| 07/19/2021 | 34 | CERTIFICATE of Mailing/Service *of Defendant's Motion to Dismiss* by Defendant Drapper. (Strider, Christopher) (Entered: 07/19/2021) |
| 07/21/2021 | 35 | MOTION for Extension of Time to File Opposition to 32 Motion to Dismiss by Plaintiff Darlene Griffith. (cmadr, ) (Entered: 07/21/2021) |
| 07/21/2021 | 36 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 21 July 2021. It is hereby ORDERED that Plaintiff's Motion for Extension of Time to File Opposition to Defendant's Motion to Dismiss (Dkt. # 35 ) is GRANTED as follows. Plaintiff's response to Defendants Motion to Dismiss Amended Complaint (Dkt. # 32 ) is due on or before August 6, 2021. The Court declines Plaintiff's invitation to order sanctions against Defendant. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 07/21/2021) |
| 08/09/2021 | 37 | Opposition (sic) to 32 MOTION to Dismiss filed by Plaintiff Darlene Griffith. (cmadr, ) (Entered: 08/09/2021) |
| 08/17/2021 | 38 | Notice of Pro Bono Appointment. Attorney Andrew McNulty of the law firm of Killmer Lane & Newman LLP has been selected as counsel to represent the Plaintiff, in accordance with the Court's Order of June 8, 2021 and D.C.COLO.LAttyR 15(f) of the U.S. District Court's Local Rules of Practice. Counsel has thirty days to either enter an appearance in the case or to file a Notice Declining Appointment. This Notice of Appointment will be sent to the pro se litigant and selected counsel by the undersigned designated clerk. (ebutl) (Entered: 08/17/2021) |
| 08/18/2021 | 39 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 18 August 2021. In light of the Notice of Pro Bono Appointment (Dkt. # 38 ), it is hereby ORDERED that the Motion Hearing set for August 24, 2021 at 11:00 a.m. is VACATED. A Status Conference is set for September 30, 2021 at 9:30 a.m. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 08/18/2021) |
| 08/23/2021 | 40 | REPLY to Response to 32 MOTION to Dismiss filed by Defendant Drapper. (Strider, Christopher) (Entered: 08/23/2021) |
| 09/15/2021 | 41 | NOTICE of Entry of Appearance by Andrew Joseph McNulty on behalf of Darlene GriffithAttorney Andrew Joseph McNulty added to party Darlene Griffith(pty:pla) (McNulty, Andrew) (Entered: 09/15/2021) |

**A.12**

Appellate Case: 23-1135    Document: 20    Date Filed: 08/21/2023    Page: 13

| | | |
|---|---|---|
| 09/24/2021 | 42 | MINUTE ORDER. The upcoming Status Conference on September 30, 2021 at 9:30 a.m. in this matter shall be conducted via telephone. The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time. The Court notes that the parties may hear the conclusion of a prior hearing at the time they call in, and are instructed to simply wait until their case is called. SO ORDERED, by Magistrate Judge N. Reid Neureiter on September 24, 2021. Text Only Entry. (rvill, ) (Entered: 09/24/2021) |
| 09/29/2021 | 43 | NOTICE of Entry of Appearance by Nathan James Whitney on behalf of DrapperAttorney Nathan James Whitney added to party Drapper(pty:dft) (Whitney, Nathan) (Entered: 09/29/2021) |
| 09/30/2021 | 44 | COURTROOM MINUTES for Telephonic Status Conference held before Magistrate Judge N. Reid Neureiter on 9/30/2021. Plaintiff shall file Amended Complaint by October 4, 2021. Defendants shall be served by October 22, 2021. A Telephonic Status Conference is set for November 10, 2021 at 2:30 p.m. before Magistrate Judge N. Reid Neureiter. The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time. FTR: Courtroom C203. (rvill, ) (Entered: 09/30/2021) |
| 10/04/2021 | 45 | Unopposed MOTION for Leave to *File Second Amended Complaint* by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 10/04/2021) |
| 10/04/2021 | 46 | AMENDED COMPLAINT *Second Amended Complaint* against Drapper, Bill Elder, Cy Gillespie, El Paso County Colorado, Wellpath LLC, Christine Mohr, Doctor Jane Roe, filed by Darlene Griffith.(McNulty, Andrew) (Entered: 10/04/2021) |
| 10/04/2021 | 47 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 4 October 2021. is hereby ORDERED that Plaintiff's Motion for Leave to File Second Amended Complaint (Dkt. # 45 ) is GRANTED finding good cause shown. Plaintiff's Second Amended Complaint and Jury Demand (Dkt. # 46 ) is ACCEPTED as the operative pleading in this case. The Clerk shall amend the case caption accordingly. It is further ORDERED that Defendants' Motion to Dismiss (Dkt. # 32 ) is DENIED as moot. It is further ORDERED that Plaintiff's Motion for Summary Judgment (Dkt. # 33 ), which Plaintiff filed before counsel entered his appearance on her behalf, is DENIED WITHOUT PREJUDICE for failing to comply with Rule 56(c). PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 10/04/2021) |
| 10/15/2021 | 48 | MOTION for Preliminary Injunction *, Expedited Briefing Schedule, and Expedited Hearing* by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 10/15/2021) |
| 10/15/2021 | 49 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 15 October 2021. It is hereby ORDERED that a Status Conference is set on October 19, 2021 at3:30 p.m. to address the briefing schedule for Plaintiffs Motion for Preliminary Injunction 48 , status of service of process on Defendants, and status of Defendants' consent to the jurisdiction of a magistrate judge. The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time. (csarr, ) (Entered: 10/15/2021) |
| 10/15/2021 | 50 | WAIVER OF SERVICE Returned Executed by Darlene Griffith. El Paso County Colorado waiver sent on 10/15/2021, answer due 12/14/2021. (McNulty, Andrew) (Entered: 10/15/2021) |
| 10/15/2021 | 51 | NOTICE of Entry of Appearance by Mari Anne Newman on behalf of Darlene GriffithAttorney Mari Anne Newman added to party Darlene Griffith(pty:pla) (Newman, Mari) (Entered: 10/15/2021) |

A.13

Appellate Case: 23-1135    Document: 20    Date Filed: 08/21/2023    Page: 14

| | | |
|---|---|---|
| 10/19/2021 | 52 | COURTROOM MINUTES for Telephonic Status Conference held before Magistrate Judge N. Reid Neureiter on 10/19/2021. Defendant's response to the Motion for Preliminary Injunction is due by October 29, 2021. Plaintiff's reply is due by November 5, 2021. Witness and Exhibit lists shall be exchanged no later than 12:00 p.m. on November 10, 2021. A Preliminary Injunction Hearing is set for November 12, 2021 at 9:00 a.m. before Magistrate Judge N. Reid Neureiter in Courtroom C203, Second floor, Bryon G. Rogers Courthouse. FTR: Courtroom C203. (rvill, ) (Entered: 10/19/2021) |
| 10/20/2021 | 53 | MINUTE ORDER VACATING PRELIMINARY INJUNCTION HEARING AND REASSIGNING CASE TO DISTRICTJUDGEby Magistrate Judge N. Reid Neureiter on 20 October 2021. Plaintiff in this case seeks a preliminary injunction and an expedited hearing. Dkt. # 48 . However, there is a defendant in the case, WellPath LLC, that has not yet appeared. This Court can only preside over dispositive matters and preliminary injunction matters where all parties have consented to proceed before a magistrate judge. Wherefore, it is hereby ORDERED that the preliminary injunction hearing set for November 12, 2021 is VACATED. The Clerk is ORDERED to reassign this matter to the appropriate district judge. The expedited briefing schedule set on October 19, 2021 (see Dkt. # 52 ) remains in place, subject to modification by the district judge to whom the matter will be reassigned. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 10/20/2021) |
| 10/20/2021 | 54 | CASE REASSIGNED pursuant to 53 MINUTE ORDER VACATING PRELIMINARY INJUNCTION HEARING AND REASSIGNING CASE TO DISTRICT JUDGE. Pursuant to D.C.COLO.LCivR 40.1, the case has been directly reassigned to Judge Christine M. Arguello. All future pleadings should be designated as 21-cv-00387-CMA. (Text Only Entry) (cmadr, ) (Entered: 10/21/2021) |
| 10/21/2021 | 55 | NOTICE of Entry of Appearance by Catherine O'Brien Crum on behalf of Wellpath LLCAttorney Catherine O'Brien Crum added to party Wellpath LLC(pty:dft) (O'Brien Crum, Catherine) (Entered: 10/21/2021) |
| 10/21/2021 | 56 | WAIVER OF SERVICE Returned Executed by Wellpath LLC. Wellpath LLC waiver sent on 10/21/2021, answer due 12/20/2021. (O'Brien Crum, Catherine) (Entered: 10/21/2021) |
| 10/21/2021 | 57 | NOTICE of Entry of Appearance by Lauren Elizabeth Kuhn on behalf of Wellpath LLCAttorney Lauren Elizabeth Kuhn added to party Wellpath LLC(pty:dft) (Kuhn, Lauren) (Entered: 10/21/2021) |
| 10/28/2021 | 58 | ORDER REFERRING CASE to Magistrate Judge N. Reid Neureiter. Magistrate Judge Neureiter is designated to conduct ALLMTN proceedings pursuant to 28 U.S.C. § 636(b) (1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b). Court-sponsored alternative dispute resolution is governed by D.C.COLO.LCivR 16.6. The Magistrate Judge, at his/her discretion, may convene such early neutral evaluation and/or settlement conferences and direct related procedures as may facilitate resolution of this case without the necessity of a motion or prior authorization of the undersigned. SO ORDERED by Judge Christine M. Arguello on 10/28/2021. Text Only Entry (cmasec) (Entered: 10/28/2021) |
| 10/28/2021 | 59 | MEMORANDUM regarding 48 MOTION for Preliminary Injunction , *Expedited Briefing Schedule, and Expedited Hearing* filed by Darlene Griffith. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 10/28/2021. Text Only Entry (cmasec) (Entered: 10/28/2021) |
| 10/28/2021 | 60 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 28 October 2021. It is hereby ORDERED that a Status Conference is set on November 2, 2021 at 9:00 a.m. to address the briefing schedule for Plaintiffs Motion for Preliminary Injunction (Dkt. # 48 ). The parties are directed to call the conference line as a participant at (888) 398-2342, Access |

**A.14**

| | | |
|---|---|---|
| | | Code 5755390# at the scheduled time. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 10/28/2021) |
| 10/29/2021 | 61 | NOTICE of Entry of Appearance by Daniel Patrick Struck on behalf of Wellpath LLCAttorney Daniel Patrick Struck added to party Wellpath LLC(pty:dft) (Struck, Daniel) (Entered: 10/29/2021) |
| 10/29/2021 | 62 | NOTICE of Entry of Appearance by Ashlee B. Hesman on behalf of Wellpath LLCAttorney Ashlee B. Hesman added to party Wellpath LLC(pty:dft) (Hesman, Ashlee) (Entered: 10/29/2021) |
| 10/29/2021 | 63 | NOTICE of Entry of Appearance by Kristina R. Rood on behalf of Wellpath LLCAttorney Kristina R. Rood added to party Wellpath LLC(pty:dft) (Rood, Kristina) (Entered: 10/29/2021) |
| 10/29/2021 | 64 | RESPONSE to 48 MOTION for Preliminary Injunction *, Expedited Briefing Schedule, and Expedited Hearing* Attorney Nathan James Whitney added to party El Paso County Colorado(pty:dft), Attorney Nathan James Whitney added to party Bill Elder(pty:dft), Attorney Nathan James Whitney added to party Bill (I) Elder(pty:dft), Attorney Nathan James Whitney added to party Cy Gillespie(pty:dft) filed by Defendants Draper, El Paso County Colorado, Bill Elder, Bill (I) Elder, Cy Gillespie. (Whitney, Nathan) (Entered: 10/29/2021) |
| 10/29/2021 | 65 | MOTION to Withdraw as Attorney *Pursuant to D.C.Colo.LAttyR. 5(b)* by Defendant Wellpath LLC. (O'Brien Crum, Catherine) (Entered: 10/29/2021) |
| 11/01/2021 | 66 | ORDER: Granting 65 Motion to Withdraw as Attorneys. Attorneys Catherine O'Brien Crum and Lauren Kuhn are permitted to withdraw as counsel for Defendant Wellpath, LLC. The Court notes that Defendant continues to be represented by Mss. Hesman and Rood and Mr. Struck. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Mss. O'Brien Crum and Kuhn's email addresses from future ECF filings and electronic notifications in this case. SO ORDERED by Judge Christine M. Arguello on 11/1/2021. Text Only Entry(cmasec) (Entered: 11/01/2021) |
| 11/02/2021 | 67 | COURTROOM MINUTES ENTRY for proceedings held before Magistrate Judge N. Reid Neureiter: Telephonic Status Conference on 11/2/2021. A two-day Preliminary Injunction Hearing is set to begin at 9:00 a.m. on December 9, 2021 before Magistrate Judge N. Reid Neureiter in Courtroom C203, Second floor, Bryon G. Rogers Courthouse, 1929 Stout Street, Denver, Colorado 80294. The parties shall exchange and file with the court witness and exhibit lists by the close of business day, no later than December 6, 2021. Plaintiff is entitled to 5 requests for production with a 14-day response time. The request should be reasonably related to the issues in the Preliminary Injunction. Plaintiff shall also prepare a proposed scheduling order for review at the end of the Preliminary Injunction Hearing. FTR: Courtroom C203. (rvill, ) (Entered: 11/02/2021) |
| 11/05/2021 | 68 | REPLY to Response to 48 MOTION for Preliminary Injunction *, Expedited Briefing Schedule, and Expedited Hearing* filed by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 11/05/2021) |
| 11/18/2021 | 69 | Joint MOTION for Protective Order by Defendants Draper, El Paso County Colorado, Bill Elder, Cy Gillespie. (Attachments: # 1 Proposed Order (PDF Only) Exhibit 1- Proposed Stipulated Protective Order)(Whitney, Nathan) (Entered: 11/18/2021) |
| 11/22/2021 | 70 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 22 November 2021. It is hereby ORDERED that a Telephonic Discovery Hearing is set for November 23, 2021 at 1:30 p.m. The parties are directed to prepare and email to Chambers by the close of business on November 22, 2021 a short (no longer than ten pages) joint statement setting forth each sides respective position concerning the dispute. The parties are advised that |

| | | |
|---|---|---|
| | | the joint statement will be attached to the courtroom minutes and made a part of the record. Counsel for the parties are also directed to jointly call Court Chambers, 303-335-2403, at the designated time. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 11/22/2021) |
| 11/23/2021 | 71 | COURTROOM MINUTES for proceedings held before Magistrate Judge N. Reid Neureiter: Telephonic Discovery Hearing held on 11/23/2021. FTR: Courtroom C203. (Attachments: # 1 Joint Statement Re: Discovery Dispute, # 2 Exhibit 1) (rvill, ) (Entered: 11/23/2021) |
| 11/28/2021 | 72 | MEMORANDUM regarding 69 Joint MOTION for Protective Order filed by Cy Gillespie, El Paso County Colorado, Bill Elder, Draper. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 11/28/2021. Text Only Entry (cmasec) (Entered: 11/28/2021) |
| 11/29/2021 | 73 | MOTION for Extension of Time to File Answer or Otherwise Respond by Defendants Draper, El Paso County Colorado, Bill Elder, Bill (I) Elder, Cy Gillespie. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order for Extension of Time to Answer/Respond)(Whitney, Nathan) (Entered: 11/29/2021) |
| 11/29/2021 | 74 | MEMORANDUM regarding 73 MOTION for Extension of Time to File Answer or Otherwise Respond filed by Cy Gillespie, Bill (I) Elder, El Paso County Colorado, Bill Elder, Draper. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 11/29/2021. Text Only Entry (cmasec) (Entered: 11/29/2021) |
| 11/29/2021 | 75 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 29 November 2021. It is hereby ORDERED that the parties' Joint Motion for a Protective Order (Dkt. # 69 ) is GRANTED finding good cause shown. The proposed Stipulated Protective Order (Dkt. #69-1) is APPROVED and made an Order of Court. It is further ORDERED that County Defendants' Unopposed Motion for Extension of Time to File a Responsive Pleading (Dkt. # 73 ) is GRANTED. County Defendants shall answer or otherwise respond to Plaintiff's Second Amended Complaint (Dkt. # 46 ) on or before December 17, 2021. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 11/29/2021) |
| 11/29/2021 | 76 | STIPULATED PROTECTIVE ORDER by Magistrate Judge N. Reid Neureiter on 29 November 2021. (cmadr, ) (Entered: 11/29/2021) |
| 12/01/2021 | 77 | Unopposed MOTION for Writ of Habeas Corpus ad testificandum by Plaintiff Darlene Griffith. (Attachments: # 1 Proposed Document Writ of Habeas Corpus ad Testificandum) (McNulty, Andrew) (Entered: 12/01/2021) |
| 12/02/2021 | 78 | MEMORANDUM regarding 77 Unopposed MOTION for Writ of Habeas Corpus ad testificandum filed by Darlene Griffith. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 12/2/2021. Text Only Entry (cmasec) (Entered: 12/02/2021) |
| 12/02/2021 | 79 | WRIT of HABEAS CORPUS AD TESTIFICANDUM issued. (cmadr, ) (Entered: 12/02/2021) |
| 12/02/2021 | 80 | ORDER granting 77 Motion for Writ of Habeas Corpus ad Testificandum by Magistrate Judge N. Reid Neureiter on 2 December 2021. Text Only Entry.(cmadr, ) (Entered: 12/02/2021) |
| 12/06/2021 | 81 | Unopposed MOTION for Extension of Time to *File and Exchange Plaintiff's Exhibit List and Make Disclosures* by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 12/06/2021) |
| 12/06/2021 | 82 | MEMORANDUM regarding 81 Unopposed MOTION for Extension of Time to *File and Exchange Plaintiff's Exhibit List and Make Disclosures* filed by Darlene Griffith. Motion |

**A.16**

referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 12/6/2021. Text Only Entry (cmasec) (Entered: 12/06/2021)

| 12/06/2021 | 83 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 6 December 2021. It is hereby ORDERED that Plaintiff's Unopposed Motion for Extension of Time to File and Exchange Exhibit Lists and Make Disclosure's (Dkt. # 81 ) is GRANTED finding good cause shown. Plaintiff shall have up to and including December 7, 2021 to exchange and file her Exhibit List and to make her appropriate disclosures. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 12/06/2021) |
|---|---|---|
| 12/06/2021 | 84 | MOTION for Extension of Time to *Exchange Witness and Exhibit Lists for Preliminary Injunction Hearing* by Defendants Draper, El Paso County Colorado, Bill Elder, Cy Gillespie. (Whitney, Nathan) (Entered: 12/06/2021) |
| 12/06/2021 | 85 | Witness List by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 12/06/2021) |
| 12/06/2021 | 86 | Witness List by Defendant El Paso County Colorado. (Whitney, Nathan) (Entered: 12/06/2021) |
| 12/07/2021 | 87 | Exhibit List *for Preliminary Injunction Hearing* by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 12/07/2021) |
| 12/07/2021 | 88 | Exhibits in Support *for Preliminary Injunction Hearing* by Defendants Draper, El Paso County Colorado, Bill Elder, Cy Gillespie. (Whitney, Nathan) (Entered: 12/07/2021) |
| 12/08/2021 | 89 | MEMORANDUM regarding 84 MOTION for Extension of Time to *Exchange Witness and Exhibit Lists for Preliminary Injunction Hearing* filed by Cy Gillespie, El Paso County Colorado, Bill Elder, Draper. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 12/8/2021. Text Only Entry (cmasec) (Entered: 12/08/2021) |
| 12/08/2021 | 90 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 8 December 2021. It is hereby ORDERED that Defendants' Unopposed Motion for Extension of Time to File and Exchange Witness and Exhibit List for the Preliminary Injunction Hearing (Dkt. # 84 ) is GRANTED finding good cause shown. Defendants shall have up to and including December 7, 2021 to exchange and file their Witness and Exhibit List. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 12/08/2021) |
| 12/08/2021 | 91 | STIPULATION by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 12/08/2021) |
| 12/08/2021 | 92 | MINUTE ORDER by Magistrate Judge N. Reid Neureiter on 12/8/2021. In light of the parties' Stipulation (Dkt. # 91 ), it is hereby ORDERED that Plaintiff's Motion for Preliminary Injunction (Dkt. # 48 ) is DENIED as moot and the Preliminary Injunction Hearing set for December 9, 2021 at 9:00 a.m. is VACATED. It is further ORDERED that the terms of the Stipulation are ADOPTED and made an Order of Court. (rvill, ) (Entered: 12/08/2021) |
| 12/09/2021 | 93 | NOTICE of Entry of Appearance by Daniel Patrick Struck on behalf of Christine MohrAttorney Daniel Patrick Struck added to party Christine Mohr(pty:dft) (Struck, Daniel) (Entered: 12/09/2021) |
| 12/09/2021 | 94 | NOTICE of Entry of Appearance by Ashlee B. Hesman on behalf of Christine MohrAttorney Ashlee B. Hesman added to party Christine Mohr(pty:dft) (Hesman, Ashlee) (Entered: 12/09/2021) |
| 12/09/2021 | 95 | NOTICE of Entry of Appearance by Kristina R. Rood on behalf of Christine MohrAttorney Kristina R. Rood added to party Christine Mohr(pty:dft) (Rood, Kristina) (Entered: 12/09/2021) |

| 12/09/2021 | 96 | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re 46 Amended Complaint *as to Defendant Mohr* by Defendants Christine Mohr, Wellpath LLC. (Attachments: # 1 Proposed Order (PDF Only))(Hesman, Ashlee) (Entered: 12/09/2021) |
| --- | --- | --- |
| 12/09/2021 | 97 | MEMORANDUM regarding 96 Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re 46 Amended Complaint *as to Defendant Mohr* filed by Wellpath LLC, Christine Mohr. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 12/9/2021. Text Only Entry (cmasec) (Entered: 12/09/2021) |
| 12/09/2021 | 98 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 9 December 2021. It is hereby ORDERED that Defendant Dr. Christine Mohr's Unopposed Motion for Extension of Time to File Responsive Pleading (Dkt. # 96 ) is GRANTED. Dr. Mohr shall answer or otherwise respond to Plaintiff's Amended Complaint (Dkt. # 46 ) on or before December 20, 2021. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 12/09/2021) |
| 12/16/2021 | 99 | Joint MOTION to Stay Case Pending Settlement Conference by Defendants Draper, El Paso County Colorado, Bill Elder, Cy Gillespie. (Attachments: # 1 Proposed Order (PDF Only) )(Whitney, Nathan) (Entered: 12/16/2021) |
| 12/29/2021 | 100 | MEMORANDUM regarding 99 Joint MOTION to Stay *Case Pending Settlement Conference*Joint MOTION for Hearing/Conference *for Purposes of Settlement* filed by Cy Gillespie, El Paso County Colorado, Bill Elder, Draper. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 12/29/2021. Text Only Entry (cmasec) (Entered: 12/29/2021) |
| 01/04/2022 | 101 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 4 January 2022. This case is before the Court on It is hereby ORDERED that the parties' Joint Motion for Settlement Conference and to Stay Case Pending Settlement Conference (Dkt. # 99 ) is GRANTED as follows. The parties are directed to jointly contact Chambers (303-335-2403) no later that January 7, 2022 to schedule a Settlement Conference. It is further ORDERED that this matter is STAYED until such time as a Settlement Conference is scheduled or until further Order of the Court. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 01/04/2022) |
| 01/24/2022 | 102 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 24 January 2022. It is hereby ORDERED that a Settlement Conference is set on April 8, 2022 at 9:00 a.m. in Courtroom C-203, Second Floor, Byron G. Rogers U.S. Courthouse, 1929 Stout Street, Denver, Colorado. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 01/24/2022) |
| 02/24/2022 | 103 | MOTION for Leave to *Appear Telephonically at April 8, 2022 Settlement Conference* 102 Order, by Defendants Christine Mohr, Wellpath LLC. (Hesman, Ashlee) (Entered: 02/24/2022) |
| 02/24/2022 | 104 | MEMORANDUM regarding 103 MOTION for Leave to *Appear Telephonically at April 8, 2022 Settlement Conference* 102 Order, filed by Wellpath LLC, Christine Mohr. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 2/24/2022. Text Only Entry (cmasec) (Entered: 02/24/2022) |
| 03/01/2022 | 105 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 1 March 2022. It is hereby ORDERED that Defendants Wellpath and Mohr's Unopposed Motion for Leave to Appear Telephonically at April 8, 2022 Settlement Conference (Dkt. # 103 ) is GRANTED IN PART and DENIED IN PART as follows. The Wellpath representative is given leave to attend the April 8, 2022 Settlement Conference by telephone, but the Court |

**A.18**

| | | |
|---|---|---|
| | | expects Wellpath's counsel to appear in person. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 03/01/2022) |
| 03/17/2022 | 106 | Unopposed MOTION for Leave to Appear *CLIENTS AND ADJUSTER TO APPEAR TELEPHONICALLY AT APRIL 8, 2022 SETTLEMENT CONFERENCE AND REQUEST FOR STATUS CONFERENCE* by Defendants Draper, El Paso County Colorado, Bill Elder, Bill (I) Elder, Cy Gillespie. (Attachments: # 1 Exhibit A. Resolution 20-19) (Whitney, Nathan) (Entered: 03/17/2022) |
| 03/17/2022 | 107 | MEMORANDUM regarding 106 Unopposed MOTION for Leave to Appear *CLIENTS AND ADJUSTER TO APPEAR TELEPHONICALLY AT APRIL 8, 2022 SETTLEMENT CONFERENCE AND REQUEST FOR STATUS CONFERENCE* filed by Cy Gillespie, Bill (I) Elder, El Paso County Colorado, Bill Elder, Draper. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 3/17/2022. Text Only Entry (cmasec) (Entered: 03/17/2022) |
| 03/18/2022 | 108 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 18 March 2022. It is hereby ORDERED that the County Defendants' Unopposed Motion for Clients and Adjuster to Appear Telephonically at April 8, 2022 Settlement Conference and Request for Status Conference (Dkt. # 106 ) is GRANTED IN PART and DENIED IN PART as follows. Defendants Elder and Gillespie and El Paso County's Adjuster are given leave to attend the Settlement Conference telephonically. The Court understands that the County Defendants' settlement authority will be contingent upon final approval by a vote of the El Paso County Board of County Commissioners, and the Settlement Conference will proceed with that understanding. No status conference is necessary. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 03/18/2022) |
| 04/08/2022 | 109 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 8 April 2022. It is hereby ORDERED that a Scheduling Conference is set for April 29, 2022 at 10:00 a.m. The proposed Scheduling Order is due on or before April 22, 2022. The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 04/08/2022) |
| 04/08/2022 | 110 | MINUTE ENTRY for proceedings held before Magistrate Judge N. Reid Neureiter: Settlement Conference held on 4/8/2022. (rvill, ) (rvill, ). (Entered: 04/11/2022) |
| 04/22/2022 | 111 | Proposed Scheduling Order by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 04/22/2022) |
| 04/22/2022 | 112 | CONSENT to Jurisdiction of Magistrate Judge by Defendants Christine Mohr, Wellpath LLC All parties do not consent.. (Hesman, Ashlee) (Entered: 04/22/2022) |
| 04/29/2022 | 113 | MINUTE ENTRY for proceedings held before Magistrate Judge N. Reid Neureiter: Telephonic Scheduling Conference held on 4/29/2022. Discovery due by 2/15/2023. Dispositive Motions due by 3/17/2023. Telephonic Status Conference set for 10/11/2022 at 11:30 AM in Courtroom C203 before Magistrate Judge N. Reid Neureiter. The parties are directed to call the conference line asa participant at (888) 398-2342, Access Code 5755390# at the scheduled time. FTR: Courtroom C203. (rvill, ) (Entered: 04/29/2022) |
| 04/29/2022 | 114 | SCHEDULING ORDER by Magistrate Judge N. Reid Neureiter on April 29, 2022. (rvill, ) (Entered: 04/29/2022) |
| 05/09/2022 | 115 | STIPULATION re 76 Protective Order *(Joint Stipulation)* by Defendants Draper, El Paso County Colorado, Bill Elder, Bill (I) Elder, Cy Gillespie. (Strider, Christopher) (Entered: 05/09/2022) |

Appellate Case: 23-1135    Document: 20    Date Filed: 08/21/2023    Page: 20

| 05/24/2022 | 116 | STIPULATION of Dismissal of Party *Defendant Jeremy Draper* by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 05/24/2022) |
| 06/01/2022 | 117 | NOTICE of Settlement by Defendants Christine Mohr, Wellpath LLC (Rood, Kristina) (Entered: 06/01/2022) |
| 06/01/2022 | 118 | ORDER: In light of the parties' 117 Notice of Settlement, the parties are DIRECTED to file appropriate dismissal documents in this matter by NOT LATER THAN 6/22/2022. SO ORDERED Dismissal Paper due by 6/22/2022. by Judge Christine M. Arguello on 6/1/2022. Text Only Entry (cmasec) (Entered: 06/01/2022) |
| 06/02/2022 | 119 | STIPULATION of Dismissal of Party *Dr. Christine Mohr with Prejudice* by Defendants Christine Mohr, Wellpath LLC. (Rood, Kristina) (Entered: 06/02/2022) |
| 06/02/2022 | 120 | Unopposed MOTION for Leave to *File Third Amended Complaint* by Plaintiff Darlene Griffith. (Attachments: # 1 Exhibit 1 - Third Amended Complaint - REDLINE, # 2 Exhibit 2 - Third Amended Complaint - CLEAN)(McNulty, Andrew) (Entered: 06/02/2022) |
| 06/02/2022 | 121 | Pursuant to 119 STIPULATION of Dismissal of Party, Defendant Christine Mohr (in her individual capacity) is terminated. Text Only Entry. (sphil, ) (Entered: 06/02/2022) |
| 06/03/2022 | 122 | STIPULATION of Dismissal of Party *Wellpath, LLC with Prejudice* by Defendant Wellpath LLC. (Rood, Kristina) (Entered: 06/03/2022) |
| 06/07/2022 | 123 | ORDER: Granting 120 Motion for Leave to File Third Amended Complaint. The Third Amended Complaint (attached as Exhibit [120-2] is accepted for filing and shall be filed by the Clerks Office as a separate document. SO ORDERED by Judge Christine M. Arguello on 6/7/2022. Text Only Entry(cmasec) (Entered: 06/07/2022) |
| 06/07/2022 | 124 | THIRD AMENDED COMPLAINT and Jury Demand against Bill Elder, Bill (I) Elder, El Paso County Colorado, Cy Gillespie, Brande Ford, Elizabeth O'Neal, Andrew Mustapick, Tiffany Noe, Dawne Elliss, filed by Darlene Griffith.(sphil, ) Modified on 6/7/2022 (Amended compliant filed per [#123] order. (sphil, ). (Entered: 06/07/2022) |
| 06/15/2022 | 125 | WAIVER OF SERVICE Returned Executed by Darlene Griffith. Andrew Mustapick waiver sent on 6/7/2022, answer due 8/6/2022. (McNulty, Andrew) (Entered: 06/15/2022) |
| 06/15/2022 | 126 | WAIVER OF SERVICE Returned Executed by Darlene Griffith. Brande Ford waiver sent on 6/7/2022, answer due 8/6/2022. (McNulty, Andrew) (Entered: 06/15/2022) |
| 06/15/2022 | 127 | WAIVER OF SERVICE Returned Executed by Darlene Griffith. Dawne Elliss waiver sent on 6/7/2022, answer due 8/6/2022. (McNulty, Andrew) (Entered: 06/15/2022) |
| 06/15/2022 | 128 | WAIVER OF SERVICE Returned Executed by Darlene Griffith. Elizabeth O'Neal waiver sent on 6/7/2022, answer due 8/6/2022. (McNulty, Andrew) (Entered: 06/15/2022) |
| 06/15/2022 | 129 | WAIVER OF SERVICE Returned Executed by Darlene Griffith. Tiffany Noe waiver sent on 6/7/2022, answer due 8/6/2022. (McNulty, Andrew) (Entered: 06/15/2022) |
| 06/20/2022 | 130 | Unopposed MOTION for Leave to File Excess Pages by Defendants Cynthia Ayad, El Paso County Colorado, Bill Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Whitney, Nathan) (Entered: 06/20/2022) |
| 06/22/2022 | 131 | ORDER: Granting 130 Unopposed Motion for Leave to File Excess Pages. Defendants are permitted to file their Motion to Dismiss in excess of this Court's page limitations, NOT TO EXCEED 40 pages in total; Plaintiff's Response NOT TO EXCEED 40 pages total. SO ORDERED by Judge Christine M. Arguello on 6/22/2022. Text Only Entry(cmasec) (Entered: 06/22/2022) |

**A.20**

| 06/28/2022 | 132 | MOTION to Dismiss by Defendants El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Whitney, Nathan) (Entered: 06/28/2022) |
| --- | --- | --- |
| 06/29/2022 | 133 | MEMORANDUM regarding 132 MOTION to Dismiss filed by Bill (I) Elder, Brande Ford, Dawne Elliss, Andrew Mustapick, Cy Gillespie, Elizabeth O'Neal, Tiffany Noe, Bill Elder, El Paso County Colorado. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 6/29/2022. Text Only Entry (cmasec) (Entered: 06/29/2022) |
| 07/07/2022 | 134 | MOTION to Stay by Defendants El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Whitney, Nathan) (Entered: 07/07/2022) |
| 07/08/2022 | 135 | MEMORANDUM regarding 134 MOTION to Stay filed by Bill (I) Elder, Brande Ford, Dawne Elliss, Andrew Mustapick, Cy Gillespie, Elizabeth O'Neal, Tiffany Noe, Bill Elder, El Paso County Colorado. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 7/8/2022. Text Only Entry (cmasec) (Entered: 07/08/2022) |
| 07/12/2022 | 136 | RESPONSE to 134 MOTION to Stay filed by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 07/12/2022) |
| 07/15/2022 | 137 | Unopposed MOTION for Extension of Time to File Response/Reply as to 132 MOTION to Dismiss by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 07/15/2022) |
| 07/24/2022 | 138 | MEMORANDUM regarding 137 Unopposed MOTION for Extension of Time to File Response/Reply as to 132 MOTION to Dismiss filed by Darlene Griffith. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 7/24/2022. Text Only Entry (cmasec) (Entered: 07/24/2022) |
| 07/25/2022 | 139 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 25 July 2022. It is hereby ORDERED that Plaintiff's Unopposed Motion for Extension of Time for Plaintiff to File Response to Defendants' Motion to Dismiss (Dkt. # 137 ) is GRANTED. Plaintiff's response to Defendants' Motion to Dismiss (Dkt. # 132 ) shall be filed on or before August 9, 2022. It is further ORDERED that the Court will hear argument on Defendants' Motion to Dismiss (Dkt. #132) and Motion to Stay Discovery (Dkt. # 134 ) at the hearing set for October 11, 2022. To ensure that the parties have adequate time to present their arguments, the hearing is RESET to October 11, 2022 at 11:00 a.m. The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 07/25/2022) |
| 07/26/2022 | 140 | REPLY to Response to 134 MOTION to Stay filed by Defendants El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Whitney, Nathan) (Entered: 07/26/2022) |
| 07/27/2022 | 141 | NOTICE of Entry of Appearance by Steven Ward Martyn on behalf of El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'NealAttorney Steven Ward Martyn added to party El Paso County Colorado(pty:dft), Attorney Steven Ward Martyn added to party Bill Elder(pty:dft), Attorney Steven Ward Martyn added to party Bill (I) Elder(pty:dft), Attorney Steven Ward Martyn added to party Dawne Elliss(pty:dft), Attorney Steven Ward Martyn added to party Brande Ford(pty:dft), Attorney Steven Ward Martyn added to party Cy Gillespie(pty:dft), Attorney Steven Ward Martyn added to party Andrew Mustapick(pty:dft), Attorney Steven Ward Martyn added to party Tiffany Noe(pty:dft), |

**A.21**

Appellate Case: 23-1135    Document: 20    Date Filed: 08/21/2023    Page: 22

Attorney Steven Ward Martyn added to party Elizabeth O'Neal(pty:dft) (Martyn, Steven) (Entered: 07/27/2022)

| | | |
|---|---|---|
| 08/01/2022 | 142 | Unopposed MOTION for Leave to File Excess Pages *on Plaintiff's Response to Defendants' Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)* by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 08/01/2022) |
| 08/01/2022 | 143 | MEMORANDUM regarding 142 Unopposed MOTION for Leave to File Excess Pages *on Plaintiff's Response to Defendants' Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)* filed by Darlene Griffith. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 8/1/2022. Text Only Entry (cmasec) (Entered: 08/01/2022) |
| 08/01/2022 | 144 | MINUTE ORDER by Magistrate Judge N. Reid Neureiter on 08/01/2022. It is hereby ORDERED that Plaintiff's Unopposed Motion for Leave to Exceed Page Limitation Regarding Plaintiff's Response to Defendants' Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Dkt. # 142 is GRANTED. Plaintiff's response to Defendants' Motion to Dismiss (Dkt. # 132 shall be no longer than fifty (50) pages in length, excluding the certificate of service. PLEASE READ ATTACHED MINUTE ORDER (alave, ) (Entered: 08/01/2022) |
| 08/03/2022 | 145 | NOTICE *to Terminate ECF Filing Notifications to Counsel of Record* by Defendants Christine Mohr, Wellpath LLC (Rood, Kristina) (Entered: 08/03/2022) |
| 08/04/2022 | 146 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 145 Notice (Other) filed by attorney **Rood, Kristina**. The document is incorrectly formatted. Action to take - **REFILE THE DOCUMENT**. In order for an attorney to be withdrawn as counsel of record and term their ECF Notices, a Motion to Withdraw as Attorney must be filed. Refer to D.C.COLO.LAttyR 5(b). (Text Only Entry) (sphil, ) (Entered: 08/04/2022) |
| 08/08/2022 | 147 | RESPONSE to 132 MOTION to Dismiss *THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (6)* filed by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 08/08/2022) |
| 08/10/2022 | 148 | MOTION to Withdraw as Attorney by Defendants Christine Mohr, Wellpath LLC. (Struck, Daniel) (Entered: 08/10/2022) |
| 08/10/2022 | 149 | MOTION to Withdraw as Attorney by Defendants Christine Mohr, Wellpath LLC. (Hesman, Ashlee) (Entered: 08/10/2022) |
| 08/10/2022 | 150 | MOTION to Withdraw as Attorney by Defendants Christine Mohr, Wellpath LLC. (Rood, Kristina) (Entered: 08/10/2022) |
| 08/11/2022 | 151 | ORDER: Granting 148 , 149 , and 150 Motions to Withdraw as Attorneys. Attorneys Daniel P. Struck, Ashlee B. Hesman, and Kristina R. Rood are permitted to withdraw as counsel for Defendants Wellpath, LLC and Dr. Christine Mohr. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Mr. Struck and Mss. Hesman and Rood's email addresses from future ECF filings and electronic notifications in this case. SO ORDERED by Senior Judge Christine M. Arguello on 8/11/2022. Text Only Entry(cmasec) (Entered: 08/11/2022) |
| 08/16/2022 | 152 | MOTION for Extension of Time to File Response/Reply as to 132 MOTION to Dismiss , MOTION for Leave to File Excess Pages *in their Reply in Support of Motion to Dismiss* by Defendants El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Whitney, Nathan) (Entered: 08/16/2022) |

**A.22**

| | | |
|---|---|---|
| 08/16/2022 | 153 | MEMORANDUM regarding 152 MOTION for Extension of Time to File Response/Reply as to 132 MOTION to Dismiss MOTION for Leave to File Excess Pages *in their Reply in Support of Motion to Dismiss* filed by Bill (I) Elder, Brande Ford, Dawne Elliss, Andrew Mustapick, Cy Gillespie, Elizabeth O'Neal, Tiffany Noe, Bill Elder, El Paso County Colorado. Motion referred to Magistrate Judge N. Reid Neureiter by Senior Judge Christine M. Arguello on 8/16/2022. Text Only Entry (cmasec) (Entered: 08/16/2022) |
| 08/17/2022 | 154 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 17 August 2022. It is hereby ORDERED that Defendants' Unopposed Motion for Extension of Time to File a Responsive Pleading and Motion for an Extension of Page Limitations (Dkt. # 152 ) is GRANTED. Defendants' reply brief is due on or before August 26, 2022 and shall be no longer than twenty-five (25) pages. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 08/17/2022) |
| 08/26/2022 | 155 | REPLY to Response to 132 MOTION to Dismiss filed by Defendants El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Whitney, Nathan) (Entered: 08/26/2022) |
| 08/29/2022 | 156 | NOTICE of Supplemental Authorities re: 132 MOTION to Dismiss , 147 Response to Motion by Plaintiff Darlene Griffith (McNulty, Andrew) (Entered: 08/29/2022) |
| 09/29/2022 | 157 | NOTICE of Entry of Appearance by Bryan E. Schmid on behalf of El Paso County Colorado, Bill Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'NealAttorney Bryan E. Schmid added to party El Paso County Colorado(pty:dft), Attorney Bryan E. Schmid added to party Bill Elder(pty:dft), Attorney Bryan E. Schmid added to party Dawne Elliss(pty:dft), Attorney Bryan E. Schmid added to party Brande Ford(pty:dft), Attorney Bryan E. Schmid added to party Cy Gillespie(pty:dft), Attorney Bryan E. Schmid added to party Andrew Mustapick(pty:dft), Attorney Bryan E. Schmid added to party Tiffany Noe(pty:dft), Attorney Bryan E. Schmid added to party Elizabeth O'Neal(pty:dft) (Schmid, Bryan) (Entered: 09/29/2022) |
| 09/29/2022 | 158 | Joint MOTION to Amend/Correct/Modify 114 Scheduling Order by Defendants Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Schmid, Bryan) (Entered: 09/29/2022) |
| 09/29/2022 | 159 | MEMORANDUM regarding 158 Joint MOTION to Amend/Correct/Modify 114 Scheduling Order filed by Bill (I) Elder, Brande Ford, Dawne Elliss, Andrew Mustapick, Cy Gillespie, Elizabeth O'Neal, Tiffany Noe, Bill Elder. Motion referred to Magistrate Judge N. Reid Neureiter by Senior Judge Christine M. Arguello on 9/29/2022. Text Only Entry (cmasec) (Entered: 09/29/2022) |
| 09/29/2022 | 160 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 29 September 2022. It is hereby ORDERED that the parties' Joint Motion to Modify the Scheduling Order (Dkt. # 158 ) is GRANTED. The Scheduling Order (Dkt. # 114 ) is MODIFIED as follows: Discovery due by 6/15/2023. Dispositive Motions due by 7/15/2023. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 09/30/2022) |
| 10/11/2022 | 161 | MINUTE ENTRY for proceedings held before Magistrate Judge N. Reid Neureiter: Telephonic Motion Hearing held on 10/11/2022. Motion to Stay Discovery (Dkt. # 134 ) is TAKEN UNDER ADVISEMENT. The Court will issue a written order. Defendants' Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Dkt. # 132 ) is TAKEN UNDER ADVISEMENT. The Court will issue a written recommendation in due course. FTR: Courtroom C203. (rvill, ) (Entered: 10/11/2022) |
| 11/02/2022 | 162 | ORDER ON DEFENDANTS' MOTION TO STAY DISCOVERY (Dkt. # 134 ) by Magistrate Judge N. Reid Neureiter on 2 November 2022. it is hereby ORDERED that |

| | | |
|---|---|---|
| | | Defendants' Motion to Stay Discovery (Dkt. #134) is GRANTED. Discovery is STAYED pending the undersigned's issuance of a Report and Recommendation on Defendants' Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Dkt. # 132 ), after which the Court will reassess whether it is appropriate to lift the stay and proceed with discovery. (cmadr, ) (Entered: 11/02/2022) |
| 11/12/2022 | 163 | TRANSCRIPT of Telephonic Motion Hearing held on October 11, 2022 before Magistrate Judge Neureiter. Pages: 1-62. **NOTICE - REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Patterson Transcription Company, ) (Entered: 11/12/2022) |
| 02/09/2023 | 164 | Pro Se Notice of Change of Address/Contact Information by Plaintiff Darlene Griffith (trvo, ) (Entered: 02/10/2023) |
| 02/27/2023 | 165 | REPORT AND RECOMMENDATION ONDEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINTPURSUANT TO Fed. R. Civ. P. 12(b)(1) and (6)(Dkt. # 132 ) by Magistrate Judge N. Reid Neureiter on 27 February 2023. In light of the foregoing, it is hereby RECOMMENDED that Defendants' Motion to Dismiss (Dkt. # 132 ) be GRANTED, and that Plaintiff's Third Amended Complaint (Dkt. # 124 ) be DISMISSED. (cmadr, ) (Entered: 02/27/2023) |
| 03/02/2023 | 166 | AFFIDAVIT by Plaintiff Darlene Griffith. (sphil, ) (Entered: 03/03/2023) |
| 03/06/2023 | 167 | Unopposed MOTION for Leave to *EXCEED PAGE LIMITATION REGARDING OBJECTION TO REPORT AND RECOMMENDATION* by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 03/06/2023) |
| 03/08/2023 | 168 | ORDER: Granting 167 Unopposed Motion for Leave to File Excess Pages. Defendant is permitted to file her Objection to 165 Magistrate Judge Report and Recommendation in excess of this Court's page limitations, NOT TO EXCEED 30 pages in total, excluding Certificate of Service. SO ORDERED by Senior Judge Christine M. Arguello on 3/8/2023. Text Only Entry(cmasec) (Entered: 03/08/2023) |
| 03/08/2023 | 169 | OBJECTION to 165 Report and Recommendations filed by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 03/08/2023) |
| 03/13/2023 | 170 | Unopposed MOTION for Extension of Time to File Response/Reply as to 165 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE re 124 Amended Complaint,, Add and Terminate Parties, filed by Darlene Griffith, 132 MOTION to Dismiss filed by Bill (I) Elder, Brande Ford, Dawne Elliss, Andrew Mustapick, Cy Gill *and to Exceed Page Limitation* by Defendants El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Whitney, Nathan) (Entered: 03/13/2023) |
| 03/17/2023 | 171 | ORDER: Granting in part and Denying in part 170 Unopposed Motion for Extension of Time to File Response and Exceed Page Limitations. GRANTING Motion to Exceed Page Limitations. Defendants are permitted to file their Response to 169 Plaintiffs Objection to 165 Magistrate Judge's Report and Recommendation in excess of this Court's page limitations, NOT TO EXCEED 25 pages in total, excluding Certificate of Service. DENYING Motion for Extension of Time. Defendants Objections continue to be |

**A.24**

| | | |
|---|---|---|
| | | due 3/22/2023. SO ORDERED by Judge Christine M. Arguello on 3/17/2023. Text Only Entry(cmasec) (Entered: 03/17/2023) |
| 03/22/2023 | 172 | RESPONSE to Objection to 165 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE re 124 Amended Complaint,, Add and Terminate Parties, filed by Darlene Griffith, 132 MOTION to Dismiss filed by Bill (I) Elder, Brande Ford, Dawne Elliss, Andrew Mustapick, Cy Gill filed by Defendants Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick. (Whitney, Nathan) (Entered: 03/22/2023) |
| 03/27/2023 | 173 | ORDER Affirming and Adopting Recommendation of United States Magistrate Judge by Senior Judge Christine M. Arguello on 3/27/2023. 165 Report and Recommendations; granting 132 Motion to Dismiss. (msmot) (Entered: 03/27/2023) |
| 03/27/2023 | 174 | FINAL JUDGMENT by Clerk 3/27/2023. 173 Order on Motion to Dismiss, Order on Report and Recommendations (msmot) (Entered: 03/27/2023) |
| 04/25/2023 | 175 | NOTICE OF APPEAL as to 173 Order on Motion to Dismiss, Order on Report and Recommendations by Plaintiff Darlene Griffith (Filing fee $ 505, Receipt Number ACODC-9066381) (McNulty, Andrew) (Entered: 04/25/2023) |
| 04/25/2023 | 176 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 175 Notice of Appeal filed by Darlene Griffith to the U.S. Court of Appeals. ( Retained Counsel, Fee paid,) (Attachments: # 1 Preliminary Record, # 2 Docket Sheet)(sphil, ) (Entered: 04/26/2023) |
| 04/26/2023 | 177 | USCA Case Number 23-1135 for 175 Notice of Appeal filed by Darlene Griffith. (sphil, ) (Entered: 04/26/2023) |
| 05/10/2023 | 178 | TRANSCRIPT ORDER FORM re 175 Notice of Appeal by Plaintiff Darlene Griffith (McNulty, Andrew) (Entered: 05/10/2023) |
| 05/12/2023 | 179 | LETTER TO USCA and all counsel certifying the record is complete as to 175 Notice of Appeal filed by Darlene Griffith. A transcript order form was filed stating that a transcript is not necessary. ( Appeal No. 23-1135) Text Only Entry. (sphil, ) (Entered: 05/12/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/16/2023 10:56:54 | | |
| **PACER Login:** | MJC_Appellate | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-00387-CMA-NRN |
| **Billable Pages:** | 22 | **Cost:** | 2.20 |

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00387-NRN-CMA

DARLENE GRIFFITH,

     Plaintiff,

v.

EL PASO COUNTY, COLORADO,
BILL ELDER, in his individual and official capacities,
CY GILLESPIE, in his individual capacity,
ELIZABETH O'NEAL, in her individual capacity,
ANDREW MUSTAPICK, in his individual capacity,
DAWNE ELLISS, in her individual capacity,
TIFFANY NOE, in her individual capacity,
BRANDE FORD, in her individual capacity,

     Defendants.

---

### THIRD AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiff, by and through her attorneys, Andy McNulty and Mari Newman of KILLMER, LANE & NEWMAN, LLP, respectfully alleges for her Third Amended Complaint and Jury Demand as follows:

### <u>INTRODUCTION</u>

1.     Darlene Griffith suffered repeated sexual harassment, sexual assault, and discrimination as a result of El Paso County's policy of refusing to house transgender inmates based on their gender identity, and a pervasive culture of purposeful discrimination against, and subjugation of, transgender inmates who suffer from Gender Dysphoria.

2.     Ms. Griffith is a transgender woman who has been diagnosed with Gender Dysphoria. In the community, she lives in accordance with her female gender identity and undergoes hormone therapy.

**A.27**

Despite this well-documented history, Defendants purposefully housed Ms. Griffith in an all-male unit in the El Paso County Jail. Despite Ms. Griffith's multiple requests to be moved to a unit that corresponds with her gender identity, El Paso County continued to discriminatorily house her in a unit that exposed her to a significantly increased risk of sexual harassment, assault, and emotional distress.

3.      Defendants also subjected Ms. Griffith to a pervasive culture of discrimination and sexual harassment at the El Paso County Jail. Defendant Andrew Mustapick, an El Paso County Sheriff Deputy, sexually harassed Ms. Griffith and subjected her to a highly invasive (and completely unnecessary) visual body cavity search upon intake, while telling her that he wanted to go "balls deep in [her] ass." Because she was housed in an all-male unit, Ms. Griffith was then subjected to repeated cross-gender pat-down searches. Defendants continuously and intentionally mis-gendered Ms. Griffith while she was incarcerated. Defendants denied Ms. Griffith clothing that conforms with her gender identity despite the fact that cisgendered women are allowed panties and lipstick. When El Paso County officials learned that Ms. Griffith had told her medical care providers that she would attempt to self-castrate due to the pervasive discrimination that she faced, they took no action to rectify their on-going discrimination and harassment of her, and continued to house her in an all-male housing unit.

4.      Defendants took all of these actions in accordance with the official policies of El Paso County, or pursuant to widespread unwritten customs and practices that El Paso County has condoned.

5.      Ms. Griffith brings this lawsuit to vindicate her rights and the rights of all transgender women, so that they do not have to suffer the daily indignities that she suffered in the El Paso County Jail.

## JURISDICTION AND VENUE

6.      This action arises under the Constitution and laws of the United States.

**A.28**

7.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Jurisdiction supporting Plaintiff's claims for attorney fees and costs is conferred by 42 U.S.C. § 1988.

8.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State of Colorado at all times relevant to the subject matter of this Third Amended Complaint.

9.      Supplemental pendent jurisdiction for Plaintiff's state law claims is based on 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and the pendent state law causes of action derive from a common nucleus of operative facts.

## PARTIES

**Plaintiff:**

10.     At all times relevant to the subject matter of this Third Amended Complaint, Plaintiff Darlene Griffith was a citizen of the United States and a resident of the State of Colorado.

11.     During the relevant time period, Ms. Griffith was detained at the El Paso County Jail.

12.     All available administrative remedies have been exhausted to the extent required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). There are no other administrative exhaustion requirements that would pose as a bar to the claims asserted herein.

**Defendants:**

13.     Defendant El Paso County is a municipality and as such is a proper defendant under 42 U.S.C. § 1983.

14.     At all times relevant to the subject matter of this litigation, Defendant Bill Elder was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Elder was acting under color of state law in his capacity as the El Paso County Sheriff. Defendant Elder was responsible for training and supervising all other Defendants and other employees of the El Paso County Sheriff's

A.29

Department working at the jail, for setting jail policy for the county and the overall management of the jail, and for insuring the health and welfare of all persons detained in the El Paso County Jail.

15.     At all times relevant to the subject matter of this litigation, Defendant Cy Gillespie was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Gillespie was acting under color of state law in his capacity as a Commander employed by El Paso County and Defendant Elder.

16.     At all times relevant to the subject matter of this litigation, Defendant Elizabeth O'Neal was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant O'Neal was acting under color of state law in her capacity as an official employed by El Paso County and Defendant Elder.

17.     At all times relevant to the subject matter of this litigation, Defendant Andrew Mustapick was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Mustapick was acting under color of state law in his capacity as a deputy employed by El Paso County and Defendant Elder.

18.     At all times relevant to the subject matter of this litigation, Defendant Dawne Elliss was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Elliss was acting under color of state law in her capacity as a deputy employed by El Paso County and Defendant Elder.

19.     At all times relevant to the subject matter of this litigation, Defendant Tiffany Noe was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Noe was acting under color of state law in her capacity as a deputy employed by El Paso County and Defendant Elder.

20.     At all times relevant to the subject matter of this litigation, Defendant Brande Ford was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Ford was acting under color of state law in her capacity as a deputy employed by El Paso County and Defendant Elder.

A.30

## FACTUAL ALLEGATIONS

### Gender Identity, Gender Dysphoria, And The Incarceration Of Transgender Women Like Ms. Griffith

21.      Gender identity is an innate, internal sense of one's sex—e.g., being male or female—and is a basic part of every person's core identity. Everyone has a gender identity. Most people's gender identity is consistent with the sex they were assigned at birth ("assigned sex"). Transgender people, however, have a gender identity that is different from their assigned sex. For example, a transgender woman is a woman who was assigned male at birth and has a female gender identity. A cisgender woman is a woman who was assigned female at birth and has a female gender identity.

22.      The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) ("DSM-5") recognizes that being transgender is not itself a disability, but that the clinically relevant condition is the "Gender Dysphoria" experienced by many individuals whose gender identity conflicts with their assigned sex. Gender Dysphoria is defined as the significant distress that may accompany the incongruence between a transgender person's gender identity and assigned sex. This distress limits major life activities and is therefore a disability. A transgender person's Gender Dysphoria can be alleviated when the person is able to live, and be treated by others, consistently with the person's gender identity.

23.      Gender Dysphoria often, but not always, emerges during childhood.

24.      The accepted course of medical treatment to alleviate the symptoms of Gender Dysphoria often involves allowing the individual to live as his or her chosen gender through one or more of the following treatments: changes in gender expression and role; dressing, grooming, and otherwise outwardly presenting in a manner consistent with one's gender identity; hormone therapy; psychotherapy; and, in some cases, surgery to change primary and/or secondary sex characteristics.

25.     Ms. Griffith has been diagnosed with Gender Dysphoria and has been living as a transgender woman for over twenty years. As part of her medically supervised treatment, she changed her name and altered her physical appearance to conform to her female gender identity, including dressing in feminine attire and taking feminizing hormones, which caused her to develop female secondary sex characteristics such as breasts, soft skin, a lack of facial hair, and other characteristics typically associated with women.

26.     At all times relevant to this action, Defendants were aware of Ms. Griffith's Gender Dysphoria and her identity as a transgender woman.

27.     At all times relevant to this action, Defendants were aware of Ms. Griffith's history of Gender Dysphoria and her identity as a transgender woman.

28.     At all times relevant to this action, Defendants perceived Ms. Griffith as having Gender Dysphoria and being a transgender woman.

29.     Defendants were aware that Ms. Griffith has a history of self-harm, which is a symptom and manifestation of her diagnosed Gender Dysphoria. Defendants were also aware that Ms. Griffith had an increased suicide risk because of her transgender status and history of past suicide attempts. And, Ms. Griffith alerted Defendants to self-harming thoughts throughout her incarceration.

30.     On March 11, 2021, Ms. Griffith told Christine Mohr, a Wellpath mental health provider, that she wanted to cut off her penis on a daily basis. Ms. Mohr acknowledged that Ms. Griffith has an extensive history of self-mutilation. Ms. Mohr spoke with an El Paso County sergeant about Ms. Griffith's expressed intent to self-mutilate and her housing, but the El Paso County official decided that Ms. Griffith would remain housed in an all-male unit.

31.     On July 1, 2021, Ms. Griffith told Raymond Carrington, a Wellpath mental health provider, that she would remove her penis herself once she could figure out how to do it and would do it

**A.32**

as soon as possible. Mr. Carrington noted the conversation in Ms. Griffith's medical records.  Mr. Carrington also alerted an El Paso County official that Ms. Griffith had expressed ideation of self-harm, but the El Paso County official deliberately decided not to place Ms. Griffith on housing precautions or move her to housing that conforms with her gender identity.

32.     After alerting El Paso County officials, and its medical contractors (who communicated those concerns to El Paso County officials), that she was contemplating engaging in self-castration because of the pervasive discrimination and harassment she experienced within the El Paso County Jail, Ms. Griffith attempted to self-castrate by wrapping a rubber band around her genitals.

33.     Ms. Griffith's Gender Dysphoria is a mental impairment that substantially limits one or more major life activities.

34.     Ms. Griffith is substantially limited in her ability to care for herself because she requires regular, ongoing, and life-long medical treatment, including ongoing psychotherapy and periodic hormone treatment. She is also substantially limited in other major life activities, such as eating, sleeping, learning, concentrating, thinking, communicating, and interacting with others because of distress associated with her Gender Dysphoria

35.     Ms. Griffith is substantially limited in the operation of major bodily functions, including neurological function, brain function, endocrine function, and reproductive function.

36.     Ms. Griffith has a history of Gender Dysphoria, which substantially limits one or more major life activities, including the ability to care for herself, eating, sleeping, learning, concentrating, thinking, communicating, interacting with others, and reproducing, and which substantially limits neurological function, brain function, endocrine function, and reproductive function.

37.     When a transgender person's Gender Dysphoria is left untreated, or is inadequately treated, the consequences can be dire. Symptoms of untreated Gender Dysphoria often include intense

**A.33**

emotional suffering, anxiety and depression, suicidality, and thoughts or acts of self-harm. All of those symptoms can be mitigated, and often prevented altogether, for transgender people with access to appropriate individualized medical care as part of their gender transitions.

38.     Ms. Griffith has engaged in multiple acts of self-harm since childhood during times when her Gender Dysphoria has not been accommodated and treated. Ms. Griffith engages in self-harm, specifically self-castration behavior, regularly. This activity is worsened when she is not receiving treatment for Gender Dysphoria, which includes not being allowed to live, and dress, consistent with her gender identity and being subjected to sexual harassment in the form of mis-gendering.

39.     The prison environment can be particularly harmful to transgender women. Reports (including the 2009 report by the National Prison Rape Elimination Commission) consistently document that transgender women are victims of sexual abuse at much higher rates than the rest of the population while in custodial environments including lock-ups, jails and prisons, as well as while being searched by male prison guards. In its June 2015 report of data collection activities, the Bureau of Justice Statistics ("BJS") disclosed that an estimated 35% of transgender people held in prisons such as those in Colorado reported experiencing one or more incidents of sexual victimization in the past 12 months or since admission. According to the BJS report, when asked about the experiences surrounding their victimization by other incarcerated people, 72% of the transgender respondees said they experienced force or threat of force and 29% said they were physically injured.

**The Relevant Standards For Incarcerating Transgender People**

40.     The World Professional Association for Transgender Health ("WPATH") is an "international, multidisciplinary, professional association whose mission is to promote evidence-based care, education, research, advocacy, public policy, and respect for transgender health. The vision of WPATH is to bring together diverse professionals dedicated to developing best practices and supportive

A.34

policies worldwide that promote health, research, education, respect, dignity, and equality for transsexual, transgender, and gender nonconforming people in all cultural settings."[1] All Defendants entrusted with the care and safety of the transgender women in the El Paso County Jail are aware that WPATH standards of care are applicable to Ms. Griffith and other transgender women in the El Paso County Jail. The WPATH Standards of Care are widely recognized as the authoritative standard for the treatment of transgender individuals and the National Commission on Correctional Healthcare recommends the WPATH standards for use in all correctional facilities.

41.    The WPATH standards of care apply in their entirety to transgender people in prisons and require individual assessment for appropriate treatment in a fair and tolerant climate, which may consist of outward expression of one's internal sense of gender identity, and social role transition, including access to gender-affirming canteen items, like feminine grooming products and clothing.

42.    The WPATH standards dictate that placement of transgender people in a single-sex housing unit, ward, or pod on the sole basis of the appearance of the external genitalia places transgender people at risk for victimization. Despite these known risks, El Paso County and its officials promulgating and carrying out official policy, including Defendants Elder and Gillespie, make facility assignments to people in custody solely on the basis of the individual's genitalia.

43.    The WPATH standards state that housing and shower/bathroom facilities for transsexual, transgender, and gender nonconforming people living in institutions should take into account their gender identity and role, physical status, dignity, and personal safety. Placement in a single-sex housing unit, ward, or pod on the sole basis of the appearance of the external genitalia may not be appropriate and may place the individual at risk for victimization. Institutions where transsexual, transgender, and

---

[1] WPATH Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People, p. 1 (available at https://www.wpath.org/media/cms/Documents/SOC%20v7/SOC%20V7_English.pdf.)

A.35

gender nonconforming people reside and receive health care should monitor for a tolerant and positive climate to ensure that residents are not under attack by staff or other residents.

44.     WPATH also provides that housing and shower/bathroom facilities for transgender people living in institutions should take into account their gender identity and role, physical status, dignity, and personal safety. Defendants have failed to follow these requirements for Ms. Griffith and other transgender women in El Paso County's care, resulting in the continued violation of their rights and exposure to obvious danger from other inmates and self-mutilation.

45.     In 2003, Congress passed the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601 et seq. ("PREA"). PREA establishes a zero-tolerance standard against sexual abuse in adult prisons and other confinement centers. PREA requires agencies to comply with national standards to eliminate sexual abuse, recognizes that transgender people face elevated risks of being victimized in prisons, mandates that state correctional facilities provide proper training to correctional staff, and requires subject agencies to establish methods to deter and detect sexual violence in prison, to identify and treat such victims, and to report incidents of such violence to the Bureau of Justice Statistics.

46.     The Commission established to monitor compliance with PREA noted in 2009 that gender nonconformity places transgender people at extremely high risk for abuse, and, as a result, the Commission opined that, "In determining whether to house transgender individuals in men's or women's facilities, the Commission requires individualized determinations based on other factors in addition to the person's current genital status" (NPREC, 2009, p. 89). Defendants are and have been aware of the standards required by PREA.

### El Paso County And Its Officials Have An Official Policy Of Housing Transgender Women, Like Ms. Griffith, In All-Male Units At The El Paso County Jail

47.     When Ms. Griffith first entered El Paso County Jail on July 20, 2020, she was an openly transgender woman with a feminine appearance.

**A.36**

48.     During her intake screening, she notified El Paso County Jail and its healthcare personnel that she was a transgender woman with a diagnosis of Gender Dysphoria. Ms. Griffith explicitly requested placement in a women's facility because she feared being sexually abused and assaulted in male facilities by both guards and inmates, along with fearing the humiliation of being constantly searched by male guards in a male unit and the general degradation of being considered a man when she is a transgender woman.

49.     Ms. Griffith's medical records note that she has been diagnosed with Gender Dysphoria.

50.     Ms. Griffith also alerted Defendants that she is legally blind.

51.     El Paso County, as a matter of official policy, refuses to house transgender women in female housing facilities. El Paso County continued to house Ms. Griffith, and continues to house other transgender women in its custody, in male units within the El Paso County Jail.

52.     El Paso County officials ignored Ms. Griffith's health and safety requests, despite knowing the risks she faced, and subjected her to a terrible sequence of constitutional violations throughout the entirety of her incarceration.

53.     El Paso County officials disregarded Ms. Griffith's safety concerns and housed her in men's units within the El Paso County Jail where she foreseeably became a victim of multiple instances of sexual assault, harassment, and degrading and transphobic behavior at the hands of male deputies.

54.     On intake, Defendant Noe classified Ms. Griffith and purposefully placed her into an all-male unit despite knowing that Ms. Griffith is a transgender woman and that Ms. Griffith wished to be placed into housing that corresponded with her gender identity. Defendant Noe did this in accordance with the customs, policies, and practices of El Paso County and Defendant Elder.

55.     On July 29, 2020, Defendant Brande Ford did an ADA initial interview of Ms. Griffith. It was clear to Defendant Ford that Ms. Griffith is a transgender woman and that Ms. Griffith wished to be

**A.37**

placed into housing that corresponded with her gender identity. Despite this, Defendant Forde did not re-classify Ms. Griffith and place her into a unit that corresponded with her gender identity. In fact, despite Gender Dysphoria being a disability under the Americans with Disabilities Act, Defendant Forde wrote in Ms. Griffith's records that there were no disability concerns related to Ms. Griffith's housing.

56.    After her initial classification into an all-male unit, Ms. Griffith continuously requested that she be placed in a unit that conformed with her gender identity.

57.    On October 29, 2020, Ms. Griffith filed an inmate grievance, which she believed would be transmitted to Defendant Gillespie, requesting that she be housed in a female ward because she is a transgender woman. Ms. Griffith further informed Defendant Gillespie that she had previously been housed in the Denver Women's Prison Facility and that all of her documentation outside of El Paso County's system correctly notes that she is a transgender woman. In response to Ms. Griffith's grievance, Defendant O'Neal stated that El Paso County had reviewed Ms. Griffith's request and denied her the accommodation of housing her in a facility that corresponded with her gender identity. It was clear that this decision was made in accordance with the policies and procedures put into place by Defendants Elder and Gillespie.

58.    On December 9, 2020, Ms. Griffith filed another inmate grievance requesting that she be placed in a female unit. That grievance also complained that deputies at the El Paso County Jail were continuously referring to her with male pronouns. Ms. Griffith again pointed out that all of her documentation outside of the El Paso County system reflects her correct gender identity and that she had previously been housed in female units in other correctional facilities. On January 4, 2021, El Paso County responded to Ms. Griffith's grievance by stating that she would continue to be housed in a male unit based on El Paso County's policies and procedures.

59.     On January 15, 2021, Ms. Griffith again requested appropriate housing in a female ward. Ms. Griffith grieved numerous staff regarding the issue and alerted El Paso County officials and its medical provider that she had previously been housed in two DOC facilities in female wards.

60.     On January 22, 2021, Ms. Griffith told jail mental health provider Raymond Carrington that she was suffering from extreme anxiety because she feared repercussion for grieving her treatment in custody: namely, that she was continuing to be housed in a male ward and treated as male, even though she is a transgender woman. Ms. Griffith also reported to the jail medical official that she felt as though people in the El Paso County Jail do not accept her for the person that she is and that she was being ostracized in the male ward for being a transgender woman. Ms. Griffith expressed to the jail medical official the difficulty on her mental health of being housed in a male ward and expressed her desire to be housed with women because she is a transgender woman.

61.     On January 22, 2021, Ms. Griffith also wrote a grievance that again asked that she be moved to a women's unit. Ms. Griffith wrote that every day she was suffering mentally and physically due to the trauma of being housed in an all-male unit with male guards. On January 23, 2021, Ms. Griffith wrote another grievance asking to be moved to a women's unit within the El Paso County Jail, stating that she was suffering on a daily basis due to El Paso County's failure to move her to a unit that corresponds with her gender identity. On January 23, 2021, Ms. Griffith wrote another kite complaining about the lack of accommodations for her Gender Dysphoria, including housing in a men's ward.

62.     On February 26, 2021, Ms. Griffith asked the mental health provider why she continued to be housed in a men's ward and that this was creating anxiety and depression for her. Ms. Griffith also stated that she continued to be called "sir" by deputies.

63.     On March 9, 2021, Ms. Griffith wrote a grievance requesting that Christine Mohr provide information about Ms. Griffith's diagnosed Gender Dysphoria to El Paso County Jail officials so that

they would move Ms. Griffith to housing that corresponded with her gender identity which, upon information and belief, was communicated to El Paso County.

64.     On March 10, 2021, Ms. Griffith again wrote a kite complaining about being housed in a male ward and being considered a male within the Jail.

65.     On March 11, 2021, Ms. Griffith told Christine Mohr that she wanted to be housed with women and that she had previously been housed with women in CDOC, which Ms. Mohr confirmed by reviewing Ms. Griffith's previous incarceration records. Ms. Mohr acknowledged consulting with an El Paso County official about Ms. Griffith's housing and property requests.

66.     On March 19, 20201, Christine Mohr noted that Ms. Griffith expressed frustration to her because Ms. Griffith continued to want to be housed in a female unit but had not been moved. Ms. Mohr acknowledged talking to the multiple El Paso County officials about Ms. Griffith's concerns. On March 27, 2021, Ms. Mohr told Ms. Griffith that El Paso County had determined that she would not be moved to a female ward.

67.     El Paso County continues to house transgender women in facilities that do not correspond with their gender identity. El Paso County is routinely discriminating against these women, including Ms. Griffith, based on their sex, transgender status and/or disability and exposing them to harassment, rape, sexual assault, and other anti-transgender violence, or a heightened risk thereof by refusing to provide them safe housing.

68.     The decision to house Ms. Griffith in housing that does not conform with her gender identity has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm.

A.40

69.     As a result of El Paso County's, and its officials', decision to house Ms. Griffith in a housing unit that did not conform with her gender identity, Ms. Griffith engaged in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration.

70.     El Paso County's decision to house Ms. Griffith in housing that does not conform with her gender identity was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

**Defendant Andrew Mustapick Sexually Harassed And Assaulted Ms. Griffith During An Unconstitutional Cross-Gender Visual Body-Cavity Search Pursuant To El Paso County's Official Policy That Male Guards Conduct Unsupervised Visual Body-Cavity Searches Of Transgender Women Inmates**

71.     It is El Paso County's official policy that transgender women (including those with Gender Dysphoria) are searched, including strip searched, by male staff and not by female staff. No female guards are required to be present during searches (including visual body-cavity searches). Transgender women in El Paso County custody have routinely been subjected to searches, including visual body-cavity searches, by male staff.

72.     Ms. Griffith was subjected to a visual body-cavity search by a male deputy upon arrival at the El Paso County Jail in accordance with this policy.

73.     When Ms. Griffith was booked into the jail, she was taken to a separate room. Before Ms. Griffith began stripping off her clothes, both a male and female deputy arrived.

74.     When Ms. Griffith saw that both a male and female deputy would be conducting her visual body-cavity search, Ms. Griffith protested and asked that the male deputy leave. Ms. Griffith told both deputies that, because she is transgender, she did not want a male deputy to be present. Defendant Dawn Elliss told Ms. Griffith that, per her sergeant's orders, the male deputy would stay throughout the entire visual body-cavity search process. Defendant Elliss told Ms. Griffith that because she was "still a male" in El Paso County's "system" that a male deputy would be conducting her search pursuant to El

**A.41**

Paso County policy and procedure. Ms. Griffith again asked that Defendant Elliss conduct the search because Ms. Griffith is a transgender woman. Defendant Elliss refused and cited El Paso County's policy.

75.     Defendant Elliss then told Ms. Griffith to take off her shirt, which she did. Ms. Griffith was compliant throughout the whole visual body-cavity search process.

76.     After examining Ms. Griffith's breasts, with Defendant Andrew Mustapick present, Defendant Elliss gave Ms. Griffith a sports bra and then left the room. As Defendant Elliss left the room, she intentionally and discriminatorily mis-gendered Ms. Griffith, telling Defendant Mustapick, "*he* is all yours now to strip out." Defendant Elliss left Ms. Griffith alone with Defendant Mustapick and did nothing to ensure that Defendant Mustapick did not sexually harass Ms. Griffith and subject her to an unconstitutional visual body-cavity search.

77.     After Defendant Elliss left the room, Defendant Mustapick ordered Ms. Griffith to take off her socks, pants, and panties, and then place her hands on the wall. Defendant Mustapick then told Ms. Griffith to step back, bend over, and "spread [her] sexy cheeks." Ms. Griffith protested Defendant Mustapick's use of this derogatory and harassing language, but complied with his directive.

78.     Defendant Mustapick then told Ms. Griffith that he was "going to go balls deep in that ass" while grabbing his own penis in view of Ms. Griffith. Defendant Mustapick was extremely aggressive while searching Ms. Griffith's genitals and making these comments.

79.     After Defendant Mustapick was finished sexually harassing Ms. Griffith, he warned her that she had better not tell anyone about what he did and said to her. He threatened Ms. Griffith that if she did tell someone, he would make sure that she was brutalized by the guards at the El Paso County Jail.

A.42

80.    There was no legitimate penological purpose for allowing a male guard to conduct a visual body-cavity search of Ms. Griffith. And, there was certainly no penological purpose for any of the actions taken by Defendants Mustapick and Elliss.

81.    El Paso County officials' threatening, intimidating and harassing visual body-cavity search of Ms. Griffith, which per policy was conducted by an unaccompanied male deputy, was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

82.    El Paso County officials' threatening, intimidating and harassing visual body-cavity search of Ms. Griffith, which per policy was conducted by an unaccompanied male deputy, has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm.

83.    As a result of El Paso County's, and its officials', decision to sexually harass Ms. Griffith, Ms. Griffith engaged in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration.

### Ms. Griffith Was Sexually Assaulted By A Male Inmate After Putting Defendants On Notice That She Was Not Safe In An All-Male Unit

84.    After pleading to be moved to a female unit for over a year, and Defendants' refusal to heed her repeated pleas, Ms. Griffith was sexually assaulted by another male inmate on November 18, 2021.

85.    The inmate approached Ms. Griffith while she was laying in her bunk in the all-male unit she continued to be assigned to by El Paso County officials, and groped her right breast. Then, the inmate jeered Ms. Griffith, "you know you want this dick."

86.    After being sexually assaulted, Ms. Griffith was so distressed that she asked to see a mental health provider.

87.     This was not the first time that Ms. Griffith was assaulted by the other inmate. A witness to the assault told El Paso County officials that he witnessed at least three to four other similar assaults of Ms. Griffith.

88.     Even after being assaulted by another male inmate, Defendants did not move Ms. Griffith to a unit within the El Paso County Jail that corresponded with her Gender Identity.

**Defendants Subjected Ms. Griffith To Continuous Cross-Gender Pat-Down Searches By Male Deputies, Which Caused Her Significant Distress, And Were Done Pursuant To El Paso County's Policies, Customs, And Practices**

89.     Throughout her incarceration at the El Paso County Jail, Defendants subjected Ms. Griffith to continuous cross-gender pat-down searches by male deputies pursuant to official El Paso County policy. Ms. Griffith complained about these cross-gender searches, and the harmful effects they were having on her physical and mental health, but El Paso County did nothing to cease subjecting Ms. Griffith to cross-gender searches.

90.     On January 20, 2021, Ms. Griffith wrote a grievance where she stated that her anxiety was "through the roof" every time she is patted down by male deputies. Additionally, Ms. Griffith complained about male deputies continually touching her breast and groin when patting her down. Ms. Griffith pointed out that female inmates are not patted down by male deputies, and that she was being singled out as a transgender woman for different treatment. On January 21, 2021, Ms. Griffith complained to a jail medical provider about the effect of male pat downs on her mental health, and the disparate treatment given to her by male pat downs.

91.     On January 22, 2021, Ms. Griffith was especially upset that male officers continued to pat search her and, particularly, she was upset about a pat-down search performed by a male deputy that had just occurred when she returned from the law library. Ms. Griffith wrote a grievance because Defendants continued to subject her to cross-gender pat down searches, including the one in which the

deputy intentionally touched her breast. Ms. Griffith wrote that every day she was suffering mentally and physically due to the trauma of being patted down by male guards. Ms. Griffith wrote this grievance, which was viewed by El Paso County officials. Later that day, Ms. Griffith told a jail medical provider that she felt violated when male officers touch her.

92.     On January 23, 2021, Ms. Griffith wrote a kite complaining about the lack of accommodations for her Gender Dysphoria, including being constantly patted down by male deputies.

93.     On February 3, 2021, Ms. Griffith wrote yet another grievance because she was being subjected to non-routine cross-gender pat down searches on a daily basis, and that these pat-down searches were causing her physical and emotional pain.

94.     El Paso County officials' continuous searches of Ms. Griffith, which per policy, custom, and practice were conducted by unaccompanied male deputies, were discriminatory and harassing actions and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

95.     Defendants' decision to subject Ms. Griffith to continuous searches by unaccompanied male deputies has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm.

96.     As a result of El Paso County's, and its officials', decision to subject Ms. Griffith to continuous cross-gender pat-down searches, Ms. Griffith engaged in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration.

**El Paso County Customarily Mis-Genders Ms. Griffith and other Transgender Individuals In Its Custody**

97.     WPATH guidelines dictate that, as part of treatment for Ms. Griffith's diagnosed Gender Dysphoria, she should have been treated as the woman that she is. That includes providing Ms. Griffith gender-affirming clothing, addressing her by her proper pronouns and name, and housing her in a unit

that corresponds with her gender identity. El Paso County, and its officials, failed to provide Ms. Griffith with care in accordance with these widely recognized standards.

98.     El Paso County refuses to recognize transgender women in its custody as the women that they are. Instead, El Paso County officials routinely refer to these women, including Ms. Griffith, using the male names they were assigned at birth. Documentation maintained by El Paso County, whether in case management, mental health or medical files, routinely refer to these women as "men" or using male pronouns, despite El Paso County's own documentation showing that these individuals belong to the community of transgender women.

99.     Throughout her incarceration at the El Paso County Jail, sergeants and deputies mis-gendered Ms. Griffith and used language that does not conform with her gender identity.

100.     On September 16, 2020, Ms. Griffith complained to Deputy Daniel Holder about other inmates in her unit not wearing shirts because the male inmate's failure to wear their shirts made her uncomfortable as a transgender woman. In response, Deputy Holder walked over to the other inmates and loudly yelled at them, "the blind faggot said you need to put your shirts on" in reference to Ms. Griffith. Beyond mis-gendering Ms. Griffith (and highlighting her vision disability), this statement was designed to create an antagonistic relationship between her and other inmates, placing her at an even greater risk of assault. Based on our information, Deputy Holder was not disciplined for this gross abuse of his authority.

101.     On November 10, 2020, Ms. Griffith wrote in a grievance that an El Paso County deputy had consistently mis-gendered her. When Ms. Griffith attempted to correct the deputy, the deputy confronted Ms. Griffith. El Paso County did not discipline the deputy for these actions. On December 9, 2020, Ms. Griffith wrote in a grievance that El Paso County deputies continuously mis-gendered her, which was causing her significant emotional distress.

A.46

102.     On February 3, 2021, Ms. Griffith wrote in a grievance that she was being subjected to verbal harassment by male deputies in the El Paso County Jail on a daily basis, and that this harassment was causing her pain. On February 26, 2021, Ms. Griffith stated to a jail medical provider that she continued to be called "sir" by deputies and that this caused her anxiety.

103.     On June 23, 2021, Ms. Griffith wrote a grievance because she was, again, mis-gendered by an El Paso County Jail official, and felt as though El Paso County Jail officials were purposefully mis-gendering her to discriminate against her.

104.     On July 1, 2021, Ms. Griffith told Raymond Carrington that when she identifies herself as female, the jail (including the guards) do not respect her wishes or use the appropriate pronouns. Ms. Griffith also told Defendant Carrington that she would remove her penis herself once she could figure out how to do it, and would do it as soon as possible.  Ms. Griffith told Mr. Carrington that the WPATH standards of care should be followed. Mr. Carrington informed El Paso County officials about Ms. Griffith's statements about self-harming, and El Paso County officials took no action to rectify the consistent mis-gendering that Ms. Griffith endured and did not take any action to ensure that Ms. Griffith was moved to an appropriate housing unit so as to prevent her from engaging in self-harming activity.

105.     Mis-gendering is a form of sexual harassment.

106.     This constant mis-gendering of Ms. Griffith has been caused by El Paso County's and Defendant Elder's policy of housing Ms. Griffith in a male unit, along with the customs and practices at the El Paso County Jail that condone discriminatory and harassing treatment of transgender prisoners.

107.      El Paso County officials' actions in constantly mis-gendering Ms. Griffith was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

A.47

108.     The constant mis-gendering of Ms. Griffith has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress, become depressed, and have increased ideation of self-harm.

109.     As a result of El Paso County's, and its officials', decision to constantly mis-gender and sexually harass Ms. Griffith, Ms. Griffith engaged in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration.

**El Paso County Customarily Denies Ms. Griffith And Other Transgender Inmates The Ability To Dress In Accordance With Their Gender Identity**

110.     On September 7, 2020, Ms. Griffith wrote a grievance requesting the ability to dress in accordance with her gender identity. Specifically, Ms. Griffith requested that she be provided with a sports bra and women's underwear. Previously, Ms. Griffith had orally requested to be provided with a sports bra and women's underwear. Ms. Griffith had been denied a sports bra since being incarcerated two months earlier. Defendants denied Ms. Griffith a reasonable accommodation for her Gender Dysphoria and forced to leave her breasts without a bra, to be ogled by male inmates and deputies for over a month. This caused Ms. Griffith significant emotional distress and physical discomfort.

111.     In response to her formal grievance, Ms. Griffith was provided with a sports bra. Lieutenant Eric Carnell came to Ms. Griffith's cell with a sports bra. Lieutenant Carnell told Ms. Griffith that she would only receive one sports bra, and not panties, because she did not need to "hold female products down there." When Ms. Griffith protested, and again asked for an accommodation for her Gender Dysphoria in the form of being provided the ability to purchase panties, Lieutenant Carnell again denied her request. Ms. Griffith did not receive the sports bra until the middle of October.

112.     On October 14, 2020, Ms. Griffith wrote another grievance requesting that she be given a medical permission slip to receive women's underwear. In response, Ms. Griffith was told that she would not receive a medical permission slip to purchase women's underwear.

A.48

113.    Eventually, El Paso County officials responded to Ms. Griffith's grievance from September 7, 2020. On October 24, 2020, Lieutenant Carnell, wrote an official response to Ms. Griffith's grievance and told her that she had been provided a sports bra, but that she would not be issued, or allowed to purchase, panties.

114.    Ms. Griffith subsequently elevated her concerns to Commander Cy Gillespie and requested that she be provided panties. In response, Defendant Gillespie told Ms. Griffith that she would never get panties in the El Paso County Jail.

115.    On January 15, 2021, Ms. Griffith requested panties rather than boxers because she is a transgender woman. This request was again denied.

116.    On March 11, 2021, Ms. Griffith told a jail medical provider that she would like to be provided women's underwear. On March 19, 2021, the provider noted that Ms. Griffith expressed frustration on wanting panties. The provider acknowledged talking to the El Paso County officials about Ms. Griffith's concerns. In a follow-up conversation on March 27, 2021, the medical provider told Ms. Griffith that El Paso County officials told her that Ms. Griffith would not be issued panties because Ms. Griffith does not require the use of feminine napkins. Illustrating the obviously pretextual nature of this articulated justification for their discriminatory conduct, Defendants do not require post-menopausal and other non-menstruating women in their custody to wear men's underwear.

117.    Defendants have also denied Ms. Griffith the ability to purchase lipstick because she is a transgender woman. Cisgender women are allowed to purchase lipstick at the commissary. Defendant Gillespie specifically told Ms. Griffith that she cannot purchase lipstick per El Paso County Jail policy.

118.    Defendants' denial of gender appropriate undergarments and lipstick to Ms. Griffith was caused by El Paso County's and Defendant Elder's policy of housing Ms. Griffith in a male unit, along

A.49

with the customs and practices at the El Paso County Jail that condone discriminatory treatment of transgender prisoners.

119.    El Paso County officials' actions in denying Ms. Griffith access to female undergarments and lipstick was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

120.    El Paso County officials' customary decisions to deny Ms. Griffith the right to dress in accordance with her gender identity was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

121.    El Paso County officials' customary decisions to deny Ms. Griffith the right to dress in accordance with her gender identity has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm.

122.    As a result of El Paso County's, and its officials', decision to not allow Ms. Griffith to dress in accordance with her gender identity, Ms. Griffith engaged in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**42 U.S.C. § 1983 – Fourteenth Amendment – Equal Protection Discrimination**
*Against All Defendants*

123.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

124.    Defendants were acting under color of state law at all times relevant to this action.

125.    Under the Equal Protection Clause of the Fourteenth Amendment, discrimination against transgender people is a form of sex discrimination that is presumptively unconstitutional and subject to heightened scrutiny.

126.    Discrimination based on sex includes, but is not limited to, discrimination based on gender, gender nonconformity, transgender status, gender expression, and gender transition.

127.    Discrimination based on transgender status is also presumptively unconstitutional under the Equal Protection Clause and subject to heightened scrutiny.

128.    Transgender people have suffered a long history of extreme discrimination across the country, in prisons and outside of prisons, and continue to suffer such discrimination to this day.

129.    Many, if not most, transgender and cisgender women who are incarcerated, including Plaintiff, have discernable feminine characteristics and secondary female-typical sex characteristics that place them at heightened risk of sexual victimization by male deputies without adequate safeguards and subject to the humiliation of searches by male deputies if placed in men's prisons.

130.    Both transgender and cisgender women face substantially similar risks of sexual victimization by male deputies without adequate safeguards and the humiliation through searches by male deputies.

131.    Defendants' actions and inactions in placing and keeping Plaintiff in the men's unit at the El Paso County Jail and requiring that male deputies search transgender women without any supervision discriminated against her on the basis of sex.

132.    Defendants' actions and inactions in placing and keeping Plaintiff in the men's unit at the El Paso County Jail also discriminated against her based on sex stereotyping, namely, treating her as though she were a cisgender man based on the conclusion that her gender identity and expression should align with her sex assigned at birth, and housing her in accordance with that erroneous conclusion. This sex stereotyping is based solely on Plaintiff's sex assigned at birth, disregarding her gender identity even though she is a woman and has had medical treatment to bring her body into alignment with her female gender identity.

133.    Defendants, acting under color of state law, intentionally discriminated against Plaintiff by placing her, and continuing to house her, exclusively in men's wards without adequate safeguards, even though she faces similar risks as all other women in such custody.

134.    Defendants' actions as described herein were taken without an important or legitimate governmental interest or rational reason, and they had no penological basis to deny Plaintiff a safe and appropriate placement in a female facility, based on her sex, gender identity, characteristics, risk factors, and her history of sexual victimization in male facilities.

135.    Plaintiff was placed in the male unit and searched by male deputies at the El Paso County Jail in accordance with the customs, policies, and practices of the El Paso County Jail, which are set by Defendant El Paso County and Elder. Defendants El Paso County and Elder discriminated against Plaintiff and other transgender women by adopting and applying these customs policies, and practices that deny transgender women safe and appropriate housing placements based on their sex, transgender identity, and impermissible sex stereotypes without a compelling, important, or legitimate governmental interest.

136.    Defendants' actions and inactions were taken in reckless and callous indifference to the federally protected rights of Plaintiff.

137.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

138.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

A.52

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourteenth Amendment**
**Conditions Of Confinement**
*Against All Defendants*

139.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

140.    Defendants were acting under color of state law at all times relevant to this action.

141.    Plaintiff was a pre-trial detainee.

142.    As a pre-trial detainee, Plainitff was protected from unconstitutional conditions of confinement by the Fourteenth Amendment.

143.    Under the Fourteenth Amendment, Plaintifff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose under *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

144.    Each Defendant knew or should have known of these clearly established rights at the time of Plainitff's incarceration.

145.    Defendants El Paso County's policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and safety.

146.    Defendants knew that Plainitff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

A.53

147.     Despite this knowledge and Plainitff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

148.     Defendants' failure to recognize Plaintiff as the transgender woman that she is subjected her to unconstitutional conditions of confinement.

149.     Defendants' sexual harrassment of Plaintiff subjected her to unconstitutional conditions of confinement.

150.     Defendants subjected Plaintiff to unconstitutional conditions of confinement by subjecting her to continuous mis-gendering and cross-gender pat-down searches

151.     Defendants failed to protect Plaintiff from sexual assault at the hands of other inmates.

152.     All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

153.     Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

154.     Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

155.     As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourth Amendment**
**Unreasonable Search**
*Against Defendants El Paso County, Elder, Mustapick, and Elliss*

A.54

156.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

157.    Defendants were acting under color of state law at all times relevant to this action.

158.    Plaintiff has a legitimate expectation of privacy in her body being free from unreasonable governmental search.

159.    Defendants' actions were objectively unreasonable in light of the circumstances confronting them. Namely, there was no basis for Defendant Mustapick to perform a visual body-cavity search of Plaintiff. Defendant Mustapick's sexually charged and offensive comments while strip searching Plaintiff and sexual harassment of her were objectively unreasonable.

160.    Defendants El Paso County and Elder's custom, policy, and practice of housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies to search transgender women without any supervision caused the violation of Plaintiff's rights and it was obvious and foreseeable to Defendants El Paso County and Elder that their custom, policy, and practice of allowing male deputies to search transgender women without any supervision would cause a violation of Plaintiff's constitutional rights in the manner in which that violation occurred.

161.    Defendant Elliss failed to intervene to prevent the unconstitutional search by Defendant Mustapick.

162.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

163.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental

**A.55**

and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

164.   As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourteenth Amendment – Substantive Due Process**
**Invasion of Bodily Privacy and Integrity**
*Against Defendants El Paso County, Elder, Gillespie, Mustapick, and Elliss*

165.   Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

166.   Defendants were acting under color of state law at all times relevant to this action.

167.   By sexually harassing and assaulting Plaintiff without her consent, Defendants violated Plaintiff's right to be secure in her bodily integrity, a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.

168.   Defendants El Paso County and Elder recklessly, with conscious disregard to the serious and obvious risk to the safety of transgender inmates like Plaintiff, violated Plaintiff's right to be secure in her bodily integrity by allowing male deputies to search transgender women without any supervision.

169.   Defendant Elliss failed to intervene to prevent the unconstitutional invasion of privacy by Defendant Mustapick.

170.   Defendants El Paso County and Elder knew that their acts or omissions were substantially certain to cause El Paso County officials to violate constitutional rights of transgender inmates like Plaintiff to be free from secure in their bodily integrity, and Defendants El Paso County and Elder consciously or deliberately chose to disregard this risk of harm in failing to provide and/or in

deliberately choosing not to change the policy that housed transgender women inmates with men and required, per official policy, male deputies to search transgender women without any supervision.

171.    Defendants El Paso County and Elder exhibited deliberate indifference to the substantial and obvious risk of harm to Plaintiff, and other transgender inmates, by housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies to search transgender women without any supervision.

172.    Defendants El Paso County and Elder proximately caused an unconstitutional invasion of Plaintiff's bodily integrity by housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies to search transgender women without any supervision.

173.    Defendants El Paso County and Elder set in motion a series of events that they knew would cause an inmate in Plaintiff's situation to be deprived of her constitutional right to be secure in her bodily integrity; but for the above acts or omissions of Defendants, Plaintiff would not have been subjected to a violation of her constitutional rights; and such a deprivation was a natural and foreseeable consequence of these acts and omissions.

174.    Defendant Gillespie's decision to house Plaintiff in an all-male unit subjected her to have her privacy constantly invaded.

175.    The policies implemented by Defendants El Paso County and Elder, as well as Defendants' actions and inactions, violated Plaintiff's substantive due process right to bodily integrity under the Fourteenth Amendment to the United States Constitution.

176.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

177.    When viewed in total, this conduct is outrageous and shocks the conscience.

**A.57**

178.     Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

179.     As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**FIFTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 25**
**Unreasonable Search**
*Against Defendants Elder, Gillespie, Mustapick, and Elliss*

180.     Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

181.     Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Third Amended Complaint.

182.     Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

183.     Plaintiff had a protected Colo. Const. Art. II, Section 25 interest against being unreasonably searched.

184.     Plaintiff has a legitimate expectation of privacy in her body being free from unreasonable governmental search.

185.     Defendants' actions were objectively unreasonable in light of the circumstances confronting them. Namely, there was no basis for Defendant Mustapick to visually body-cavity search

Plaintiff. Defendant Mustapick's offensive sexually charged comments while strip searching Plaintiff and sexual harassment of her were objectively unreasonable.

186.    Defendant Elliss failed to intervene to prevent the unconstitutional search by Defendant Mustapick.

187.    Defendant Elder's custom, policy, and practice of housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies to search transgender women without any supervision caused the violation of Plaintiff's rights and it would have been obvious and foreseeable to Defendant Elder that his custom, policy, and practice of allowing male deputies to search transgender women without any supervision would cause a violation of Plaintiff's constitutional rights in the manner in which that violation occurred.

188.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

189.    Defendants acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

190.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**SIXTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 29 – Equality of the Sexes**
**Discrimination**
*Against Defendants Elder, Gillespie, O'Neal, Mustapick, Elliss, Noe, and Ford*

191.    Plaintiffs hereby incorporate all other paragraphs of this Third Amended Complaint as if fully set forth herein.

**A.59**

192.    The Individual Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Third Amended Complaint.

193.    The Individual Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

194.    Plaintiffs had a protected Colo. Const. Art. II, Section 25 right against discrimination based on sex. The Colorado Constitution, Article II, Section 29 provides: "Equality of the sexes. Equality of rights under the law shall not be denied or abridged by the state of Colorado or any of its political subdivisions on account of sex."

195.    Under Colo. Const. Art. II, Section 25, discrimination against transgender people is a form of sex discrimination that is presumptively unconstitutional and subject to strict scrutiny.

196.    Discrimination based on sex includes, but is not limited to, discrimination based on gender, gender nonconformity, transgender status, gender expression, and gender transition.

197.    Discrimination based on transgender status is also presumptively unconstitutional under the Equal Protection Clause and subject to strict, or at least heightened, scrutiny.

198.    Transgender people have suffered a long history of extreme discrimination across the country, in prisons and outside of prisons, and continue to suffer such discrimination to this day.

199.    Many, if not most, transgender and cisgender women who are incarcerated, including Plaintiff, have discernable feminine characteristics and secondary female-typical sex characteristics that place them at heightened risk of sexual victimization by male deputies without adequate safeguards and subject to the humiliation of searches by male deputies if placed in men's prisons.

200.     Both transgender and cisgender women face substantially similar risks of sexual victimization by male deputies without adequate safeguards and the humiliation through searches by male deputies.

201.     Defendants' actions and inactions in placing and keeping Plaintiff in the men's unit at the El Paso County Jail and requiring that male deputies search transgender women without any supervision discriminated against her on the basis of sex.

202.     Defendants' actions and inactions in placing and keeping Plaintiff in the men's unit at the El Paso County Jail also discriminated against her based on sex stereotyping, namely, treating her as though she were a cisgender man based on the conclusions that her gender identity and expression should align with her sex assigned at birth, and housing her in accordance with that conclusion. This sex stereotyping is based solely on Plaintiff's sex assigned at birth, disregarding her gender identity even though she is a woman and has had medical treatment to bring her body into alignment with her female gender identity.

203.     Defendants, acting under color of state law, intentionally discriminated against Plaintiff by placing her, and continuing to house her, exclusively in men's units without adequate safeguards, even though she faces similar risks as all other women in custody.

204.     Defendant's actions as described herein were taken without an important or legitimate governmental interest or rational reason, and they had no penological basis to deny Plaintiff a safe and appropriate placement in a female facility, based on her sex, gender identity, characteristics, risk factors, and her history of sexual victimization in male facilities.

205.     Plaintiff was placed in the male unit, and searched by male deputies, at the El Paso County Jail in accordance with the customs, policies, and practices of the El Paso County Jail, which are set by Defendant Elder. Defendant Elder discriminated against Plaintiff and other transgender women by

adopting and applying these customs policies, and practices that deny transgender women safe and appropriate housing placements based on their sex, transgender identity, and impermissible sex stereotypes without a compelling, important, or legitimate governmental interest.

206.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

207.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

208.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**SEVENTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 25 – Substantive Due Process**
**Invasion of Bodily Privacy and Integrity**
*Against Defendants Elder, Gillespie, Mustapick, and Elliss*

209.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

210.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Third Amended Complaint.

211.    Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

212.    Plaintiff had a protected Colo. Const. Art. II, Section 25 interest against deprivation of life, liberty, or property without due process of law.

**A.62**

213.    By sexually harassing and assaulting Plaintiff without her consent, Defendants violated Plaintiff's right to be secure in her bodily integrity, a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.

214.    Defendant Elder recklessly, with conscious disregard to the serious and obvious risk to the safety of transgender inmates like Plaintiff, violated Plaintiff's right to be secure in her bodily integrity by allowing male deputies to search transgender women without any supervision.

215.    Defendant Elliss failed to intervene to prevent the unconstitutional invasion of bodily integrity by Defendant Mustapick.

216.    Defendant Elder knew that his acts or omissions were substantially certain to cause El Paso County officials to violate constitutional rights of transgender inmates like Plaintiff to be free from secure in their bodily integrity, and Defendant Elder consciously or deliberately chose to disregard this risk of harm in failing to provide and/or in deliberately choosing not to change the policy that housed transgender women inmates with men and required, per official policy, male deputies to search transgender women without any supervision.

217.    Defendant Elder exhibited deliberate indifference to the substantial and obvious risk of harm to Plaintiff, and other transgender inmates, by housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies to search transgender women without any supervision.

218.    Defendant Elder proximately caused an unconstitutional invasion of Plaintiff's bodily integrity by housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies to search transgender women without any supervision.

219.    Defendant Elder set in motion a series of events that he knew would cause an inmate in Plaintiff's situation to be deprived of her constitutional right to be secure in her bodily integrity; but for the above acts or omissions of Defendants, Plaintiff would not have been subjected to a violation of her constitutional rights; and such a deprivation was a natural and foreseeable consequence of these acts and omissions.

220.    Defendant Gillespie's decision to house Plaintiff in an all-male unit subjected her to have her privacy constantly invaded.

221.    The policies implemented by Defendant Elder, as well as Defendants' actions and inactions, violated Plaintiff's substantive due process right to bodily integrity.

222.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

223.    When viewed in total, this conduct is outrageous and shocks the conscience.

224.    Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

225.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**EIGHTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 20 – Cruel And Unusual Punishment**
**Conditions Of Confinement**
*Against Defendants Elder, Gillespie, O'Neal, Mustapick, Elliss, Noe, and Ford*

226.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

**A.64**

227.    Defendants were acting under color of state law at all times relevant to this action.

228.    Plaintiff was a pre-trial detainee.

229.    As a pre-trial detainee, Plainitff was protected from unconstitutional conditions of confinement.

230.    Plaintifff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose.

231.    Each Defendant knew or should have known of these clearly established rights at the time of Plainitff's incarceration.

232.    Defendant Elder' policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and safety.

233.    Defendants knew that Plaintiff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

234.    Despite this knowledge, and Plainitff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

235.    Defendants subjected Plaintiff to unconstitutional conditions of confinement by sexually harrassing her and failing to protect her from sexual assault.

236.    Defendants subjected Plaintiff to unconstitutional conditions of confinement by subjecting her to continuous mis-gendering and cross-gender pat-down searches.

237.     All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

238.     Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

239.     Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

240.     As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**NINTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 25 – Due Process**
**Conditions Of Confinement**
*Against Defendants Elder, Gillespie, O'Neal, Mustapick, Elliss, Noe, and Ford*

241.     Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

242.     Defendants were acting under color of state law at all times relevant to this action.

243.     Plaintiff was a pre-trial detainee.

244.     As a pre-trial detainee, Plainitff was protected from unconstitutional conditions of confinement.

245.     Plaintifff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose.

40

246.     Each Defendant knew or should have known of these clearly established rights at the time of Plaintiff's incarceration.

247.     Defendants Elder's policy of assigning all detained transgender individuals to housing units based on their anatomy as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and safety.

248.     Defendants knew that Plainitff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

249.     Despite this knowledge, and Plainitff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

250.     Defendants subjected Plaintiff to unconstitutional conditions of confinement by sexually harrassing her and failing to protect her from sexual assault.

251.     Defendants subjected Plaintiff to unconstitutional conditions of confinement by subjecting her to continuous mis-gendering and cross-gender pat-down searches

252.     All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

253.     Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

254.     Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain

A.67

and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

255.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein

**TENTH CLAIM FOR RELIEF**
**U.S.C. § 12101, *et. seq.* – Americans with Disabilities Act**
**Disability Discrimination**
*Against Defendant El Paso County*

256.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

257.    Title II of the ADA provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

258.    In particular, in providing any aid, benefit, or service, under Title II of the ADA, a public entity "may not ... [d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit or service," "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity . . . as that provided to others," or "[o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others[.]" 28 C.F.R. § 35.130(b)(1)(i), (ii), (iii), and (vii).

259.    A public entity "shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. §

35.130(b)(7).

260.    A public entity may not (1) "impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary," 28 C.F.R.§ 35.130(b)(8); or (2) "utilize criteria or methods of administration … that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability … or the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities." 28 C.F.R. § 35.130(b)(3)(i)(ii).

261.    A public entity is also prohibited from aiding and perpetuating discrimination against persons with disabilities in the programs, services, or activities it provides. 28 C.F.R. § 35.130(b)(1)(v).

262.    The ADA's "integration mandate" requires public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d); 28 C.F.R. § 35.152(b)(2) (requiring that prisoners with disabilities be housed in the most integrated setting appropriate to their needs under the program access obligation); see also Guidance on ADA Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services, originally published July 26, 1991, 28 C.F.R. pt. 35, App. B ("Integration is fundamental to the purposes of the Americans with Disabilities Act. Provision of segregated accommodations and services relegates persons with disabilities to second-class status.").

263.    Defendant El Paso County violated the rights of Plaintiff secured by Title II of the ADA and its implementing regulations.

264.    El Paso County is currently, and at all times relevant to this action has been a "public entity" as defined by the ADA, 42 U.S.C. § 12131(1)(B), and provides a "program, service, or activity" within the meaning of the ADA, including educational and rehabilitative programs and services.

265.     Plaintiff suffers from Gender Dysphoria, Developmental Trauma Disorder.

266.     Gender Dysphoria is not excluded under the ADA, 42 U.S.C. § 12211(b)(1), because it is a gender identity disorder that results from a physical impairment. In 2015, the U.S. Department of Justice concluded that, "[i]n light of the evolving scientific evidence suggesting that Gender Dysphoria may have a physical basis, along with the remedial nature of the ADA and the relevant statutory and regulatory provisions directing that the terms 'disability' and 'physical impairment' be read broadly, the [ADA's exclusion of gender identity disorders not resulting from a physical impairment] should be construed narrowly such that Gender Dysphoria falls outside its scope."[2]

267.     Alternatively, Gender Dysphoria is not excluded under the ADA because it is not a "gender identity disorder" under 42 U.S.C. § 12211(b)(1)—it is a dysphoria.

268.     Because of the date of the actions complained of, the expanded definition of "disability" under the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") applies.

269.     Under the ADAAA and DOJ regulations, the definition of disability is to be construed broadly in favor of expansive coverage. 42 U.S.C. § 12102(4)(A); 28 C.F.R. §§ 35.108(a)(2)(i), 35.108(d)(1)(i). Accordingly, the terms "substantially" and "major" in the definition of disability are to be interpreted consistently with the ADAAA's findings and purposes, which reinstate "the broad scope of protection intended to be afforded by the ADA" and convey Congress's intent "that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." 42 U.S.C. §§ 12102(4)(B), ADA Amendments Act of 2008, Pub. L. No. 110-325, §§ (2)(a)(5), (b)(5).

270.     In determining disability, the ADAAA requires that impairments must be assessed "without regard to the ameliorative effects of mitigating measures," such as medication, therapy, and

---

[2] Second Statement of Interest of the United States at 5, *Blatt v. Cabela's Retail, Inc.*, No. 5:14-cv-4822-JFL, 2015 WL 9872493 (E.D. Pa. Nov. 16, 2015).

reasonable accommodations. 42 U.S.C. § 12102(4)(E)(i).

271.    In determining disability, the ADAAA requires that impairments that are "episodic or in remission" must be assessed in their active state. 42 U.S.C. § 12102(4)(D).

272.    In determining disability, a "major life activity" includes "the operation of a major bodily function," including neurological, brain, and reproductive functions. 42 U.S.C. § 12102(2)(B).

273.    Under the ADAAA and DOJ regulations, "an individual meets the requirement of 'being regarded as having' an impairment that substantially limits one or more major life activities if the individual establishes that he or she has been subjected to an action prohibited under th[e ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. §§ 12102(3)(A); see also 28 C.F.R. § 35.108(f)(1); ADA Amendments Act of 2008, Pub. L. No. 110-325, § (2)(b)(3) (reinstating "broad view of the third prong" of the definition of disability). Accordingly, no showing of substantial limitation of a major life activity is required under the regarded-as prong. 28 C.F.R. § 35.108(a)(2)(iii) ("[T]he 'regarded as' prong of the definition of "disability" . . . does not require a showing of an impairment that substantially limits a major life activity or a record of such an impairment.").

274.    Plainitff's Gender Dysphoria substantially limits one or more major life activities, including her ability to care for herself, eating, sleeping, learning, concentrating, thinking, communicating, interacting with others, and reproducing, and also substantially limits the operation of major bodily functions, including neurological function, brain function, endocrine function, and reproductive function.

275.    Plaintiff has a record of Gender Dysphoria, which substantially limits one or more major life activities, including her ability to care for herself, eating, sleeping, learning, concentrating, thinking, communicating, interacting with others, and reproducing, and also substantially limits the operation of major bodily functions, including neurological function, brain function, endocrine function, and

**A.71**

reproductive function.

276.     Plaintiff "meets the requirement of 'being regarded as having' an impairment that substantially limits one or more major life activities" because El Paso County excluded her from participation in and denied her the benefits of El Paso County's programs, services, and activities based on Gender Dysphoria, and also subjected her to discrimination based on Gender Dysphoria.

277.     Plaintiff is currently and at all times relevant to this action has been a "qualified individual with a disability" within the meaning of Title II of the ADA.

278.     As an inmate in the custody of El Paso County, Plaintiff was qualified to participate in El Paso County's programs, services, and activities. El Paso County provides these services to other inmates committed to its custody.

279.     El Paso County failed to provide reasonable modification to its policies, procedures, and practices regarding Ms. Griffith, as it was legally required to do. 28 C.F.R. § 35.130(b)(7). El Paso County did not attempt accommodations such as approrpiate housing, dress, and access to female grooming products, and gender-appropriate searches. By virtue of the fact that El Paso County did not put these or other reasonable modifications in place, Plaintiff was discriminated against because of her disabilities.

280.     By confining Plainitff in the men's unit at the El Paso County Jail, a facility where staff members referred to Plaintiff using a male pronoun and her male given name and staff refused to permit Plainitff to wear her own gender's clothes and underwear, El Paso County subjected Plainitff to discrimination based on Gender Dysphoria.

281.     Defendants' actions and inactions were taken in reckless and callous indifference to the protected rights of Plaintiff.

282.     Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish,

A.72

and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

283.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

### ELEVENTH CLAIM FOR RELIEF
### U.S.C. § 701, *et. seq.* – Rehabilitation Act of 1973
### Disability Discrimination
*Against Defendant El Paso County*

284.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

285.    Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

286.    El Paso County accepts federal financial assistance and has done so at all times relevant to this Third Amended Complaint. El Paso County is therefore a "program . . . receiving Federal financial assistance" for purposes of the Rehabilitation Act. 214. The definition of disability is identical under the ADA and Rehabilitation Act, and the expanded definition of "disability" under the ADAAA applies with equal force to the definition of "disability" under Section 504 of the Rehabilitation Act. See ADA Amendments Act of 2008, Pub. L. No. 110-325, §7 (conforming Section 504 of Rehabilitation Act's definition of "disability," 29 U.S.C. § 705, to definition of disability "in section 3 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12102))."

287.    Plaintiff suffers from Gender Dysphoria, which substantially limits one or more major life activities and also the operation of major bodily functions. Plaintiff "meets the requirement of 'being

A.73

regarded as having' an impairment that substantially limits one or more major life activities" because El Paso County excluded her from participation in and denied her the benefits of El Paso County's programs, services, and activities based on Gender Dysphoria, and also subjected her to discrimination based on these impairments.

288.    Gender Dysphoria is not excluded under the Rehabilitation Act because it is a gender identity disorder that results from a physical impairment or, alternatively, it is not a gender identity disorder—it is a dysphoria.

289.    Plaintiff is currently and at all times relevant to this action has been a "qualified individual with a disability" for purposes of the Rehabilitation Act.

290.    By confining Plaintiff in the men's unit at the El Paso County Jail, a facility where staff members referred to Plaintiff using a male pronoun and her male given name and staff refused to permit Plainitff to wear her own gender's clothes and underwear, El Paso County subjected Plainitff to discrimination based on Gender Dysphoria in violation of Section 504 of the Rehabilitation Act.

291.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's protected rights.

292.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

293.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**TWELFTH CLAIM FOR RELIEF**
**C.R.S. § 24-34-601, *et. seq.* – Colorado Anti-Discrimination Act**

A.74

**Sex and Transgender Discrimination**
*Against All Defendants*

294.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

295.    The Colorado Anti-Discrimination Act, C.R.S. § 24-34-601(2)(a) provides that it is a violation of Colorado law for any place of public accommodation to discriminate against any person based on sex or sexual orientation, including transgender status.

296.    The El Paso County Jail is a place of "public accommodation" as defined under C.R.S. § 24-34-601(1). Defendants operate the facilities that housed Plaintiff and are responsible for providing the full and equal enjoyment of its services, programs and benefits to the public regardless of the status of Plaintiff as a transgender woman.

297.    Defendants refused to provide these services, programs and benefits of these public accommodations to Plaintiff because of her transgender status.

298.    Defendants provide these public accommodations to cisgender men and cisgender women but deny these services to transgender women because of their sex and transgender status.

299.    Defendants discriminated against Plaintiff on the basis of her sex and transgender status, in violation of Colorado law, and in so doing, caused Plaintiff serious physical and psychological harm, and subjected her to an unreasonable risk of harm.

**THIRTEENTH CLAIM FOR RELIEF**
**C.R.S. § 24-34-601, *et. seq.* – Colorado Anti-Discrimination Act**
**Disability Discrimination**
*Against All Defendants*

300.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

301.    The Colorado Anti-Discrimination Act, C.R.S. § 24-34-601(2)(a) provides that it is a

A.75

violation of Colorado law for any place of public accommodation to discriminate against any person based the disability of that person.

302.   The El Paso County Jail is a place of "public accommodation" as defined under C.R.S. § 24-34-601(1). Defendants operate the facilities that housed Plaintiff and are responsible for providing the full and equal enjoyment of its services, programs and benefits to the public regardless of the status of Plaintiff as a transgender woman.

303.   Defendants refused to provide these services, programs and benefits of these public accommodations to Plaintiff because of her transgender status.

304.   Defendants provide these public accommodations to cisgender men and cisgender women but deny these services to transgender women because of their sex and transgender status.

305.   Defendants discriminated against Plaintiff on the basis of her sex and transgender status, in violation of Colorado law, and in so doing, caused Plaintiff serious physical and psychological harm, and subjected her to an unreasonable risk of harm.

### FOURTEENTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Fourteenth Amendment
### Failure To Protect
*Against Defendants El Paso County, Elder, Gillespie, O'Neal, Noe, and Ford*

306.   Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

307.   Defendants were acting under color of state law at all times relevant to this action.

308.   Plaintiff was a pre-trial detainee.

309.   As a pre-trial detainee, Plainitff was protected from unconstitutional conditions of confinement by the Fourteenth Amendment.

310.    Under the Fourteenth Amendment, Plaintifff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose under *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

311.    Each Defendant knew or should have known of these clearly established rights at the time of Plainitff's incarceration.

312.    Defendants El Paso County's, Elder's, and Gillespie's policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and safety.

313.    Defendants knew that Plainitff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

314.    Despite this knowledge and Plainitff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

315.    Defendants failed to protect Plaintiff from sexual assault at the hands of other inmates.

316.    All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

317.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

318.    Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish,

and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

319.   As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

### FIFTEENTH CLAIM FOR RELIEF
### C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 20 – Cruel And Unusual Punishment
### Failure To Protect
*Against Defendants El Paso County, Elder, Gillespie, O'Neal, Noe, and Ford*

320.   Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

321.   Defendants were acting under color of state law at all times relevant to this action.

322.   Plaintiff was a pre-trial detainee.

323.   As a pre-trial detainee, Plainitff was protected from unconstitutional conditions of confinement by the Fourteenth Amendment.

324.   Under the Fourteenth Amendment, Plaintifff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose under *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

325.   Each Defendant knew or should have known of these clearly established rights at the time of Plainitff's incarceration.

326.   Defendants El Paso County's, Elder's, and Gillespie's policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and safety.

327.     Defendants knew that Plaintiff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

328.     Despite this knowledge and Plainitff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

329.     Defendants failed to protect Plaintiff from sexual assault at the hands of other inmates.

330.     All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

331.     Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

332.     Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

333.     As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**SIXTEENTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 25 – Due Process**
**Failure To Protect**
*Against Defendants El Paso County, Elder, Gillespie, O'Neal, Noe, and Ford*

334.     Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

**A.79**

335. Defendants were acting under color of state law at all times relevant to this action.

336. Plaintiff was a pre-trial detainee.

337. As a pre-trial detainee, Plaintiff was protected from unconstitutional conditions of confinement by the Fourteenth Amendment.

338. Under the Fourteenth Amendment, Plaintiff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose under *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

339. Each Defendant knew or should have known of these clearly established rights at the time of Plaintiff's incarceration.

340. Defendants El Paso County's, Elder's, and Gillespie's policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and safety.

341. Defendants knew that Plaintiff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

342. Despite this knowledge and Plaintiff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

343. Defendants failed to protect Plaintiff from sexual assault at the hands of other inmates.

344. All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

345.     Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

346.     Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

347.     As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein

### <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant:

(a)     Appropriate declaratory and other injunctive and/or equitable relief;

(b)     Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c)     All economic losses on all claims allowed by law;

(d)     Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e)     Attorney fees and the costs associated with this action on all claims allowed by law;

(f)     Pre- and post-judgment interest at the lawful rate; and

(g)     Any further relief that this court deems just and proper, and any other relief as

A.81

allowed by law and equity.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Dated this 2nd day of June 2022.

KILLMER, LANE & NEWMAN, LLP

*s/ Andy McNulty*

_____

Andy McNulty
Mari Newman
1543 Champa St., Ste. 400
Denver, CO 80202
Phone: (303) 571-1000
Fax: (303) 571-1001
amcnulty@kln-law.com
mnewman@kln-law.com

ATTORNEYS FOR PLAINTIFF

**A.82**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00387-CMA-NRN

DARLENE GRIFFITH,

Plaintiff,

v.

EL PASO COUNTY, COLORADO,
BILL ELDER, in his individual and official capacities,
CY GILLESPIE, in his individual capacity,
ELIZABETH O'NEAL, in her individual capacity,
ANDREW MUSTAPICK, in his individual capacity,
DAWNE ELLISS, in her individual capacity,
TIFFANY NOE, in her individual capacity,
BRANDE FORD, in her individual capacity,

Defendants.

---

**REPORT AND RECOMMENDATION ON**
**DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**
**PURSUANT TO Fed. R. Civ. P. 12(b)(1) and (6)**
**(Dkt. #132)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This prisoner civil rights case is before the Court pursuant to an Order (Dkt.

#135) issued by Judge Christine M. Arguello referring Defendants El Paso County, Bill

Elder, Cy Gillespie, Andrew Mustapick, Dawne Elliss, Tiffany Noe, and Brande Ford's

(collectively "Defendants")[1] Motion to Dismiss Third Amended Complaint Pursuant to

---

[1] Defendant Elder is the El Paso County Sheriff and is sued in his individual and official capacities. (Dkt. #124 ¶ 14.) The other Defendants are sued in their individual capacities and are employed in various positions by the El Paso County Sheriff's Office: Defendant Gillespie is a Commander (*id.* ¶ 15), Defendant O'Neal is an "official" who

Fed. R. Civ. P. 12(b)(1) and (6) (the "Motion to Dismiss"). (Dkt. #132.) Plaintiff Darlene Griffith ("Plaintiff" or "Ms. Griffith") filed a response (Dkt. #147) and Defendants filed a reply. (Dkt. #155.) The Court heard argument on the subject motion on October 11, 2022. (*See* Dkt. #161.) The Court has carefully considered the motion. The Court has taken judicial notice of the Court's file and has considered the applicable Federal Rules of Civil Procedure and case law. The Court now being fully informed makes the following recommendation.

**PROCEDURAL HISTORY**

Plaintiff is a transgender woman who was housed in an all-male unit in the El Paso County Criminal Justice Center ("CJC"). Initially proceeding pro se, Plaintiff filed a Prisoner Complaint relating to her conditions of confinement on February 8, 2021. (Dkt. #1.) Complying with an order (Dkt. #5) issued the next day by Magistrate Judge Gordon P. Gallagher, Plaintiff filed an Amended Prisoner Complaint on March 4, 2021. (Dkt. #9.) On April 19, 2021, Judge Lewis T. Babcock entered an Order to Dismiss in Part and to Draw Case and the case was randomly reassigned to the undersigned. (Dkt. #16.) The matter was eventually assigned to Judge Arguello as the presiding judge. (*See* Dkt. ##25 & 58.)

On June 8, 2021, the Court entered an Appointment Order (Dkt. #28) and Andrew McNulty of the law firm of Killmer Lane & Newman LLP subsequently entered a notice of appearance on Plaintiff's behalf on September 15, 2021. (Dkt. #41.)

---

apparently processes inmate grievances (*id.* ¶¶ 16, 57), and Defendants Mustapick, Elliss, Noe, and Ford are deputies (*id.* ¶¶ 17–20).

**A.84**

The Court granted Plaintiff leave to file a Second Amended Complaint on October 4, 2021. (*See* Dkt. ##46 & 47.) Plaintiff then moved for a preliminary injunction that would require, among other things, El Paso County to house her in a women's unit. (Dkt. #48.) The day before the December 9, 2021 hearing on the injunction, the parties reached an agreement that resulted in Plaintiff being transferred to a female ward and having access to the same items from the commissary as all female inmates. (*See* Dkt. #91.) The preliminary injunction motion was denied as moot and the hearing vacated. (Dkt. #92.)

On April 8, 2022, the Court conducted a Settlement Conference. (*See* Dkt. #110.) While no settlement was reached at that time, Plaintiff eventually settled her claims with jail's private medical services provider and its employees. (*See* Dkt. ##117, 119, 121, & 122.)

On June 7, 2022, with Defendants' consent, Plaintiff filed a Third Amended Complaint and Jury Demand ("TAC"), the operative pleading. (Dkt. #124.) The subject Motion to Dismiss followed and further discovery was stayed. (*See* Dkt. #162.)

**BACKGROUND[2]**

This lawsuit arises from El Paso County's policy of housing transgender women in male units within the CJC. Plaintiff alleges that, as a result of this policy, she suffered repeated sexual harassment, sexual assault, and discrimination at the hands of jail staff and other inmates.

---

[2] Allegations in this section are taken from the TAC, and all non-conclusory allegations are presumed true for the purposes of the Motion to Dismiss. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

A.85

Plaintiff has been diagnosed with gender dysphoria and has been openly living as a transgender woman for over twenty years. (Dkt. #124 ¶ 25.) Gender dysphoria is "the significant distress that may accompany the incongruence between a transgender person's gender identity and assigned sex." (*Id.* ¶ 22.) The symptoms of gender dysphoria can be alleviated by allowing the transgender person "to live, and be treated by others, consistently with the person's gender identity." (*Id.*) To that end, and as part of her medically supervised treatment, Plaintiff has "changed her name and altered her physical appearance to conform to her female gender identity, including dressing in feminine attire and taking feminizing hormones, which caused her to develop female secondary sex characteristics such as breasts, soft skin, a lack of facial hair, and other characteristics typically associated with women." (*Id.* ¶ 25.)

Plaintiff entered the CJC on July 20, 2020. (*Id.* ¶ 47.) On intake, Defendant Noe, in accordance with official El Paso County policy, classified and housed Plaintiff in an all-male unit, despite (1) Plaintiff's explicit request that she be placed in a women's facility "because she feared being sexually abused and assaulted in male facilities by both guards and inmates, along with fearing the humiliation of being constantly searched by male guards in a male unit and the general degradation of being considered a man when she is a transgender woman," and (2) her medical records noting that she has been diagnosed with gender dysphoria.[3] (*Id.* ¶¶ 48–54.) Plaintiff alleges that making facility assignments to people in custody solely on the basis of the individual's genitalia violates accepted World Professional Association for Transgender

---

[3] Plaintiff is also legally blind. (Dkt. #124 ¶ 50.)

A.86

Health ("WPATH") and Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601 *et seq.,* ("PREA") standards. (*Id.* ¶¶ 40–46.)

Also pursuant to the county's policies, when booked into the CJC, Plaintiff was subjected to a visual body-cavity search by a male deputy. (*Id.* ¶ 72.) Plaintiff told Defendant Elliss, a female deputy, that she did not want Defendant Mustapick, a male deputy, present during the search. (*Id.* ¶ 74.) Nevertheless, after examining Plaintiff's breasts, Defendant Elliss left the room (intentionally misgendering Plaintiff on her way out by referring to Plaintiff using male pronouns) and left Plaintiff alone with Defendant Mustapick. (*Id.* ¶ 76.) Defendant Mustapick made lewd and derogatory comments to Plaintiff (telling Plaintiff to "spread [her] sexy cheeks" and that he was "going to go balls deep in that ass" while grabbing his groin) and "aggressively" searched Plaintiff's genitals. (*Id.* ¶ 78.) He then threatened Plaintiff and warned her not to tell anyone what happened. (*Id.* ¶ 79.)

On July 29, 2020, Plaintiff had an ADA interview with Defendant Ford, to whom she repeated her request to be placed into housing that corresponded with her gender identity. (*Id.* ¶ 55.) That request was again denied, and Defendant Ford wrote in Plaintiff's records that that there were no disability concerns related to Ms. Griffith's housing, despite gender dysphoria being a disability under the ADA. (*Id.*)

Over the next year, Plaintiff submitted numerous grievances and kites about her housing assignment and the ongoing harassment. (*See id.* ¶¶ 56–66.) On at least one occasion, it was Defendant O'Neal who conveyed to Plaintiff that one of the grievances was denied, although it is unclear if Defendant O'Neal was responsible for denying the grievance. (*Id.* ¶ 57.) In any event, Plaintiff remained housed in the all-male unit.

A.87

Throughout her incarceration, Plaintiff was subjected to cross-gender searches by male deputies, who would intentionally touch her breasts. (*Id.* ¶¶ 89–91.) These searches caused Plaintiff anxiety and exacerbated her gender dysphoria, and she complained about them several times. (*Id.* ¶¶ 91–95.)

Plaintiff was also continuously misgendered. For example, on September 16, 2020, Plaintiff informed Deputy Daniel Holder that, as a transgender woman, she was uncomfortable that other inmates in her unit were not wearing shirts. Deputy Holder walked over to the other inmates and loudly yelled at them, "the blind faggot said you need to put your shirts on." (*Id.* ¶ 100.) She was also frequently referred to as "Sir." (*Id.* ¶ 102.) She consistently complained through the grievance process about being misgendered. (*Id.* ¶¶ 101–04.)

Defendants denied Plaintiff the ability to dress in accordance with her gender identity as well. She had to go without a bra for over a month and, over her repeated protests, Plaintiff was denied any women's underwear. (*Id.* ¶¶ 110–16.) Plaintiff was not allowed to purchase lipstick at the commissary. (*Id.* ¶¶ 117–19.)

On July 1, 2021, Plaintiff told Raymond Carrington, a mental health provider, that, due to the constant mistreatment, she would remove her penis herself as soon she could figure out how to do. (*Id.* ¶ 31.) Although these concerns were communicated to El Paso County officials, Plaintiff attempted self-castratration by wrapping a rubber band around her genitals. (*Id.* ¶ 32.) Plaintiff has a long history of self-harm, including self-castration behavior, which worsens when she is not permitted to live in accordance with her gender identity and when she is subjected to sexual harassment and misgendering. (*Id.* ¶ 38.)

A.88

Finally, on November 18, 2021, Plaintiff was groped and taunted by another inmate while laying on her bunk. (*Id.* ¶ 85.) This was not the first time she had been sexually assaulted by this individual; "[a] witness to the assault told El Paso County officials that he witnessed at least three to four other similar assaults[.]" (*Id.* ¶ 87.) Plaintiff was not moved to a female unit after the incident.

Plaintiff asserts sixteen claims for relief under state and federal law:

- The **First Claim for Relief** is a Fourteenth Amendment equal protection claim for discrimination against all Defendants.

- The **Second Claim for Relief** is a Fourteenth Amendment conditions of confinement claim against all Defendants.

- The **Third Claim for Relief** is a Fourth Amendment unreasonable search claim against Defendants El Paso County, Elder, Mustapick, and Elliss.

- The **Fourth Claim for Relief** is a Fourteenth Amendment substantive due process claim for invasion of bodily privacy and integrity against Defendants El Paso County, Elder, Gillespie, Mustapick, and Elliss.

- The **Fifth Claim for Relief** is brought under Colo. Rev. Stat. § 13-21-131 and Colo. Const. Art. II, Section 25 for unreasonable search against Defendants Elder, Gillespie, Mustapick, and Elliss.

- The **Sixth Claim for Relief** is brought under Colo. Rev. Stat. § 13-21-131 and Colo. Const. Art. II, Section 29 for sex discrimination against Defendants Elder, Gillespie, O'Neal, Mustapick, Elliss, Noe, and Ford.

- The **Seventh Claim for Relief** is a substantive due process claim brought under Colo. Rev. Stat. § 13-21-131 and Colo. Const. Art. II, Section 25 for invasion of

**A.89**

bodily privacy and integrity against Defendants Elder, Gillespie, Mustapick, and Elliss.

- The **Eighth Claim for Relief** is a cruel and unusual punishment conditions of confinement claim brought under Colo. Rev. Stat. § 13-21-131 and Colo. Const. Art. II, Section 20 against Defendants Elder, Gillespie, O'Neal, Mustapick, Elliss, Noe, and Ford.

- The **Ninth Claim for Relief** is a due process conditions of confinement claim brought under Colo. Rev. Stat. § 13-21-131 and Colo. Const. Art. II, Section 25 against Defendants Elder, Gillespie, O'Neal, Mustapick, Elliss, Noe, and Ford.

- The **Tenth Claim for Relief** is a disability discrimination claim brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, against Defendant El Paso County.

- The **Eleventh Claim for Relief** is a disability discrimination claim brought pursuant to the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 701, *et. seq.*, against Defendant El Paso County.

- The **Twelfth Claim for Relief** is a sex and transgender discrimination claim brought pursuant to the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-601, *et. seq.*, against all Defendants.

- The **Thirteenth Claim for Relief** is a disability discrimination claim brought pursuant to the CADA against all Defendants.

- The **Fourteenth Claim for Relief** is a Fourteenth Amendment failure to protect claim against Defendants El Paso County, Elder, Gillespie, O'Neal, Noe, and Ford.

- The **Fifteenth Claim for Relief** is a cruel and unusual punishment/failure to protect claim brought pursuant to Colo. Rev. Stat. § 13-21-131 and Colo. Const. Art. II, Section 20 against Defendants El Paso County, Elder, Gillespie, O'Neal, Noe, and Ford.

- The **Sixteenth Claim for Relief** is a due process failure to protect claim brought pursuant to Colo. Rev. Stat. § 13-21-131 and Colo. Const. Art. II, Section 25 against Defendants El Paso County, Elder, Gillespie, O'Neal, Noe, and Ford.

*Id.* ¶¶ 123–347.

Defendants now move to dismiss all claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## LEGAL STANDARDS

### I. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994). Statutes conferring subject matter jurisdiction on federal courts are to be strictly construed. *F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "[T]he party invoking federal jurisdiction," generally the plaintiff, "bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). Rule 12(b)(1) allows Defendants to raise the defense of the Court's "lack of subject-matter jurisdiction" by motion. Fed. R. Civ. P. 12(b)(1).

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations

**A.91**

as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). A facial attack "questions the sufficiency of the complaint," and when "reviewing a facial attack . . . a district court must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). When reviewing a factual attack, courts cannot "presume the truthfulness of the complaint's factual allegations," and may consider documents outside the complaint without converting the motion to dismiss into a motion for summary judgment. *Ratheal v. United States*, No. 20-4099, 2021 WL 3619902, at *3 (10th Cir. Aug. 16, 2021) (unpublished).

## II. Rule 12(b)(6)

Rule 12(b)(6) "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing Bell *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [her] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In making a plausibility assessment, the Court first discards those averments in the TAC that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678–79. The Court takes the remaining, well-pled factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at 678 (brackets in original; internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that [a] defendant has acted unlawfully." *Id.* (citation omitted). To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik*, 671 F.3d at 1191. And "the mere metaphysical possibility that some plaintiff could prove some set of facts

in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

### III. Qualified Immunity

Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982). A government official is entitled to qualified immunity from liability for civil damages when the allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position. Id. at 818. A government official is entitled to qualified immunity "[i]n all but the most exceptional cases." *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments . . . [and] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The key to the qualified immunity inquiry is the objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998) (internal quotation marks omitted).

The threshold inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201

**A.94**

(2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions," a court must "ask whether the right was clearly established." *Id.*; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate).

Raising a qualified immunity defense in a motion to dismiss "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Sayed v. Virginia*, 744 F. App'x 542, 545–46 (10th Cir. 2018) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Id.* at 546 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). Accordingly, to survive a motion to dismiss, a plaintiff "need 'only allege enough factual matter' to state a claim that is 'plausible on its face and provide fair notice to a defendant.'" *Id.* (quoting *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013)).

## ANALYSIS

Defendants move to dismiss all sixteen claims asserted against them. The Court will address Defendants' arguments in turn.

**I. Plaintiff's Claim Against El Paso County**

Defendant contends that the Court cannot exercise jurisdiction over El Paso County because it has not been properly named under Colo. Rev. Stat. § 30-11-105, which states, "In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be, 'The board of county commissioners of the county of ................'" As this is the "exclusive method by which jurisdiction over a county can be obtained," *Calahan v. Jefferson Cnty.*, 429 P.2d 301, 302 (Colo. 1967), Plaintiff's naming of the El Paso County as a defendant is defective, and the County can be dismissed due to this jurisdictional defect alone.

Moreover, Defendants point out that El Paso County is not responsible for the CJC's operations, the El Paso Sheriff's Office is, and under Colorado law, the county sheriff is a separate and distinct position from the board of county commissioners. *See Terry v. Sullivan,* 58 P.3d 1098, 1102 (Colo. App. 2002) ("[T]he Board [of County Commissioners] does not exercise managerial control over either the sheriff or the detention center and its staff."); Colo. Rev. Stat. § 30-10-511 ("[T]he sheriff shall have charge and custody of the jails of the county, and of the prisoners in the jails, and shall supervise them himself or herself through a deputy or jailer.").

The Court agrees that El Paso County is not a proper party because Plaintiff only alleges misconduct on the party of employees of the El Paso County Sheriff's Office ("EPSO") working at the CJC. Without more, such misconduct cannot be attributed to El Paso County. While the Court will address Plaintiff's municipal liability claims as asserted against the El Paso Sheriff's Office, her claims against El Paso County should be dismissed.

**A.96**

## II. The § 1983 Claims Asserted Against Defendants Elder and Gillespie

Next, Defendants argue that Plaintiff fails to adequately allege that Defendants Elder and Gillespie personally participated in violating Plaintiff's constitutional rights.

42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 creates a "species of tort liability" that provides relief to persons deprived of rights secured to them by the Constitution. *Carey v. Piphus*, 435 U.S. 247, 253 (1978) (quotations omitted).

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)). "Personal participation in the specific constitutional violation complained of is essential" in a § 1983 action. *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011); *see also Foote*, 118 F.3d at 1423 ("Individual liability . . . must be based on personal involvement in the alleged constitutional violation."). To establish personal participation, a plaintiff must show that each individual defendant caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Defendants Elder and Gillespie are being sued in their roles of Sheriff and Commander, respectively. But the mere fact that a government official has supervisory or managerial authority does not create § 1983 liability. *Id.* (citing *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008)). Rather, there must be "an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation,

A.97

his exercise of control or direction, or his failure to supervise." *Id.* (quoting *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)); *accord Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) (citing *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988)). "When an official is sued on the basis of his supervisory status and policy-making authority, a plaintiff may establish the affirmative link by demonstrating that the defendant: '(1) promulgated, created, implemented or possessed responsibility for the continued operation of a policy, (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'" *Est. of Yoemans by & through Ishmael v. Campbell*, 501 F. Supp. 3d 1034, 1053 (D. Colo. 2020) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)).

With respect to Defendant Gillespie, Plaintiff makes several accusations that he was personally responsible for denying Plaintiff female clothing and grooming products. (*See* Dkt. #124 ¶¶ 114, 117.) Thus, Plaintiff has alleged that he personally participated in that alleged violation of Plaintiff's equal protection rights (although, as discussed below, Gillespie is protected by qualified immunity on this claim). However, Plaintiff's allegations regarding Gillespie's role in her housing assignments (*see id.* ¶ 220) and as a policymaker (*see id.* ¶¶ 42, 57, 312, 326, 340) are conclusory. Thus, Plaintiff's claims against Defendant Gillespie should be dismissed

The Court will address Plaintiff's claims against Defendant Elder as a final policymaker in its municipal liability section below.

### III. Plaintiff's Fourteenth Amendment Claims (One, Two, Four, and Fourteen)

Plaintiff asserts four claims under the Fourteenth Amendment for: (1) violating her equal protection rights; (2) subjecting her to unconstitutional conditions of confinement; (3) violating her substantive due process rights, and (4) failure to protect.

### a.    Equal Protection Claim (Claim One)

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV, § 1. The Fourteenth Amendment's equal protection guarantee "is essentially a directive that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). But the Equal Protection Clause "doesn't guarantee equal results for all, or suggest that the law may never draw distinctions between persons in meaningful dissimilar situations." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012). Rather, "[i]t seeks to ensure that any classifications the law makes are made 'without respect to persons,' that like cases are treated alike, [and] that those who 'appear similarly situated' are not treated differently without, at the very least, a rational reason for the difference.'" *Id.* at 684–85 (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008)). A plaintiff can assert an equal protection claim either under the "traditional" theory of a class-based claim or under a "class-of-one theory." *See id.* at 685–690 (discussing both theories).

To state an equal protection claim, a plaintiff must allege:

(1) that similarly-situated individuals were treated differently; and (2) either that the differential treatment was based on a suspect classification or fundamental right and not supported by a compelling government interest, or if the differential treatment was not based on a suspect classification or

**A.99**

fundamental right, the differential treatment was not justified by a rational connection to a legitimate state interest.

*Buggs v. Trujillo*, No. 13-cv-00300-CMA-MJW, 2014 WL 420005, at *7 (D. Colo. Feb. 4, 2014) (citations omitted).

The Tenth Circuit has explained,

If the challenged government action implicates a fundamental right, or classifies individuals using a suspect classification, such as race or national origin, a court will review that challenged action applying strict scrutiny. *See Johnson v. California,* 543 U.S. 499, 505, 125 S. Ct. 1141, 160 L. Ed. 2d 949 (2005) (addressing racial classification); *Save Palisade FruitLands v. Todd,* 279 F.3d 1204, 1210 (10th Cir. 2002) (addressing classifications that "target a suspect class or involve a fundamental right"). In such a case, "the government has the burden of proving that [its] classifications are narrowly tailored measures that further compelling governmental interests." *Johnson,* 543 U.S. at 505, 125 S. Ct. 1141 (quotation omitted).

If, instead, the challenged government action classifies people according to a quasi-suspect characteristic, such as gender or illegitimacy, then this court will apply intermediate scrutiny. *See Todd,* 279 F.3d at 1210. In those cases, the test would be whether the government can demonstrate that its classification serves "important governmental objectives" and is "substantially related to achievement of those objectives." *Concrete Works of Colo., Inc. v. City and County of Denver,* 321 F.3d 950, 959 (10th Cir. 2003).

Finally, where the challenged government action does not implicate either a fundamental right or a protected class, this court will apply a rational basis test. *See Todd,* 279 F.3d at 1210. In those cases, this court inquires whether the government's classification bears "a rational relation to some legitimate end." *Id.* at 1213 (quotation omitted).

*Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109–10 (10th Cir. 2008).

Plaintiff alleges that "discrimination against transgender people is a form of sex discrimination that is presumptively unconstitutional and subject to heightened scrutiny." (Dkt. #124 ¶ 125.) Defendants disagree, arguing that "[t]ransgender is not a suspect or quasi-suspect class; therefore, the Defendants' classifications are subject to only

A.100

rational basis analysis." (Dkt. #132 at 11.) Regretfully, based on binding Tenth Circuit precedent that this Court is obligated to follow, the Court must agree with Defendants.

Over twenty years ago, the Tenth Circuit issued its opinion in *Brown v. Zavaras*, 63 F.3d 967 (10th Cir. 1995). In that case, the court rejected a transgender[4] inmate's claim that by denying her estrogen treatment, the defendants violated her equal protection rights. The court relied on *Holloway v. Arthur Andersen & Co.*, 566 F.2d 659 (9th Cir. 1977), where the Ninth Circuit "held that transexuals are not a protected class . . . because transsexuals are not a discrete and insular minority, and because the plaintiff did not establish that 'transsexuality is an immutable characteristic determined solely by the accident of birth' like race, or national origin.'" *Brown*, 63 F.3d at 971 (quoting *Holloway*, 566 F.2d at 663). Despite recognizing that "[r]ecent research concluding that sexual identity may be biological suggests reevaluating *Holloway*," the court determined that the plaintiff's "allegations are too conclusory to allow proper analysis of this legal question." *Id.* Thus, the court decided to "follow *Holloway* and hold that [the plaintiff] is not a member of a protected class in this case." *Id.* Subsequent unpublished Tenth Circuit opinions have confirmed that, "[t]o date, this court has not held that a transsexual plaintiff is a member of a protected suspect class for purposes of Equal Protection claims." *Druley v. Patton*, 601 F. App'x 632, 635 (10th Cir. 2015); *see also Qz'etax v. Ortiz,* 170 F. App'x 551, 553 (10th Cir. 2006).

---

[4] The court in *Brown* used the older term "transexual" and, although the plaintiff identified as female, the court used he/him pronouns because the plaintiff "is biologically male and refers to himself with masculine pronouns throughout his pleadings." *Brown,* 63 F.3d at 968 n.1.

**A.101**

This Court has little trouble stating that the Tenth Circuit needs to revisit its holding in *Brown v. Zavaras*. First, the Ninth Circuit authority it followed has since been overruled. *See Schwenk v. Hartford*, 204 F.3d 1187, 1201 (9th Cir. 2000); *see also Norsworthy v. Beard,* 87 F. Supp. 3d 1104, 1119 (N.D. Cal. 2015) (recognizing that *Holloway* "is no longer good law" and, applying *Schwenk*, concluding that "discrimination based on transgender status independently qualifies as a suspect classification under the Equal Protection Clause because transgender persons meet the indicia of a 'suspect' or 'quasi-suspect classification' identified by the Supreme Court"); *Karnoski v. Trump*, 926 F.3d 1180, 1200 (9th Cir. 2019) (affirming the district court's reasoning as to why transgender people are a quasi-suspect class). Second, it appears that the Tenth Circuit is out-of-step with the "many district courts" that "have analyzed the relevant factors for determining suspect class status and held that transgender people are at least a quasi-suspect class." *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 610 (4th Cir. 2020) (citing cases). Indeed, in *Grimm*, the Fourth Circuit, pointing to *Brown*, stated "[o]nly one court of appeals decision holding otherwise remains good law." *Id.* The *Grimm* decision also noted that *Brown* "reluctantly followed a since-overruled Ninth Circuit opinion. *Id.* at 611. Thus, it is likely that heightened scrutiny *should* apply to transgender people.

But *Brown* does remain, if not *good* in the normative sense, at least *binding* law on district courts in this district. The Court acknowledges the undeniable truth of Plaintiff's statement that a "growing consensus of courts have held that transgender individuals constitute a suspect or quasi-suspect class." (*See* Dkt. #147 at 9 n.1 (citing cases).) As articulated by one district court, "one would be hard-pressed to identify a

**A.102**

class of people more discriminated against historically or otherwise more deserving of the application of heightened scrutiny when singled out for adverse treatment, than transgender people." *Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 953 (W.D. Wis. 2018); *see also Karnoski v. Trump*, No. C17-1297-MJP, 2018 WL 1784464, at *1 (W.D. Wash. Apr. 13, 2018) ("The Court also rules that, because transgender people have long been subjected to systemic oppression and forced to live in silence, they are a protected class.").

Indeed, if this Court were to apply the four-factor test used to determine whether a group constitutes a suspect or quasi-suspect class, in this Court's view, transgender people easily check all the boxes. The group has historically been subject to discrimination. The group has a defining characteristic that bears a relation to its ability to perform or contribute to society. The group may be defined as a discrete group by obvious, immutable, or distinguishing characteristics.[5] And the group is a minority that lacks political power. *See Grimm*, 972 F.3d at 611–13.

But, conspicuously, despite the "growing consensus" seen in district court cases around the country that apply heightened scrutiny to transgender people, none of the cases cited come from this circuit. Even if the Court were to agree with the straightforward holding in *Grimm* that it is "apparent that transgender persons constitute

---

[5] The *Grimm* decision relied on an amicus brief from medical experts to come to a very different conclusion as to the immutability of transgender characteristics from the Tenth Circuit in *Brown*: "As to the third factor, transgender people constitute a discrete group with immutable characteristics: Recall that gender identity is formulated for most people at a very early age, and, as our medical amici explain, being transgender is not a choice. Rather, it is as natural and immutable as being cisgender." *Grimm*, 972 F.3d at 612–13. By contrast, the *Brown* court was presented with a pro se plaintiff whose "conclusory" allegations were inadequate to allow the Tenth Circuit to make a "proper analysis" of the immutability question. *Brown*, 63 F.3d at 971

a quasi-suspect class," 972 F.3d at 611, it cannot ignore or overrule binding Tenth Circuit precedent that says otherwise. As Plaintiff herself says in opposing the motion to dismiss, "this case 'is part of a larger movement that is redefining and broadening the scope of civil and human rights so that they extend to a vulnerable group that has traditionally been unrecognized, unrepresented, and unprotected.'" (Dkt. #147 at 1 (quoting *G.G. v. Gloucester Cnty. Sch. Bd.*, 853 F.3d 729, 730 (4th Cir. 2017) (Davis, J., concurring)). But to the extent that Plaintiff, via this case, wants to "broaden the scope of civil and human rights" by changing Tenth Circuit law, it must be for the Tenth Circuit (or the Supreme Court) to take that step. This Court is bound to follow Tenth Circuit precedent unless it is overturned by the Tenth Circuit or a superseding contrary decision by the Supreme Court. *See Burlington N. & Santa Fe Ry. Co. v. Burton*, 270 F.3d 942, 947 (10th Cir. 2001).

Of course, if a transgender person does not qualify as a member of a suspect or quasi-suspect class, unequal treatment that does not involve a fundamental right or suspect classification must still bear a rational relation to legitimate penal interest. In this circumstance, a state action survives judicial review "if there is 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Davoll v. Webb*, 194 F.3d 1116, 1145 (10th Cir. 1999) (citing *Spragens v. Shalala*, 36 F.3d 947, 951 n.3 (10th Cir. 1994)). A court "will only strike the [action] down if the state's classification 'rests on grounds *wholly irrelevant* to the achievement of the State's objective.'" *City of Herriman v. Bell*, 590 F.3d 1176, 1194 (10th Cir. 2010) (emphasis in original).

As the Tenth Circuit explained in *Brown*, it is a "perplexing situation . . . when the rational basis standard meets the standard applied to a dismissal." 63 F.3d at 971 (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 459-60 (7th Cir. 1992)). In adopting the framework applied by the Seventh Circuit, the Tenth Circuit instructed that lower courts should "take as true all of the complaint's allegations and reasonable inferences that follow" and "apply the resulting 'facts' in light of the deferential rational basis standard." *Id.* (citing *Wroblewski*, 965 F.2d at 460). Thus, the Tenth Circuit opined, "[t]o survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Id.*

Here, Plaintiff alleges that that the El Paso County Sheriff's Office (via Defendant Elder) has a policy in place to "make facility assignments to people in custody solely on the basis of the individual's genitalia," despite knowing that this "places transgender people at risk for victimization." (Dkt. #124 ¶ 42.) She alleges that the discriminatory placement decisions "were taken without an important or legitimate governmental interest or rational reason, and they had no penological basis to deny Plaintiff a safe and appropriate placement in a female facility, based on her sex, gender identity, characteristics, risk factors, and her history of sexual victimization in male facilities." (*Id.* ¶ 134.) She also alleges that she and other transgender inmates were denied access to items like clothing and grooming products that were available to cisgender female inmates. (*Id.* ¶¶ 110–22.) For their part, Defendants claim only that the "classification of Plaintiff as male, housing Plaintiff in the male ward, and employing

**A.105**

reasonable search procedures were all actions rationally based in the need to provide for the safe and secure function of CJC." (Dkt. #132 at 13.)

If the Tenth Circuit were to recognize transgender people as a quasi-suspect or suspect class whose treatment was subject to intermediate or strict scrutiny, then the Court would not hesitate to conclude (at least at the motion to dismiss stage) that Plaintiff's placement as a transgender woman in an all-male unit was not substantially related to an important governmental interest. *See*, e.*g. Tay v. Dennison,* 457 F. Supp. 3d 657, 682 (S.D. Ill. 2020) (holding that a transgender prisoner's placement in a men's prison was not substantially related to an important government interest even though the prisoner had a history of violent behavior); *Hampton v. Baldwin*, No. 3:18-CV-550-NJR-RJD, 2018 WL 5830730, at *12 (S.D. Ill. Nov. 7, 2018) (finding that a transgender female inmate's equal protection claim based on her placement in a men's prison had a "greater than negligible chance of success on the merits"). But, this Court is compelled by the Tenth Circuit to apply the rational basis test.

The Court finds that Plaintiff has not adequately alleged that there is no rational reason for Defendants to house transgender women in all-male units and not provide them with feminine products. Plaintiff's claims to the contrary cannot overcome the presumption of rationality that attach to government decision involving a person who is not a member of a suspect class. *See Druley*, 601 F. App'x at 635 ("Ms. Druley did not allege any facts suggesting the ODOC defendants' decisions concerning her clothing or housing do not bear a rational relation to a legitimate state purpose."). Thus, the Court cannot find that there was no rational basis for assigning all prisoners with male

**A.106**

genitalia, including transgender women, to the same housing facility, and Plaintiff's equal protection claim should be dismissed.

>    **b.    Conditions of Confinement/Substantive Due Process Claims (Claims Two and Four)**

"Pre-trial detainees have a Fourteenth Amendment due process right to humane conditions of confinement that is co-extensive with the Eighth Amendment right of convicted prisoners." *Waring v. Storey*, No. 12-cv-01338-BNB, 2012 WL 3245951, at *2 (D. Colo. Aug. 7, 2012). To state a due process claim based on unconstitutional conditions of confinement, a plaintiff must allege facts plausibly establishing both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A plaintiff satisfies the objective component by alleging facts demonstrating that the "conditions [of confinement] were more than uncomfortable, and instead rose to the level of 'conditions posing a substantial risk of serious harm' to inmate health or safety." *DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001). And with respect to the subjective prong, a claimant makes a sufficient showing by alleging that the defendant "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 975.

Moreover, "a pretrial detainee can establish a due-process violation by 'providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.'" *Colbruno v. Kessler*, 928 F.3d 1155, 1163 (10th Cir. 2019) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 389 (2015)).

Defendants argue in their motion that Plaintiff's claim fails for a variety of reasons. Unhelpfully, Plaintiff ignores these arguments and proceeds to her substantive due process claim. The Court will therefore address the two claims together.

**A.107**

Defendants first contend, and the Court agrees, that Plaintiff does not allege personal participation as to Defendant O'Neal, who is only alleged to have informed Plaintiff that one of her grievances was denied. (Dkt. #124 ¶ 57.) Plaintiff does not allege that Defendant O'Neal was even the one to deny the grievance and, in any event, a denial of a grievance, by itself and without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

Defendants next argue that Plaintiff cannot maintain a claim against Defendant Noe (who made the initial housing assignment) or Ford (who later refused to "re-classify" Plaintiff) because she does not allege either subjective or objective elements of deliberate indifference. Plaintiff does not counter this argument, and the Court must agree with Defendants. Plaintiff does not plausibly allege that Defendants Noe or Ford were aware that Plaintiff would be at risk of substantial harm if placed in the all-male facility or that they disregarded that risk. Moreover, Plaintiff has not demonstrated that her right to be placed in a female unit was clearly established, given the binding Tenth Circuit precedent described above.

Defendants further maintain that Plaintiff's conditions of confinement claim should be dismissed as to Defendants Elliss and Mustapick. Again, Plaintiff chose not to respond to these arguments. As to Defendant Elliss, the Court agrees with Defendants that one instance of misgendering, although no light matter, is not sufficient to state a claim for unconstitutional conditions of confinement. As to Defendant Mustapick, however, Plaintiff does argue that he violated her *substantive due process rights* by

A.108

"subject[ing] her to unconstitutional conditions of confinement through the cross-gender visual body-cavity search he performed on her." (Dkt. #147 at 17.)

The Tenth Circuit has recognized that inmates retain a limited right to bodily privacy under the Fourteenth Amendment. *See Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982) ("Although the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether."); *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988) ("Shielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex is impelled by elementary self-respect and personal dignity."). An inmate's interest in bodily privacy may be restricted "only to the extent necessary to further the correction system's legitimate goals and policies." *Cumbey*, 684 F.2d at 714.

As an initial matter, the Court disagrees with Defendants that this claim is more properly brought under the Eighth Amendment's cruel and unusual punishment clause rather than the Fourteenth Amendment's substantive due process guarantee. In *Graham v. Connor*, the Supreme Court held that when government conduct is constrained by "an explicit textual source of constitutional protection . . . that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims" because "[a]ny protection that 'substantive due process' affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment." 490 U.S. 386, 395 n.10 (1989). But the Eighth Amendment applies to those prisoners already convicted of a crime. Plaintiff is (or was at the time of filing) a pretrial detainee, and therefore "finds h[er]self in the criminal justice system somewhere between the two stools of an initial seizure and post-

A.109

conviction punishment. *Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010). In these circumstances, the due process clause of the Fourteenth Amendment and its protection against arbitrary governmental action by federal or state authorities applies. *Id.*

Turning to the visual body-cavity search itself, Plaintiff alleges that she was made to strip naked and told to spread her "sexy" butt cheeks to "go balls deep" while Defendant Mustapick grabbed his own penis. (Dkt. #124 ¶¶ 71-83.) Though this is sickening behavior, Plaintiff does not meet her burden in showing that it is clearly established that cross-gender searches of transgender women, even ones accompanied by odious verbal harassment, violate a clearly established constitutional right, nor is the conduct so egregious and the right so obvious that it could be deemed clearly established even without materially similar cases. *C.f. Lowe v. Raemisch*, 864 F.3d 1205, 1210 (10th Cir. 2017) ("When the public official's conduct is egregious, even a general precedent would apply with obvious clarity. After all, some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing" (citations and quotations omitted)). Despite the alleged abhorrent statements that accompanied the search, Plaintiff has failed to persuade the Court that such a comment in connection with a cross-gender search rises to the point of violating an established constitutional right. Defendant Mustapick is entitled to qualified immunity on Plaintiff's substantive due process claim and, by extension, so is Defendant Elliss on any claim that she failed to intervene.

Finally, the Court agrees with Defendants that Plaintiff's argument that Defendants should be liable for the "near-constant" harassment she was subjected to

**A.110**

and the "repeated" cross-gender pat down search is too generalized and imprecise to adequately allege personal participation as to the specified individual Defendants.

### c.    Failure to Protect (Claim Fourteen)

A failure to protect claim is comprised of two elements. "First, an inmate must show that [s]he is incarcerated under conditions posing a substantial risk of serious harm." *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir.1996) (citation omitted). "Second, the inmate must establish that the prison official has a sufficiently culpable state of mind, i.e., that he or she is deliberately indifferent to the inmate's health or safety." *Id.* (internal quotation marks and citation omitted). "The prison official's state of mind is measured by a subjective, rather than an objective, standard." *Id.* (citation omitted). "In other words, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id. see also Benefield v. McDowell*, 241 F.3d 1267, 1270–71 (10th Cir. 2001) ("[I]n order to establish a cognizable Eighth Amendment claim for failure to protect, a plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm, the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component.") (internal quotation marks and citations omitted).

Plaintiff claims that Defendants were aware that Ms. Griffith is a transgender woman, knew she is blind, and knew, because of these two things, that placing her into an all-male unit would make her particularly vulnerable to sexual assault. The Court is not persuaded.

**A.111**

First, as Defendants' note, Plaintiff does not allege that any Defendants other than Noe and Ford were involved in Plaintiff's housing assignment. Therefore, this failure to protect claim could only be maintained against these two Defendants due to the personal participation requirement.

Second, their mere knowledge of Plaintiff's disabilities (gender dysphoria and blindness) alone is not enough for hold Defendants Noe and Ford liable for failing to prevent Plaintiff's sexual assault. Significantly, both Defendants made their decisions regarding Plaintiff's housing assignment in July 2020, but Plaintiff alleges she was sexually assaulted by a fellow inmate on November 18, 2021. This 16-month span raises evident questions of causation. It strongly suggests that Defendants Noe and Ford had no reason to suspect that Plaintiff was in substantial and immediate danger.

Accordingly, Plaintiff does not state a claim for failure to protect, and Defendants Ford, O'Neal, Noe, Gillespie, and Elder are entitled to qualified immunity.

### III. Fourth Amendment

Plaintiff asserts that the visual strip search conducted by Defendants Mustapick and Elliss violated her Fourth Amendment right to be free from unreasonable searches and seizures as well as her Fourteenth Amendment substantive due process rights. As both claims require the careful balancing of penological concerns with inmates' right to privacy, the Court's analysis of the two will necessarily overlap.

It has long been recognized that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). Thus, a prisoner's limited constitutional right to bodily privacy under the

A.112

Fourteenth Amendment, as addressed above, and to be free of unreasonable searches and seizures under the Fourth Amendment, must be weighed against the requirements of prison administration. *Turner v. Safley*, 482 U.S. 78, 84–85 (1987). The Court affords deference to the expertise of correctional officials, who "must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328, (2012) (citing *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). However, as previously, "[a]lthough the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether." *Cumbey*, 684 F.2d at 714.

"[A] strip search is an invasion of personal rights of the first magnitude." *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir.1993); "[T]he greater the intrusion, the greater must be the reason for conducting a search." *Levoy v. Mills*, 788 F.2d 1437, 1439 (10th Cir. 1986) (citing *Blackburn v. Snow*, 771 F.2d 556, 565 (1st Cir.1985)). Determining the reasonableness or "constitutionality of a strip search 'requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.'" *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002) (quoting *Bell*, 441 U.S. at 559). Although the "test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," in making this determination, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559. These factors aim to "[b]alanc[e] the significant and legitimate security interests of the institution against the privacy interests of the inmates." *Id.* at 560. "[A] regulation impinging on an inmate's constitutional rights must

be upheld if it is reasonably related to legitimate penological interests." *Florence*, 566 U.S. at 326 (internal quotation marks omitted).

Here, the scope of the search was invasive. *See Hyberg v. Enslow,* 801 F. App'x 647, 650 (10th Cir. 2020) (unpublished) *(*labelling strip searches "undeniably invasive"). However, "there are obvious security concerns inherent when an inmate will be placed in the general prison population." *Id.* (citing *Archuleta v. Wagner*, 523 F.3d 1278, 1284 (10th Cir. 2008)). Plaintiff was being processed for placement in the CJC's general population; "[t]here were therefore legitimate security interests served by the search[ ]." *Id.* According to the TAC, the search was performed in a "separate room," away from other inmates and CJC staff. *See Farmer*, 288 F.3d at 1260 (recognizing a strip search may be unreasonable if conducted in the open, "visible to a number of other inmates and staff," and without regard for the inmate's privacy interests); *see also id.* at 1261 ("[I]nfringements on prisoners' constitutional rights must not be arbitrary or irrational, nor an exaggerated response to security needs." (internal quotation marks omitted)). And In the Tenth Circuit, it is established that "the Constitution does not require 'complete privacy' for a strip search." *Smith v. Trapp*, No. 14-3220-JAR-JPO, 2018 WL 587230, *4 (D. Kan. Jan. 29, 2018) (quoting *Daughtery v. Harris*, 476 F.2d 292, 294 (10th Cir. 1973)).

As to the manner in which the search was conducted, a female deputy, Defendant Elliss, examined Plaintiff's bare breasts, and a male deputy, Defendant Mustapick, performed the search of Plaintiff's genitals. "Courts throughout the country have universally frowned upon cross-gender strip searches in the absence of an emergency or exigent circumstances." *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d

**A.114**

1135, 1143 (9th Cir. 2011); *see* also *Hayes v. Marriott*, 70 F.3d 1147 (10th Cir.1995) (recognizing that an inmate's privacy rights may be violated by a single cross-gender strip search); (*Harris v. Miller*, 818 F.3d 49, 59 (2d Cir. 2016) ("Indeed, best-practice standards in prison management typically discourage cross-gender strip searches."). Plaintiff also alleges that Defendant Mustapick made frightening and humiliating comments to her and performed the search "aggressively." A search conducted in an abusive manner can be considered unreasonable and violative of the Fourth Amendment. *See Bell*, 441 U.S. at 560. However, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). In *Hyberg*, the Tenth Circuit cited some examples type of conduct courts have found to be needlessly intrusive or abusive. *See* 801 F. App'x at 650–51 (citing *Hayes*, 70 F.3d at 1147 (reversing grant of summary judgment on Fourth Amendment claim where inmate alleged he was subjected to a video recorded "body cavity search [conducted] in the presence of over 100 people, including female secretaries and case managers from other buildings"); *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003) (holding inmate stated an Eighth Amendment claim by alleging that during search, guards made "ribald comments and sexually explicit gestures," "forced him to perform sexually provocative acts," and female guards "were neither mere passersby nor performing [a] legitimate penological function," but "were instead invited spectators")). The alleged conduct here, reprehensible as it is, does not rise to that level. On balance, then, despite the intrusiveness of the search and offensive manner it was performed, the Court finds that Plaintiff does not state a plausible violation of the Fourth Amendment.

Even if the Court determined that Plaintiff could plausibly state a Fourth Amendment claim, like her Fourteenth Amendment claim, it would necessarily fail based on the "clearly established" prong of qualified immunity. Plaintiff offers no Supreme Court or Tenth Circuit precedent clearly establishing that a visual strip search by a male and female deputy of a transgender inmate who identifies as female, has female breasts, and has male genitals violates the Fourth Amendment's prohibition of unreasonable searches and seizures. Accordingly, this claim should be dismissed.

## IV. Municipal Liability

Plaintiff asserts claims against Defendant Elder in his personal capacity and his official capacity as El Paso County Sheriff. "An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). Government entities can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

"[A] claim under § 1983 against . . . a municipality cannot survive a determination that there has been no constitutional violation." *Crowson v. Wash. Cnty. Utah*, 983 F.3d 1166 (10th Cir. 2020). "[T]here must be a constitutional violation, not just an unconstitutional policy, for a municipality to be held liable." *Id.* at 1191. As discussed

**A.116**

above, Plaintiff has not alleged facts demonstrating that she suffered a constitutional injury. Therefore, the Court finds that he cannot state a claim against Defendant Elder in his official capacity. Accordingly, the Court respectfully recommends that Plaintiff's municipal liability claims be dismissed.

## V. Plaintiff's ADA and RA Claims (Claims Ten and Eleven)

Title II of the ADA states, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. ADA regulations require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). To state a claim under Title II, a plaintiff must allege that "(1) [s]he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Id.* at 1193.

Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To state a claim under Section 504, "a plaintiff must allege (1) that [s]he is a 'handicapped individual' under the [ADA], (2) that [s]he is 'otherwise qualified for the [benefit] sought, (3) that [s]he was [discriminated

against] solely by reason of his handicap, and (4) that the program or activity in question receives federal financial assistance." *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (quoting *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir.1992)).

It has been commonly observed that "[t]he Rehabilitation Act is materially identical to and the model for the ADA," *Crawford v. Ind. Dep't of Corr.*, 115 F.3d 481, 483 (7th Cir. 1997) (citing *Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996*)); see also McDonald v. Penn. Dep't of Pub. Welfare*, 62 F.3d 92, 94 (3d Cir. 1995); *Duffy v. Riveland*, 98 F.3d 447, 455 (9th Cir. 1996)), "except that it is limited to programs that receive federal financial assistance." *Crawford*, 115 F.3d at 483. However, the Tenth Circuit recently clarified that the causation standards of the statutes are different: "the ADA merely requires the plaintiff's disability be a but-for cause (i.e., "by reason of") of the discrimination, rather than—as the Rehabilitation Act requires—its sole cause (i.e., "solely by reason of")." *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1313 (10th Cir. 2021). With this in mind, the Court will evaluate Plaintiff's ADA claim and RA claim together. *See Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007) (citing 29 U.S.C. § 794(d)).

 a.   **Whether Plaintiff Alleges a Disability**

Defendants argue that Plaintiff fails to allege a disability. While the ADA defines the term "disability" broadly to include "a physical or mental impairment that substantially limits one or more major life activities of such individual," 42 U.S.C. § 12102(1)(A), it excludes "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, *gender identity disorders not resulting from physical impairments*, [and]

**A.118**

other sexual behavior disorders," Id. § 12211(b) (emphasis added). It is Defendants' position that gender dysphoria falls squarely within this exclusion.

Defendants acknowledge that there is significant disagreement amongst district courts across the country regarding whether gender dysphoria is a "gender identity disorder" and categorically excluded from the ADA's definition of "disability." They cite a case from this district where the court found that "gender dysphoria, as a gender identity disorder, is specifically exempted as a disability by the Rehabilitation Act." *Michaels v. Akal Sec., Inc.*, No. 09-cv-01300-ZLW-CBS, 2010 WL 2573988, at *6 (D. Colo. June 24, 2010). The Court is not bound by this ruling. It was decided over a decade ago and dealt with the issue summarily.

Instead, the Court finds persuasive a recent thorough and closely-reasoned decision issued by the Fourth Circuit in *Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022). There, after careful analysis, the court held that "as a matter of statutory construction, gender dysphoria is not a gender identity disorder." *Id.* at 769. The court also held that a plaintiff need not plead by specific words that her gender dysphoria "result[ed] from a physical impairments") in order to state a claim. *Id.* at 771. Absent any Tenth Circuit authority to the contrary, the Court is likewise convinced that gender dysphoria is a disability included in the ADA's protections. *See Gibson v. Cmty. Dev. Partners*, No. 3:22-CV-454-SI, 2022 WL 10481324, at *7 (D. Or. Oct. 18, 2022) (citing *Williams* for the proposition that "nothing in the ADA compels the conclusion that gender dysphoria is excluded from ADA protection").

### b.     Causation

Nevertheless, Defendants argue that Plaintiff's ADA and RA claims fail because she fails to allege that her gender dysphoria was the "but for" (much less "sole") cause of the alleged discrimination. Specifically, Defendants contend that Plaintiff complains that the discrimination was a result of her gender identity and transgender status—not gender dysphoria—and transgenderism ("transexualism") is specifically excluded from the definition of a disability. Defendants cite several allegations from the TAC that refer to EPSO's treatment of transgender women.

This argument misses the mark. First, Plaintiff alleges that the symptoms of gender dysphoria can be alleviated by, among other things, "outwardly presenting in a manner consistent with one's gender identity" (Dkt. #123 ¶ 24), and that placing her "in housing that does not conform with her gender identity has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm." (*Id.* ¶ 68.) Plaintiff also alleges that, pursuant to WPATH guidelines, part of the treatment of gender dysphoria is to "be treated as the woman she is." (*Id.* ¶ 97.) She also states she requested accommodations for her gender dysphoria. (*Id.* ¶¶ 48, 55, 61, 63, 92, 110, 111.)

A public entity must provide a reasonable accommodation under the ADA when it knows that the individual is disabled and "requires an accommodation of some kind to participate in or receive the benefits of its services." *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1197 (10th Cir. 2007). "[A] public entity is on notice that an individual needs an accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests an

**A.120**

accommodation." *Id.* at 1197–98. Thus, Plaintiff's gender identity is relevant to the reasonable accommodation of her disability.

Moreover, the cherry-picked excerpts Defendants cite from the pleading ignore the numerous references Plaintiff makes to the EPSO's consistent failure to accommodate her gender dysphoria. (*See, e.g.,* Dkt. #124 ¶¶ 70 ("El Paso County's decision to house Ms. Griffith in housing that does not conform with her gender identity was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria."); 81 ("El Paso County officials' threatening, intimidating and harassing visual body-cavity search of Ms. Griffith, . . . conducted by an unaccompanied male deputy, was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria."); 107 ("El Paso County officials' actions in constantly mis-gendering Ms. Griffith was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria."); 119 ("El Paso County officials' actions in denying Ms. Griffith access to female undergarments and lipstick was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria."); 280 ("By confining Plaintiff in the men's unit at the El Paso County Jail, a facility where staff members referred to Plaintiff using a male pronoun and her male given name and staff refused to permit Plaintiff to wear her own gender's clothes and underwear, El Paso County subjected Plaintiff to discrimination based on Gender Dysphoria.").

For these reasons, the Court rejects Defendant's contention that Plaintiff asserts that her transgender status—not gender dysphoria—was the reason for her exclusion from certain programs and services within CJC.

A.121

### c.    Damages

In *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1565 (2022), the Supreme Court held that emotional distress damages are not recoverable in a private action to enforce . . . the Rehabilitation Act of 1973." Instead, "victims of discrimination to recover damages only if they can prove that they have suffered economic harm." *Id.* at 1562 (Breyer, J., dissenting). Defendants therefore posit that other types of damages that are generally unavailable in breach of contract claims, like those for pain and suffering, should also be unavailable as a remedy under the RA. Defendants also claim that *Cummings*' damage limitation should also apply with equal force to claims asserted under Title II of the ADA.

Plaintiff argues that *Cummings* does not apply to other damages or ADA claims, and contends that the Supreme Court's holding should not apply retroactively. These are interesting arguments, but in the end, they need not be decided now because even pre-*Cummings*, the Tenth Circuit required a showing of intentional discrimination before a plaintiff may recover compensatory damages for mental or emotional injury. *Tyler v. City of Manhattan*, 118 F.3d 1400, 1403–4 (10th Cir. 1997); *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1152 (10th Cir. 1999). "Intentional discrimination does not require a showing of personal ill will or animosity toward the disabled person; rather, 'intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights.'" *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1229 (10th Cir. 2009) (quoting *Powers.*, 184 F.3d at 1153). "The test for deliberate indifference in the context of intentional discrimination comprises two prongs: (1)

**A.122**

'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that likelihood.'" *Id.* (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001) (alteration omitted).

While the Court believes that discrimination based on gender dysphoria violates the ADA and RA, this is not remotely settled law. Indeed, it appears that the "majority approach[ ] views the [ADA]'s language as expressing Congress's intent to exclude from the ADA's protection both disabling and non-disabling gender identity disorders that do not result from a physical impairment." *Doe v. Pa. Dep't of Corr.*, No. 120CV00023SPBRAL, 2021 WL 1583556, at *8 (W.D. Pa. Feb. 19, 2021), *report and recommendation adopted,* No. CV 20-23, 2021 WL 1115373 (W.D. Pa. Mar. 24, 2021). A court from this district took this tack. *See Michaels*, 2010 WL 2573988, at *6. Under these circumstances, the Court cannot say that the EPSO was deliberately indifferent to the "strong likelihood" of harm to a right that may not even be protected by the ADA and RA. *See Roberts v. City of Omaha*, 723 F.3d 966, 975–76 (8th Cir. 2013) ("Roberts can only prevail on his ADA and Rehabilitation Act claims by showing the city's deliberate indifference to his alleged right to be free from discrimination in the circumstances of this case, but the city, like the individual officers, lacked notice the officers' actions might have violated Roberts's asserted rights.").

Plaintiff cannot obtain compensatory damages for mental or emotional injury, and any injunctive relief is moot because she has been moved to a female facility and given access to feminine clothing and grooming items. Accordingly, Claims Twelve and Thirteen should be dismissed.

A.123

**VI. State Law Claims (Claims Five, Six, Seven, Eight, Nine, Twelve, and Thirteen)**

Plaintiff asserts various claims under the Colorado Constitution and state statute. "If federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'" *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). Because this Court has recommended dismissal of the federal claims, the Court further recommends that the presiding judge decline to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismiss those claims without prejudice.

## CONCLUSION

In light of the foregoing, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss (Dkt. #132) be **GRANTED**, and that Plaintiff's Third Amended Complaint (Dkt. #124) be **DISMISSED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148–53**

A.124

**(1985), and also waives appellate review of both factual and legal questions.**

***Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999);  *Talley v. Hesse*,**

**91 F.3d 1411, 1412–13 (10th Cir. 1996).**

BY THE COURT

Date:  February 27, 2023
      Denver, Colorado

N. Reid Neureiter
United States Magistrate Judge

**A.125**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Civil Action No. 21-cv-00387-CMA-NRN

DARLENE GRIFFITH,

      Plaintiff,

v.

EL PASO COUNTY, COLORADO,
BILL ELDER, in his individual and official capacities,
CY GILLESPIE, in his individual capacity,
ELIZABETH O'NEAL, in her individual capacity,
ANDREW MUSTAPICK, in his individual capacity,
DAWNE ELLISS, in her individual capacity,
TIFFANY NOE, in her individual capacity, and
BRANDE FORD, in her individual capacity,

      Defendants.

---

**ORDER AFFIRMING AND ADOPTING RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE**

---

This matter is before the Court on the February 27, 2023 Recommendation of

United States Magistrate Judge (Doc. # 165), wherein Judge N. Reid Neureiter

recommends this Court grant Defendants' Motion to Dismiss the Third Amended

Complaint (Doc. # 132). Plaintiff timely filed an Objection to the Recommendation. (Doc.

# 169.) For the following reasons, the Court overrules Plaintiff's Objection and affirms

and adopts the Recommendation as an order of this Court.

**A.126**

## I.   **BACKGROUND**

The factual background of this case is set out at length in Judge Neureiter's

Recommendation, which the Court incorporates herein by reference. *See* 28 U.S.C. §

636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, the Court will provide only a brief

summary of the relevant facts of this case.

Plaintiff Darlene Griffith is a transgender woman who has been diagnosed with

gender dysphoria.[1] (Doc. # 124 at ¶ 2.) She has been living as a transgender woman for

more than 20 years. (*Id.* at ¶ 25.) As part of her treatment, Plaintiff has "changed her

name and altered her physical appearance to conform to her female gender identity,

including dressing in feminine attire and taking feminizing hormones, which caused her

to develop female secondary sex characteristics such as breasts, soft skin, a lack of

facial hair, and other characteristics typically associated with women." (*Id.*)

Plaintiff arrived at El Paso County Jail as a pretrial detainee on July 20, 2020. (*Id.*

at ¶¶ 47, 141.) At that time, Plaintiff was an openly transgender woman with a feminine

appearance. (*Id.* at ¶ 47.) During Plaintiff's intake she notified jail personnel that she is a

transgender woman with a diagnosis of gender dysphoria and explicitly requested

placement in a women's facility. (*Id.* at ¶ 48.) Plaintiff also informed jail officials that she

is legally blind. (*Id.* at ¶ 50.)

Plaintiff alleges that when she was booked into the jail, Defendant Andrew

Mustapick sexually harassed her during an unconstitutional cross-gender, visual body-

---

[1] Gender dysphoria is "the significant distress that may accompany the incongruence between a
transgender person's gender identify and assigned sex." (Doc. # 124 at ¶ 22.)

cavity search while Defendant Dawne Elliss stood by and did nothing to intervene. (*Id.* at ¶¶ 71–83.) When Plaintiff saw that both a male and female deputy would be conducting her search, Plaintiff protested and asked that only Elliss, a female deputy, conduct the search. (*Id.* at ¶ 74.) However, Elliss left Plaintiff alone in the room with Mustapick and intentionally mis-gendered Plaintiff on her way out, telling Mustapick "*he* is all yours now to strip out." (*Id.* at ¶ 76.) Mustapick then ordered Plaintiff to take off her socks, pants, and panties, place her hands on the wall, bend over, and "spread [her] sexy cheeks." (*Id.* at ¶ 77.) He told Plaintiff that he was "going to go balls deep in that ass" while grabbing his own penis in view of Plaintiff. (*Id.* at ¶ 78.) Mustapick was "extremely aggressive" while conducting the search and threatened Plaintiff that if she told anyone, she would be brutalized by the guards at the jail. (*Id.* at ¶ 79.)

Despite Plaintiff's request on intake, Defendant Tiffany Noe placed Plaintiff into an all-male unit. (*Id.* at ¶ 54.) On July 29, 2020, Defendant Brande Ford conducted an Americans with Disabilities Act ("ADA") interview of Plaintiff and wrote in Plaintiff's records that there were no disability concerns related to Plaintiff's housing. (*Id.* at ¶ 55.) Ford did not reclassify Plaintiff or place her into a unit that corresponded with her gender identity. (*Id.*) Over the next several months, Plaintiff repeatedly requested to be moved to a female unit by filing inmate grievances and reporting to jail mental health officials. (*Id.* at ¶¶ 57–66.) In response to one grievance, Defendant Elizabeth O'Neal stated that El Paso County had reviewed Plaintiff's request and denied her the accommodation of housing her in a facility that corresponded with her gender identity. (*Id.* at ¶ 57.) Plaintiff alleges that Defendants Ford, O'Neal, Noe, Gillespie, and Elder

A.128

violated her constitutional and statutory rights by intentionally disregarding her repeated requests to be housed in a female unit despite knowing that Plaintiff suffered from gender dysphoria and was at risk of sexual harassment and assault. (*Id.* at ¶¶ 47–70.)

Plaintiff further alleges that Defendants Elder, Gillespie, Ford, O'Neal, and Noe failed to protect Plaintiff by housing her in an all-male unit. (*Id.* at ¶¶ 84–88.) On November 18, 2021, after Plaintiff had been housed in the all-male unit for over a year, she was sexually assaulted by another male inmate. (*Id.* at ¶ 84.) The inmate approached Plaintiff while she was laying in her bunk, groped Plaintiff's right breast, and said, "you know you want this dick." (*Id.* at ¶ 85.) Defendants did not move Plaintiff to a unit that corresponded to her gender identity after this incident. (*Id.* at ¶ 88.)

Plaintiff also alleges that she was subject to continuous cross-gender pat-down searches. (*Id.* at ¶¶ 89–96.) Male deputies repeatedly touched Plaintiff's breasts and groin when patting her down. (*Id.* at ¶ 90.) El Paso County officials also regularly mis-gendered Plaintiff throughout her incarceration, including by calling her "Sir." (*Id.* at ¶¶ 97–109.) In one instance, on September 16, 2020, Plaintiff complained to a deputy about male inmates not wearing shirts, and the deputy responded by loudly yelling at the inmates, "the blind faggot said you need to put your shirts on." (*Id.* at ¶ 100.) Plaintiff wrote grievances and complained to jail officials several times about the pat-down searches, mis-gendering, and verbal harassment she was experiencing. In addition, despite Plaintiff's repeated requests for gender affirming clothing, jail officials denied Plaintiff the ability to dress in accordance with her gender identity, including prohibiting her from purchasing panties or lipstick at the commissary. (*Id.* at ¶¶ 110–122.)

Plaintiff reported to mental health providers that she was suffering severe anxiety and depression as a result of being placed in the all-male unit and experiencing harassment and mis-gendering. (*Id.* at ¶¶ 60, 62.) On July 1, 2021, Plaintiff told a mental health provider that due to the constant mistreatment, she would remove her own penis. (*Id.* at ¶ 31.) Plaintiff attempted to self-castrate by wrapping a rubber band around her genitals. (*Id.* at ¶ 32.) Plaintiff has a history of self-harm, including self-castration behavior, when her gender dysphoria has not been accommodated and treated. (*Id.* at ¶ 38.)

In her Third Amended Complaint (Doc. # 124), Plaintiff asserts 16 constitutional and statutory claims against Defendants. Her claims under federal law are:

- **First Claim**: Fourteenth Amendment equal protection discrimination, against all Defendants;

- **Second Claim**: Fourteenth Amendment conditions of confinement, against all Defendants;

- **Third Claim**: Fourth Amendment unreasonable search, against El Paso County, Elder, Mustapick, and Elliss;

- **Fourth Claim**: Fourteenth Amendment substantive due process claim for invasion of bodily privacy and integrity, against El Paso County, Elder, Gillespie, Mustapick, and Elliss;

- **Tenth Claim**: Disability discrimination pursuant to the ADA, 42 U.S.C. § 12101, *et. seq.*, against El Paso County;

- **Eleventh Claim**: Disability discrimination pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et. seq.*, against El Paso County; and

- **Fourteenth Claim**: Fourteenth Amendment failure to protect, against El Paso County, Elder, Gillespie, O'Neal, Noe, and Ford.

**A.130**

Plaintiff's remaining claims for relief constitute parallel or similar claims under the Colorado Constitution and Colorado state laws.

Defendants filed a Motion to Dismiss the Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. # 132), which the Court referred to Judge Neureiter (Doc. # 135). Judge Neureiter heard argument on the Motion in a hearing on October 11, 2022. *See* (Doc. # 163). On February 27, 2023, Judge Neureiter issued his Recommendation. (Doc. # 165.) Plaintiff filed an Objection (Doc. # 169), and Defendants submitted a Response (Doc. # 172). The matter is now ripe for review.

## II.   <u>LEGAL STANDARDS</u>

### A.   REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." In conducting the review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "In the absence of timely objection, the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.")).

A.131

In order to be properly made and, therefore, to preserve an issue for *de novo* review by the district judge, an objection must be both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059–60 (10th Cir. 1996). An objection is proper if it is specific enough to enable the "district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 1059 (internal quotation marks omitted).

## B.   FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject matter jurisdiction." A Rule 12(b)(1) challenge generally takes one of two forms: (1) a facial attack, where the moving party may "attack the complaint's allegations as to the existence of subject matter jurisdiction"; or (2) a factual attack, where the moving party may "go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When reviewing a facial attack, the Court must accept the allegations in the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). By contrast, in reviewing a factual attack, the district court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule (12)(b)(1)." *Id.*

A.132

C.    **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and brackets omitted).

**A.133**

D.      **QUALIFIED IMMUNITY**

The doctrine of qualified immunity protects government officials from individual liability in the course of performing their duties so long as their conduct does not violate clearly established constitutional or statutory rights. *Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). To overcome the defense of qualified immunity, a plaintiff must present enough facts in the complaint, taken as true, to show (1) a violation of a constitutional or statutory right, and (2) that the right was clearly established when the alleged violation occurred. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). The bar is higher for Defendants because they assert a qualified immunity defense in a Rule 12(b)(6) motion instead of a Rule 56 motion. *See Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) ("Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment."). To determine whether a right was "clearly established," courts ask "whether the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (internal quotation marks omitted).

### III.      **DISCUSSION**

This is a challenging case. It raises sensitive and important constitutional issues during a time period of shifting jurisprudence among the circuit courts. As she states in her Objection, Plaintiff brought this case to protect the rights of transgender people in public spaces. (Doc. # 169 at 1.) She asserts that this is a case that is, at its core,

"about governmental validation of the existence and experiences of transgender people, as well as the simple recognition of their humanity." (*Id.*) (quoting *G.G. v. Gloucester Cnty. Sch. Bd.*, 853 F.3d 729, 730 (4th Cir. 2017) (Davis, J., concurring)). The Court is sympathetic to Plaintiff and cognizant of the harms that she has suffered during her detention at the El Paso County Jail. However, the Court agrees with Judge Neureiter that existing Tenth Circuit precedent binds the Court's hands in this case. Regretfully, Plaintiff's claims must be dismissed.

## A.   THE RECOMMENDATION

In a thoughtful and well-reasoned Recommendation, which the Court adopts in full, Judge Neureiter carefully analyzed each of Plaintiff's federal claims. First, Judge Neureiter determined that Plaintiff's claims against El Paso County should be dismissed because (1) Plaintiff failed to properly name the Board of County Commissioners of El Paso County as the defendant pursuant to Colo. Rev. Stat. § 30-11-105; and (2) the Complaint alleges misconduct only on the part of employees of the El Paso County Sheriff's Office, a separate and distinct entity from the County. (Doc. # 165 at 14). However, because Plaintiff asserted claims against Sheriff Bill Elder and Commander Cy Gillespie in their official capacities, Judge Neureiter considered Plaintiff's municipal liability claims as asserted against the El Paso County Sheriff's Office. (*Id.*) Next, Judge Neureiter evaluated whether the Complaint adequately alleges Gillespie's personal participation. (*Id.* at 15–16.) Judge Neureiter concluded that the Complaint sufficiently alleges that Gillespie was personally responsible for denying Plaintiff female clothing and grooming products, with respect to her equal protection claim, but Judge Neureiter

found that the allegations were insufficient to establish Gillespie's role in Plaintiff's housing assignments or as a final policymaker. (*Id.* at 16.)

Moving to Plaintiff's Fourteenth Amendment claims, Judge Neureiter considered whether discrimination against transgender people should be subject to heightened scrutiny or rational basis analysis. (*Id.* at 17–24.) Judge Neureiter determined that despite the "growing consensus" in courts around the country that transgender people constitute at least a quasi-suspect class, district courts in this circuit remain bound by the Tenth Circuit's decision in *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995), in which the court held that a transgender plaintiff "is not a member of a protected class" for purposes of an equal protection claim.[2] (Doc. # 165 at 19–20.) Although Judge Neureiter expressed strongly that the Tenth Circuit should revisit *Brown*, he acknowledged that *Brown* remains "if not *good* in the normative sense, at least *binding* law on district courts in this district." (*Id.*) Thus constrained to apply rational basis review, Judge Neureiter concluded that Plaintiff has not adequately alleged that there is no rational reason for Defendants to house transgender women in all-male units and not provide them with feminine clothing and grooming products. (*Id.* at 24.) Accordingly, he found that Plaintiff's equal protection claim must be dismissed for failure to state a claim.

Judge Neureiter next considered Plaintiff's conditions of confinement and substantive due process claims. (*Id.* at 25–26.) He first found that the Complaint fails to state a claim against Defendant O'Neal, for lack of allegations establishing personal

---

[2] The *Brown* court used the older term "transsexual" instead of "transgender." 63 F.3d at 971.

participation, and against Defendants Noe and Ford, for lack of allegations showing deliberate indifference. (*Id.* at 26.) Further, Judge Neureiter found that all of these Defendants were entitled to qualified immunity because Plaintiff did not demonstrate that her right to be placed in a female unit was clearly established. (*Id.*) As to Defendant Elliss, Judge Neureiter found that "one instance of misgendering, although no light matter, is not sufficient to state a claim for unconstitutional conditions of confinement." (*Id.*) With respect to Defendant Mustapick, Judge Neureiter noted that Mustapick's alleged behavior during the visual body-cavity search was "sickening," but Judge Neureiter concluded that Plaintiff had not met her burden of showing that it is "clearly established that cross-gender searches of transgender women, even ones accompanied by odious verbal harassment, violate a clearly established constitutional right, nor is the conduct so egregious and the right so obvious that it could be deemed clearly established even without materially similar cases." (*Id.* at 28.)

Judge Neureiter next determined that the Complaint fails to state a claim for failure to protect because (1) the Complaint alleges personal participation only of Noe and Ford in Plaintiff's housing assignment, and (2) the allegations that Noe and Ford knew of Plaintiff's disabilities, alone, are insufficient to show that they had reason to suspect that Plaintiff was in substantial and immediate danger, particularly given that Defendants made their decisions regarding Plaintiff's housing in July 2020 and the alleged assault by another inmate did not occur until November 18, 2021. (*Id.* at 30.)

Regarding Plaintiff's Fourth Amendment unreasonable search claim and Fourteenth Amendment substantive due process claim arising from the visual strip

search conducted by Defendants Mustapick and Elliss, Judge Neureiter carefully balanced Plaintiff's right to bodily privacy and right to be free from unreasonable searches against the requirements of prison administration. (*Id.* at 30–34.) Although he acknowledged that Mustapick's alleged comments and behavior during the search were "reprehensible," Judge Neureiter concluded that, on balance, the Complaint did not state a plausible violation of the Fourth or Fourteenth Amendment in relation to the search. (*Id.* at 33.) Moreover, Judge Neureiter observed that both claims would necessarily fail based on the "clearly established" prong of qualified immunity because Plaintiff offers no binding precedent clearly establishing that a visual strip search by a male and female deputy of a transgender inmate, even with harassing comments, violates the inmate's constitutional rights. (*Id.* at 34.) Having determined that the Complaint fails to plausibly allege any constitutional violation, Judge Neureiter determined that Plaintiff could not establish municipal liability and that her claims against Defendant Elder in his official capacity as Sheriff must be dismissed. (*Id.* at 35.)

Judge Neureiter next evaluated Plaintiff's ADA and Rehabilitation Act claims. (*Id.* at 35–41.) He acknowledged that there is significant disagreement amongst district courts across the country regarding whether gender dysphoria is a "gender identity disorder" and categorically excluded from the ADA's definition of "disability." (*Id.* at 37.) In the absence of any controlling Tenth Circuit authority, Judge Neureiter followed the approach of the Fourth Circuit in *Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022), and determined that, as a matter of statutory construction, gender dysphoria is not excluded from the ADA's protections. (Doc. # 165 at 37.) Judge Neureiter further found that

Plaintiff plausibly alleges that her gender dysphoria was the "but for" cause of the alleged discrimination. (*Id.* at 38–39.) Judge Neureiter concluded, however, that Plaintiff's ADA and Rehabilitation Act claims are subject to dismissal because the Complaint fails to make a showing of intentional discrimination such that Plaintiff would be able to recover compensatory damages for mental or emotional injury. (*Id.* at 40.) Stated differently, Judge Neureiter found that because the law is unsettled as to whether discrimination based on gender dysphoria violates the ADA and Rehabilitation Act, the Complaint could not plausibly allege that Defendants were "deliberately indifferent" in that they *knew* that a harm to a federally protected right was substantially likely. (*Id.* at 40–41.) Given that Plaintiff could not obtain compensatory damages and that any injunctive relief is moot because Plaintiff has been moved to a female facility, Judge Neureiter determined that her ADA and Rehabilitation Act claims must be dismissed.

Lastly, Judge Neureiter recommended that because all of Plaintiff's federal claims are subject to dismissal, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and should dismiss those claims without prejudice. (*Id.* at 42.)

## B.    THE OBJECTION

Plaintiff timely filed a 30-page Objection to Judge Neureiter's Recommendation. (Doc. # 169.) The Court has carefully reviewed Plaintiff's Objection and finds that it is largely a restatement—often verbatim—of Plaintiff's arguments presented in her Response to the Motion to Dismiss (Doc. # 147) and elsewhere in the record of this

case (Docs. ## 124, 156, 163). Rather than identifying specific legal or factual errors in the Recommendation, Plaintiff merely reargues her positions and asks the Court to interpret the facts and authorities differently in order to arrive at a more favorable result. Although the Court understands Plaintiff's intention to preserve her objection to the entirety of the Recommendation, such an objection does not enable the Court "to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas*, 474 U.S. at 147; *see also One Parcel of Real Property Known as 2121 East 30th St.*, 73 F.3d at 1060 (observing that "the filing of objections" is meant to "advance[] the interests that underlie the Magistrate's Act, including judicial efficiency").

Nonetheless, the Court has carefully reviewed *de novo* the applicable law and the relevant materials in this case, including the Objection, the Recommendation (Doc. # 165), the Motion to Dismiss (Doc. # 132) and associated briefing (Docs. # 147, 155, 156, 163), and Plaintiff's Third Amended Complaint (Doc. # 124). *See* Fed. R. Civ. P. 72(b). Having reviewed the issues *de novo*, the Court is satisfied that it would reach the same conclusions as Judge Neureiter and that there is little to add to Judge Neureiter's comprehensive and correct analysis. *See, e.g.*, *In re Griego*, 64 F.3d 580, 584 (10th Cir. 1995) (affirming the "common practice among district judges in this circuit" to "adopt the magistrate judges' recommended dispositions when they find that magistrate judges have dealt with the issues fully and accurately and that they could add little of value to that analysis"); *see also Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996) (observing that "a brief order expressly stating the court conducted de novo review is sufficient"). The Court therefore will address only a few points raised in the Objection.

**A.140**

1.     Fourteenth Amendment Equal Protection

Plaintiff argues that Judge Neureiter erred by determining that this Court is bound

to apply rational basis review by the Tenth Circuit's decision in *Brown*. (Doc. # 169 at 7–

13.) In *Brown*, the Tenth Circuit followed the Ninth Circuit's decision in *Holloway v.*

*Arthur Andersen & Co.*, 566 F.2d 659, 663 (9th Cir. 1977), and held that "transsexuals

are not a protected class" for purposes of the Fourteenth Amendment. *Brown*, 63 F.3d

at 971. The Tenth Circuit therefore applied rational basis review to the plaintiff's equal

protection claim. *Id.* Since *Brown*, the Tenth Circuit has not disturbed this holding. *See,*

*e.g.*, *Druley v. Patton*, 601 F. App'x 632, 635 (10th Cir. 2015) (unpublished) ("To date,

this court has not held that a transsexual plaintiff is a member of a protected suspect

class for purposes of Equal Protection claims."). Now, nearly 28 years after *Brown* was

issued, Plaintiff contends that *Brown* is not controlling for several reasons.

First, Plaintiff argues that the *Brown* court did not address whether discrimination

against transgender individuals constitutes sex- or gender-based discrimination.

Accordingly, she avers that *Brown* has been overruled by the Supreme Court's decision

in *Bostock v. Clayton County, Ga.*, 140 S. Ct. 1731, 1741 (2020), in which the Supreme

Court analyzed the statutory language of Title VII and held that, within the meaning of

Title VII, "it is impossible to discriminate against a person for being homosexual or

transgender without discriminating against that individual based on sex." While the

Court agrees with Plaintiff that *Bostock* plainly calls into question whether discrimination

against transgender individuals is sex-based discrimination in the equal protection

context, the Court cannot conclude that *Bostock* clearly overruled *Brown*. The *Bostock*

**A.141**

opinion was expressly focused on interpreting the text of Title VII—nowhere did the
Supreme Court address equal protection, rational basis review versus heightened
scrutiny, or whether transgender individuals constitute a protected class for purposes of
the Fourteenth Amendment. Given these differences, it would be too great a leap for
this Court to conclude that *Bostock* constitutes "an intervening Supreme Court decision"
justifying this Court's departure from *Brown*. *See Lincoln v. BNSF Railway Co.*, 900
F.3d 1166, 1183 (10th Cir. 2018) (stating that a decision by a panel of the Tenth Circuit
is binding precedent and cannot be overruled "[a]bsent an intervening Supreme Court or
en banc decision justifying such an action").

Plaintiff next argues that *Brown* itself failed to apply binding precedent because it
did not engage in the requisite four-factor analysis for determining whether transgender
individuals are a suspect or quasi-suspect class. (Doc. # 169 at 12–13); *see, e.g.*,
*Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 611 (4th Cir. 2020) (describing the
four-factor analysis). As such, Plaintiff argues that Brown is "inapplicable." (Doc. # 169
at 13.) However, Plaintiff cites no authority for her proposition that a district court may
find error in a binding decision of a federal court of appeals and decline to follow it.

Finally, Plaintiff contends that *Brown* is "no longer applicable" because *Holloway*,
the Ninth Circuit decision upon which Brown rests, has been overruled. (*Id.*); *see*
*Schwenk v. Hartford*, 204 F.3d 1187, 1201 (9th Cir. 2000). Similarly, Plaintiff argues that
*Brown* is "inapposite to nearly every single case that has been decided since, which
'have analyzed the relevant factors for determining suspect class status and held that
transgender people are at least a quasi-suspect class.'" (Doc. # 169 at 13) (quoting

**A.142**

*Grimm*, 972 F.3d at 610). As such, Plaintiff asserts that Brown "should be discarded on the scrap heap of past decisions, like *Plessy*, *Korematsu*, and *Bowers*, that allowed for state-sanctioned discrimination." (*Id.*) Although the Court agrees with Plaintiff that *Brown* should be reconsidered based on the overruling of *Holloway*, the weight of authority from other circuits, and the Supreme Court's decision in *Bostock*, this Court lacks the authority to make that determination. Bound by *Brown*, the Court must apply rational basis review to Plaintiff's equal protection claim.

If the Court were to consider the issue untethered by *Brown*, the Court would not hesitate to find that heightened scrutiny is warranted for Plaintiff's equal protection claim because transgender-based discrimination constitutes sex-based discrimination triggering intermediate scrutiny. *See, e.g.*, *Grimm*, 972 F.3d at 608. Moreover, applying the four-factor test for determining whether a group constitutes a protected class, the Court would find it "apparent that transgender persons constitute a quasi-suspect class." *Id.* at 611. Transgender people (1) have "historically been subject to discrimination"; (2) have "a defining characteristic that bears a relation to [their] ability to perform or contribute to society"; (3) are "a discrete group by obvious, immutable, or distinguishing characteristics"; and (4) are "a minority lacking political power." *Id.*; *see also Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 953 (W.D. Wis. 2018) ("[O]ne would be hard-pressed to identify a class of people more discriminated against historically or otherwise more deserving of the application of heightened scrutiny when singled out for adverse treatment, than transgender people."). Applying heightened scrutiny, the Court would find that the Complaint plausibly alleges that Defendants' actions in placing

Plaintiff in an all-male unit constituted discrimination not substantially related to an important government interest.

Regretfully, the Court is unable to engage in that analysis or arrive at those conclusions. Directed by binding precedent in *Brown*, the Court agrees with Judge Neureiter that the Complaint fails to plausibly allege that the El Paso County Jail lacked a rational basis for housing Plaintiff in an all-male unit and declining to give her feminine clothing and grooming products. Plaintiff's equal protection claim must be dismissed.

2.    Sexual Harassment as an Equal Protection Claim

Plaintiff also objects that Judge Neureiter erred by not considering the second basis for Plaintiff's equal protection claim: that she was subjected to significant verbal and physical harassment by staff and other inmates. (Doc. # 169 at 16.)

Sexual harassment can constitute unlawful sex discrimination in violation of the Fourteenth Amendment's Equal Protection Clause. *See Shepherd v. Robbins*, 55 F.4th 810, 816–17 (10th Cir. 2022) (observing that the Tenth Circuit has "discussed Fourteenth Amendment equal protection claims involving sexual harassment a handful of times" in the employment and education contexts). However, as noted by *Barney v. Pulsipher*, 143 F.3d 1299, 1312 n.15 (10th Cir. 1998), the Tenth Circuit opinions addressing sexual harassment as an equal protection violation have primarily dealt with charges of sexual harassment "in the *employment* context." *Cf. Shepherd*, 55 F.4th at 818 (observing that the Tenth Circuit has also extended such claims to the educational context and to situations where state agents abused their permit or licensing authority to attempt to derive sexual favors). In declining to consider two inmates' sexual

**A.144**

harassment claims as violations of the equal protection clause, the *Barney* court stated that claims "of sexual harassment and assault of inmates by prison guards are more properly analyzed under the Eighth Amendment." Similarly, in *Women Prisoners v. District of Columbia*, cited by *Barney*, the court declined to analyze sexual harassment claims brought by pretrial detainees and inmates as equal protection violations because the court found that the harassment violates the Eighth Amendment and, "*a fortiori* . . . the Fifth Amendment rights of pretrial detainees." 877 F. Supp. 634, 664 n.38 (D.D.C. 1994), *vacated in part, modified in part*, 899 F. Supp. 659 (D.C. 1995), *vacated in part and remanded* 93 F.3d 910 (D.C. Cir. 1996).[3]

In line with the above logic, Judge Neureiter appropriately analyzed Plaintiff's allegations of sexual harassment she experienced as a pretrial detainee as a violation of her due process rights. (Doc. # 165 at 27); *see Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2000). Plaintiff has provided no authority from within this Circuit, and the Court has found none, demonstrating that it is clearly established that a pretrial detainee may assert a cognizable equal protection claim on the basis of sexual harassment. The Court is satisfied that Judge Neureiter adequately addressed Plaintiff's sexual harassment allegations elsewhere in the Recommendation via her other claims.

---

[3] On appeal, the Federal Circuit considered the sexual harassment claims as asserting violations of the Eighth Amendment and did not address sexual harassment through the lens of equal protection. *See Women Prisoners v. District of Columbia*, 93 F.3d 910, 927, 929 (D.C. Cir. 1996).

IV.   **CONCLUSION**

In sum, the Court finds Judge Neureiter's Recommendation to be thorough, well-reasoned, and correct. For the reasons stated above, the Court ORDERS as follows:

- The February 27, 2023 Report and Recommendation (Doc. # 165) is AFFIRMED and ADOPTED as an Order of this Court;

- Defendants' Motion to Dismiss Third Amended Complaint (Doc. # 132) is GRANTED; and

- Plaintiff's Third Amended Complaint (Doc. # 124) is DISMISSED WITHOUT PREJUDICE.

  The Clerk of Court is directed to close this case.

  DATED:  March 27, 2023

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge

**A.146**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Civil Action No. 21-cv-00387-CMA-NRN

DARLENE GRIFFITH,

　　　　Plaintiff,

v.

EL PASO COUNTY, COLORADO,
BILL ELDER, in his individual and official capacities,
CY GILLESPIE, in his individual capacity,
ELIZABETH O'NEAL, in her individual capacity,
ANDREW MUSTAPICK, in his individual capacity,
DAWNE ELLISS, in her individual capacity,
TIFFANY NOE, in her individual capacity, and
BRANDE FORD, in her individual capacity,

　　　　Defendants.

---

**FINAL JUDGMENT**

---

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to the Order Adopting and Affirming (Doc. 173) Recommendation of United States Magistrate Judge of Judge Christine M. Arguello entered on March 27, 2023, it is

ORDERED that the Recommendation of United States Magistrate Judge Neureiter (Doc.165) is AFFIRMED and ADOPTED as an order of this Court.   Pursuant to the Recommendation, it is

**A.147**

FURTHER ORDERED that Defendants' Motion to Dismiss Third Amended Complaint (Doc. # 132) is GRANTED; and Plaintiff's Third Amended Complaint (Doc. # 124) is DISMISSED WITHOUT PREJUDICE.   It is

FURTHER ORDERED that Defendants shall have their costs by the filing of a Bill of Costs with the Clerk of this Court within fourteen (14) days of entry of judgment, and pursuant to the procedures set forth in Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1

Dated at Denver, Colorado this 27th day of March, 2023.

FOR THE COURT:
JEFFREY P. COLWELL, CLERK


By:   s/   M. Smotts
_____

M. Smotts
Deputy Clerk

**A.148**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00387-NRN-CMA

DARLENE GRIFFITH,

     Plaintiff,

v.

EL PASO COUNTY, COLORADO, *et al*.

     Defendants.

_____

**NOTICE OF APPEAL**
_____

     Plaintiff, DARLENE GRIFFITH, pursuant to Fed. R. App. P. 3 and Red. R. App.

P. 4, hereby appeals to the United States Court of Appeals for the Tenth Circuit:

     The Court's Order Affirming and Adopting Recommendation of United States

Magistrate Judge [ECF 173], granting Defendants' Motion to Dismiss Plaintiff's Third

Amended Complaint [ECF 132]. The underlying Report and Recommendation on

Defendants' Motion to Dismiss Third Amended Complaint was entered at ECF 165 on

February 27, 2023, and Final Judgment was entered at ECF 174 on March 27, 2023.

     Respectfully submitted this 25th day of April 2023.

                         KILLMER, LANE & NEWMAN, LLP

                         *s/ Andy McNulty*
                         Andy McNulty
                         Mari Newman
                         1543 Champa Street, Suite 400
                         Denver, CO 80202
                         (303) 571-1000

**A.149**

(303) 571-1001 facsimile
amcnulty@kln-law.com
mnewman@kln-law.com


*Counsel for Plaintiff Darlene Griffith*

**A.150**

## CERTIFICATE OF SERVICE

I certify that on this 25th day of April 2023, I filed this **NOTICE OF APPEAL** via CM/ECF, and CM/ECF will generate a Notice of Electronic Filing to the following:

Nathan J. Whitney
Terry Sample
Chris Strider
County Attorney's Office
El Paso County
nathanwhitney@elpasoco.com
terrysample@elpasoco.com
chrisstrider@elpasoco.com

*s/ Charlotte Bocquin Scull*
Paralegal

A.151

## CERTIFICATE OF SERVICE

I certify that on August 21, 2023, I filed a true, correct, and complete copy of the foregoing Appellant Appendix with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system.

Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: August 21, 2023                              */s/ Meghan Palmer*
                                                     Meghan Palmer