No. 23-1135

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT
_____

DARLENE GRIFFITH,

Plaintiff-Appellant

v.

EL PASO COUNTY, COLORADO, *et al.*,

Defendants-Appellees
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
The Honorable Judge Christine M. Arguello
No. 21-cv-00387-CMA-NRN
_____

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
IN SUPPORT OF PLAINTIFF-APPELLANT
ON THE ISSUES ADDRESSED HEREIN
_____

KRISTEN CLARKE
 Assistant Attorney General

TOVAH R. CALDERON
JONATHAN L. BACKER
 Attorneys
 Department of Justice
 Civil Rights Division
 Appellate Section
 Ben Franklin Station
 P.O. Box 14403
 Washington, D.C.  20044-4403
 (202) 532-3528

**TABLE OF CONTENTS**

**PAGE**

INTEREST OF THE UNITED STATES ................................................................. 1

STATEMENT OF THE ISSUES ......................................................................... 3

STATEMENT OF THE CASE ........................................................................... 3

    *1.*  *Factual Background* .......................................................... 3

    *2.*  *Procedural History* ........................................................... 5

SUMMARY OF THE ARGUMENT ..................................................................... 7

ARGUMENT

    I    INTERMEDIATE SCRUTINY APPLIES TO THE JAIL'S
        POLICIES BECAUSE THEY DIFFERENTIATE BASED
        ON SEX ................................................................................ 9

        *A.*  *The Jail's Policies Differentiate On The Basis Of Sex* ............. 9

        *B.*  Brown *Does Not Require Application Of Rational-
            Basis Review To Griffith's Equal-Protection Claim* ............... 13

    II    COMPENSATORY DAMAGES CLAIMS UNDER TITLE II
        AND SECTION 504 ARE NOT LIMITED TO VIOLATIONS
        OF "SETTLED LAW" ......................................................... 15

        *A.*  *The Deliberate-Indifference Standard Applicable To
            Certain Title II And Rehabilitation Act Claims Concerns
            The Defendant's Notice Of The Facts, Not The Law* ............... 16

        *B.*  *The Legal Notice Required For Damages Liability
            Under Title II Or Section 504 Does Not Amount To
            A "Settled Law" Requirement* ................................................. 22

**TABLE OF CONTENTS (continued):**                  **PAGE**

        C.    *The District Court Offered No Sound Basis For A "Settled Law" Requirement* ...................................................... 25

CONCLUSION ..................................................................... 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF DIGITAL SUBMISSION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES:**          **PAGE**

*Adams* v. *School Bd. of St. John's Cnty.*,
    57 F.4th 791 (11th Cir. 2022) (en banc) ........................................11

*Alexander* v. *Sandoval*, 532 U.S. 275 (2001) ...........................................17

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009) ...................................................12

*Barber* v. *Colorado Dep't of Revenue*, 562 F.3d 1222 (10th Cir. 2009) .................18

*Basta* v. *Novant Health Inc.*, 56 F.4th 307 (4th Cir. 2022) ......................................18

*Bostock* v. *Clayton*, 140 S. Ct. 1731 (2020) ..................................................... 10, 13

*Brandt* v. *Rutledge*, 47 F.4th 661 (8th Cir. 2022) ......................................................11

*Brown* v. *Zavaras*, 63 F.3d 967 (10th Cir. 1995) .......................................... 6, 8, 14

*Contreras* v. *Doña Ana Cnty. Bd. of Cnty. Comm'rs*,
    965 F.3d 1114 (10th Cir. 2020),
    cert. denied, 141 S. Ct. 1382 (2021) ...........................................26

*Cummings* v. *Premier Rehab Keller, PLLC*, 142 S. Ct. 1562 (2022) .....................20

*Davis* v. *Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) ........................ 19, 22, 24

*Delano-Pyle* v. *Victoria Cnty.*, 302 F.3d 567 (5th Cir. 2002),
    cert. denied, 540 U.S. 810 (2003) ...................................................18

*Doe* v. *Pennsylvania Dep't of Corr.*, No. 1:20-cv-00023,
    2021 WL 1583556 (E.D. Pa. Feb. 19, 2021) ................................16

*Duvall* v. *County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) .............................. 18-19

*Eknes-Tucker* v. *Governor of Ala.*, No. 22-11707,
    2023 WL 5344981 (Aug. 21, 2023) ...........................................12

**CASES (continued):** **PAGE**

*Everson* v. *Leis*, 556 F.3d 484 (6th Cir. 2009)..........................................21

*Farmer* v. *Brennan*, 511 U.S. 825 (1994)..............................................21

*Franklin* v. *Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60 (1992)....................................24

*Gebser* v. *Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)...................8-9, 19-21

*Glenn* v. *Brumby*, 663 F.3d 1312 (11th Cir. 2011)....................................13

*Grimm* v. *Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020),
    as amended Aug. 28, 2020,
    cert. denied, 141 S. Ct. 2878 (2021)................................. 11, 13, 15

*Grissom* v. *Roberts*, 902 F.3d 1162 (10th Cir. 2018) .............................21

*Guardians Ass'n* v. *Civil Serv. Comm'n*, 463 U.S. 582 (1983).............................17

*Hamer* v. *City of Trinidad*, 924 F.3d 1093 (10th Cir.),
    cert. denied, 140 S. Ct. 644 (2019)...............................................17

*Hecox* v. *Little*, Nos. 20-35813, 20-35815,
    2023 WL 5283127 (9th Cir. Aug. 17, 2023) ......................................... 11, 15

*Holloway* v. *Arthur Anderson & Co.*, 566 F.2d 659 (9th Cir. 1977),
    recognized as overruled in *Schwenk* v. *Hartford*,
    204 F.3d 659, 533 (9th Cir. 2000) ...............................................14

*J.V.* v. *Albuquerque Pub. Schs.*, 813 F.3d 1289 (10th Cir. 2016) ...........................18

*Jackson* v. *Birmingham Bd. of Educ.*, 544 U.S. 167 (2005)...................9, 22, 24-25

*L.W.* v. *Skrmetti*, 73 F.4th 408 (6th Cir. 2023) .......................................12

*Lacy* v. *Cook Cnty.*, 897 F.3d 847 (7th Cir. 2018)....................................18

*Liese* v. *Indian River Cnty. Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012)................18

**CASES (continued):** **PAGE**

*Loeffler* v. *Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009) ......................18

*Meagley* v. *City of Little Rock*, 639 F.3d 384 (8th Cir. 2011) .................................18

*Murrell* v. *School Dist. No. 1*, 186 F.3d 1238 (10th Cir. 1999) .............................19

*Pearson* v. *Callahan*, 555 U.S. 223 (2009) ............................................................21

*Reno* v. *Koray*, 515 U.S. 50 (1995) ........................................................................23

*Roberts* v. *City of Omaha*, 723 F.3d 966 (8th Cir. 2013) .................................. 25-26

*S.H.* v. *Lower Merion Sch. Dist.*, 729 F.3d 248 (3d Cir. 2013)..............................18

*United States* v. *Virginia*, 518 U.S. 515 (1996)........................................................9

*Whitaker* v. *Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
    858 F.3d 1034 (7th Cir. 2017),
    cert. dismissed, 138 S. Ct. 1260 (2018).................................................. 11, 13

*Williams* v. *Kincaid*, 45 F.4th 759 (4th Cir. 2022),
    cert. denied, 143 S. Ct. 2414 (2023)............................................................16

**CONSTITUTION AND STATUTES:**

U.S. Const. Art. I, § 8, Cl. 1.......................................................................................9

Americans with Disabilities Act (ADA)
    42 U.S.C. 12102(4)(A) ......................................................................................24
    42 U.S.C. 12132 *et seq.* (Title II) ...................................................................2
    42 U.S.C. 12132.............................................................................................2, 16
    42 U.S.C. 12133.............................................................................................2, 17
    42 U.S.C. 12134....................................................................................................2
    42 U.S.C. 12211(b)(1) ...................................................................................6, 16

Civil Rights Act of 1964, 42 U.S.C. 2000d *et seq.* (Title VI) .................................17

Education Amendments Act of 1972, 20 U.S.C. 1681 *et seq.* (Title IX)................19

**STATUTES (continued):**                                                **PAGE**

Rehabilitation Act (Section 504)
       29 U.S.C. 705(9)(B)......................................................................24
       29 U.S.C. 705(20)(F)(i) ...........................................................6, 16
       29 U.S.C. 794..............................................................................2
       29 U.S.C. 794(a) .....................................................................2, 17
       29 U.S.C. 794a(a) .......................................................................17

Ark. Code Ann. § 20-9-1501(1) (2021)...................................................11

**REGULATION:**

Exec. Order No. 13,988, § 1, 86 Fed. Reg. 7023 (Jan. 20, 2021)..............................2

**RULE:**

Fed. R. App. P. 29(a) ............................................................................2

**MISCELLANEOUS:**

11 Williston on Contracts § 30:2 (4th ed. 2023) .....................................................23

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

_____

No. 23-1135

DARLENE GRIFFITH,

Plaintiff-Appellant

v.

EL PASO COUNTY, COLORADO, *et al.*,

Defendants-Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
The Honorable Judge Christine M. Arguello
No. 21-cv-00387-CMA-NRN

_____

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
IN SUPPORT OF PLAINTIFFS-APPELLANT
ON THE ISSUES ADDRESSED HEREIN

_____

## INTEREST OF THE UNITED STATES

This appeal requires a determination of the proper level of scrutiny for

equal-protection claims challenging discrimination against transgender people.

The United States has a strong interest in protecting the rights of individuals who

are lesbian, gay, bisexual, transgender, or intersex, and the President has issued an

Executive Order that recognizes the right of all people to be "treated with respect

and dignity" and receive "equal treatment under the law, no matter their gender identity or sexual orientation." Exec. Order No. 13,988, § 1, 86 Fed. Reg. 7023 (Jan. 20, 2021).

Also at issue in this appeal is the proper standard for establishing damages liability for intentional discrimination under Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 12132 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. 794. The Department of Justice has significant responsibility for the enforcement and implementation of Title II and Section 504. See 29 U.S.C. 794(a); 42 U.S.C. 12133, 12134. Because both Title II and Section 504 entitle private plaintiffs to compensatory damages upon a showing of intentional discrimination, the outcome of this appeal will affect the ability of such plaintiffs to obtain complete relief. The United States has a strong interest in ensuring that individuals will serve as private attorneys general to supplement its enforcement efforts. See U.S. Amicus Br. at 1, *Acheson Hotels, LLC* v. *Laufer*, No. 22-429 (S. Ct. filed June 12, 2023) (oral argument scheduled for Oct. 4, 2023).

The United States files this brief under Rule 29(a) of the Federal Rules of Appellate Procedure.

## STATEMENT OF THE ISSUES

The United States addresses the following questions only:

1.  Whether jail policies that treat detained transgender individuals differently based on sex are subject to intermediate scrutiny under the Equal Protection Clause.

2.  Whether the district court erred in holding that, to show "deliberate indifference" necessary to receive compensatory damages under Title II of the ADA or Section 504 of the Rehabilitation Act, a plaintiff must demonstrate that the defendant violated "settled law."[1]

## STATEMENT OF THE CASE

*1.    Factual Background*

Darlene Griffith is a transgender woman involved in the criminal legal system.  A.27.[2]  Griffith has been living as a transgender woman ever since she was diagnosed with gender dysphoria more than 20 years ago.  A.32.  As part of her medically supervised treatment for her gender dysphoria, Griffith "changed her name and altered her physical appearance to conform to her female gender identity,

---

[1]  The United States takes no position on any other issue in this appeal, including whether the policies at issue can satisfy intermediate scrutiny or whether the Sheriff's Office had adequate notice regarding its obligations under the ADA and Rehabilitation Act toward detained individuals with gender dysphoria.

[2]  "A.__" refers to plaintiff-appellant's appendix by page number.

including dressing in feminine attire and taking feminizing hormones, which caused her to develop female secondary characteristics such as breasts, soft skin, a lack of facial hair, and other characteristics typically associated with women." A.32.

In July 2020, Griffith began a period of pretrial detention at the El Paso County Jail.  A.36, A.53.  During intake screening, Griffith notified the Jail and its health-care personnel that she was a transgender woman diagnosed with gender dysphoria.  A.37.  She expressly requested to be housed in the Jail's facility for women in accordance with her gender identity; she also feared sexual abuse from guards and other detained individuals in the Jail's male facility and the humiliation of being searched by male guards.  A.37.  The Jail refused Griffith's request based on an official policy requiring detained transgender individuals to be housed in accordance with their sex assigned at birth.  A.37.

After her initial placement in the Jail's all-male unit, Griffith repeatedly attempted to secure a transfer to the Jail's female facility.  Roughly one week after Griffith objected to being placed in the all-male unit during her intake, a Jail official conducted an "ADA  *  *  *  interview" but concluded that "there were no disability concerns" regarding Griffith's housing.  A.37-A.38.  Griffith also filed numerous grievances concerning her placement in the Jail's all-male unit and requested that health-care providers help arrange her transfer to the female facility,

but Jail officials repeatedly denied Griffith's requests.  A.37-A.40.  In addition,

Griffith filed several grievances about or otherwise objected to the Jail's insistence

on male corrections officers searching her (A.41-A.42, A.44-A.45); Jail officials

refusing to call her by her preferred female name and pronouns (A.46-A.47); and

the Jail's refusal to provide her with women's underwear or to allow her to

purchase the same, as well as lipstick (A.48-A.49).

The Jail's refusal to treat Griffith in accordance with her gender identity

resulted in significant harm.  As a result of being housed in the Jail's all-male unit,

Griffith was subjected to "sexual assault, harassment, and degrading and

transphobic behavior at the hands of male" corrections officers.  A.37; see also

A.41-A.42 (alleging that a male corrections officer sexually harassed and assaulted

her while performing a visual body-cavity search).  In addition, Griffith was

sexually assaulted by detained individuals housed in the all-male unit.  A.43-A.44.

Griffith repeatedly informed Jail medical personnel that being denied the ability to

live as a woman in the Jail was causing her to contemplate self-castration.  A.32.

She eventually attempted that form of self-mutilation by tightly wrapping a rubber

band around her genitalia.  A.33, A.41, A.45, A.48, A.50.

2.    *Procedural History*

Griffith filed suit alleging, among other claims, violations of the Equal

Protection Clause, Title II of the ADA, and Section 504 of the Rehabilitation Act.

A.50-A.52, A.68-A.74.  Among other relief, she seeks compensatory damages.

A.81.

Defendants filed a motion to dismiss (A.21 (ECF No. 132)), which a

magistrate judge recommended that the district court grant in full (A.124).

Although Griffith argued that "discrimination against transgender people is a form

of sex of discrimination" (A.50), the magistrate judge determined that the court

was required by this Court's decision in *Brown* v. *Zavaras*, 63 F.3d 967

(10th Cir. 1995), to apply rational-basis review to Griffith's equal-protection claim

and found that the Jail's housing policy survived that level of scrutiny

(A.105-A.106).

With regard to the Title II and Section 504 claims, the magistrate judge

found that Griffith had adequately pleaded a prima facie case of disability

discrimination.  See A.119, A.121.  In particular, the magistrate judge found that

gender dysphoria constitutes a "disability" under Title II and Section 504 because

that condition does not fall within those statutes' exclusion of "gender identity

disorders not resulting from physical impairments."  A.119; see also 29 U.S.C.

705(20)(F)(i); 42 U.S.C. 12211(b)(1).  But the magistrate judge nevertheless

recommended dismissal of Griffith's Title II and Section 504 claims, finding that

Griffith had not adequately alleged that the El Paso County Sheriff's Office's

failure to accommodate her disability amounted to deliberate indifference to her

federal rights, as is required for certain damages claims under those statutes.  See

A.123.  According to the magistrate judge, Griffith's allegations did not satisfy the

deliberate-indifference standard because it is not "settled law" that gender

dysphoria falls outside the "gender identity disorder" exclusion.  A.119, A.123.

The district court adopted the magistrate judge's report and recommendation

"in full."  A.135.  After entry of judgment, Griffith timely appealed.  A.149-A.151.

## SUMMARY OF THE ARGUMENT

This Court should reverse the dismissal of Griffith's equal-protection claim

and remand with instructions for the district court to apply intermediate scrutiny.

In addition, this Court should clarify the deliberate-indifference standard

applicable to certain damages claims under Title II of the ADA and Section 504 of

the Rehabilitation Act.

1.  The district court erred in holding that rational-basis review rather than

intermediate scrutiny applies to the Jail's policies, which treat transgender detained

individuals differently based on their sex.  The Jail engages in sex classification by

assigning transgender detained individuals to gender-segregated housing based on

their sex assigned at birth.  Similarly, the Jail engages in sex classification by

insisting that detained individuals be searched by a corrections officer who shares

their sex assigned at birth and by refusing to call detained individuals by preferred

names or pronouns that do not align with their sex assigned at birth.  The Jail also

classifies based on sex by treating transgender detained individuals differently
based on their nonconformity with stereotypes in refusing to provide transgender
women with women's underwear or allowing them to purchase the same, as well
as lipstick.

*Brown* v. *Zavaras*, 63 F.3d 967 (10th Cir. 1995), does not preclude this
Court from reviewing the Jail's policies under intermediate scrutiny.  That case
expressly left open the question of what level of scrutiny applies to government
policies that discriminate against transgender people, and it did not address
Griffith's argument that such discrimination is a form of sex discrimination.

2.  The district court also erred in dismissing Griffith's damages claims
under Title II of the ADA and Section 504 of the Rehabilitation Act based on the
conclusion that there is no "settled law" that those statutes protect people with
gender dysphoria from discrimination on that basis.  The deliberate-indifference
standard that applies to certain Title II and Section 504 damages claims contains no
such "settled law" requirement.  That standard concerns the defendant's knowledge
of the *facts* constituting the likely violation—not knowledge that those facts give
rise to violation of the law.  As the Supreme Court has explained, a defendant has
acted with deliberate indifference when an official who "has authority to address
the alleged discrimination and to institute corrective measures" has "actual
knowledge of discrimination" but "fails adequately to respond."  *Gebser* v. *Lago*

*Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

Although the Supreme Court has separately held that statutes enacted under the Spending Clause, U.S. Const. Art. I, § 8, Cl. 1, such as the Rehabilitation Act require that defendants have *legal* notice that they may be subject to private damages actions, *Jackson* v. *Birmingham Bd. of Educ.*, 544 U.S. 167, 181 (2005), that principle provides no support for the district court's "settled law" requirement. As the Supreme Court's decisions demonstrate, a Spending Clause statute can provide the requisite notice of potential liability even if courts disagree about the proper interpretation of the law.

## ARGUMENT

### I

### INTERMEDIATE SCRUTINY APPLIES TO THE JAIL'S POLICIES BECAUSE THEY DIFFERENTIATE BASED ON SEX

The district court erred in holding that rational-basis review rather than intermediate scrutiny applies to the Jail's policies, which treat transgender detained individuals differently based on sex.  A.142-A.143.

*A.    The Jail's Policies Differentiate On The Basis Of Sex*

Intermediate scrutiny applies to the Jail's policies because they depend on sex-based classifications.  See *United States* v. *Virginia*, 518 U.S. 515, 555 (1996). The Jail differentiates based on sex in assigning transgender detained individuals to gender-segregated housing.  A.37.  Under the Jail's housing policy, a detained

individual whose sex assigned at birth is female and whose gender identity is female (*i.e.*, a non-transgender, or cisgender, person) is housed in accordance with her gender identity in the Jail's female facility. But a detained individual like Griffith whose sex assigned at birth is male and whose gender identity is female (*i.e.*, a transgender person) must be assigned to the Jail's all-male unit, thereby denying her housing that accords with her gender identity. The same sort of differentiation is present in the Jail's policies regarding how corrections officers conduct searches and the names and pronouns by which personnel refer to detained individuals. A.41, A.46. Because the Jail insists that detained individuals be searched by a corrections officer who shares their sex assigned at birth, non-transgender detained individuals can be searched by corrections officers who share their gender identity; transgender people cannot. And because the Jail insists that personnel refer to detained individuals by names and pronouns that correspond to their sex assigned at birth, non-transgender detained individuals can be called by their preferred names and pronouns; transgender people cannot.

Because the Jail's policies turn on detained individuals' sex assigned at birth, they inherently involve sex-based classifications. See *Bostock* v. *Clayton*, 140 S. Ct. 1731, 1741 (2020) (explaining that sex discrimination occurs "if changing the employee's sex would have yielded a different choice by the employer"). Other courts of appeals have applied intermediate scrutiny in

- 11 -

circumstances involving the restriction of access to school bathrooms or

participation in athletics based on a student's sex assigned at birth.  The Fourth,

Seventh, Ninth, and Eleventh Circuits have all concluded that such policies are

"inherently based upon a sex-classification" because they "cannot be stated

without referencing sex."  *Whitaker* v. *Kenosha Unified Sch. Dist. No. 1 Bd. of

Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017), cert. dismissed, 138 S. Ct. 1260

(2018); see also *Hecox* v. *Little*, Nos. 20-35813, 20-35815, 2023 WL 5283127, at

*11 (9th Cir. Aug. 17, 2023); *Adams* v. *School Bd. of St. John's Cnty.*, 57 F.4th

791, 803 (11th Cir. 2022) (en banc); *Grimm* v. *Gloucester Cnty. Sch. Bd.*, 972 F.3d

586, 608 (4th Cir. 2020), as amended Aug. 28, 2020, cert. denied, 141 S. Ct. 2878

(2021).  And the Eighth Circuit reached the same conclusion in reviewing a law

that denies medical care to transgender minors on the basis of their "biological

sex."  *Brandt* v. *Rutledge*, 47 F.4th 661, 669-670 (2022) (quoting Ark. Code Ann.

§ 20-9-1501(1) (2021)) (holding that the law must be reviewed under intermediate

scrutiny because "[t]he biological sex of the minor patient is the basis on which the

law distinguishes between those who may receive certain types of medical care and

those who may not").[3]

---

[3]  The Eleventh Circuit recently held that the rational-basis standard applied
to a law similar to the one at issue in *Brandt* because, in the court's view, that law
"is best understood as  *  *  *  target[ing] specific medical interventions for minors,
not one that classifies on the basis of any suspect characteristic under the Equal

The Jail also treats transgender detained individuals differently based on their nonconformity with stereotypes associated with their sex assigned at birth in regulating what undergarments they can wear and what grooming products they can use. Specifically, the Jail provides women's underwear to non-transgender detained individuals whose sex assigned at birth is female, but it refuses to do the same for transgender detained individuals whose sex assigned at birth is male or to allow them to purchase such garments. A.48-A.49. The Jail also allows non-transgender detained individuals whose sex assigned at birth is female to purchase lipstick, but it precludes transgender detained individuals whose sex assigned at birth is male from doing so. A.49. This gives rise to a "reasonable inference" that the Jail's policies concerning garments and grooming are based on stereotypes about how men and women dress. See *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). That inference is reinforced by the fact that an official offered an allegedly pretextual explanation for the Jail's underwear policy, saying that transgender women do not need to "hold female products down there," even though the Jail

---

Protection Clause." *Eknes-Tucker* v. *Governor of Alabama*, No. 22-11707, 2023 WL 5344981, at *15 (Aug. 21, 2023); accord *L.W.* v. *Skrmetti*, 73 F.4th 408, 419, 422 (6th Cir. 2023) (a motions panel reaching the same conclusion in ruling on an emergency stay of a preliminary injunction prior to full appellate briefing, but ackowledging that its views are "initial" and "may be wrong") (oral argument scheduled Sept. 1, 2023). That reasoning has no application to the Jail's policies, which do not regulate medical procedures for minors.

provides women's underwear to non-transgender women who do not menstruate. A.48; see also A.49 (similar justification offered by an El Paso County official).

As the Eleventh Circuit has explained, "discrimination against a transgender individual because of her gender-nonconformity is sex discrimination." *Glenn* v. *Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011); see also *Bostock*, 140 S. Ct. at 1741 (finding sex discrimination where an employer "penalizes a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth"). As a result, when the failure to conform to sex stereotypes serves as the basis for differential treatment, courts have found that intermediate scrutiny applies. See, *e.g.*, *Glenn*, 663 F.3d at 1320; *Grimm*, 972 F.3d at 608-609; *Whitaker*, 858 F.3d at 1051.

Whether or not the Jail's policies could satisfy intermediate scrutiny, they clearly draw lines based on sex, and the district court erred in subjecting them only to rational-basis review. Accordingly, this Court should reverse dismissal of Griffith's equal-protection claim and remand for the district court to consider it under the appropriate level of scrutiny.

B.    Brown *Does Not Require Application Of Rational-Basis Review To Griffith's Equal-Protection Claim*

The district court stated that if it had been writing on a clean slate, it "would not hesitate to find that heightened scrutiny" applies to the prison's policies because they differentiate on the basis of sex. A.143. But the court concluded that

it was required to apply rational-basis review because of this Court's decision in *Brown* v. *Zavaras*, 63 F.3d 967 (10th Cir. 1995). A.143-A.144. That decision does not resolve what level of scrutiny applies in this case.

*Brown* affirmed a district court's dismissal of an equal-protection claim challenging a prison's refusal to provide hormone therapy to a transgender incarcerated person. 63 F.3d at 969, 972. In discussing what level of scrutiny should apply to the claim, this Court noted that the Ninth Circuit had held at that time that transgender people are not a protected class based in part on the conclusion that gender identity is not an "immutable characteristic." *Id.* at 971 (quoting *Holloway* v. *Arthur Anderson & Co.*, 566 F.2d 659, 663 (9th Cir. 1977), recognized as overruled in *Schwenk* v. *Hartford*, 204 F.3d 1187, 1201 (9th Cir. 2000)). But it also observed that, even two decades ago, "research concluding sexual identity may be biological" called into question the Ninth Circuit's reasoning. *Ibid.* Nevertheless, this Court refused to break new ground "*in [that] case*" by applying heightened scrutiny because the plaintiff's "allegations [were] too conclusory to allow proper analysis of [that] legal question." *Ibid.* (emphasis added). This Court thus specifically refused to engage in the legal analysis underlying the level-of-scrutiny debate, leaving that "legal question" open within the circuit. *Ibid.* Indeed, *Brown* carefully held only that "*Mr. Brown* is not a member of a protected class." *Ibid.* (emphasis added). Beyond the case-specific

framing of *Brown*'s holding, the case also did not address Griffith's argument that policies that discriminate against transgender people necessarily differentiate on the basis of sex.

If this Court were to apply rational-basis review in all cases involving discrimination against transgender people, it would stand virtually alone.  See pp. 10-11 & n.3, *supra*.  This Court should therefore hold that intermediate scrutiny applies to the Jail's policies because they differentiate on the basis of sex.[4]

## II

### COMPENSATORY DAMAGES CLAIMS UNDER TITLE II AND SECTION 504 ARE NOT LIMITED TO VIOLATIONS OF "SETTLED LAW"

The district court applied an incorrect legal standard in dismissing Griffith's claims under Title II of the ADA and Section 504 of the Rehabilitation Act. According to the court, the Sheriff's Office did not act with deliberate indifference to Griffith's federal rights, as is required for certain money damages claims under Title II and Section 504, because there is no "settled law" that Griffith's gender dysphoria is a condition that is covered by the ADA or Rehabilitation Act.  A.123.

---

[4]  Because *Brown* expressly limited its holding to the facts of that case and, properly read, left undecided the proper level of scrutiny for other cases involving discrimination against transgender people, this Court also could join the Fourth and Ninth Circuits in holding that transgender people constitute a quasi-suspect class and that classifications based on transgender status are thus entitled to heightened scrutiny.  See *Grimm*, 972 F.3d at 607; *Hecox*, 2023 WL 5283127, at *11.

Both statutes exclude "gender identity disorders not resulting from physical impairments" from their shared definition of "disability." 29 U.S.C. 705(20)(F)(i); 42 U.S.C. 12211(b)(1). Although the court interpreted that exclusion as not applying to gender dysphoria (A.119), it held that the Sheriff's Office could not have acted with deliberate indifference because some other district courts have construed the exclusion differently, meaning, in the court's view, that there is no "settled law" on the topic (A.123).[5] That was error. Neither the deliberate-indifference standard nor the separate requirement that defendants have notice of their legal obligations under Spending Clause statutes limits damages liability under such statutes to violations of "settled law."

A.   *The Deliberate-Indifference Standard Applicable To Certain Title II And Rehabilitation Act Claims Concerns The Defendant's Notice Of The Facts, Not The Law*

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. 12132. Section 504 similarly

---

[5] Since Griffith filed suit, the Fourth Circuit became the first court of appeals to construe the "gender identity disorder" exclusion, holding that "gender dysphoria does not fall within" the provision. *Williams* v. *Kincaid*, 45 F.4th 759, 779-780 (2022), cert. denied, 143 S. Ct. 2414 (2023). Before *Williams*, many district courts had come to the same conclusion. See *Doe* v. *Pennsylvania Dep't of Corr.*, No. 1:20-cv-00023, 2021 WL 1583556, at *8-9 (E.D. Pa. Feb. 19, 2021) (collecting cases).

prohibits recipients of federal financial assistance from discriminating on the basis of disability. 29 U.S.C. 794(a). Because Title II and Section 504 "involve the same substantive standards," courts typically analyze such claims together. *Hamer* v. *City of Trinidad*, 924 F.3d 1093, 1099 (10th Cir.) (citation omitted), cert. denied, 140 S. Ct. 644 (2019).

The remedies available under both Title II and Section 504 are the same as those available under Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d *et seq.* See 29 U.S.C. 794a(a) (making Title VI remedies available for violations of Sections 504); 42 U.S.C. 12133 (incorporating by reference Section 504's remedies into Title II). In *Guardians Ass'n* v. *Civil Service Commission*, the Supreme Court held that plaintiffs suing under Title VI's implied private right of action may obtain compensatory damages only in instances of "intentional discrimination." 463 U.S. 582, 606-607 & n.27 (1983) (opinion of White, J.); see also *Alexander* v. *Sandoval*, 532 U.S. 275, 282-283 (2001) ("In *Guardians*, the Court *held* that private individuals could not recover compensatory damages under Title VI except for intentional discrimination."). Compensatory damages are therefore likewise available under Title II of the ADA and Section 504 only for claims alleging intentional discrimination. *Hamer*, 924 F.3d at 1108.

The Supreme Court has not specified what "intentional discrimination" means in the context of claims alleging that the defendant failed to provide an

accommodation required by the Rehabilitation Act (or, by extension, under Title II of the ADA). But this Court has held, in accordance with nearly uniform authority, that a defendant engages in intentional discrimination—and thus is liable for damages—if it is deliberately indifferent to the plaintiff's need for an accommodation required by those statutes. See *J.V.* v. *Albuquerque Pub. Schs.*, 813 F.3d 1289, 1298 & n.6 (10th Cir. 2016) (applying the deliberate-indifference standard to a Title II damages claim); *Barber* v. *Colorado Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (same for a Section 504 damages claim).[6] Under that standard, a plaintiff need not show that the defendant acted with "ill will or animosity toward the disabled person." *Barber*, 562 F.3d at 1228. Rather, deliberate indifference is established by demonstrating that: "(1) [the defendant acted with] 'knowledge that a harm to a federally protected right is substantially likely," and (2) 'a failure to act upon that . . . likelihood." *Id.* at 1229 (quoting *Duvall* v. *County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).

---

[6] Accord *Basta* v. *Novant Health Inc.*, 56 F.4th 307, 316-317 (4th Cir. 2022); *Lacy* v. *Cook Cnty.*, 897 F.3d 847, 862 (7th Cir. 2018); *S.H.* v. *Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013); *Liese* v. *Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 342 (11th Cir. 2012); *Meagley* v. *City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011); *Loeffler* v. *Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009); *Duvall* v. *County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). But see *Delano-Pyle* v. *Victoria Cnty.*, 302 F.3d 567, 575 (5th Cir. 2002) (stating, without explanation or analysis, that "[t]here is no 'deliberate indifference' standard applicable to public entities for the purpose of the ADA or the [Rehabilitation Act]"), cert. denied, 540 U.S. 810 (2003).

Under that standard, the relevant knowledge concerns the *facts* constituting the likely violation—not knowledge that those facts give rise to a violation of the law.  In *Duvall*, for example, the Ninth Circuit explained that this element of the deliberate-indifference standard is "satisfied" in a case under the Rehabilitation Act and Title II of the ADA if "the plaintiff has alerted the public entity to his need for accommodation."  260 F.3d at 1139.  Similarly, in the Title VI context, this Court has held that the knowledge requirement is satisfied if "a school official who possessed the requisite control over the situation had actual knowledge of  *  *  * the alleged harassment."  *Murrell* v. *School Dist. No. 1*, 186 F.3d 1238, 1247 (10th Cir. 1999).  And in case involving a claim under Title IX of the Education Amendments Act of 1972, 20 U.S.C. 1681 *et seq.*, the Supreme Court held that a plaintiff adequately alleged deliberate indifference despite the existence of a circuit split on whether the relevant form of discrimination—student-on-student sexual harassment—could form the basis of private damages suit under Title IX.  See *Davis* v. *Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 637-638, 653-654 (1999).

That deliberate-indifference standard has its origins in *Gebser* v. *Lago Vista Independent School District*, 524 U.S. 274 (1998).  In that case, the Supreme Court held that the deliberate-indifference standard is appropriate for damages claims under Title IX, based on discriminatory conduct of a school employee rather than the school itself.  *Gebser*, 524 U.S. at 290-291.  Relying on Title IX's "contractual

nature" as a statute enacted under the Spending Clause, the Supreme Court held that a school should not be subject to liability "for a teacher's sexual harassment of a student based on principles of *respondeat superior* or constructive notice, *i.e.*, without actual notice to a school district official." *Id.* at 285.  And the Court further reasoned that, to justify liability, the official's response "must amount to deliberate indifference to discrimination"—that is, "an official decision by the recipient not to remedy the violation." *Id.* at 290.

Title VI, like Title IX, is an antidiscrimination statute enacted under Congress's Spending Clause power, so *Gebser*'s rationale concerning factual notice applies with equal force to damages claims under that statute—and, by extension, to Section 504, which incorporates Title VI's remedies.  See *Cummings* v. *Premier Rehab Keller, PLLC*, 142 S. Ct. 1562, 1569 (2022).  And although the ADA is not a Spending Clause statute, Title II's incorporation by reference of Section 504's remedies means that the same analysis applies to Griffith's claim under that statute.

*Gebser* determined that the deliberate-indifference standard is appropriate for damages claims under Spending Clause statutes because it ensures that recipients of federal financial assistance have adequate "notice" of the alleged violation and an opportunity to take "corrective actions" before liability is imposed.  524 U.S. at 288-289.  But that standard does not require a defendant to

*subjectively* understand that a violation of a federally protected right is likely.

Rather, the standard requires only that a defendant have received "information" that was *objectively* sufficient to "alert" the official about the alleged violation. *Id.* at 291.[7]

Here, there is no dispute that the Sheriff's Office was aware that Griffith had been diagnosed with gender dysphoria and that she had requested accommodations related to that condition. The operative complaint is replete with allegations concerning Griffith's numerous grievances and complaints to Jail officials regarding being housed in an all-male unit, searched by male guards, misgendered, and denied women's underwear and grooming products. A.37-A.41, A.44-A.49. And a Jail official conducted an "ADA  *  *  *  interview" after Griffith protested being housed in an all-male unit (A.37).

---

[7] In that respect, the deliberate-indifference standard applicable to Title II and Section 504 damages claims differs from the standard known by the same name that governs Eighth Amendment conditions-of-confinement claims. That standard, unlike the one at issue here, is "anything but objective." *Farmer* v. *Brennan*, 511 U.S. 825, 841 (1994). Eighth Amendment claims also differ from Title II and Section 504 damages claims because qualified immunity is a defense that typically is available against the former category of claims, see *Grissom* v. *Roberts*, 902 F.3d 1162, 1173-1175 (10th Cir. 2018), but not the latter, see *Everson* v. *Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). The qualified-immunity defense, unlike the deliberate-indifference standard, allows for liability only for violations of "clearly established" law. *Pearson* v. *Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).

B.    *The Legal Notice Required For Damages Liability Under Title II Or Section 504 Does Not Amount To A "Settled Law" Requirement*

Apart from the deliberate-indifference standard's factual-notice component, the Supreme Court also has held that "private damages actions" under Spending Clause statutes like Title VI, Title IX, and the Rehabilitation Act "are available only where recipients of federal funding had adequate notice that they could be liable for the conduct at issue." *Jackson* v. *Birmingham Bd. of Educ.*, 544 U.S. 167, 181 (2005) (citation omitted).  In other words, Spending Clause statutes also require *legal* notice.  The Court has reasoned that Spending Clause legislation is "in the nature of a contract" and that a funding recipient cannot knowingly accept its obligations under the statute if it is "unaware of the conditions imposed by the legislation on its receipt of funds." *Id.* at 182 (brackets and citation omitted).  Thus, a funding recipient must "have notice that it will be liable for a monetary award" before it can be "subject[ed] to damages liability." *Davis*, 526 U.S. at 641-642 (citation omitted).  But that principle also provides no support for the district court's "settled law" requirement.

A  judicial consensus is not a prerequisite for the type of legal notice that the Supreme Court's decisions require.  Statutory interpretation is sometimes necessary to determine the conditions to which a covered entity agreed in accepting federal financial assistance, but that is not in tension with the contractual nature of Spending Clause legislation.  "Interpretation of the language of a contract

is a logical necessity.  * * *  Whatever may be the inaccuracy of expression or the inaptness of the words used in an instrument from a legal perspective, if the intention of the parties can be clearly discovered, the court will give effect to it and construe the words accordingly."  11 Williston on Contracts § 30:2 (4th ed. 2023). Even an unambiguous contractual term will often require courts to "apply[] established rules of interpretation" before determining that the term in question has "a definite or certain meaning as a matter of law."  *Id.* § 30:4.

Whether a covered entity has sufficient notice of its legal obligations is therefore not determined exclusively by a tally of prior judicial opinions.  Indeed, the Supreme Court routinely finds statutes to be clear, even in the face of divided circuit—let alone district—authority.  See, *e.g.*, *Reno* v. *Koray*, 515 U.S. 50, 64-65 (1995) ("A statute is not "ambiguous" for purposes of [the rule] of lenity merely because there is a division of judicial authority over its proper construction." (internal quotation marks and citation omitted)).

The Supreme Court's approach to interpreting the scope of Spending Clause statutes confirms that a violation of "settled law" is not necessary for damages liability under such statutes.  The Court has found Spending Clause statutes to be sufficiently clear to support a private damages action even in the absence of judicial consensus.  For example, the Court has held that "sexual harassment is a form of discrimination for Title IX purposes and that Title IX proscribes

harassment with sufficient clarity" to "serve as the basis for a damages action" even though lower courts had disagreed on that question. *Davis*, 526 U.S. at 650; see also *Franklin* v. *Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 65 (1992).

Similarly, in *Jackson*, the Court held that Title IX's implied private right of action encompasses retaliation claims. 544 U.S. at 174. The Court reached that conclusion by analyzing, among other things, Title IX's "text" and concluding that "[r]etaliation is, by definition, an intentional act" and "a form of 'discrimination' because the complainant is being subjected to differential treatment." *Id.* at 173-174 (citation omitted). Moreover, the Court expressly rejected the defendant's argument that it lacked adequate "notice that it could be held liable for retaliating against those who complain of Title IX violations." *Id.* at 182. It found that the defendant "should have been put on notice" by the Court's decisions "interpret[ing] Title IX's private cause of action broadly to encompass diverse forms of intentional sex discrimination." *Id.* at 183. Similar considerations should have been part of the notice analysis in the context of the ADA and Rehabilitation Act, where Congress itself has instructed that the statutes' "definition of disability * * * shall be construed in favor of broad coverage of individuals * * * to the maximum extent permitted by the terms of" those statutes. 42 U.S.C. 12102(4)(A); see also 29 U.S.C. 705(9)(B) (incorporating by reference the ADA's definition of disability into the Rehabilitation Act). Although *Jackson* observed

that "the Courts of Appeals that had considered the question at the time of the
conduct at issue in th[at] case all had interpreted Title IX to cover retaliation," it
did so to reinforce its analysis and did not suggest that unanimity among courts of
appeals is a prerequisite for adequate notice.  544 U.S. at 183.

Other sources besides judicial opinions and a statute's text also can be
relevant to determining whether a defendant has adequate notice of a particular
legal obligation imposed by a Spending Clause statute.  For example, the *Jackson*
Court considered federal agency regulations implementing Title IX in determining
that a defendant had adequate notice that the statute's private right of action
encompasses retaliation claims.  544 U.S. at 183.

C.    *The District Court Offered No Sound Basis For A "Settled Law"*
      *Requirement*

The sole case that the district court cited to support its "settled law"
requirement is inapposite.  A.123 (citing *Roberts* v. *City of Omaha*, 723 F.3d 966,
975-976 (8th Cir. 2013)).  *Roberts* concerned a police-involved shooting of a man
experiencing a mental-health crisis while he was being taken into custody.  723
F.3d at 969-971.  The plaintiff argued that the city was liable for the shooting
because it had "failed properly to train its employees under the ADA and the
Rehabilitation Act."  *Id.* at 975.  Rejecting that argument, the Eighth Circuit held
that a municipality's failure to train its officers to avoid violations of those statutes

could not constitute deliberate indifference unless the relevant violations were clearly established.  *Id.* at 976.

Members of this Court have debated whether that is the proper approach to deliberate indifference in the context of a failure-to-train claim against a municipality.  In *Contreras* v. *Doña Ana Cnty. Bd. of Cnty. Comm'rs*, 965 F.3d 1114 (10th Cir. 2020), cert. denied, 141 S. Ct. 1382 (2021), Judge Carson reasoned that a "municipality's failure to teach its employees not to violate a person's constitutional rights" can constitute deliberate indifference only if those rights are "clearly established."  *Id.* at 1124 (Carson, J., concurring in part and concurring in the judgment).  Judge Baldock, in contrast, suggested that such a requirement would improperly afford a municipality qualified immunity.  *Id.* at 1139-1141 (Baldock, J., concurring in part and dissenting in part).  But whatever the proper approach in the failure-to-train context, the same logic does not apply where, as here, the plaintiff does not rely on the defendant's failure to train its employees, but instead challenges a funding recipient's official decision not to accommodate her disability.  As Judge Carson put it, when a plaintiff challenges "a municipal act such as the termination of a municipal employee without due process," then "the violated right need not be clearly established because fault and causation obviously belong to the city."  *Id.* at 1124 (Carson, J., concurring in part and concurring in the judgment) (citation omitted).

## CONCLUSION

For the foregoing reasons, this Court should reverse dismissal of Griffith's equal-protection claim and remand with instructions for the district court to apply intermediate scrutiny and clarify the deliberate-indifference standard applicable to Title II and Section 504 damages claims.

Respectfully submitted,

KRISTEN CLARKE
  Assistant Attorney General

s/ Jonathan L. Backer
TOVAH R. CALDERON
JONATHAN L. BACKER
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3528

## CERTIFICATE OF COMPLIANCE

I certify that the attached BRIEF FOR THE UNITED STATES AS

AMICUS CURIAE IN SUPPORT OF PLAINTIFF-APPELLANT:

1.  complies with the type-volume limitation of Federal Rules of Appellate

Procedure 29(a)(5) and 32(a)(7)(B) because it contains 6,090 words, excluding the

parts of the brief exempted by Federal Rule of Appellate Procedure 32(f); and

2.  complies with the typeface requirements of Federal Rule of Appellate

Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate

Procedure 32(a)(6) because it has been prepared in a proportionally spaced

typeface using Microsoft Word for Microsoft 365, in 14-point Times New Roman

font.

s/ Jonathan L. Backer
JONATHAN L. BACKER
  Attorney

Date:  August 28, 2023

## CERTIFICATE OF DIGITAL SUBMISSION

I certify that the electronic version of the foregoing BRIEF FOR THE

UNITED STATES AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF-

APPELLANT, prepared for submission via ECF, complies with the following

requirements:

1.  All required privacy redactions have been made under Federal Rule of

Appellate Procedure 25(a)(5) and Tenth Circuit Rule 25.5;

2.  With the exception of any redactions, every document submitted in

digital form or scanned PDF format is an exact copy of the written document filed

with the clerk; and

3.  The ECF submission has been scanned for viruses with the most recent

version of Windows Defender (Version 1.387.1643.0) and is virus-free according

to that program.

s/ Jonathan L. Backer
JONATHAN L. BACKER
 Attorney

Dated:  August 28, 2023

**CERTIFICATE OF SERVICE**

I certify that on August 28, 2023, I electronically filed the foregoing BRIEF

FOR THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF

PLAINTIFF-APPELLANT with the Clerk of the Court for the United States Court

of Appeals for the Tenth Circuit by using the appellate CM/ECF system, which

will send notice to all counsel of record by electronic mail.  All participants in this

case are registered CM/ECF users.  Pursuant to this Court's General Oder dated

October 26, 2020, and Tenth Circuit Rule 31.5, the United States will mail seven

(7) paper copies of this filing within five business days following receipt of notice

that the electronic filing is compliant.

s/ Jonathan L. Backer
JONATHAN L. BACKER
 Attorney