No. 23-1135

IN THE

# United States Court of Appeals for the Tenth Circuit

DARLENE GRIFFITH, Plaintiff/Appellant,

v.

EL PASO COUNTY, COLORADO; BILL ELDER, individually and in his official capacity as Sheriff of the El Paso County Sheriff's Office; CY GILLESPIE, in his individual capacity; ELIZABETH O'NEAL, in her individual capacity, ANDREW MUSTAPICK, in his individual capacity; DAWNE ELLISS, in her individual capacity; TIFFANY NOE, in her individual capacity; BRANDE FORD, in her individual capacity,
Defendants/Appellees.

On Appeal from the
United States District Court for the District of Colorado
The Honorable Christine M. Arguello
Civil Action No. 1:21-cv-00387-CMA-NRN

**DEFENDANTS' - APPELLEES' SUPPLEMENTAL APPENDIX**

<table>
<tr><td>

NATHAN WHITNEY
OFFICE OF THE COUNTY
ATTORNEY OF EL PASO
COUNTY, COLORADO
200 South Cascade Avenue
Colorado Springs, Colorado 80903
(719) 520-6485

</td><td>

STEVEN MARTYN
OFFICE OF THE COUNTY
ATTORNEY OF EL PASO
COUNTY, COLORADO
200 South Cascade Avenue
Colorado Springs, Colorado 80903
(719) 520-6485

</td></tr>
</table>

Counsel for Defendants/Appellees

# TABLE OF CONTENTS

Page

Docket in District Civil Actio No. 21-cv-00378-CMA-NRN .........………………1

Doc. 132 Docket Entry, Motion to Dismiss by Defendants El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Ellis, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal…………………………….................15

Doc. 147 ressponse to 132 Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) filed by Plaintiff Darlene Griffith…………… 56

Doc. 155 Docket Entry, Reply to Response to 132 Motion to Dismiss by Defendants El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Ellis, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal……………… …108

Doc. 169 Docket Entry, Objection to Docket 165 Report and Rcommendation filed by Plaintiff Darlene Griffith…………………………………… .......................132

Doc. 172 Docket Entry, Response to Objection to Docket 165 filed by Defendants…. ......................................................................................163

CERTIFICATE OF SERVICE ............................................................180

i

ALLMTN,APPEAL,CONMAG,JD4,MJ CIV PP,STAYDI,TERMED

**U.S. District Court - District of Colorado**
**District of Colorado (Denver)**
**CIVIL DOCKET FOR CASE #: 1:21-cv-00387-CMA-NRN**

| | |
|---|---|
| Griffith v. El Paso County Colorado et al | Date Filed: 02/08/2021 |
| Assigned to: Senior Judge Christine M. Arguello | Date Terminated: 03/27/2023 |
| Referred to: Magistrate Judge N. Reid Neureiter | Jury Demand: Plaintiff |
| Demand: $1,000,000 | Nature of Suit: 555 Prisoner - Prison Condition |
| Cause: 42:1983 Prisoner Civil Rights | Jurisdiction: Federal Question |

**Plaintiff**

**Darlene Griffith**                     represented by    **Andrew Joseph McNulty**
                                                           Killmer Lane & Newman LLP
                                                           1543 Champa Street
                                                           Suite 400
                                                           Denver, CO 80202
                                                           303-571-1000
                                                           Email: amcnulty@kln-law.com
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Mari Anne Newman**
                                                           Killmer Lane & Newman LLP
                                                           1543 Champa Street
                                                           Suite 400
                                                           Denver, CO 80202
                                                           303-571-1000
                                                           Fax: 303-571-1001
                                                           Email: mnewman@kln-law.com
                                                           *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**El Paso County Colorado**              represented by    **Bryan E. Schmid**
                                                           El Paso County Attorney's Office
                                                           200 South Cascade Avenue
                                                           Suite 150
                                                           Colorado Springs, CO 80903
                                                           719-520-7032
                                                           Fax: 719-520-6487
                                                           Email: bryanschmid@elpasoco.com
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Christopher Michael Strider**
                                                           El Paso County Attorney's Office
                                                           200 South Cascade Avenue
                                                           Suite 150
                                                           Colorado Springs, CO 80903
                                                           719-520-7264
                                                           Fax: 719-520-6487
                                                           Email: chrisstrider@elpasoco.com
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Nathan James Whitney**
                                                           El Paso County Attorney's Office
                                                           200 South Cascade Avenue
                                                           Suite 150
                                                           Colorado Springs, CO 80903
                                                           719-520-6597
                                                           Fax: 719-520-6487
                                                           Email: nathanwhitney@elpasoco.com
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Steven Ward Martyn**
                                                           El Paso County Attorney's Office
                                                           Civil Division
                                                           200 South Cascade Avenue
                                                           Suite 150
                                                           Colorado Springs, CO 80903-2208

S.A. 001

719-520-7386
Fax: 719-520-6487
Email: StevenMartyn@elpasoco.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Wellpath LLC**
*TERMINATED: 06/07/2022*

represented by   **Ashlee B. Hesman**
Struck Love Bojanowski & Acedo, PLC
3100 West Ray Road
Suite 300
Chandler, AZ 85226
480-420-1600
Fax: 480-420-1695
Email: ahesman@strucklove.com
*TERMINATED: 08/11/2022*

**Catherine O'Brien Crum**
Nixon Shefrin Ogburn Drew, P.C.
5619 DTC Parkway
Suite 1200
Greenwood Village, CO 80111-3061
303-773-3500
Fax: 303-779-0740
Email: cobrien@hallboothsmith.com
*TERMINATED: 11/01/2021*

**Daniel Patrick Struck**
Struck Love Bojanowski & Acedo PLC
3100 West Ray Road
Suite 300
Chandler, AZ 85226
480-420-1600
Fax: 480-420-1699
Email: dstruck@strucklove.com
*TERMINATED: 08/11/2022*

**Kristina R. Rood**
Struck Love Bojanowski & Acedo, PLC
3100 West Ray Road
Suite 300
Chandler, AZ 85226
480-420-1600
Email: krood@strucklove.com
*TERMINATED: 08/11/2022*

**Lauren Elizabeth Kuhn**
Sandberg Phoenix & von Gontard PC
4600 Madison Avenue
Suite 1000
Kansas City, MO 64112
816-627-2783
Email: lkuhn@sandbergphoenix.com
*TERMINATED: 11/01/2021*

**Defendant**

**Christine Mohr**
*in her individual capacity*
*TERMINATED: 06/02/2022*

represented by   **Ashlee B. Hesman**
(See above for address)
*TERMINATED: 08/11/2022*

**Daniel Patrick Struck**
(See above for address)
*TERMINATED: 08/11/2022*

**Kristina R. Rood**
(See above for address)
*TERMINATED: 08/11/2022*

**Defendant**

**Bill Elder**
*Sheriff*

represented by   **Bryan E. Schmid**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher Michael Strider**
(See above for address)

**S.A. 002**

Case 1:21-cv-00387-CMA-NRN   Document 176-2   Filed 04/25/23   USDC Colorado   Page 3 of
4/26/23, 8:48 AM
CM/ECF - U.S. District Court:cod

Appellate Case: 23-1135   Document: 68   Date Filed: 10/20/2023   Page: 5

*ATTORNEY TO BE NOTICED*

**Nathan James Whitney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Ward Martyn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bill (I) Elder**                    represented by  **Bryan E. Schmid**
*Individual capacity*                                 (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Christopher Michael Strider**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Nathan James Whitney**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Steven Ward Martyn**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Cy Gillespie**                      represented by  **Bryan E. Schmid**
*Commander, in his individual capacity*               (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Christopher Michael Strider**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Nathan James Whitney**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Steven Ward Martyn**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Draper**                            represented by  **Christopher Michael Strider**
*Deputy, F/N/U, in his individual capacity*           El Paso County Attorney's Office
*TERMINATED: 05/24/2022*                              200 South Cascade Avenue
                                                      Colorado Springs, CO 80903
                                                      719-520-7264
                                                      Fax: 719-520-6487
                                                      Email: chrisstrider@elpasoco.com
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Nathan James Whitney**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Terry Angela Sample**
                                                      El Paso County Attorney's Office
                                                      200 South Cascade Avenue
                                                      Colorado Springs, CO 80903
                                                      719-520-6485
                                                      Fax: 719-520-6487
                                                      Email: terrysample@elpasoco.com
                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Cynthia Ayad**                      represented by  **Nathan James Whitney**
*Sgt.*                                                (See above for address)
*TERMINATED: 04/19/2021*                              *ATTORNEY TO BE NOTICED*

**Defendant**

**S.A. 003**

Bradberry
*Ms., Deputy*
*TERMINATED: 04/19/2021*

**Interested Party**

**CASE MANAGER/ INMATE COORDINATOR OF:**
**Darlene Griffith**

**Defendant**

**Pete Carey**
*E.P.C. Under Sheriff*
*TERMINATED: 03/04/2021*

**Defendant**

**Eric Carnell**
*Lieutenant*
*TERMINATED: 04/19/2021*

**Defendant**

**Aaron Earnheart**
*Sgt.*
*TERMINATED: 04/19/2021*

**Defendant**

**K. Forrell**
*Prea-Investigator*
*TERMINATED: 04/19/2021*

**Defendant**

**Francs**
*Mr., Deputy*
*TERMINATED: 04/19/2021*

**Defendant**

**James**
*Ms., Deputy; Jane Doe, Deputy; John Doe, Deputy; John Doe, Sgt. for/Works Intake*
*TERMINATED: 04/19/2021*

**Defendant**

**Motta**
*Ms., Deputy*
*TERMINATED: 04/19/2021*

**Defendant**

**Liz O'Neal**
*Manager for Inmate Class*
*TERMINATED: 04/19/2021*

**Defendant**

**Andrew Prehm**
*E.P.C. Chief*
*TERMINATED: 03/04/2021*

**Defendant**

**Sterling**
*Mr., Deputy*
*TERMINATED: 04/19/2021*

**Defendant**

**Elizabeth O'Neal**                                        represented by **Bryan E. Schmid**
*in her individual capacity*                                (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Nathan James Whitney**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Steven Ward Martyn**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**S.A. 004**

**Defendant**

**Andrew Mustapick**                                      represented by   **Bryan E. Schmid**
*in his individual capacity*                                               (See above for address)
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Nathan James Whitney**
                                                                           (See above for address)
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Steven Ward Martyn**
                                                                           (See above for address)
                                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Dawne Elliss**                                         represented by   **Bryan E. Schmid**
*in her individual capacity*                                               (See above for address)
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Nathan James Whitney**
                                                                           (See above for address)
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Steven Ward Martyn**
                                                                           (See above for address)
                                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Tiffany Noe**                                          represented by   **Bryan E. Schmid**
*in her individual capacity*                                               (See above for address)
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Nathan James Whitney**
                                                                           (See above for address)
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Steven Ward Martyn**
                                                                           (See above for address)
                                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Brande Ford**                                          represented by   **Bryan E. Schmid**
*in her individual capacity*                                               (See above for address)
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Nathan James Whitney**
                                                                           (See above for address)
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Steven Ward Martyn**
                                                                           (See above for address)
                                                                           *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/08/2021 | 1 | PRISONER COMPLAINT against Pete Carey, Bill Elder, CY Gillespie, Andrew Prehm, filed by Darlene Griffith. (Attachments: # 1 Envelope)(alave, ) (Entered: 02/08/2021) |
| 02/08/2021 | 2 | Case assigned to Magistrate Judge Gordon P. Gallagher. Text Only Entry. (alave, ) (Entered: 02/08/2021) |
| 02/08/2021 | 3 | Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. 1915. by Plaintiff Darlene Griffith. (Attachments: # 1 Resident Account Statement)(alave, ) (Entered: 02/08/2021) |
| 02/08/2021 | 4 | Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. 1915. by Plaintiff Darlene Griffith. (alave, ) (Entered: 02/08/2021) |
| 02/09/2021 | 5 | ORDER Granting 3 Motion for Leave to Proceed Under 28 U.S.C. § 1915. The Clerk of Court send a copy of this order to the Business Office, Attn: Inmate Accounts, El Paso County Criminal Justice Center,Colorado Springs, Colorado. The Prisoner's Motion and Affidavit for Leave to Proceed on Appeal Pursuant to 28 U.S.C. § 1915 and Fed. R. App. P. 24 (ECF No. 4 ) is DENIED as improperly filed. By Magistrate Judge Gordon P. Gallagher on 02/09/2021. (athom, ) (mailed to facility as ordered) (Entered: 02/09/2021) |
| 02/11/2021 | 6 | ORDER DIRECTING PLAINTIFF TO FILE AMENDED COMPLAINT. If Plaintiff fails to file an amended complaint that complies with this order within the time allowed, some or all of this action may be dismissed without further notice based on the |

**S.A. 005**

| | | allegations of the original Prisoner Complaint. By Magistrate Judge Gordon P. Gallagher on 02/11/2021. (athom, ) (Entered: 02/11/2021) |
|---|---|---|
| 02/18/2021 | 7 | RESPONSE to 5 Order on Motion for Leave to Proceed in Forma Pauperis, by Plaintiff Darlene Griffith. (athom, ) (Entered: 02/19/2021) |
| 02/18/2021 | 8 | MOTION for Appointment of Counsel by Plaintiff Darlene Griffith. (athom, ) (Entered: 02/19/2021) |
| 03/04/2021 | 9 | AMENDED Prisoner COMPLAINT against Cynthia Ayad, Bradberry, Eric Carnell, Drapper, Aaron Earnheart, K. Forrell, Francs, Cy Gillespie, James, Motta, Liz O'Neal, Sterling, filed by Darlene Griffith. (athom, ) (Entered: 03/05/2021) |
| 03/11/2021 | 10 | MINUTE ORDER by Magistrate Judge Gordon P. Gallagher on 03/11/2021. Pursuant to D.C.COLO.LCivR 8.1, the Clerk of Court is directed to assign this matter to Senior Judge Lewis T. Babcock. The undersigned will remain as the assigned magistrate judge. (athom, ) (Entered: 03/11/2021) |
| 03/12/2021 | 11 | ORDER of Reference to United States Magistrate Judge Gordon P. Gallagher. By Judge Lewis T. Babcock on 03/12/2021. All future pleadings should be designated as 21-cv-00387-LTB-GPG. (athom, ) (Entered: 03/12/2021) |
| 03/12/2021 | 12 | RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE re 9 Amended Complaint filed by Darlene Griffith. By Magistrate Judge Gordon P. Gallagher on 03/12/2021. (athom, ) (Entered: 03/12/2021) |
| 03/24/2021 | 13 | MOTION for Emergency Preliminary Injunction and Permanent Injunction Relief by Plaintiff Darlene Griffith. (athom, ) (Entered: 03/25/2021) |
| 03/24/2021 | 14 | MOTION to Make this Action Class Action to Similarly Situated Persons by Plaintiff Darlene Griffith. (athom, ) (Entered: 03/25/2021) |
| 03/29/2021 | 15 | ORDER that Plaintiff's "Motion for Emergency Preliminary Injunction and Permanent Injunctive Relief" (ECF No. 13 ) and "Motion to Make this Action Class Action to Similarly Situated Person(s)"(ECF No. 14 ) are DENIED. That Plaintiff shall have 14 days from the date of this order to file any written objections to the Recommendation of United States Magistrate Judge (ECF No. 12 ), by Judge Lewis T. Babcock on 3/29/2021.(evana, ) (Entered: 03/29/2021) |
| 04/19/2021 | 16 | ORDER TO DISMISS IN PART AND TO DRAW CASE. The Recommendation of United States Magistrate Judge (ECF No. 12 ) is accepted and adopted. The Amended Prisoner Complaint (ECF No. 9 ) is dismissed without prejudice in part and drawn in part follows. The claims asserted against Defendants Jane Doe (Deputy), John Doe (Deputy), and Drapper (Deputy) are drawn to a presiding judge. See D.C.COLO.LCivR 8.1(c). The claims asserted Defendants ERIC CARNELL (LIEUTENANT), CYNTHIA AYAD (SGT.), CY GILLESPIE (COMMANDER FOR INMATE CLASS), LIZ O'NEAL (MANAGE FOR INMATE CLASS), AARON EARNHEART (SGT.), JOHN DOE (SGT. FOR INTAKE), MR. K FORRELL (PREA INVESTIGATOR), MR. STERLING (DEPUTY), MR. FRANCS (DEPUTY), MS. MOTTA (DEPUTY), MS. BRADBERRY (DEPUTY), and MS. JAMES (DEPUTY) are dismissed without prejudice for failure to comply with the pleading requirements of Rule 8, and these Defendants are dismissed as parties to this action. By Judge Lewis T. Babcock on 04/19/2021. This case is randomly reassigned to Magistrate Judge N. Reid Neureiter. All future pleadings should be designated as 21-cv-00387-NRN. (athom, ) (Entered: 04/19/2021) |
| 04/19/2021 | 17 | Magistrate Judge consent form issued pursuant to D.C.COLO.LCivR 40.1, direct assignment of civil actions to full time magistrate judges. (athom, ) (Entered: 04/19/2021) |
| 04/19/2021 | 18 | ORDER SETTING STATUS CONFERENCE FOR PRO SE PLAINTIFF by Magistrate Judge N. Reid Neureiter on 19 April 2021. Consent Form due by 5/25/2021. Status Conference set for 6/8/2021 10:30 AM in Courtroom C203 before Magistrate Judge N. Reid Neureiter. The Status Conference will be conducted via telephone. The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time. (cmadr, ) (Entered: 04/19/2021) |
| 04/19/2021 | 19 | CERTIFICATE of Service by mail by Clerk of Court re 18 to CASE MANAGER/ INMATE COORDINATOR OF: Darlene Griffith #0275824 El Paso County Criminal Justice Center 2739 East Las Vegas Street Colorado Springs, CO 80906. Text Only Entry (cmadr, ) (Entered: 04/19/2021) |
| 04/21/2021 | 20 | CERTIFICATE of Service by Clerk of Court re 16 Order to Dismiss in Part and to Draw Case 9 Amended Prisoner Complaint, 12 Recommendation of United States Magistrate Judge 18 Order Setting Status Conference for Service of Process. (trvo, ) (Entered: 04/21/2021) |
| 04/28/2021 | 21 | WAIVER OF SERVICE Returned Executed. Drapper waiver sent on 4/21/2021, answer due 6/20/2021. (cmadr, ) (Entered: 04/28/2021) |
| 05/04/2021 | 22 | NOTICE of Entry of Appearance by Terry Angela Sample on behalf of DrapperAttorney Terry Angela Sample added to party Drapper(pty:dft) (Sample, Terry) (Entered: 05/04/2021) |
| 05/04/2021 | 23 | NOTICE of Entry of Appearance by Christopher Michael Strider on behalf of DrapperAttorney Christopher Michael Strider added to party Drapper(pty:dft) (Strider, Christopher) (Entered: 05/04/2021) |
| 05/25/2021 | 24 | CONSENT to Jurisdiction of Magistrate Judge by Defendant Drapper All parties do not consent.. (Sample, Terry) (Entered: 05/25/2021) |
| 05/26/2021 | 25 | CASE REASSIGNED pursuant to 24 Consent to Jurisdiction of Magistrate Judge. All parties do not consent. This case is randomly reassigned to Judge Christine M. Arguello. All future pleadings should be designated as 21-cv-00387-CMA. (Text Only Entry) (cmadr, ) (Entered: 05/26/2021) |
| 05/26/2021 | 26 | ORDER REFERRING CASE to Magistrate Judge N. Reid Neureiter. Magistrate Judge Neureiter is designated to conduct ALLMTN proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b). The parties should expect to be given a firm trial setting that is 90 to 120 days from the date of the final pretrial conference and should be available for trial accordingly. Court-sponsored alternative dispute resolution is governed by D.C.COLO.LCivR 16.6. The Magistrate Judge, at his/her discretion, may convene such early neutral evaluation and/or settlement conferences and direct related procedures as may |

| | | facilitate resolution of this case without the necessity of a motion or prior authorization of the undersigned. SO ORDERED by Judge Christine M. Arguello on 5/26/2021. Text Only Entry (cmasec) (Entered: 05/26/2021) |
|---|---|---|
| 05/26/2021 | 27 | MEMORANDUM regarding 8 MOTION to Appoint Counsel by Darlene Griffith. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 5/26/2021. Text Only Entry (cmasec) (Entered: 05/26/2021) |
| 06/08/2021 | 28 | APPOINTMENT ORDER by Magistrate Judge N. Reid Neureiter on 8 June 2021. It is hereby ORDERED that Plaintiff's Motion for Appointment of Counsel (Dkt. # 8 ) is GRANTED. Accordingly, it is further ORDERED that pursuant to D.C.COLO.LAttyR 15(f)(2), the Clerk shall select, notify, and appoint counsel to represent the unrepresented party in this civil matter. The Plaintiff is advised that the Clerk will select counsel from the Panel; however, there is no guarantee that Panel members will undertake representation in every case. The Court cautions Plaintiff that she remains responsible for all scheduled matters, including hearings, depositions, motions, and trial.(cmadr, ) (Entered: 06/08/2021) |
| 06/08/2021 | 29 | COURTROOM MINUTES for proceedings held before Magistrate Judge N. Reid Neureiter: Telephonic Status Conference held on 6/8/2021. Telephonic Motion Hearing set for 8/24/2021 11:00 AM in Courtroom C203 before Magistrate Judge N. Reid Neureiter. The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time. FTR: Courtroom C203. (slibi, ) (Entered: 06/08/2021) |
| 06/15/2021 | 30 | CONSENT to Jurisdiction of Magistrate Judge by Defendant Draper All parties consent.. (Sample, Terry) (Entered: 06/15/2021) |
| 06/15/2021 | 31 | ORDER OF REFERENCE TO 28 U.S.C. § 636(c). On May 25, 2021 and June 15, 2021, the parties notified the Court of their unanimous consent to disposition of the instant action by a United States Magistrate Judge (Docs. ## 24 , 30 ). The above action is referred for disposition to Magistrate Judge N. Reid Neureiter pursuant to 28 U.S.C. § 636(c), by Judge Christine M. Arguello on 6/15/2021. (evana, ) (Entered: 06/15/2021) |
| 06/18/2021 | 32 | MOTION to Dismiss by Defendant Draper. (Strider, Christopher) (Entered: 06/18/2021) |
| 07/15/2021 | 33 | MOTION for Summary Judgment by Plaintiff Darlene Griffith. (evana, ) (Entered: 07/16/2021) |
| 07/19/2021 | 34 | CERTIFICATE of Mailing/Service of *Defendant's Motion to Dismiss* by Defendant Draper. (Strider, Christopher) (Entered: 07/19/2021) |
| 07/21/2021 | 35 | MOTION for Extension of Time to File Opposition to 32 Motion to Dismiss by Plaintiff Darlene Griffith. (cmadr, ) (Entered: 07/21/2021) |
| 07/21/2021 | 36 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 21 July 2021. It is hereby ORDERED that Plaintiff's Motion for Extension of Time to File Opposition to Defendant's Motion to Dismiss (Dkt. # 35 ) is GRANTED as follows. Plaintiff's response to Defendants Motion to Dismiss Amended Complaint (Dkt. # 32 ) is due on or before August 6, 2021. The Court declines Plaintiff's invitation to order sanctions against Defendant. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 07/21/2021) |
| 08/09/2021 | 37 | Opposition (sic) to 32 MOTION to Dismiss filed by Plaintiff Darlene Griffith. (cmadr, ) (Entered: 08/09/2021) |
| 08/17/2021 | 38 | Notice of Pro Bono Appointment. Attorney Andrew McNulty of the law firm of Killmer Lane & Newman LLP has been selected as counsel to represent the Plaintiff, in accordance with the Court's Order of June 8, 2021 and D.C.COLO.LAttyR 15(f) of the U.S. District Court's Local Rules of Practice. Counsel has thirty days to either enter an appearance in the case or to file a Notice Declining Appointment. This Notice of Appointment will be sent to the pro se litigant and selected counsel by the undersigned designated clerk. (ebutl) (Entered: 08/17/2021) |
| 08/18/2021 | 39 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 18 August 2021. In light of the Notice of Pro Bono Appointment (Dkt. # 38 ), it is hereby ORDERED that the Motion Hearing set for August 24, 2021 at 11:00 a.m. is VACATED. A Status Conference is set for September 30, 2021 at 9:30 a.m. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 08/18/2021) |
| 08/23/2021 | 40 | REPLY to Response to 32 MOTION to Dismiss filed by Defendant Draper. (Strider, Christopher) (Entered: 08/23/2021) |
| 09/15/2021 | 41 | NOTICE of Entry of Appearance by Andrew Joseph McNulty on behalf of Darlene GriffithAttorney Andrew Joseph McNulty added to party Darlene Griffith(pty:pla) (McNulty, Andrew) (Entered: 09/15/2021) |
| 09/24/2021 | 42 | MINUTE ORDER. The upcoming Status Conference on September 30, 2021 at 9:30 a.m. in this matter shall be conducted via telephone. The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time. The Court notes that the parties may hear the conclusion of a prior hearing at the time they call in, and are instructed to simply wait until their case is called. SO ORDERED, by Magistrate Judge N. Reid Neureiter on September 24, 2021. Text Only Entry. (rvill, ) (Entered: 09/24/2021) |
| 09/29/2021 | 43 | NOTICE of Entry of Appearance by Nathan James Whitney on behalf of DraperAttorney Nathan James Whitney added to party Draper(pty:dft) (Whitney, Nathan) (Entered: 09/29/2021) |
| 09/30/2021 | 44 | COURTROOM MINUTES for Telephonic Status Conference held before Magistrate Judge N. Reid Neureiter on 9/30/2021. Plaintiff shall file Amended Complaint by October 4, 2021. Defendants shall be served by October 22, 2021. A Telephonic Status Conference is set for November 10, 2021 at 2:30 p.m. before Magistrate Judge N. Reid Neureiter. The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time. FTR: Courtroom C203. (rvill, ) (Entered: 09/30/2021) |
| 10/04/2021 | 45 | Unopposed MOTION for Leave to *File Second Amended Complaint* by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 10/04/2021) |
| 10/04/2021 | 46 | AMENDED COMPLAINT *Second Amended Complaint* against Draper, Bill Elder, Cy Gillespie, El Paso County Colorado, Wellpath LLC, Christine Mohr, Doctor Jane Roe, filed by Darlene Griffith.(McNulty, Andrew) (Entered: 10/04/2021) |
| 10/04/2021 | 47 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 4 October 2021. is hereby ORDERED that Plaintiff's Motion for Leave to File Second Amended Complaint (Dkt. # 45 ) is GRANTED finding good cause shown. Plaintiff's Second Amended |

| | | Complaint and Jury Demand (Dkt. # 46 ) is ACCEPTED as the operative pleading in this case. The Clerk shall amend the case caption accordingly. It is further ORDERED that Defendants' Motion to Dismiss (Dkt. # 32 ) is DENIED as moot. It is further ORDERED that Plaintiff's Motion for Summary Judgment (Dkt. # 33 ), which Plaintiff filed before counsel entered his appearance on her behalf, is DENIED WITHOUT PREJUDICE for failing to comply with Rule 56(c). PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 10/04/2021) |
|---|---|---|
| 10/15/2021 | 48 | MOTION for Preliminary Injunction , *Expedited Briefing Schedule, and Expedited Hearing* by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 10/15/2021) |
| 10/15/2021 | 49 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 15 October 2021. It is hereby ORDERED that a Status Conference is set on October 19, 2021 at 3:30 p.m. to address the briefing schedule for Plaintiffs Motion for Preliminary Injunction 48 , status of service of process on Defendants, and status of Defendants' consent to the jurisdiction of a magistrate judge. The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time. (csarr, ) (Entered: 10/15/2021) |
| 10/15/2021 | 50 | WAIVER OF SERVICE Returned Executed by Darlene Griffith. El Paso County Colorado waiver sent on 10/15/2021, answer due 12/14/2021. (McNulty, Andrew) (Entered: 10/15/2021) |
| 10/15/2021 | 51 | NOTICE of Entry of Appearance by Mari Anne Newman on behalf of Darlene GriffithAttorney Mari Anne Newman added to party Darlene Griffith(pty:pla) (Newman, Mari) (Entered: 10/15/2021) |
| 10/19/2021 | 52 | COURTROOM MINUTES for Telephonic Status Conference held before Magistrate Judge N. Reid Neureiter on 10/19/2021. Defendant's response to the Motion for Preliminary Injunction is due by October 29, 2021. Plaintiff's reply is due by November 5, 2021. Witness and Exhibit lists shall be exchanged no later than 12:00 p.m. on November 10, 2021. A Preliminary Injunction Hearing is set for November 12, 2021 at 9:00 a.m. before Magistrate Judge N. Reid Neureiter in Courtroom C203, Second floor, Bryon G. Rogers Courthouse. FTR: Courtroom C203. (rvill, ) (Entered: 10/19/2021) |
| 10/20/2021 | 53 | MINUTE ORDER VACATING PRELIMINARY INJUNCTION HEARING AND REASSIGNING CASE TO DISTRICTJUDGEby Magistrate Judge N. Reid Neureiter on 20 October 2021. Plaintiff in this case seeks a preliminary injunction and an expedited hearing. Dkt. # 48 . However, there is a defendant in the case, WellPath LLC, that has not yet appeared. This Court can only preside over dispositive matters and preliminary injunction matters where all parties have consented to proceed before a magistrate judge. Wherefore, it is hereby ORDERED that the preliminary injunction hearing set for November 12, 2021 is VACATED. The Clerk is ORDERED to reassign this matter to the appropriate district judge. The expedited briefing schedule set on October 19, 2021 (see Dkt. # 52 ) remains in place, subject to modification by the district judge to whom the matter will be reassigned. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 10/20/2021) |
| 10/20/2021 | 54 | CASE REASSIGNED pursuant to 53 MINUTE ORDER VACATING PRELIMINARY INJUNCTION HEARING AND REASSIGNING CASE TO DISTRICT JUDGE. Pursuant to D.C.COLO.LCivR 40.1, the case has been directly reassigned to Judge Christine M. Arguello. All future pleadings should be designated as 21-cv-00387-CMA. (Text Only Entry) (cmadr, ) (Entered: 10/21/2021) |
| 10/21/2021 | 55 | NOTICE of Entry of Appearance by Catherine O'Brien Crum on behalf of Wellpath LLCAttorney Catherine O'Brien Crum added to party Wellpath LLC(pty:dft) (O'Brien Crum, Catherine) (Entered: 10/21/2021) |
| 10/21/2021 | 56 | WAIVER OF SERVICE Returned Executed by Wellpath LLC. Wellpath LLC waiver sent on 10/21/2021, answer due 12/20/2021. (O'Brien Crum, Catherine) (Entered: 10/21/2021) |
| 10/21/2021 | 57 | NOTICE of Entry of Appearance by Lauren Elizabeth Kuhn on behalf of Wellpath LLCAttorney Lauren Elizabeth Kuhn added to party Wellpath LLC(pty:dft) (Kuhn, Lauren) (Entered: 10/21/2021) |
| 10/28/2021 | 58 | ORDER REFERRING CASE to Magistrate Judge N. Reid Neureiter. Magistrate Judge Neureiter is designated to conduct ALLMTN proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b). Court-sponsored alternative dispute resolution is governed by D.C.COLO.LCivR 16.6. The Magistrate Judge, at his/her discretion, may convene such early neutral evaluation and/or settlement conferences and direct related procedures as may facilitate resolution of this case without the necessity of a motion or prior authorization of the undersigned. SO ORDERED by Judge Christine M. Arguello on 10/28/2021. Text Only Entry (cmasec) (Entered: 10/28/2021) |
| 10/28/2021 | 59 | MEMORANDUM regarding 48 MOTION for Preliminary Injunction , *Expedited Briefing Schedule, and Expedited Hearing* filed by Darlene Griffith. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 10/28/2021. Text Only Entry (cmasec) (Entered: 10/28/2021) |
| 10/28/2021 | 60 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 28 October 2021. It is hereby ORDERED that a Status Conference is set on November 2, 2021 at 9:00 a.m. to address the briefing schedule for Plaintiffs Motion for Preliminary Injunction (Dkt. # 48 ). The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 10/28/2021) |
| 10/29/2021 | 61 | NOTICE of Entry of Appearance by Daniel Patrick Struck on behalf of Wellpath LLCAttorney Daniel Patrick Struck added to party Wellpath LLC(pty:dft) (Struck, Daniel) (Entered: 10/29/2021) |
| 10/29/2021 | 62 | NOTICE of Entry of Appearance by Ashlee B. Hesman on behalf of Wellpath LLCAttorney Ashlee B. Hesman added to party Wellpath LLC(pty:dft) (Hesman, Ashlee) (Entered: 10/29/2021) |
| 10/29/2021 | 63 | NOTICE of Entry of Appearance by Kristina R. Rood on behalf of Wellpath LLCAttorney Kristina R. Rood added to party Wellpath LLC(pty:dft) (Rood, Kristina) (Entered: 10/29/2021) |
| 10/29/2021 | 64 | RESPONSE to 48 MOTION for Preliminary Injunction , *Expedited Briefing Schedule, and Expedited Hearing* Attorney Nathan James Whitney added to party El Paso County Colorado(pty:dft), Attorney Nathan James Whitney added to party Bill Elder(pty:dft), Attorney Nathan James Whitney added to party Bill (I) Elder(pty:dft), Attorney Nathan James Whitney added to party Cy Gillespie(pty:dft) filed by Defendants Draper, El Paso County Colorado, Bill Elder, Bill (I) Elder, Cy Gillespie. (Whitney, Nathan) (Entered: 10/29/2021) |

S.A. 008

| | | |
|---|---|---|
| 10/29/2021 | 65 | MOTION to Withdraw as Attorney *Pursuant to D.C.Colo.LAttyR. 5(b)* by Defendant Wellpath LLC. (O'Brien Crum, Catherine) (Entered: 10/29/2021) |
| 11/01/2021 | 66 | ORDER: Granting 65 Motion to Withdraw as Attorney. Attorneys Catherine O'Brien Crum and Lauren Kuhn are permitted to withdraw as counsel for Defendant Wellpath, LLC. The Court notes that Defendant continues to be represented by Mss. Hesman and Rood and Mr. Struck. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Mss. O'Brien Crum and Kuhn's email addresses from future ECF filings and electronic notifications in this case. SO ORDERED by Judge Christine M. Arguello on 11/1/2021. Text Only Entry(cmasec) (Entered: 11/01/2021) |
| 11/02/2021 | 67 | COURTROOM MINUTES ENTRY for proceedings held before Magistrate Judge N. Reid Neureiter: Telephonic Status Conference on 11/2/2021. A two-day Preliminary Injunction Hearing is set to begin at 9:00 a.m. on December 9, 2021 before Magistrate Judge N. Reid Neureiter in Courtroom C203, Second floor, Bryon G. Rogers Courthouse, 1929 Stout Street, Denver, Colorado 80294. The parties shall exchange and file with the court witness and exhibit lists by the close of business day, no later than December 6, 2021. Plaintiff is entitled to 5 requests for production with a 14-day response time. The request should be reasonably related to the issues in the Preliminary Injunction Hearing. Plaintiff shall also prepare a proposed scheduling order for review at the end of the Preliminary Injunction Hearing. FTR: Courtroom C203. (rvill, ) (Entered: 11/02/2021) |
| 11/05/2021 | 68 | REPLY to Response to 48 MOTION for Preliminary Injunction *, Expedited Briefing Schedule, and Expedited Hearing* filed by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 11/05/2021) |
| 11/18/2021 | 69 | Joint MOTION for Protective Order by Defendants Draper, El Paso County Colorado, Bill Elder, Cy Gillespie. (Attachments: # 1 Proposed Order (PDF Only) Exhibit 1- Proposed Stipulated Protective Order)(Whitney, Nathan) (Entered: 11/18/2021) |
| 11/22/2021 | 70 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 22 November 2021. It is hereby ORDERED that a Telephonic Discovery Hearing is set for November 23, 2021 at 1:30 p.m. The parties are directed to prepare and email to Chambers by the close of business on November 22, 2021 a short (no longer than ten pages) joint statement setting forth each sides respective position concerning the dispute. The parties are advised that the joint statement will be attached to the courtroom minutes and made a part of the record. Counsel for the parties are also directed to jointly call Court Chambers, 303-335-2403, at the designated time. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 11/22/2021) |
| 11/23/2021 | 71 | COURTROOM MINUTES for proceedings held before Magistrate Judge N. Reid Neureiter: Telephonic Discovery Hearing held on 11/23/2021. FTR: Courtroom C203. (Attachments: # 1 Joint Statement Re: Discovery Dispute, # 2 Exhibit 1) (rvill, ) (Entered: 11/23/2021) |
| 11/28/2021 | 72 | MEMORANDUM regarding 69 Joint MOTION for Protective Order filed by Cy Gillespie, El Paso County Colorado, Bill Elder, Draper. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 11/28/2021. Text Only Entry (cmasec) (Entered: 11/28/2021) |
| 11/29/2021 | 73 | MOTION for Extension of Time to File Answer or Otherwise Respond by Defendants Draper, El Paso County Colorado, Bill Elder, Bill (I) Elder, Cy Gillespie. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order for Extension of Time to Answer/Respond)(Whitney, Nathan) (Entered: 11/29/2021) |
| 11/29/2021 | 74 | MEMORANDUM regarding 73 MOTION for Extension of Time to File Answer or Otherwise Respond filed by Cy Gillespie, Bill (I) Elder, El Paso County Colorado, Bill Elder, Draper. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 11/29/2021. Text Only Entry (cmasec) (Entered: 11/29/2021) |
| 11/29/2021 | 75 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 29 November 2021. It is hereby ORDERED that the parties' Joint Motion for a Protective Order (Dkt. # 69 ) is GRANTED finding good cause shown. The proposed Stipulated Protective Order (Dkt. #69-1) is APPROVED and made an Order of Court. It is further ORDERED that County Defendants' Unopposed Motion for Extension of Time to File a Responsive Pleading (Dkt. # 73 ) is GRANTED. County Defendants shall answer or otherwise respond to Plaintiff's Second Amended Complaint (Dkt. # 46 ) on or before December 17, 2021. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 11/29/2021) |
| 11/29/2021 | 76 | STIPULATED PROTECTIVE ORDER by Magistrate Judge N. Reid Neureiter on 29 November 2021. (cmadr, ) (Entered: 11/29/2021) |
| 12/01/2021 | 77 | Unopposed MOTION for Writ of Habeas Corpus ad testificandum by Plaintiff Darlene Griffith. (Attachments: # 1 Proposed Document Writ of Habeas Corpus ad Testificandum)(McNulty, Andrew) (Entered: 12/01/2021) |
| 12/02/2021 | 78 | MEMORANDUM regarding 77 Unopposed MOTION for Writ of Habeas Corpus ad testificandum filed by Darlene Griffith. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 12/2/2021. Text Only Entry (cmasec) (Entered: 12/02/2021) |
| 12/02/2021 | 79 | WRIT of HABEAS CORPUS AD TESTIFICANDUM issued. (cmadr, ) (Entered: 12/02/2021) |
| 12/02/2021 | 80 | ORDER granting 77 Motion for Writ of Habeas Corpus ad Testificandum by Magistrate Judge N. Reid Neureiter on 2 December 2021. Text Only Entry (cmadr, ) (Entered: 12/02/2021) |
| 12/06/2021 | 81 | Unopposed MOTION for Extension of Time to *File and Exchange Plaintiff's Exhibit List and Make Disclosures* by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 12/06/2021) |
| 12/06/2021 | 82 | MEMORANDUM regarding 81 Unopposed MOTION for Extension of Time to *File and Exchange Plaintiff's Exhibit List and Make Disclosures* filed by Darlene Griffith. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 12/6/2021. Text Only Entry (cmasec) (Entered: 12/06/2021) |
| 12/06/2021 | 83 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 6 December 2021. It is hereby ORDERED that Plaintiff's Unopposed Motion for Extension of Time to File and Exchange Exhibit Lists and Make Disclosure's (Dkt. # 81 ) is GRANTED finding good cause shown. Plaintiff shall have up to and including December 7, 2021 to exchange and file her Exhibit List and to make her appropriate disclosures. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 12/06/2021) |

**S.A. 009**

| Date | No. | Description |
|---|---|---|
| 12/06/2021 | 84 | MOTION for Extension of Time to *Exchange Witness and Exhibit Lists for Preliminary Injunction Hearing* by Defendants Draper, El Paso County Colorado, Bill Elder, Cy Gillespie. (Whitney, Nathan) (Entered: 12/06/2021) |
| 12/06/2021 | 85 | Witness List by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 12/06/2021) |
| 12/06/2021 | 86 | Witness List by Defendant El Paso County Colorado. (Whitney, Nathan) (Entered: 12/06/2021) |
| 12/07/2021 | 87 | Exhibit List *for Preliminary Injunction Hearing* by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 12/07/2021) |
| 12/07/2021 | 88 | Exhibits in Support *for Preliminary Injunction Hearing* by Defendants Draper, El Paso County Colorado, Bill Elder, Cy Gillespie. (Whitney, Nathan) (Entered: 12/07/2021) |
| 12/08/2021 | 89 | MEMORANDUM regarding 84 MOTION for Extension of Time to *Exchange Witness and Exhibit Lists for Preliminary Injunction Hearing* filed by Cy Gillespie, El Paso County Colorado, Bill Elder, Draper. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 12/8/2021. Text Only Entry (cmasec) (Entered: 12/08/2021) |
| 12/08/2021 | 90 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 8 December 2021. It is hereby ORDERED that Defendants' Unopposed Motion for Extension of Time to File and Exchange Witness and Exhibit List for the Preliminary Injunction Hearing (Dkt. # 84 ) is GRANTED finding good cause shown. Defendants shall have up to and including December 7, 2021 to exchange and file their Witness and Exhibit List. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 12/08/2021) |
| 12/08/2021 | 91 | STIPULATION by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 12/08/2021) |
| 12/08/2021 | 92 | MINUTE ORDER by Magistrate Judge N. Reid Neureiter on 12/8/2021. In light of the parties' Stipulation (Dkt. # 91 ), it is hereby ORDERED that Plaintiff's Motion for Preliminary Injunction (Dkt. # 48 ) is DENIED as moot and the Preliminary Injunction Hearing set for December 9, 2021 at 9:00 a.m. is VACATED. It is further ORDERED that the terms of the Stipulation are ADOPTED and made an Order of Court. (rvill, ) (Entered: 12/08/2021) |
| 12/09/2021 | 93 | NOTICE of Entry of Appearance by Daniel Patrick Struck on behalf of Christine MohrAttorney Daniel Patrick Struck added to party Christine Mohr(pty:dft) (Struck, Daniel) (Entered: 12/09/2021) |
| 12/09/2021 | 94 | NOTICE of Entry of Appearance by Ashlee B. Hesman on behalf of Christine MohrAttorney Ashlee B. Hesman added to party Christine Mohr(pty:dft) (Hesman, Ashlee) (Entered: 12/09/2021) |
| 12/09/2021 | 95 | NOTICE of Entry of Appearance by Kristina R. Rood on behalf of Christine MohrAttorney Kristina R. Rood added to party Christine Mohr(pty:dft) (Rood, Kristina) (Entered: 12/09/2021) |
| 12/09/2021 | 96 | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re 46 Amended Complaint *as to Defendant Mohr* by Defendants Christine Mohr, Wellpath LLC. (Attachments: # 1 Proposed Order (PDF Only))(Hesman, Ashlee) (Entered: 12/09/2021) |
| 12/09/2021 | 97 | MEMORANDUM regarding 96 Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re 46 Amended Complaint *as to Defendant Mohr* filed by Wellpath LLC, Christine Mohr. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 12/9/2021. Text Only Entry (cmasec) (Entered: 12/09/2021) |
| 12/09/2021 | 98 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 9 December 2021. It is hereby ORDERED that Defendant Dr. Christine Mohr's Unopposed Motion for Extension of Time to File Responsive Pleading (Dkt. # 96 ) is GRANTED. Dr. Mohr shall answer or otherwise respond to Plaintiff's Amended Complaint (Dkt. # 46 ) on or before December 20, 2021. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 12/09/2021) |
| 12/16/2021 | 99 | Joint MOTION to Stay Case Pending Settlement Conference by Defendants Draper, El Paso County Colorado, Bill Elder, Cy Gillespie. (Attachments: # 1 Proposed Order (PDF Only) )(Whitney, Nathan) (Entered: 12/16/2021) |
| 12/29/2021 | 100 | MEMORANDUM regarding 99 Joint MOTION to Stay *Case Pending Settlement Conference*Joint MOTION for Hearing/Conference *for Purposes of Settlement* filed by Cy Gillespie, El Paso County Colorado, Bill Elder, Draper. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 12/29/2021. Text Only Entry (cmasec) (Entered: 12/29/2021) |
| 01/04/2022 | 101 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 4 January 2022. This case is before the Court on It is hereby ORDERED that the parties' Joint Motion for Settlement Conference and to Stay Case Pending Settlement Conference (Dkt. # 99 ) is GRANTED as follows. The parties are directed to jointly contact Chambers (303-335-2403) no later than January 7, 2022 to schedule a Settlement Conference. It is further ORDERED that this matter is STAYED until such time as a Settlement Conference is scheduled or until further Order of the Court. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 01/04/2022) |
| 01/24/2022 | 102 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 24 January 2022. It is hereby ORDERED that a Settlement Conference is set on April 8, 2022 at 9:00 a.m. in Courtroom C-203, Second Floor, Byron G. Rogers U.S. Courthouse, 1929 Stout Street, Denver, Colorado. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 01/24/2022) |
| 02/24/2022 | 103 | MOTION for Leave to *Appear Telephonically at April 8, 2022 Settlement Conference* 102 Order, by Defendants Christine Mohr, Wellpath LLC. (Hesman, Ashlee) (Entered: 02/24/2022) |
| 02/24/2022 | 104 | MEMORANDUM regarding 103 MOTION for Leave to *Appear Telephonically at April 8, 2022 Settlement Conference* 102 Order, filed by Wellpath LLC, Christine Mohr. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 2/24/2022. Text Only Entry (cmasec) (Entered: 02/24/2022) |
| 03/01/2022 | 105 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 1 March 2022. It is hereby ORDERED that Defendants Wellpath and Mohr's Unopposed Motion for Leave to Appear Telephonically at April 8, 2022 Settlement Conference (Dkt. # 103 ) is GRANTED IN PART and DENIED IN PART as follows. The Wellpath representative is given leave to attend the April 8, 2022 Settlement Conference by telephone, but the Court expects Wellpath's counsel to appear in person. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 03/01/2022) |

S.A. 010

| | | |
|---|---|---|
| 03/17/2022 | 106 | Unopposed MOTION for Leave to Appear *CLIENTS AND ADJUSTER TO APPEAR TELEPHONICALLY AT APRIL 8, 2022 SETTLEMENT CONFERENCE AND REQUEST FOR STATUS CONFERENCE* by Defendants Draper, El Paso County Colorado, Bill Elder, Bill (I) Elder, Cy Gillespie. (Attachments: # 1 Exhibit A. Resolution 20-19)(Whitney, Nathan) (Entered: 03/17/2022) |
| 03/17/2022 | 107 | MEMORANDUM regarding 106 Unopposed MOTION for Leave to Appear *CLIENTS AND ADJUSTER TO APPEAR TELEPHONICALLY AT APRIL 8, 2022 SETTLEMENT CONFERENCE AND REQUEST FOR STATUS CONFERENCE* filed by Cy Gillespie, Bill (I) Elder, El Paso County Colorado, Bill Elder, Draper. Motion referred to Magistrate Judge Christine M. Arguello on 3/17/2022. Text Only Entry (cmasec) (Entered: 03/17/2022) |
| 03/18/2022 | 108 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 18 March 2022. It is hereby ORDERED that the County Defendants' Unopposed Motion for Clients and Adjuster to Appear Telephonically at April 8, 2022 Settlement Conference and Request for Status Conference (Dkt. # 106 ) is GRANTED IN PART and DENIED IN PART as follows. Defendants Elder and Gillespie and El Paso County's Adjuster are given leave to attend the Settlement Conference telephonically. The Court understands that the County Defendants' settlement authority will be contingent upon final approval by a vote of the El Paso County Board of County Commissioners, and the Settlement Conference will proceed with that understanding. No status conference is necessary. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 03/18/2022) |
| 04/08/2022 | 109 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 8 April 2022. It is hereby ORDERED that a Scheduling Conference is set for April 29, 2022 at 10:00 a.m. The proposed Scheduling Order is due on or before April 22, 2022. The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 04/08/2022) |
| 04/08/2022 | 110 | MINUTE ENTRY for proceedings held before Magistrate Judge N. Reid Neureiter: Settlement Conference held on 4/8/2022. (rvill, ) (rvill, ). (Entered: 04/11/2022) |
| 04/22/2022 | 111 | Proposed Scheduling Order by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 04/22/2022) |
| 04/22/2022 | 112 | CONSENT to Jurisdiction of Magistrate Judge by Defendants Christine Mohr, Wellpath LLC All parties do not consent.. (Hesman, Ashlee) (Entered: 04/22/2022) |
| 04/29/2022 | 113 | MINUTE ENTRY for proceedings held before Magistrate Judge N. Reid Neureiter: Telephonic Scheduling Conference held on 4/29/2022. Discovery due by 2/15/2023. Dispositive Motions due by 3/17/2023. Telephonic Status Conference set for 10/11/2023 at 11:30 AM in Courtroom C203 before Magistrate Judge N. Reid Neureiter. The parties are directed to call the conference line asa participant at (888) 398-2342, Access Code 5755390# at the scheduled time. FTR: Courtroom C203. (rvill, ) (Entered: 04/29/2022) |
| 04/29/2022 | 114 | SCHEDULING ORDER by Magistrate Judge N. Reid Neureiter on April 29, 2022. (rvill, ) (Entered: 04/29/2022) |
| 05/09/2022 | 115 | STIPULATION re 76 Protective Order *(Joint Stipulation)* by Defendants Draper, El Paso County Colorado, Bill Elder, Bill (I) Elder, Cy Gillespie. (Strider, Christopher) (Entered: 05/09/2022) |
| 05/24/2022 | 116 | STIPULATION of Dismissal of Party *Defendant Jeremy Draper* by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 05/24/2022) |
| 06/01/2022 | 117 | NOTICE of Settlement by Defendants Christine Mohr, Wellpath LLC (Rood, Kristina) (Entered: 06/01/2022) |
| 06/01/2022 | 118 | ORDER: In light of the parties' 117 Notice of Settlement, the parties are DIRECTED to file appropriate dismissal documents in this matter by NOT LATER THAN 6/22/2022. SO ORDERED Dismissal Paper due by 6/22/2022. by Judge Christine M. Arguello on 6/1/2022. Text Only Entry (cmasec) (Entered: 06/01/2022) |
| 06/02/2022 | 119 | STIPULATION of Dismissal of Party *Dr. Christine Mohr with Prejudice* by Defendants Christine Mohr, Wellpath LLC. (Rood, Kristina) (Entered: 06/02/2022) |
| 06/02/2022 | 120 | Unopposed MOTION for Leave to *File Third Amended Complaint* by Plaintiff Darlene Griffith. (Attachments: # 1 Exhibit 1 - Third Amended Complaint - REDLINE, # 2 Exhibit 2 - Third Amended Complaint - CLEAN)(McNulty, Andrew) (Entered: 06/02/2022) |
| 06/02/2022 | 121 | Pursuant to 119 STIPULATION of Dismissal of Party, Defendant Christine Mohr (in her individual capacity) is terminated. Text Only Entry. (sphil, ) (Entered: 06/02/2022) |
| 06/03/2022 | 122 | STIPULATION of Dismissal of Party *Wellpath, LLC with Prejudice* by Defendant Wellpath LLC. (Rood, Kristina) (Entered: 06/03/2022) |
| 06/07/2022 | 123 | ORDER: Granting 120 Motion for Leave to File Third Amended Complaint. The Third Amended Complaint (attached as Exhibit [120-2] is accepted for filing and shall be filed by the Clerks Office as a separate document. SO ORDERED by Judge Christine M. Arguello on 6/7/2022. Text Only Entry(cmasec) (Entered: 06/07/2022) |
| 06/07/2022 | 124 | THIRD AMENDED COMPLAINT and Jury Demand against Bill Elder, Bill (I) Elder, El Paso County Colorado, Cy Gillespie, Brande Ford, Elizabeth O'Neal, Andrew Mustapick, Tiffany Noe, Dawne Elliss, filed by Darlene Griffith.(sphil, ) Modified on 6/7/2022 (Amended compliant filed per [#123] order. (sphil, ). (Entered: 06/07/2022) |
| 06/15/2022 | 125 | WAIVER OF SERVICE Returned Executed by Darlene Griffith. Andrew Mustapick waiver sent on 6/7/2022, answer due 8/6/2022. (McNulty, Andrew) (Entered: 06/15/2022) |
| 06/15/2022 | 126 | WAIVER OF SERVICE Returned Executed by Darlene Griffith. Brande Ford waiver sent on 6/7/2022, answer due 8/6/2022. (McNulty, Andrew) (Entered: 06/15/2022) |
| 06/15/2022 | 127 | WAIVER OF SERVICE Returned Executed by Darlene Griffith. Dawne Elliss waiver sent on 6/7/2022, answer due 8/6/2022. (McNulty, Andrew) (Entered: 06/15/2022) |

| 06/15/2022 | 128 | WAIVER OF SERVICE Returned Executed by Darlene Griffith. Elizabeth O'Neal waiver sent on 6/7/2022, answer due 8/6/2022. (McNulty, Andrew) (Entered: 06/15/2022) |
| 06/15/2022 | 129 | WAIVER OF SERVICE Returned Executed by Darlene Griffith. Tiffany Noe waiver sent on 6/7/2022, answer due 8/6/2022. (McNulty, Andrew) (Entered: 06/15/2022) |
| 06/20/2022 | 130 | Unopposed MOTION for Leave to File Excess Pages by Defendants Cynthia Ayad, El Paso County Colorado, Bill Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Whitney, Nathan) (Entered: 06/20/2022) |
| 06/22/2022 | 131 | ORDER: Granting 130 Motion for Leave to File Excess Pages. Defendants are permitted to file their Motion to Dismiss in excess of this Court's page limitations, NOT TO EXCEED 40 pages in total; Plaintiff's Response NOT TO EXCEED 40 pages total. SO ORDERED by Judge Christine M. Arguello on 6/22/2022. Text Only Entry(cmasec) (Entered: 06/22/2022) |
| 06/28/2022 | 132 | MOTION to Dismiss by Defendants El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Whitney, Nathan) (Entered: 06/28/2022) |
| 06/29/2022 | 133 | MEMORANDUM regarding 132 MOTION to Dismiss filed by Bill (I) Elder, Brande Ford, Dawne Elliss, Andrew Mustapick, Cy Gillespie, Elizabeth O'Neal, Tiffany Noe, Bill Elder, El Paso County Colorado. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 6/29/2022. Text Only Entry (cmasec) (Entered: 06/29/2022) |
| 07/07/2022 | 134 | MOTION to Stay by Defendants El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Whitney, Nathan) (Entered: 07/07/2022) |
| 07/08/2022 | 135 | MEMORANDUM regarding 134 MOTION to Stay filed by Bill (I) Elder, Brande Ford, Dawne Elliss, Andrew Mustapick, Cy Gillespie, Elizabeth O'Neal, Tiffany Noe, Bill Elder, El Paso County Colorado. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 7/8/2022. Text Only Entry (cmasec) (Entered: 07/08/2022) |
| 07/12/2022 | 136 | RESPONSE to 134 MOTION to Stay filed by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 07/12/2022) |
| 07/15/2022 | 137 | Unopposed MOTION for Extension of Time to File Response/Reply as to 132 MOTION to Dismiss by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 07/15/2022) |
| 07/24/2022 | 138 | MEMORANDUM regarding 137 Unopposed MOTION for Extension of Time to File Response/Reply as to 132 MOTION to Dismiss filed by Darlene Griffith. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 7/24/2022. Text Only Entry (cmasec) (Entered: 07/24/2022) |
| 07/25/2022 | 139 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 25 July 2022. It is hereby ORDERED that Plaintiff's Unopposed Motion for Extension of Time for Plaintiff to File Response to Defendants' Motion to Dismiss (Dkt. # 137 ) is GRANTED. Plaintiff's response to Defendants' Motion to Dismiss (Dkt. # 132 ) shall be filed on or before August 9, 2022. It is further ORDERED that the Court will hear argument on Defendants' Motion to Dismiss (Dkt. #132) and Motion to Stay Discovery (Dkt. # 134 ) at the hearing set for October 11, 2022. To ensure that the parties have adequate time to present their arguments, the hearing is RESET to October 11, 2022 at 11:00 a.m. The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 07/25/2022) |
| 07/26/2022 | 140 | REPLY to Response to 134 MOTION to Stay filed by Defendants El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Whitney, Nathan) (Entered: 07/26/2022) |
| 07/27/2022 | 141 | NOTICE of Entry of Appearance by Steven Ward Martyn on behalf of El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'NealAttorney Steven Ward Martyn added to party El Paso County Colorado(pty:dft), Attorney Steven Ward Martyn added to party Bill Elder(pty:dft), Attorney Steven Ward Martyn added to party Bill (I) Elder(pty:dft), Attorney Steven Ward Martyn added to party Dawne Elliss(pty:dft), Attorney Steven Ward Martyn added to party Brande Ford(pty:dft), Attorney Steven Ward Martyn added to party Cy Gillespie(pty:dft), Attorney Steven Ward Martyn added to party Andrew Mustapick(pty:dft), Attorney Steven Ward Martyn added to party Tiffany Noe(pty:dft), Attorney Steven Ward Martyn added to party Elizabeth O'Neal(pty:dft) (Martyn, Steven) (Entered: 07/27/2022) |
| 08/01/2022 | 142 | Unopposed MOTION for Leave to File Excess Pages on Plaintiff's Response to Defendants' Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 08/01/2022) |
| 08/01/2022 | 143 | MEMORANDUM regarding 142 Unopposed MOTION for Leave to File Excess Pages on Plaintiff's Response to Defendants' Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) filed by Darlene Griffith. Motion referred to Magistrate Judge N. Reid Neureiter by Judge Christine M. Arguello on 8/1/2022. Text Only Entry (cmasec) (Entered: 08/01/2022) |
| 08/01/2022 | 144 | MINUTE ORDER by Magistrate Judge N. Reid Neureiter on 08/01/2022. It is hereby ORDERED that Plaintiff's Unopposed Motion for Leave to Exceed Page Limitation Regarding Plaintiff's Response to Defendants' Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Dkt. # 142 ) is GRANTED. Plaintiff's response to Defendants' Motion to Dismiss (Dkt. # 132 shall be no longer than fifty (50) pages in length, excluding the certificate of service. PLEASE READ ATTACHED MINUTE ORDER. (alave, ) (Entered: 08/01/2022) |
| 08/03/2022 | 145 | NOTICE to Terminate ECF Filing Notifications to Counsel of Record by Defendants Christine Mohr, Wellpath LLC (Rood, Kristina) (Entered: 08/03/2022) |
| 08/04/2022 | 146 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 145 Notice (Other) filed by attorney **Rood, Kristina**. The document is incorrectly formatted. Action to take - **REFILE THE DOCUMENT**. In order for an attorney to be withdrawn as counsel of record and term their ECF Notices, a Motion to Withdraw as Attorney must be filed. Refer to D.C.COLO.LAttyR 5(b). (Text Only Entry) (sphil, ) (Entered: 08/04/2022) |
| 08/08/2022 | 147 | RESPONSE to 132 Motion to Dismiss THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (6) filed by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 08/08/2022) |

S.A. 012

| 08/10/2022 | 148 | MOTION to Withdraw as Attorney by Defendants Christine Mohr, Wellpath LLC. (Struck, Daniel) (Entered: 08/10/2022) |
| 08/10/2022 | 149 | MOTION to Withdraw as Attorney by Defendants Christine Mohr, Wellpath LLC. (Hesman, Ashlee) (Entered: 08/10/2022) |
| 08/10/2022 | 150 | MOTION to Withdraw as Attorney by Defendants Christine Mohr, Wellpath LLC. (Rood, Kristina) (Entered: 08/10/2022) |
| 08/11/2022 | 151 | ORDER: Granting 148 , 149 , and 150 Motions to Withdraw as Attorneys. Attorneys Daniel P. Struck, Ashlee B. Hesman, and Kristina R. Rood are permitted to withdraw as counsel for Defendants Wellpath, LLC and Dr. Christine Mohr. FURTHER ORDERED that the Clerk of the Court is DIRECTED to delete Mr. Struck and Mss. Hesman and Rood's email addresses from future ECF filings and electronic notifications in this case. SO ORDERED by Senior Judge Christine M. Arguello on 8/11/2022. Text Only Entry(cmasec) (Entered: 08/11/2022) |
| 08/16/2022 | 152 | MOTION for Extension of Time to File Response/Reply as to 132 MOTION to Dismiss , MOTION for Leave to File Excess Pages *in their Reply in Support of Motion to Dismiss* by Defendants El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Whitney, Nathan) (Entered: 08/16/2022) |
| 08/16/2022 | 153 | MEMORANDUM regarding 152 MOTION for Extension of Time to File Response/Reply as to 132 MOTION to Dismiss MOTION for Leave to File Excess Pages *in their Reply in Support of Motion to Dismiss* filed by Bill (I) Elder, Brande Ford, Dawne Elliss, Andrew Mustapick, Cy Gillespie, Elizabeth O'Neal, Tiffany Noe, Bill Elder, El Paso County Colorado. Motion referred to Magistrate Judge N. Reid Neureiter by Senior Judge Christine M. Arguello on 8/16/2022. Text Only Entry (cmasec) (Entered: 08/16/2022) |
| 08/17/2022 | 154 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 17 August 2022. It is hereby ORDERED that Defendants' Unopposed Motion for Extension of Time to File a Responsive Pleading and Motion for an Extension of Page Limitations (Dkt. # 152 ) is GRANTED. Defendants' reply brief is due on or before August 26, 2022 and shall be no longer than twenty-five (25) pages. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 08/17/2022) |
| 08/26/2022 | 155 | REPLY to Response to 132 MOTION to Dismiss filed by Defendants El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Whitney, Nathan) (Entered: 08/26/2022) |
| 08/29/2022 | 156 | NOTICE of Supplemental Authorities re: 132 MOTION to Dismiss , 147 Response to Motion by Plaintiff Darlene Griffith (McNulty, Andrew) (Entered: 08/29/2022) |
| 09/29/2022 | 157 | NOTICE of Entry of Appearance by Bryan E. Schmid on behalf of El Paso County Colorado, Bill Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'NealAttorney Bryan E. Schmid added to party El Paso County Colorado(pty:dft), Attorney Bryan E. Schmid added to party Bill Elder(pty:dft), Attorney Bryan E. Schmid added to party Dawne Elliss(pty:dft), Attorney Bryan E. Schmid added to party Brande Ford(pty:dft), Attorney Bryan E. Schmid added to party Cy Gillespie(pty:dft), Attorney Bryan E. Schmid added to party Andrew Mustapick(pty:dft), Attorney Bryan E. Schmid added to party Tiffany Noe(pty:dft), Attorney Bryan E. Schmid added to party Elizabeth O'Neal(pty:dft) (Schmid, Bryan) (Entered: 09/29/2022) |
| 09/29/2022 | 158 | Joint MOTION to Amend/Correct/Modify 114 Scheduling Order by Defendants Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Schmid, Bryan) (Entered: 09/29/2022) |
| 09/29/2022 | 159 | MEMORANDUM regarding 158 Joint MOTION to Amend/Correct/Modify 114 Scheduling Order filed by Bill (I) Elder, Brande Ford, Dawne Elliss, Andrew Mustapick, Cy Gillespie, Elizabeth O'Neal, Tiffany Noe, Bill Elder. Motion referred to Magistrate Judge N. Reid Neureiter by Senior Judge Christine M. Arguello on 9/29/2022. Text Only Entry (cmasec) (Entered: 09/29/2022) |
| 09/29/2022 | 160 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 29 September 2022. It is hereby ORDERED that the parties' Joint Motion to Modify the Scheduling Order (Dkt. # 158 ) is GRANTED. The Scheduling Order (Dkt. # 114 ) is MODIFIED as follows: Discovery due by 6/15/2023. Dispositive Motions due by 7/15/2023. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 09/30/2022) |
| 10/11/2022 | 161 | MINUTE ENTRY for proceedings held before Magistrate Judge N. Reid Neureiter: Telephonic Motion Hearing held on 10/11/2022. Motion to Stay Discovery (Dkt. # 134 ) is TAKEN UNDER ADVISEMENT. The Court will issue a written order. Defendants' Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Dkt. # 132 ) is TAKEN UNDER ADVISEMENT. The Court will issue a written recommendation in due course. FTR: Courtroom C203. (rvill, ) (Entered: 10/11/2022) |
| 11/02/2022 | 162 | ORDER ON DEFENDANTS' MOTION TO STAY DISCOVERY (Dkt. # 134 ) by Magistrate Judge N. Reid Neureiter on 2 November 2022. it is hereby ORDERED that Defendants' Motion to Stay Discovery (Dkt. #134) is GRANTED. Discovery is STAYED pending the undersigned's issuance of a Report and Recommendation on Defendants' Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Dkt. # 132 ), after which the Court will reassess whether it is appropriate to lift the stay and proceed with discovery. (cmadr, ) (Entered: 11/02/2022) |
| 11/12/2022 | 163 | TRANSCRIPT of Telephonic Motion Hearing held on October 11, 2022 before Magistrate Judge Neureiter. Pages: 1-62. **NOTICE - REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Patterson Transcription Company, ) (Entered: 11/12/2022) |
| 02/09/2023 | 164 | Pro Se Notice of Change of Address/Contact Information by Plaintiff Darlene Griffith (trvo, ) (Entered: 02/10/2023) |
| 02/27/2023 | 165 | REPORT AND RECOMMENDATION ONDEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINTPURSUANT TO Fed. R. Civ. P. 12(b)(1) and (6)(Dkt. # 132 ) by Magistrate Judge N. Reid Neureiter on 27 February 2023. In light of the foregoing, it is hereby RECOMMENDED that Defendants' Motion to Dismiss (Dkt. # 132 ) be GRANTED, and that Plaintiff's Third Amended Complaint (Dkt. # 124 ) be DISMISSED. (cmadr, ) (Entered: 02/27/2023) |

| 03/02/2023 | 166 | AFFIDAVIT by Plaintiff Darlene Griffith. (sphil, ) (Entered: 03/03/2023) |
|---|---|---|
| 03/06/2023 | 167 | Unopposed MOTION for Leave to *EXCEED PAGE LIMITATION REGARDING OBJECTION TO REPORT AND RECOMMENDATION* by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 03/06/2023) |
| 03/08/2023 | 168 | ORDER: Granting 167 Unopposed Motion for Leave to File Excess Pages. Defendant is permitted to file her Objection to 165 Magistrate Judge Report and Recommendation in excess of this Court's page limitations, NOT TO EXCEED 30 pages in total, excluding Certificate of Service. SO ORDERED by Senior Judge Christine M. Arguello on 3/8/2023. Text Only Entry(cmasec) (Entered: 03/08/2023) |
| 03/08/2023 | 169 | OBJECTION to 165 Report and Recommendations filed by Plaintiff Darlene Griffith. (McNulty, Andrew) (Entered: 03/08/2023) |
| 03/13/2023 | 170 | Unopposed MOTION for Extension of Time to File Response/Reply as to 165 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE re 124 Amended Complaint,, Add and Terminate Parties, 132 MOTION to Dismiss filed by Bill (I) Elder, Brande Ford, Dawne Elliss, Andrew Mustapick, Cy Gill *and to Exceed Page Limitation* by Defendants El Paso County Colorado, Bill Elder, Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick, Tiffany Noe, Elizabeth O'Neal. (Whitney, Nathan) (Entered: 03/13/2023) |
| 03/17/2023 | 171 | ORDER: Granting in part and Denying in part 170 Unopposed Motion for Extension of Time to File Response and Exceed Page Limitations. GRANTING Motion to Exceed Page Limitations. Defendants are permitted to file their Response to 169 Plaintiffs Objection to 165 Magistrate Judge's Report and Recommendation in excess of this Court's page limitations, NOT TO EXCEED 25 pages in total, excluding Certificate of Service. DENYING Motion for Extension of Time. Defendants Objections continue to be due 3/22/2023. SO ORDERED by Judge Christine M. Arguello on 3/17/2023. Text Only Entry(cmasec) (Entered: 03/17/2023) |
| 03/22/2023 | 172 | RESPONSE to Objection to 165 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE re 124 Amended Complaint,, Add and Terminate Parties, filed by Darlene Griffith, 132 MOTION to Dismiss filed by Bill (I) Elder, Brande Ford, Dawne Elliss, Andrew Mustapick, Cy Gill filed by Defendants Bill (I) Elder, Dawne Elliss, Brande Ford, Cy Gillespie, Andrew Mustapick. (Whitney, Nathan) (Entered: 03/22/2023) |
| 03/27/2023 | 173 | ORDER Affirming and Adopting Recommendation of United States Magistrate Judge by Senior Judge Christine M. Arguello on 3/27/2023. 165 Report and Recommendations; granting 132 Motion to Dismiss. (msmot) (Entered: 03/27/2023) |
| 03/27/2023 | 174 | FINAL JUDGMENT by Clerk 3/27/2023. 173 Order on Motion to Dismiss, Order on Report and Recommendations (msmot) (Entered: 03/27/2023) |
| 04/25/2023 | 175 | NOTICE OF APPEAL as to 173 Order on Motion to Dismiss, Order on Report and Recommendations by Plaintiff Darlene Griffith (Filing fee $ 505, Receipt Number ACODC-9066381) (McNulty, Andrew) (Entered: 04/25/2023) |

**S.A. 014**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00387-NRN

DARLENE GRIFFITH

Plaintiff,

v.

EL PASO COUNTY, COLORADO, e*t al.*

Defendants.

---

**DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**
**PURSUANT TO FED. R. CIV. P.  12(b)(1) and (6)**

---

Defendants El Paso County ("El Paso County"), Bill Elder ("Elder") ("Gillespie"), Dawne Elliss ("Elliss"), Andrew Mustapick ("Mustapick"), Elizabeth O'Neal ("O'Neal"), Brande Ford ("Ford"), and Tiffany Noe ("Noe") (collectively the "Defendants"), through the Office of the County Attorney of El Paso County, Colorado, move to dismiss Plaintiff's Third Amended Complaint (Doc. 124, the "Complaint") under Fed. R. Civ. P. 12(b)(1) and (6) as follows:

**CERTIFICATION OF CONFERRAL**

The Parties have conferred about Plaintiff Darlene Griffith's ("Plaintiff's") allegations, including during a settlement conference and via telephone on June 28, 2022. The parties do not believe any further amendment of the Complaint is warranted. Plaintiff opposes this Motion.

## I.   <u>INTRODUCTION</u>

Plaintiff is a transgender female who has been diagnosed with Gender Dysphoria. In the Complaint, Plaintiff asserts 16 claims for relief under federal and state laws alleging that: (i) during intake into the El Paso County Criminal Justice Center ("CJC"), she was misgendered by the female deputy who visually searched her upper torso, and verbally harassed and threatened by the male deputy who visually searched her lower torso; (ii) she asked to be housed in a female ward but was housed in a male ward instead, where she was sexually assaulted by a male inmate, misgendered by deputies, and subject to pat down searches by male deputies; and (iii) she was denied access to female undergarments. While the Defendants vigorously deny many of Plaintiff's allegations, Fed. R. Civ. P. 12(b)(6) mandates they be accepted as true for purposes of this Motion. Even so, Plaintiff's allegations do not state viable constitutional or statutory violations and do not implicate clearly established rights. The Defendants respectfully ask the Court to grant this Motion and dismiss Plaintiff's claims against them.

## II.  <u>MATERIAL ALLEGATIONS</u>

The Complaint is 55 pages long with 347 individually numbered paragraphs, yet it contains surprisingly few material allegations. These allegations are summarized below.

### A.  <u>Material Allegations Related to Plaintiff's Housing Classification</u>

Plaintiff is a transgender woman who has been diagnosed with Gender Dysphoria. (Doc. 124, ¶ 2) Elder is the elected sheriff of the El Paso County Sheriff's Office ("EPSO") and is responsible for running CJC. (*Id*. at ¶ 14) Gillespie is an EPSO Commander responsible for overseeing CJC's operations. (*Id*. at ¶ 15, 42)

Plaintiff entered CJC on July 20, 2020, as a pretrial detainee and an openly transgender woman with a feminine appearance. (*Id*. at ¶ 47) During the intake process, Plaintiff informed unidentified individuals at CJC that she is a transgender woman diagnosed with Gender Dysphoria and requested placement in the women's ward because she feared abuse, being misgendered, and being searched by male deputies. (*Id*. at ¶ 48)

Separately during intake into CJC, Noe classified Plaintiff into a men's ward "despite knowing that [Plaintiff] is a transgender woman and that [Plaintiff] wished to be placed into [a women's ward]." (*Id*. at ¶ 54) Plaintiff does not plausibly allege that Noe knew of Plaintiff's Gender Dysphoria diagnosis or her fear that she would be abused, misgendered, or searched by male deputies in the men's ward.

On July 29, 2020, Ford did an ADA interview with Plaintiff during which Plaintiff informed Ford that she wished to be placed in a women's ward because "[i]t was clear to [Ford]" that Plaintiff is a transgender woman (*Id*. at ¶ 55) Ford wrote in Plaintiff's records that there were no disability concerns related to Plaintiff's housing. (*Id*.) Plaintiff does not plausibly allege that Ford knew of Plaintiff's Gender Dysphoria diagnosis or her fear that she would be abused, misgendered, or searched by male deputies in the men's ward.

On October 29, 2020, Plaintiff submitted a grievance "which she believed would be transmitted to [] Gillespie" requesting placement in a women's ward "because she is a transgender woman." (*Id*. at ¶ 57) The grievance also stated that Plaintiff had been placed in a women's ward in a different facility. (*Id*.) O'Neal, not Gillespie, denied Plaintiff's request to be placed in the women's ward. (*Id*.) Plaintiff does not plausibly allege that

S.A. 017

O'Neal knew of Plaintiff's Gender Dysphoria diagnosis or her fear that she would be abused, misgendered, or searched by male deputies in the men's ward.

The Complaint also contains allegations about Plaintiff's kites, grievances, and communications with individuals who are not parties to this case in which she discussed her placement in the men's ward. On December 9, 2020, Plaintiff submitted a grievance requesting placement in a women's ward, complaining that deputies were referring to her using male pronouns, and noting that she had previously been placed in a women's ward in a different facility. (*Id*. at ¶ 58) On January 4, 2021, an unidentified individual responded by denying Plaintiff's request. (*Id*.) On January 15, 2021, Plaintiff submitted another grievance regarding her housing and the conduct of "numerous staff regarding the issue," and notifying CJC and its medical provider that she had been placed in a women's ward in a different facility. (*Id*. at ¶ 59) On January 22, 2021, Plaintiff told Raymond Carrington ("Carrington," a jail mental health provider employed by WellPath) that she was experiencing anxiety because of her treatment as a transgender inmate and her fear of retaliation from grieving said conduct. (*Id*. at ¶ 60)  That same day, Plaintiff also wrote a grievance asking to be transferred to a women's ward. (*Id*. at ¶ 61) On February 26, 2021, Plaintiff asked an unidentified mental health provider why she continued to be housed in the men's ward and notified the provider of her resulting anxiety and depression. (*Id*. ¶ at 62) On March 9, 2021, Plaintiff wrote a grievance asking that Christine Mohr ("Mohr," a formerly named party employed by WellPath) provide information to EPSO about Plaintiff's Gender Dysphoria. (*Id*. at ¶ 63) On March 10, 2021, Plaintiff wrote a kite complaining about her placement in CJC. (*Id. a*t ¶ 64) On March 11, 2021, Plaintiff

informed Mohr that she wanted to be housed in a women's ward and had previously been housed in a women's ward in a different facility, and Mohr informed Plaintiff she would consult with EPSO regarding Plaintiff's housing. (*Id*. at ¶ 65) On March 19, 2021, Mohr acknowledged talking to unidentified EPSO officials about Plaintiff's concerns and, on March 27, 2021, Mohr informed Plaintiff that she would not be moved to a female ward. (*Id*. at ¶ 66)

### B. **Material Allegations Related to the Initial Strip-Search of Plaintiff**

Plaintiff was subject to a "visual body-cavity search" upon intake at CJC. (*Id*. at ¶ 72) Plaintiff was taken to a separate room where a male deputy (Mustapick) and female deputy (Elliss) arrived, prompting Plaintiff to ask Mustapick to leave. (*Id*. at ¶ 73-74) Elliss informed Plaintiff that, per her sergeant's orders, a male deputy would be present during the search and conduct part of the search because Plaintiff was "still a male" in CJC's "system." (*Id. a*t ¶ 74) Elliss directed Plaintiff to take off her shirt and Plaintiff complied. Elliss visually inspected Plaintiff's breasts while Mustapick was present. (*Id*. at ¶ 75-76) Elliss then gave Plaintiff a sports bra and allegedly told Mustapick "he is all yours now to strip out" before leaving the room. (*Id*. at ¶ 76) Mustapick ordered Plaintiff to remove the clothing on the lower half of her body and Plaintiff complied. (*Id*. at ¶ 77) Mustapick allegedly told Plaintiff to "spread [her] sexy cheeks," that he was "going to go balls deep in that ass" while grabbing his groin, and that Plaintiff had better not tell anyone about what he said or Plaintiff would be "brutalized" by CJC guards. (*Id*. at ¶ 77-78 (brackets in original)).

S.A. 019

**C. <u>Material Allegations Regarding an Alleged Sexual Assault by Another Inmate</u>**

Plaintiff alleges that, on November 18, 2021, another inmate groped her right breast and said, "you know you want this dick." (*Id*. at ¶ 84-85) Afterward, Plaintiff asked to see a mental health provider and to be moved to a female ward. (*Id*. at ¶ 86, 88) Plaintiff broadly asserts that "[t]his was not the first time that [Plaintiff] was assaulted by the other inmate" but provides no further allegations about the inmate's identity or any other purported assault. (*Id*. at ¶ 87)

**D. <u>Material Allegations Regarding Pat-Down Searches of Plaintiff by Male Deputies</u>**

On January 20, 2021, Plaintiff wrote a grievance saying that her anxiety went "through the roof" when she was patted down by male deputies and that she was "being singled out as a transgender woman for different treatment." (*Id*. at ¶ 90) On January 21, 2021, Plaintiff complained to the jail medical provider about the impact of male pat-downs on her mental health. (*Id*.) The next day, Plaintiff wrote a grievance because she was continually subject to cross-gender pat-down searches, including one where a deputy intentionally touched her breast. (*Id*. at ¶ 91) On January 23, 2021, Plaintiff wrote a kite regarding the lack of accommodations for her Gender Dysphoria, citing cross-gender pat-down searches.   The following month, Plaintiff wrote a grievance because she was subjected to "non-routine cross-gender pat down searches on a daily basis..." (*Id*. at ¶ 92-93)

**E. <u>Material Allegations Regarding Misgendering by Deputies</u>**

Plaintiff alleges that she was misgendered by sergeants and deputies throughout her incarceration at CJC. (*Id*. at ¶ 99.) Plaintiff alleges that, on September 16, 2020, a

deputy yelled a derogatory term in reference to Plaintiff after she complained that other inmates in her ward were not required to wear shirts. (*Id*. at ¶ 100) On November 10, 2020, and December 9, 2020, Plaintiff submitted grievances because she was repeatedly misgendered by deputies. (*Id*. at ¶ 101) On February 3, 2021, Plaintiff submitted a grievance because she was being subject to "verbal harassment" by unidentified male deputies. (*Id*. at ¶ 102) On February 26, 2021, Plaintiff informed a medical provider that deputies continued to call her "sir." (*Id*.)  On June 23, 2021, Plaintiff submitted a grievance because she was misgendered by a CJC official. (*Id*. at ¶ 103) And, on July 1, 2021, Plaintiff told Carrington that she identifies as female, wished jail personnel would refer to her using female pronouns, she might harm herself, and WPATH standards of care should be followed in CJC. (*Id*. at ¶ 104) Carrington informed unidentified CJC officials about Plaintiff's statements, but no action was taken. (*Id*.)

### F. <u>Material Allegations Regarding Plaintiff's Ability to Dress in Accordance with Her Gender Identity</u>

Despite clearly stating that "Elliss gave [Plaintiff] a sports bra" upon intake, (*Id*. at ¶ 76), Plaintiff asserts that her requests for a women's sports bra and underwear were denied even after she submitted grievances on September 7, 2020, and October 24, 2020.  (*Id*. at ¶ 110-114) Plaintiff alleges that she eventually elevated her concerns to Gillespie, who also denied her request. (*Id*. at ¶ 114) On March 11, 2021, Plaintiff expressed concerns about her lack of access to female undergarments to CJC's medical provider. (*Id*. at ¶ 116) On March 27, 2021, the same provider told Plaintiff that CJC officials decided not to issue female panties to Plaintiff. (*Id*.)

### III.   <u>STANDARDS OF REVIEW</u>

This Court set forth the applicable standards of review in *Simon v. Burtlow*, No. 20-cv-01207-CMA-KMT, 2021 WL 4059782, at * 2 (D. Colo. Sept. 7, 2021) (unpublished).

### IV.   <u>ARGUMENT</u>

#### A.   <u>The Claims Asserted Against "El Paso County" Must Be Dismissed</u>

Plaintiff asserts claims against both El Paso County and Elder in his official capacity.   The official capacity claims are the same as suing EPSO because Elder is the elected Sheriff of EPSO. *Hafer v.Melo*, 502 U.S. 21, 25 (1991). EPSO and El Paso County are, however, separate entities. *See Bristol v. Bd. of Cnty. Comm'rs of Clear Creek,* 312 F.3d 1213, 1219 (10th Cir. 2002).

Section 30-11-105 of the Colorado Revised Statutes provides "the exclusive method by which jurisdiction over a county can be obtained." *See Calahan v. Jefferson Cnty.,* 429 P.2d 301, 302 (Colo. 1967) (stating that "the name in which the county shall sue or be sued shall be, 'The board of county commissioners of the county of .........'" (emphasis added)).   The Complaint fails to properly name El Paso County as a party and this Court lacks jurisdiction over it as a result.   (*See* Doc. 124, case caption.)

Even if the Court considers El Paso County properly named, the Complaint fails to state a plausible claim against it because EPSO, not El Paso County, is responsible for CJC's operations.   *See* Colo. Rev. Stat. § 30-10-511. Plaintiff therefore cannot assert a claim against El Paso County unless she plausibly alleges that EPSO sets policy for El Paso County or that El Paso County sets policy for CJC's operations.   *See, e.g., Gonzales v. Martinez*, 403 F.3d 1179, 1182 n.7 (10th Cir. 2005).   Plaintiff makes no such allegations

8

S.A. 022

in the Complaint.  Consequently, the claims asserted against El Paso County must be dismissed under Fed. R. Civ. P. 12(b)(1) and (6).

**B.  The § 1983 Claims Asserted Against Elder and Gillespie Must be Dismissed Because the Complaint Fails to Plausibly Allege Their Personal Participation**

Because Plaintiff levies allegations against several individuals and entities, it "is particularly important…that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual defendant with fair notice as to the basis of the claims against him or her…" *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008). In other words, the "complaint must isolate the allegedly unconstitutional acts of each defendant; otherwise the complaint does not provide adequate notice as to the nature of the claims against each and fails for this reason." *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018) (quotations omitted).

The Complaint alleges that Elder and Gillespie set relevant policy for CJC rather than asserting that they were directly involved in the alleged constitutional violations. (*See* Doc. 124, ¶ 14, 42, 54, 57, 106, 118, 135, 160, 187, 205, 232, 247, 312, 326, 340.)  As a result, Plaintiff may allege that Elder and Gillespie's personal participation is satisfied under a theory of supervisory liability. (*Id*. at ¶ 14) *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (personal participation may be satisfied under a theory of supervisory liability).

Supervisory liability requires a plaintiff to first show an underlying constitutional violation committed by the supervisor's subordinate.  The plaintiff must then show: (1) the defendant's personal involvement; (2) a causal connection; and (3) a culpable state of mind. *See id.* Personal involvement requires a plaintiff to "show an 'affirmative link'

S.A. 023

between the supervisor and the constitutional violation." *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (quotations omitted). Personal participation may be established by showing that the individual enacted a "policy or custom" recognizable under *Monell*. *Schneider v. Cty. of Grand Junction Police Dep't*, 717 F.3d 760, 768-70 (10th Cir. 2013). A causal connection requires a showing that "the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Dodds*, 614 F.3d at 1211 (Tymkovich, J., concurring) (quotations omitted). Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).

As explained below, Plaintiff has failed to establish an underlying constitutional violation (*see* § IV.C and D below); the existence of a "policy or custom" (*see* § IV. F below); a causal link (*see id.*); or that Elder or Gillespie acted with deliberate indifference (*see id.*). Consequently, Plaintiff's claims against Elder and Gillespie, individually, must be dismissed under Fed. R. Civ. P. 12(b)(6).

### C. Plaintiff Fails to State Any Claims Under the Fourteenth Amendment

Plaintiff brings four claims under the Fourteenth Amendment alleging a violation of the Equal Protection Clause, unconstitutional conditions of confinement, a violation of her substantive due process rights, and a failure to protect. Each of Plaintiff's Fourteenth Amendment claims must be dismissed for the reasons set forth below.

S.A. 024

    1.  *The § 1983 Claims Asserted Against All Defendants Under the Equal Protection Clause of the Fourteenth Amendment Must Be Dismissed (Claim One)*

The equal protection clause of the Fourteenth Amendment requires that "all persons similarly situated should be treated alike." *City of Cleburne, Tex. V. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To succeed in a claim under the Fourteenth Amendment's equal protection clause, Plaintiff must allege facts showing that she is similarly situated to other inmates and that those inmates received disparate treatment from her. *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006). This is not to say that the law "may never draw distinctions between persons in meaningfully dissimilar situations," but rather that where the state action does treat similarly situated people differently, it does so for at least a rational reason. *SECSYS v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012). Determining whether Defendants' actions have violated the Equal Protection Clause requires a two-part analysis: (1) whether the government action intentionally discriminates between two groups, and (2) whether the discriminatory action can be "justified by reference to some upright government purpose." *Id*. at 685-86. The level of scrutiny the Court applies to the Defendants' actions in the second part of the analysis rests on whether the Plaintiff is a member of a suspect or quasi-suspect class. *Id*. at 686. Transgender is not a suspect or quasi-suspect class; therefore, the Defendants' classifications are subject to only rational basis analysis. *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1985); *Druley v. Paxton*, 601 F. App'x 632, 635-36 (10th Cir. 2015) (unpublished); *Qz'Etax v. Ortiz*, 170 F. App'x 551, 553 (10th Cir. 2006) (unpublished). In the context of a motion to dismiss the equal protection claim of a

non-suspect class plaintiff under Rule 12(b)(6), the plaintiff "must allege facts sufficient to overcome a presumption of government rationality." *Id*.

Plaintiff claims that Defendants' actions discriminated against her by placing her in "men's wards without adequate safeguards, even though she faces similar risks as all other women in such custody." (Doc. 124, ¶133). This is an apparent attempt to classify Plaintiff as similarly situated to female inmates. However, Plaintiff can only be considered similarly situated as other female inmates if she is "alike in all relevant aspects." *Grissom v. Roberts*, 902 F.3d 1162, 1173 (10th Cir. 2018). Here, the fact that Plaintiff has not undergone gender affirmation surgery and still has male genitalia is a highly relevant factor differentiating her from the class of female inmates to whom she claims to be similarly situated. *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (slight distinctions between inmates based on history or risk of future misconduct rendered them not similarly situated for purposes of the Equal Protection clause). Because Plaintiff is not similarly situated to other members of a suspect class, her disparate treatment from other members of that class does not support a discrimination claim under the Equal Protection Clause and does not subject the Defendants' actions to heightened scrutiny.

Plaintiff goes on to attempt to align herself with the class of "other transgender women" by alleging that placement in the male housing ward and searches at the jail amounted to discrimination. (Doc. 124, ¶135.) However, Plaintiff fails to establish that other transgender inmates who have female breasts and male genitals received different treatment during any part of the intake, search, classification, or housing procedures at CJC. *See Brown v. Montoya*, 662 F.3d 1152, 1172-73 (10th Cir. 2011) (regardless of level

S.A. 026

of scrutiny, plaintiff in equal protection claim must make a threshold showing of disparate treatment from others who are similarly situated). In fact, none of Plaintiff's allegations indicate that other inmates who were identified as male at birth but later identify as female, who have female breasts, and who have male genitals are searched solely by guards who match the inmates' gender identification, housed in the ward that matches the inmates' gender identification, or are otherwise treated differently than Plaintiff was.

Even if Plaintiff's allegations align her with other similarly situated individuals, they do not sufficiently overcome the presumption of government rationality. Defendants' classification of Plaintiff as male, housing Plaintiff in the male ward, and employing reasonable search procedures were all actions rationally based in the need to provide for the safe and secure function of CJC. Plaintiff's conclusory statements that Defendant discriminated against her without "a compelling, important, or legitimate governmental interest," (Doc. 124, ¶ 135, 205), and that "Defendants' actions and inactions were taken in reckless and callous indifference to the federally protected rights of Plaintiff," (*Id.* at ¶ 162, 176,188, 206), both cite the wrong standard for the Court to apply and fail to allege sufficient facts to state a cause of action for which relief can be granted under an equal protection theory. *See Brown*, 662 F.3d at 1172-73. Plaintiff's claim must therefore be dismissed.

2. *Plaintiff Fails to State a Viable Claim Challenging the Conditions of Her Confinement at CJC (Claim Two)*

As a pretrial detainee, Plaintiff's challenge to the conditions of her confinement is governed by the Fourteenth Amendment's due process clause. *See Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010). The Eighth Amendment proscription against cruel and

unusual punishment, however, "provides the benchmark" for claims challenging a pre-trial detainee's conditions of confinement. *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1022 (10th Cir. 1996) (citations omitted). To succeed under the Eighth Amendment, Plaintiff must prove both an objective and a subjective component. The objective component requires Plaintiff to show that the alleged deprivation denied "the minimal civilized measure of life's necessities," while the subjective component requires Plaintiff to show that the Defendants had "a sufficiently culpable state of mind, i.e., deliberate indifference." *Id.* (citations and quotation omitted). Under the deliberate indifference standard, an official is only liable if he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Plaintiff's claim fails with respect to each Defendant. Starting with O'Neal, Plaintiff's only allegation is that O'Neal told Plaintiff her October 2020 grievance asking to be moved to a female ward was denied by unidentified County officials. (Doc. 124, ¶ 57) O'Neal's communication to Plaintiff that other County officials denied her grievance does not establish O'Neal's personal participation in any constitutional violation. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (claims against prison officials properly dismissed where officials' only alleged involvement was the denial of grievances).

The Court should also dismiss Plaintiff's claim against Noe and Ford. Plaintiff alleges that Noe knew Plaintiff was transgender and wished to be housed in a ward corresponding with her gender identity but placed Plaintiff in a male housing unit instead.

(Doc. 124, ¶ 54) Plaintiff alleges that Ford conducted an initial interview with Plaintiff in July 2020 for purposes of the Americans with Disabilities Act. (*Id.* at ¶ 55) Plaintiff alleges "[i]t was clear to Ford" that Plaintiff was transgender and wished to be placed in housing that corresponded with her gender identity, but Ford did not "re-classify Plaintiff" or change her housing assignment. (*Id.*) Plaintiff goes on to allege that all Defendants failed to protect Plaintiff from sexual assault by other CJC inmates. (Doc. 124, ¶ 84-86, 151)[1]

Plaintiff's allegations suffer two pitfalls. First, they fail to show that any Defendants other than Noe and Ford were involved in Plaintiff's housing assignment. Plaintiff has not stated a claim challenging the conditions of her confinement against the remaining Defendants. *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). Second, Plaintiff's allegations fail to state a constitutional violation because they do not show that Noe and Ford's actions constituted deliberate indifference. *See Green v. Hooks*, 798 F. App'x 411, 422-23 (11th Cir. 2020) (unpublished) (prison officials were not deliberately indifferent when they housed a transgender inmate in a general population dormitory, despite subsequent sexual assaults). Plaintiff has not stated a viable claim.

---

[1] Plaintiff alleges one incident of sexual assault by a male CJC inmate that occurred on November 18, 2021. (Doc. 124, ¶ 84-86) Plaintiff also alleges that an unidentified witness told unidentified El Paso County officials "that he witnessed at least three to four other similar assaults" of Plaintiff. (*Id.* at ¶ 87) Plaintiff does not provide any factual allegations about these three or four other assaults, or allege that she told any of the Defendants about them.  *See Robbins*, 519 F.3d at 1250 (section 1983 plaintiff must support claims with specific facts).

S.A. 029

Additionally, the Court should dismiss Plaintiff's conditions of confinement claim against Elliss and Mustapick. Plaintiff alleges that Elliss—a biological female—performed a visual inspection of Plaintiff's breasts and then misgendered Plaintiff. (Doc. 124, ¶ 74-76) Plaintiff alleges that Mustapick—a biological male—performed a visual search of Plaintiff's lower torso, during which he made sexually suggestive comments and gestures, and threatened Plaintiff not to tell anyone. (*Id.* at ¶ 76-79) The sexual harassment that Plaintiff attributes to Mustapick and the single instance of misgendering that Plaintiff attributes to Elliss do not state a constitutional claim. *Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.11 (10th Cir. 1998) ("Although plaintiffs allege [defendant] subjected them to severe verbal sexual harassment and intimidation, these acts of verbal harassment alone are not sufficient to state a claim under the Eighth Amendment."); *Adkins v. Rodriguez*, 59 F.3d 1034, 1037-38 (10th Cir. 1995) (verbal sexual harassment did not amount to Eighth Amendment violation).

Finally, the remaining allegations in Plaintiff's challenge to the conditions of her confinement are unavailing. Plaintiff alleges that she was subjected to cross-gender pat-down searches at CJC, but she does not identify who conducted the pat-down searches or state when many of these pat-down searches occurred. (*See* Doc. 124, ¶ 89-96) Plaintiff's imprecise allegations fail to state a constitutional claim. *Robbins*, 519 F.3d at 1250. The Court should dismiss Plaintiff's conditions of confinement claim with respect to all Defendants.

3.  *Plaintiff's Substantive Due Process Claim Must Be Dismissed for Two Reasons (Claim Four)*

Plaintiff alleges that housing her in a male ward and subjecting her to searches by male deputies violated her right to bodily privacy and integrity, which is protected by the Fourteenth Amendment's guarantee of substantive due process. (Doc. 124, ¶ 165-79) Substantive due process primarily protects "matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted). The Tenth Circuit has applied substantive due process protections to a student's § 1983 claims of sexual abuse by a state actor. *See Maldonado v. Josey*, 975 F.2d 727, 730-31 (10th Cir. 1992). Importantly, however, "the [Supreme] Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Here, Plaintiff fails to state a substantive due process claim for two reasons. First, her claim is properly analyzed through the lens of the Eighth Amendment's cruel and unusual punishment clause rather than the Fourteenth Amendment's substantive due process guarantee. The Supreme Court explained in *Graham v. Connor* that when "an explicit textual source of constitutional protection" applies to claims, that Amendment rather than "the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." 490 U.S. 386, 395 (1989). Thus, "claims of excessive force against convicted prisoners should be analyzed under the Eighth and not the Fourteenth Amendment." *Berry v. City of Muskogee*, 900 F.2d 1489, 1494 (10th Cir. 1990). The Tenth Circuit and this Court have found, albeit under somewhat different circumstances from

17

those in this case, that a prisoner's claimed violations of bodily integrity are properly analyzed under the Eighth Amendment. *Ullery v. Raemish*, No. 18-cv-00839-STV, 2019 WL 529570, at *11 (D. Colo. Feb. 9, 2019) (unpublished) (citing *Berry*, 900 F.3d at 1494 n.6). The Court should thus dismiss Plaintiff's substantive due process claim.

Second, even if the Court entertains Plaintiff's substantive due process claim, she has not plausibly alleged action that satisfies the high standard required for such a claim. Government action violates substantive due process if it "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). To satisfy the shocks the conscience standard, "the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). This "requires a high level of outrageousness, because the Supreme Court has admonished that a substantive due process violation requires more than an ordinary tort." *Id.* In the prison and jail context, actions that shock the conscience include sexual assault and rape of prisoners by guards. *Hall v. Zavaras*, No. 08-cv-00999-DME, 2008 WL 5044553, at *4 (D. Colo. Nov. 19, 2008) (unpublished). The actions alleged by Plaintiff do not rise to such egregious levels. The Court should thus dismiss Plaintiff's substantive due process claim.

### 4. *Plaintiff Fails to State a Failure to Protect Claim Under the Fourteenth Amendment (Claim Fourteen)*

In another permutation of her Fourteenth Amendment claims, Plaintiff alleges that Elder, Gillespie, O'Neal, Noe, and Ford failed to protect her "from sexual assault at the hands of other inmates." (Doc. 124, ¶ 315) The Eighth Amendment (via the Fourteenth Amendment) requires prison officials "to protect prisoners in custody from violence at the

hands of other prisoners." *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). To prevail on a failure to protect claim, the plaintiff must meet two prongs: (1) she was incarcerated under conditions posting a substantial risk of serious harm, and (2) prison officials acted with a sufficiently culpable state of mind, i.e., deliberate indifference. *Grimsley*, 93 F.3d at 681, citing *Farmer*, 511 U.S. at 834.

Here, Plaintiff has not plausibly alleged an affirmative link between Elder or Gillespie, and the violation she alleges. As a result, Plaintiff has not stated a viable failure to protect claim against them. *See Grimsley*, 93 F.3d at 680 (prison executives not liable for failure to protect).  As for O'Neal, her only involvement in Plaintiff's case is her delivery of an unfavorable grievance response as described above. (Doc. 124, ¶ 57) This does not establish her personal participation in a constitutional violation. *See Gallagher*, 587 F.3d at 1069.

Finally, Plaintiff has not stated a viable failure to protect claim against Noe and Ford.  Noe allegedly knew that Plaintiff was transgender and wanted to be assigned to a female ward but she assigned Plaintiff to an all-male ward instead. (Doc. 124, ¶ 54). Ford conducted an Americans with Disabilities Act interview and knew Plaintiff was transgender, but she did not "re-classify Plaintiff" or change her housing assignment. (*Id.*). These allegations do not provide specific facts showing that Noe and Ford (or any of the other Defendants) knew that Plaintiff was at risk of serious harm and took no action to alleviate that risk. *See Cox v. Nobles*, 2020 WL 1541698, at *6-9 (S.D. Ga. Mar. 31, 2020) (unpublished) (stating "the mere fact that Plaintiff is transgender is insufficient to show

Moving Defendants are liable under the Eighth Amendment for any assault Plaintiff experienced," and finding that officials at three different prisons were not deliberately indifferent where the officials were not subjectively aware of a substantial risk to plaintiff); *see also Alsteens v. Piper*, 2020 WL 3668781, at *3 (D. Colo. Jun. 12, 2020) (unpublished) (Plaintiff failed to allege viable failure to protect claim where allegations did not show prison official had repeated warnings of danger to plaintiff that were disregarded); *Straker v. Stancil*, 2022 WL 714690, at *3 (D. Colo. Mar. 10, 2022) (unpublished) (granting qualified immunity to prison staff where plaintiff did not plausibly allege staff were aware of substantial risk of harm). Plaintiff has not alleged a viable failure to protect claim.

**D.  <u>Plaintiff Fails to State a Claim Under the Fourth Amendment (Claim 3)</u>**

The constitutionality of a strip search requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. In *Bell v. Wolfish*, the Supreme Court set forth the balancing test for determining a search's reasonableness:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which its conducted, the justification for initiating it, and the place in which it is conducted.

441 U.S. 520, 559 (1979). In the context of prisoner civil rights litigation, the Supreme Court has instructed that:

> when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. Subjecting the day-to-day judgments of prison officials to an

S.A. 034

inflexibly strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration.

*Turner v. Safley*, 482 U.S. 78, 89 (1987).

Here, Plaintiff is a pre-operation male to female, meaning Plaintiff has male genitalia and female breasts. Plaintiff claims that during the intake process into CJC, Mustapick remained in the strip-out room while Elliss conducted an examination of Plaintiff's upper body and Mustapick searched Plaintiff's lower body. Plaintiff alleges Elliss exited the room after completing the search of Plaintiff's upper body and prior to Mustapick conducting the search of Plaintiff's lower body. While Plaintiff clearly takes issue with the fact that Mustapick was present during the search, Plaintiff fails to state how the search itself was unreasonable, other than a bare assertion that the search was "objectively unreasonable in light of the circumstances" (Doc. 124, ¶ 159), and due to Mustapick's alleged "sexually charged and offensive comments," (*Id.*), directed at Plaintiff during the search.

Applying the *Bell* factors to these allegations, the Complaint fails to establish a constitutional violation against Elliss or Mustapick. First, the complaint of intrusion was minor considering the circumstances. The strip search occurred as Plaintiff entered CJC to be housed in general population, which is a standard procedure implemented for safety and security reasons. *See Archuleta v. Wagner*, 523 F.3d 1278, 1284 (10th Cir. 2008) (reasonableness of strip search turns in part on whether inmate will be housed in general population). The only individuals present during Plaintiff's strip search were Mustapick and Elliss. Plaintiff's nude body was not exposed to any other staff or inmate. Thus, the

intrusion complained of was relatively minor.  *See Hyberg v. Enslow*, 801 F. App'x 647, 650-51 (10th Cir. 2020) (unpublished) (finding no plausible Fourth Amendment claim where inmate was strip searched in a designated area "with limited access for other inmates and staff" before returning to general population, and where staff made insensitive comments).

Plaintiff goes on to complain about the way her strip search was conducted.  But verbal statements made during a search, like those attributed to Mustapick, are insufficient to establish a constitutional violation. *See Adkins*, 59 F.3d at 1037 (holding that verbal sexual harassment by a prison guard did not violate a constitutional right); *Hyberg*, 801 F. App'x at 650-51. Accordingly, the second *Bell* factor weights against a constitutional violation by Mustapick.

The third and fourth *Bell* factors also weigh against a constitutional violation. The justification for the strip search of Plaintiff was strong. Plaintiff was strip searched during intake into CJC to ensure the safety and security of the facility.  Such searches ensure that newly admitted inmates being housed in general population do not introduce weapons or contraband into the facility. *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 332 (2012) (contraband undermines security when introduced into a secure facility); *see also Hyberg*, 801 F. App'x 650 ("[T]here are obvious security concerns inherent when an inmate will be placed in the general prison population." (citation omitted)). The allegations further establish that the strip search was not conducted in a public area in CJC, but in an area where only Elliss and Mustapick could observe Plaintiff.

S.A. 036

*See id.* (discussing setting of a search). Accordingly, the third and fourth *Bell* factors do not support finding a constitutional violation.

In sum, the *Bell* factors weigh against finding a constitutional violation against Elliss and Mustapick, and the Court must dismiss Plaintiff's claims against them under Fed. R. Civ. P. 12(b)(6).

### E. <u>The Individual Defendants Are Entitled to Qualified Immunity</u>

Plaintiff's allegations not only fail to state constitutional claims, but also fail to overcome each individual Defendant's qualified immunity defense. Qualified immunity is an affirmative defense to a § 1983 action that protects government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020). A motion to dismiss based on qualified immunity imposes the burden on the plaintiff to show (1) a constitutional violation occurred, and (2) the constitutional right was clearly established at the time of the alleged violation. *Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Regardless of the court's starting point, the plaintiff must show that *both* prongs are met to defeat a qualified immunity defense. *See Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). Plaintiff fails to make such a showing.

First, Plaintiff has not shown that a constitutional violation occurred. As described above, Plaintiff fails to state viable claims under the Fourth, Eighth, or Fourteenth Amendment. The Defendants are thus entitled to qualified immunity, and the Court should end its inquiry here. *See Herrera*, 589 F.3d at 1070.

Second, even if the Court continues with the qualified immunity analysis, Plaintiff has not shown that the rights in question were clearly established. A right is clearly established if the law was "sufficiently clear that a reasonable official would have understood that his conduct violated the right." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001). This generally requires a "Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (internal quotations omitted).  Although it is not necessary for the facts in the cited authority to correspond exactly to the situation the plaintiff complains of, the "plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Trotter v. Regents*, 219 F.3d 1179, 1184 (10th Cir. 2000) (internal quotations omitted).

Here, Plaintiff's alleged rights were not clearly established at the time she was admitted to and housed in CJC. It was not clearly established that the visual strip search by a male and female deputy of a transgender inmate who identifies as female, has female breasts, and has male genitals violates a constitutional right. *See Naisha v. Metzger*, 2021 WL 5632063, at *1-2 (3d Cir. 2021) (unpublished) (granting qualified immunity to male deputy who conducted visual strip search of transgender inmate and

laughed at inmate, because law was not clearly established); *see generally Carter-el v. Boyer*, No. 1:19cv243 (TSE/MSN), 2020 WL 939289, at *4 (E.D. Va. Feb. 25, 2020) (unpublished) (observing that "little if any case law addresses the issue of the propriety of cross-gender searches of transgender inmates."). Plaintiff's allegation of verbal harassment during the search does not change this. *See Adkins*, 59 F.3d at 1037-38. Similarly, it was not clearly established that housing a transgender inmate who identifies as female, has female breasts, and has male genitals in a male ward violates a constitutional right. Defendants can find no case law in the Tenth Circuit or any other circuit holding that such a right was clearly established when Plaintiff was admitted to CJC. On the contrary, one federal court has found that a female inmate's "right not to be housed on an all male ward [sic] was not clearly established at the time of the alleged violations." *See Galvan v. Carothers*, 855 F. Supp. 285, 293 (D. Alaska. 1994). It also was not clearly established that providing a sports bra but not panties to a transgender inmate who identifies as female, has female breasts, and has male genitals violated a constitutional right.  *See generally Druley v. Patton*, 601 F. App'x 632, 635 (10th Cir. 2015) (unpublished) (denying female undergarments to transgender inmate only required rational relation to legitimate state purpose). Finally, it was not clearly established that prisoners have a substantive due process right to bodily integrity, as this Court has found. *Ullery*, 2019 WL 529570, at *11. The Defendants are thus entitled to qualified immunity from Plaintiff's federal constitutional claims.

F. **Plaintiff Fails to State a Municipal Liability Claim**[2]

Plaintiff not only brings claims against the individual Defendants, but also against El Paso County and EPSO. Municipalities cannot be held liable for the unconstitutional actions of their employees under a theory of *respondeat superior*. *Brown*, 520 U.S. at 405 (1997). Municipalities may instead be liable under § 1983 when the execution of a policy or custom "inflicts the injury" upon the plaintiff.  *Monell v. Dep't of Sec. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). To state a cognizable *Monell* claim, a plaintiff must first establish an underlying constitutional violation and then show the existence of a municipal custom or policy and a direct causal link between the custom or policy and the violation alleged. *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998). An official policy or custom may be proven by the existence of a formally promulgated policy; a well-settled custom or practice; a final decision by a municipal policymaker; failure to train or supervise; or ratification by the final policymaker of the decisions of subordinates to whom authority was delegated subject to the policymaker's review and approval. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010). Plaintiff must establish causation by showing that "the municipality was the 'moving force' behind the injury alleged.'" *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (citations omitted). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the

---

[2] Plaintiff's municipal liability claims first fail because there is no underlying constitutional violation for the reasons described above.

S.A. 040

municipality is not held liable solely for the actions of its employees." *Brown*, 520 U.S. at 405.

The Complaint does not clearly elucidate any theory of municipal liability through plausible allegations. (*See* Doc. 124, ¶ 4, 14, 135, 145, 160, 168, 170, 171, 172, 312.) For instance, the Complaint refers to formal policies in passing but fails to identify any specific EPSO policy or aspect thereof that caused the alleged constitutional violations. As such, Plaintiff cannot succeed under this theory of municipal liability. *See Carney v. City and Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (plaintiff must turn to other theories of municipal liability where she fails to identify a formal policy).

Likewise, the Complaint offers mere conclusory allegations regarding the existence of an informal custom. While municipal liability may be based "on an informal custom so long as this custom amounts to a widespread practice that, although not authorized by written laws or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law," *Brammer-Hoelter*, 602 F.3d at 1189, it generally requires a showing of "evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney*, 534 F.3d at 1274. The Complaint does not identify any similarly situated individuals that were mistreated in a similar way, which "seriously undermines [Plaintiff's] claim." *Id.* (quoting *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995)).

The Complaint does not explicitly assert municipal liability under a failure to train or supervise theory. But even if it did, such a theory would fail due to a lack of precise, plausible allegations. "A municipality's culpability for a deprivation of rights is at its most

tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Thus, to establish a failure to train or supervise claim, a plaintiff must show that the alleged failure "amounts to deliberate indifference to the rights of the persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). In other words, a "plaintiff must prove the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can be reasonably said to have been indifferent to the need for additional training." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (internal citations omitted).  Deliberate indifference in this context ordinarily requires showing a pattern of similar constitutional violations by untrained employees. *See Brown*, 520 U.S. at 407-08.

The Complaint does not identify any similarly situated individuals who were mistreated in a similar way, as explained above. Plaintiff may, in turn, argue that her allegations satisfy the "narrow range of circumstances" in which a single incident may be sufficient to show deliberate indifference. *Connick*, 536 U.S. at 64 (2011). If such an argument were made, it should fail because numerous courts have found that a municipal entity cannot be deliberately indifferent in the context of a failure to train or supervise where the right asserted is not clearly established, such as in this case. *See Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994-96 (6th Cir. 2017) ("But a municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established.") (internal citations and quotations omitted); *Bustillos v. El Paso Cty. Hosp. Dist.*, 891 F.3d 214, 222

(5th Cir. 2018); *Nicholas v. Wany Cnty., Mich.*, 822 F. App'x 445, 451-52 (6th Cir. 2020) (unpublished); *Townes v. City of New York*, 176 F.3d 138, 143–44 (2d Cir. 1999); *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007); *Moya v. City of Clovis*, No. 18-494-GBW-KRS, 2019 WL 6255217, at * 10 (D.N.M. Nov. 22, 2019) (unpublished); *see also Montoya v. City & Cnty. of Denver*, No. 16-cv-01457-JLK, 2021 WL 8087380, at *2 n.3 (D. Colo. July 27, 2021) (unpublished) (noting that the issue of whether a municipal entity can be deliberately indifferent to a right that is not clearly established was left open by *Contreras ex rel. A.L. v. Dona Ana Cnty. Comm'rs*, 965 F.3d 114, 1124 (10th Cir. 2020) (Carson, J. concurring)).

The Complaint also alludes to municipal liability by virtue of a final decision by a policymaker. In this context, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404 (emphasis in original). That is to say, it must be shown that a final policymaker's decision directly deprived a plaintiff of a constitutional right or was made with deliberate indifference. *Id*. at 404-08.

Because the Complaint does not plausibly allege that Elder's decisions pertained directly to Plaintiff, she must show that his decisions were made with deliberate indifference.  *See id*. at 404-07. But in situations such as this, where the existence of the alleged right is unclear, courts have found that policymakers cannot act with the requisite degree of deliberate indifference.  *See Moya*, 2019 WL 6255217, at * 10 ("But a municipal policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a

constitutional right when that right has not yet been clearly established.") (quoting *Arrington-Bey*, 858 F.3d at 994 (6th Cir. 2017); *see also Szbala*,*v. City of Brooklyn Park,* 486 F.3d 385, 292 (8th Cir. 2007).

Absent an articulable theory of municipal liability, the Complaint fails to satisfy the "rigorous standards…of causation."   *Brown*, 520 U.S. at 405.  The Complaint, instead, appears to rely on a hybrid theory of municipal liability, alleging elements of various types of customs or policies but failing to fully develop any. The Tenth Circuit has rejected such an approach because it "would be at odds with the Court's conservative, restrictive approach regarding the individual theories of liability."   *Cacioppo v. Town of Vail, Colo.*, 528 F. App'x 929, 934 (10th Cir. 2013) (unpublished).  Consequently, the Court should dismiss Plaintiff's § 1983 claims asserted against EPSO and El Paso County.

G. **Plaintiff's Claim Under the Enhance Law Enforcement Integrity Act Must Be Dismissed**

The Enhance Law Enforcement Integrity Act ("Act") creates a cause of action against:

> [a] peace officer, as defined in section 24-31-901(3), who, under color of law, subjects or causes to be subjected, including failing to intervene, any other person to the deprivation of any individual rights that create binding obligations on government actors secured by the bill of rights, article II of the state constitution…

Colo. Rev. Stat. § 13-21-131(1). The Act defines a "peace officer" as "any person employed by a political subdivision of the state required to be certified by the P.O.S.T. board pursuant to section 16.2.5-102…and any noncertified deputy sheriff as described in section 16-2.5-103(2)." Colo. Rev. Stat. § 24-31-901(3). A "noncertified deputy" means,

S.A. 044

a peace officer employed by a county or city and county whose authority is limited to the duties assigned by and while working under the direction of the chief of police, sheriff, an official who has the duties of a sheriff in a city and county, or chief executive of the employing law enforcement agency.

*Id.* § 16-2.5-103(2).

### 1. *Plaintiff Cannot Assert "Official Capacity" Claims Under the Act*

Plaintiff cannot assert an "official capacity" claim under the Act because a municipal entity, such as EPSO, does not fit within the Act's definition of a "peace officer." *See* Colo. Rev. Stat. § 24-31-901(3). Consequently, Claims 5, 6, 7, 8, 9, 15, and 16 must be dismissed to the extent they assert "official capacity" claims against Elder or are asserted against El Paso County directly.

### 2. *Plaintiff Has Failed to Plausibly Allege Personal Participation by Elder or Gillespie*

The Complaint appears to premise Elder and Gillespie's personal participation upon a theory of supervisory liability. *See* § IV.B above. The plain language of the Act does not, however, expressly allow for supervisory liability and Defendants have been unable to locate any authority from any Colorado court recognizing such a claim under the Act. This federal Court should not, for the first time, expand liability under the Act to allow for a theory of liability not expressly provided for in the Act. *See Przekurat ex rel. Przekurat v. Torres*, 428 P.3d 512, 514 (Colo. 2018) (court first looks to a statute's plain language). If, however, the Court applies § 1983 precedent, such as *Dodd*, and recognizes a claim for supervisory liability under the Act, such claim must be dismissed for the reasons set forth in § IV.C.1-4 above.

S.A. 045

### 3. *O'Neal, Noe, and Ford Are Not "Peace Officers"*

The Complaint's allegations concerning O'Neal, Noe, and Ford do not show that they satisfy the Act's definition of a "peace officer." The Complaint alleges that Noe classified Plaintiff into an all-male unit upon Plaintiff's intake at CJC, (Doc. 124, ¶ 54), Ford did an ADA interview of Plaintiff but did not place Plaintiff into an all-female unit (*id.* at ¶ 55), and O'Neal reviewed and denied Plaintiff's request for a transfer to an all-female unit (*Id.* at ¶ 57). Such duties do not plausibly assert that O'Neal, Noe, and Ford are "peace officers" as opposed to administrative employees, such as ADA coordinators or inmate intake coordinators. Consequently, Claims 5, 6, 7, 8, 9, 15, and 16 asserted against O'Neal, Ford, and Noe must be dismissed because the Complaint is devoid of plausible allegations supporting its conclusory assertion that O'Neal, Ford, and Noe are "peace officers."

### 4. *Plaintiff Fails to State a Plausible Violation of Her Rights Under the Colorado Constitution*

The Colorado Constitution generally does not give rise to an individual cause of action for damages. *Bd of Cnty. Comm'rs v. Sundheim*, 926 P.2d 545, 549-50 (Colo. 1996). Absent a § 1983-like state statute, *Sundheim's* holding has resulted in a somewhat limited body of case law delineating the specific rights protected by the Colorado Constitution. This is particularly important here because this case involves asserted rights that have not been clearly recognized under the United States Constitution, let alone the less litigated Colorado Constitution. Thus, when applying the Act (passed in 2020), this federal Court should not recognize rights for the first time under the Colorado Constitution. *See e.g. Younger v. Harris*, 401 U.S. 37 (1971). If, however, the Court

applies § 1983 precedent to Plaintiff's claims asserted under the Act, such claims fail for the same reasons as set forth above in § IV.C.1-4 above.

### H. The Claims Asserted Under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") Must Be Dismissed (Claims 10 and 11)

Plaintiff asserts claims under Title II of the ADA and the Rehabilitation Act. Courts examine both claims using a similar framework requiring a plaintiff to show that: (1) she is a qualified individual with a disability; (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) her exclusion, denial, or discrimination was by reason of her disability. 42 U.S.C. § 12132; *Cunningham v. Univ. of N.M Bd. of Regents*, 531 F. App'x 909, 919 (10th Cir. 2013) (unpublished) (noting that because the same substantive standards apply, court's rulings with regard to the ADA apply with equal force to the Rehabilitation Act); *but see Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1312-13 (10th Cir. 2021) (discussing the different causal standards under Title II of the ADA and Rehabilitation Act). A violation occurs when disabled individuals are excluded from the benefits of a public entity's services, that is, they are denied "meaningful access" to those services. *Alexander v. Choate*, 469 U.S. 287, 301 (1985).

Plaintiff's ADA and Rehabilitation Act claims are asserted against El Paso County only. Such claims must be dismissed for the reasons set forth in § IV.A above. To the extent the Complaint can be read to assert these claims against EPSO, they must be dismissed for the following reasons.

1. _Plaintiff Fails to Allege a Disability_

"[G]ender identity disorders not resulting from physical impairments" are categorically excluded from the ADA's definition of "disability." 42 U.S.C. § 12211(b)(1). "No federal court of appeals or the Supreme Court has…addressed whether [this] exclusion applies to gender dysphoria." _Venson v. Gregson_, No. 3:18-cv-2185-MAB, 2021 WL 673371, at *2 (S.D. Ill. Feb. 22, 2021) (unpublished). But there has been significant disagreement amongst district courts across the country regarding whether "gender dysphoria" is a "gender identity disorder" and categorically excluded from the ADA's definition of "disability" when it is not caused by a physical impairment. _See London v. Evans_, No. 19-599-MN, 2019 WL 5726983, at * 6 n.3 (D. Del. Nov. 5, 2019) (unpublished).

In the 2021 case _Doe v. Pa. Dep't of Corr._, the district court for the Western District of Pennsylvania surveyed decisions from across the country and identified three general approaches to this issue. "The first, and apparently the majority approach, views the [ADA's] language as expressing Congress' intent to exclude from the ADA's protection both disabling and non-disabling gender identity disorders [including gender dysphoria] that do not result from physical impairment." No. 1:20-cv-00023-SPB-RAL, 2021 WL 1583556, at *8-9 (W.D. Pa. Feb. 19, 2021) (unpublished) (quotations omitted). The second approach holds that gender dysphoria falls outside of the ADA exclusion so long as the condition substantially limits a major life activity, but this approach has drawn subsequent criticism for "lacking any textual or other support." _Id._ at *9 (citing _Parker v. Strawser Constr., Inc._, 307 F.Supp.3d 744, 754 (S.D. Ohio 2018). Finally, the "third approach recognizes a physical etiology underlying gender dysphoria may exist to place

the condition outside of the exclusion of gender identity disorders 'not resulting from physical impairments'…[But] [t]his third approach acknowledges that courts typically lack sufficient expertise…to determine the cause or causes of gender dysphoria." *Doe*, 2021 WL 1583556, at *9.

Here, the Court should adopt the first approach because it is in line with this Court's earlier decision in *Michaels v. Akal Sec., Inc.*, No. 09-cv-01300-ZLW-CBS, 2010 WL 2573988, at *6 (D. Colo. Jun. 24, 2010) (unpublished). There, the Court found that "[g]ender dysphoria, as a gender identity disorder, is specifically exempted as a disability…". *Id.* Thus, to survive dismissal, the Complaint must plausibly allege that Plaintiff's gender dysphoria results from a physical impairment. The Complaint contains no such plausible allegations. Consequently, Plaintiff's ADA and Rehabilitation Act claims should be dismissed.

### 2. *Plaintiff Fails to Allege Causation*

In its 2021 *Crane* decision, the Tenth Circuit addressed the divergent causal standards for claims asserted under Title II of the ADA and resolved this issue "by joining our sibling circuits in holding the ADA merely requires the plaintiff's disability be a but-for cause (i.e., 'by reason of') of the discrimination, rather than—as the Rehabilitation Act requires—its sole cause (i.e., 'solely by reason of')." 15 F.4th at 1312-13 (internal citations omitted). Notwithstanding this difference, the Tenth Circuit found that the plaintiff's claims were properly subject to dismissal because the plaintiff "fail[ed] to allege [his] disability was a but-for cause of the purported discrimination." *Id*. at 1313.

Like in *Crane*, the Complaint does not plausibly allege causation under the less onerous ADA standard or higher Rehabilitation Act standard because Plaintiff asserts that her transgender status—not Gender Dysphoria, the alleged disability—was the reason for her exclusion from certain programs and services within CJC (*See* Doc. 124, ¶ 1 ("El Paso County's policy of refusing to house transgender inmates based on their gender identity…"); 3 ("Defendants denied [Plaintiff] clothing that conforms with her gender identity despite the fact that cisgender women are allowed panties and lipstick."); 50 ("El Paso County, as a matter of policy, refuses to house transgender women in female housing facilities."); 71 ("It is El Paso County's official policy that transgender women (including those with Gender Dysphoria) are searched, including strip searched, by male staff and not female staff." )). Consequently, the Court must dismiss Plaintiff's ADA and Rehabilitation Act claims.

### 3. *Plaintiff Cannot Recover Emotional Distress Damages and Other Types of Damages Not Generally Compensable for Breach of Contract Claims*

In the 2022 case *Cummings v. Premier Rehab Keller, P.L.L.C.*, the Supreme Court noted that the Rehabilitation Act is akin to a contract between the federal government and recipients of federal funds which expressly provides that the recipients cannot discriminate on the basis of certain protected classes, including on the basis of a disability. 142 S. Ct. 1562, 1571-76 (2022). The Supreme Court had previously held that this created an implied private right of action to enforce such protections of the Rehabilitation Act. *Id*. However, in *Cummings*, the Supreme Court held that the damages available to plaintiffs in such claims must be limited to those available under contract law. *Id*. Emotional distress

S.A. 050

damages are generally not compensable for breach of a contract and thus are not available as remedies under the Rehabilitation Act. *Id*.

Expanding upon the Supreme Court's reasoning, other types of damages that are generally unavailable in breach of contract claims, like those for pain and suffering, should also be unavailable as a remedy under the Rehabilitation Act. *See, e.g., Cianciott v. Hospice Care Network*, 927 N.Y.S.2d 779, 785 (N.Y.S. July 26, 2011) ("[P]ain and suffering damages are not ordinarily recoverable in breach of contract actions.").

Furthermore, federal law expressly limits the remedies available under Title II of the ADA to those remedies available under the Rehabilitation Act. 42 U.S.C. § 12133; *Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002) (noting that "the remedies for violations of [Title II of the ADA] and § 504 of the Rehabilitation Act are coextensive…"). *Cumming*'s damage limitation should, therefore, apply with equal force to claims asserted under Title II of the ADA. Consequently, Claims 12 and 13 must be dismissed to the extent they seek to recover damages that are generally unavailable in breach of contract claims.

### 4. *Plaintiff Cannot Recover Compensatory Damages*

Compensatory damages under Title II of the ADA and Rehabilitation Act are only available in instances of intentional discrimination. *See Havens v. Colo. Dep't. of Corr.*, 897 F.3d 1250, 1264 (10th Cir. 2018). Intentional discrimination can be inferred from a defendant's deliberate indifference to a strong likelihood that the pursuit of its questioned policies will likely result in a violation of federally protected rights and a corresponding failure to act. *Id.*; *Rogers v. Colo. Dep't of Corrs.*, No. 16-cv-02733-STV, 2019 WL 4464036, at * 17 (D. Colo. Sept. 18, 2019) (unpublished).

It is unclear whether Gender Dysphoria is excluded from the ADA's definition of "disability" for the reasons set forth in § IV.K.1 above.  That is to say, it is unclear whether the right alleged by Plaintiff is protected under the ADA and Rehabilitation Act at all.  In similarly unclear circumstances, the Eighth Circuit applied § 1983 principles to find that a municipality was not deliberately indifferent under the ADA and Rehabilitation Act when the right in question was not clearly established. *See Roberts v. City of Omaha*, 723 F.3d 966, 975-76 (8th Cir. 2013) (holding the plaintiff "can only prevail on [the ADA and Rehabilitation Act] claims by showing the city's deliberate indifference to his alleged right to be free from discrimination in the circumstances of this case, but the city, like the individual officers, lacked notice the officers' actions might have violated [the plaintiff's] asserted rights.").

Applying the well-reasoned holding in *Roberts*, Plaintiff has failed to plausibly allege that EPSO was deliberately indifferent under the ADA and Rehabilitation Act given that the right alleged (*i.e.* Gender Dysphoria's protection under the ADA and Rehabilitation Act) is not clearly established.   Consequently, the Court must dismiss Plaintiff's ADA and Rehabilitation Act claims.

I.  **The Claims Asserted Under Colorado's Anti-Discrimination Act ("CADA") Must Be Dismissed Because Plaintiff Failed to Exhaust Her Administrative Remedies (Claims 12 and 13)**

Claims 12 and 13 allege discrimination in a place of public accommodation in violation of Colo. Rev. Stat. § 24-34-601(2)(a) (*i.e.* Part 6 of CADA). (Doc. 124, ¶ 295, 296, 301, 302.) CADA clearly states that,

> [n]o person may file a civil action in a district court in this state based on an alleged discriminatory or unfair practice prohibited by parts 4 to 7 of this

article without first exhausting the proceedings and remedies available to him under this part 3 unless he shows, in an action filed in the appropriate district court, by clear and convincing evidence, his ill health which is of such a nature that pursuing administrative remedies would not provide timely and reasonable relief and would cause irreparable harm.

Colo. Rev. Stat. § 24-34-306(14). Part 3 of CADA lays out the administrative procedure that a plaintiff must exhaust before filing a private action. Critically, the right to sue notice, issued at the conclusion of the administrative process, constitutes the exhaustion of administrative remedies. Colo. Rev. Stat. § 24-34-306(15).

Plaintiff's CADA claims are subject to CADA's exhaustion requirement because they assert discrimination in a place of public accommodation in violation of Colo. Rev. Stat. § 24-34-601(2)(a). (Doc. 124, ¶ 295, 296, 301, 302); Colo. Rev. Stat. § 24-34-306(14); *Brooke v. Restaurant Sevs., Inc.* 906 P.2d 66, 70 (Colo. 1995) ("We hold that administrative remedies under [CADA] must be exhausted only for claims filed pursuant to [CADA]."); *Mullen v. S. Denver Rehab., LLC*, No. 18-cv-01552-MEH, 2020 WL 2557501, at *18 (D. Colo. May 20, 2020) (unpublished) ("Part 6 of the CADA, under which Plaintiffs bring their claims, is included in the plain language of the statute requiring exhaustion of administrative remedies. Accordingly, the Plaintiffs must demonstrate that they exhausted administrative remedies before filing their claims under the CADA.") (internal citations and quotations omitted).

Plaintiff did not exhaust her administrative remedies under CADA before filing this lawsuit and does not allege exhaustion of her administrative remedies under CADA in the Complaint. (*See* Doc. 124, ¶ 12) (alleging PLRA exhaustion only). Consequently, the Court must dismiss Claims 12 and 13 under Fed. R. Civ. P. 12(b)(1) and/or (6).

## V.  CONCLUSION

Defendants respectfully ask the Court to enter an order dismissing Plaintiff's Complaint with prejudice, awarding Defendants reasonable attorneys' fees and costs, and for such other and further relief the Court deems just and proper.

Dated this 28th day of June 2022.

By: s/ *Nathan J. Whitney*
Nathan J. Whitney, #39002
Senior Assistant County Attorney
Terry A. Sample, #33919
Senior Assistant County Attorney
Chris Strider, #33919
Assistant County Attorney
Steven Martyn, #47429
El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
(719) 520-6485 (Main Office Line)
(719) 520-7264 (Office)
Email:
nathanwhitney@elpasoco.com
chrisstrider@elpasoco.com
terrysample@elpasoco.com
stevenmartyn@elpasoco.com

S.A. 054

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2022, I electronically filed a true copy of the Defendants' Motion to Dismiss Third Amended Complaint with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Andy McNulty
Mari Newman
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001
amcnulty@kln-law.com

   s/*Casey Campbell*   
Paralegal

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00387-NRN-CMA

DARLENE GRIFFITH,

      Plaintiff,

v.

EL PASO COUNTY, COLORADO, *et al*.

      Defendants.

---

**RESPONSE TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED**
**COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (6)**

---

Plaintiff, by and through her attorneys, responds to Defendants' Motion to Dismiss Third

Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6). [Doc. #132], as follows:

1. **Introduction**

This case is "about protecting the rights of transgender people in public spaces and not

forcing them to exist on the margins." *G.G. v. Gloucester Cty. Sch. Bd.*, 853 F.3d 729, 730 (4th

Cir. 2017) (Davis, J., concurring). It is a case that is, at its core, "about governmental validation of

the existence and experiences of transgender people, as well as the simple recognition of their

humanity." *Id.* Far from isolated, this case "is part of a larger movement that is redefining and

broadening the scope of civil and human rights so that they extend to a vulnerable group that has

traditionally been unrecognized, unrepresented, and unprotected." *Id.*

Ms. Griffith is a transgender woman who has been diagnosed with Gender Dysphoria. In

the community, she lives in accordance with her female gender identity. Despite this well-

documented history, Defendants Bill Elder, Cy Gillespie, Elizabeth O'Neal, Tiffany Noe, and

Brande Ford purposefully housed Ms. Griffith in an all-male unit in the El Paso County Jail. Even

in the face of Ms. Griffith's repeated requests to be moved to a unit that corresponds with her gender identity, Defendants continued to deny her this reasonable accommodation.

Defendants' decision to house Ms. Griffith in a unit that does not conform with her gender identity also subjected Ms. Griffith to a pervasive culture of discrimination and harassment. She was sexually harassed and subjected to a highly invasive (and completely unnecessary) cross-gender visual body cavity search by Defendant Andrew Mustapick, who told her that he wanted to go "balls deep in [her] ass" while Defendant Dawne Elliss did nothing to prevent this clearly unconstitutional search. She was continuously subjected to demeaning cross-gender pat-down searches. She was regularly mis-gendered and demeaned by El Paso County officials. She was not given clothing that conforms with her gender identity, despite the fact that cisgendered women are allowed women's underwear and grooming products. All of these actions were taken in accordance with the official policies of El Paso County, which were implemented by Defendants Elder and Gillespie, and pursuant to widespread unwritten customs and practices that El Paso County, Defendant Elder, and Defendant Gillespie have condoned. Defendants' motion to dismiss should be denied in its entirety.

2. **Relevant Factual Allegations**

As amply alleged in Plaintiff's Third Amended Complaint, El Paso County and its officials violated Ms. Griffith's Constitutional and statutory rights in a variety of different ways. First, Defendants Ford, O'Neal, Noe, Gillespie, and Elder purposefully intentionally disregarded Ms. Griffith's repeated requests to be housed in a unit that corresponded with her female gender identity by instead housing Ms. Griffith in an all-male unit within the El Paso County Jail because she is a transgender woman with male genitalia. [Doc. #124], ¶¶ 47-70. Defendants made this conscious decision to discriminate and expose Ms. Griffith to obvious danger despite knowing that

S.A. 057

Ms. Griffith suffered from Gender Dysphoria that was exacerbated by being housed in an all-male unit. *Id.*

Second, Defendant Mustapick sexually harassed and assaulted Ms. Griffith during an unconstitutional cross-gender visual body-cavity search while Defendant Elliss stood by and allowed Mustapick to violate Ms. Griffith's rights without intervening. *Id.*, ¶¶ 71-83. After Defendant Elliss left Ms. Griffith alone with Defendant Mustapick (a male deputy), Defendant Mustapick ordered Ms. Griffith to take off her socks, pants, and panties, place her hands on the wall, bend over, and "spread [her] sexy cheeks." *Id.*, ¶ 77. Defendant Mustapick then told Ms. Griffith that he was "going to go balls deep in that ass" while grabbing his own penis in view of Ms. Griffith. *Id.*, ¶78. Defendant Mustapick's threatening and demeaning search of Ms. Griffith served no legitimate penological purpose. *Id.*, ¶ 80.

Third, Defendants Ford, O'Neal, Noe, Gillespie, and Elder failed to protect Ms. Griffith by housing her in an all-male unit, which predictably led to her being assaulted by a male inmate. That inmate approached Ms. Griffith while she was laying in her bunk and groped her right breast while telling Ms. Griffith, "you know you want this dick." *Id.*, ¶¶ 84-88.

Fourth, because of Defendants Ford's, O'Neal's, Noe's, Gillespie's, and Elder's decision to house Ms. Griffith in an all-male facility, El Paso County officials subjected Ms. Griffith to continuous cross-gender pat-down searches. *Id.*, ¶¶ 89-96. Male deputies repeatedly touched Ms. Griffith's breasts and groin when patting her down. *Id.*, ¶ 90.

Fifth, because of Defendants Ford's, O'Neal's, Noe's, Gillespie's, and Elder's decision to house Ms. Griffith in an all-male facility, El Paso County officials constantly mis-gendered Ms. Griffith throughout her incarceration. *Id.*, ¶¶ 97-109. In one instance, an El Paso County deputy called Ms. Griffith a "blind faggot" in front of other inmates. *Id.*, ¶ 100. Mis-gendering is a form of sexual harassment.

S.A. 058

Sixth, because of Defendants Ford's, O'Neal's, Noe's, Gillespie's, and Elder's decision to house Ms. Griffith in an all-male facility, she was denied the ability to dress in accordance with her gender identity. *Id.*, ¶¶ 110-122. Ms. Griffith repeatedly requested gender affirming clothing, but was denied each time. *Id.*, ¶¶ 115-117.

Importantly, all of this conduct that violated Ms. Griffith's Constitutional and statutory rights was undertaken either pursuant to official El Paso County Jail policies (enacted and implemented by Defendant Elder and Gillespie), *id.*, ¶¶ 42, 57, 74, 81, 94, 106, 117, 118, and/or the widespread customs and practices at the El Paso County Jail. Doc. *Id.*, ¶¶ 67, 87, 94, 106, 118. These policies, customs, and practices directly caused the violation of Ms. Griffith's Constitutional rights. *Id.*, ¶¶ 42, 57, 67, 74, 81, 87, 94, 106, 117, 118. All of these actions by Defendants also caused Ms. Griffith to engage in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration. *Id.*, ¶¶ 69, 83, 96, 109, 122.

3. **STANDARD OF REVIEW**

3.1 **The general standard of review disfavors granting motions to dismiss.**

"There is a strong presumption against the dismissal of claims under [Fed.R.Civ.P. 12(b)(6)]." *Blevins v. Reid*, 2008 U.S. Dist. LEXIS 46168, at *9 (D. Colo. June 12, 2008).  A complaint will survive a Rule 12(b)(6) motion if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausible" does not mean "likely to be true," but is, instead, a nudge beyond "conceivable." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). When evaluating a Rule 12(b)(6) motion, a court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

Courts have rejected a heightened pleading standard for claims of municipal liability.

> The reasons for not requiring heightened fact pleading in a § 1983 municipal liability complaint remain even in the wake of *Twombly* and *Iqbal*: a plaintiff, as an outsider to municipal government, is not expected to have information about a city's official policies, practices, or training programs at the pleading stage.

*Walker v. Zepeda*, 2012 U.S. Dist. LEXIS 74386, *14 (D. Colo. May 29, 2012) (Ebel, J). Thus, a complaint sufficiently alleges municipal liability where "it contain[s] not only 'a boilerplate recitation of the grounds for municipal liability,'" but also makes "*some additional allegation to put the municipality on fair notice* of the grounds for which it [is] being sued." *Id*. (quoting *Taylor v. RED Dev., LLC*, 2011 U.S. Dist. LEXIS 97985, at *4 (D. Kan. Aug. 31, 2011). "To require more could foreclose legitimate § 1983 claims that, after appropriate discovery, turn out to have evidentiary support." *Id*. at *15-16 (citing *Wilson v. City of Chicago*, 2009 U.S. Dist. LEXIS 93912, at *3 (N.D. Ill. Oct. 7, 2009).

### 3.2 <u>Qualified immunity does not shield defendants from liability where there conduct is egregious, or where caselaw puts them on notice their conduct is unconstitutional.</u>

To show that a right was clearly established, a plaintiff may point to "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (citations omitted). But, even absent such a showing, qualified immunity does not shield a defendant when "a reasonable officer would understand that what he is doing violates that right." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Nor does qualified immunity require the plaintiff to show "the very act in question previously was held unlawful." *Gutierrez*, 841 F.3d at 899 (10th Cir. 2016). "[N]ot every constitutional violation has factual antecedents," and courts "can occasionally rely on the general proposition that it would be 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted…even though existing precedent does not address similar circumstances.'" *Colbruno v. Kessler*, 928 F.3d 1156, 1165 (10th Cir. 2019) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018)). The Tenth Circuit has held, in line with Supreme Court precedent, that "general

statements of the law are not inherently incapable of giving fair and clear warning to officers as long as the unlawfulness of an action is apparent[.]" *Ashaheed v. Currington*, 7 F.4th 1236, 1246 (U.S. 10th Cir. 2021) (cleaned up) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). In fact, "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) (internal quotation marks and citation omitted). "[I]t would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt." *Colbruno*, 928 F.3d at 1165.

4. **ARGUMENT**

    4.1 **Plaintiff adequately alleges that Defendants Elder and Gillespie personally participated in the violation of her Constitutional rights.**

"Personal involvement [in a constitutional violation] does not require direct participation because § 1983 states any official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (citation omitted). In *Dodds*, the court held that a sheriff was personally responsible under Section 1983 where the enforcement of jail policy caused the violation of the plaintiff's constitutional rights when the sheriff was "responsible for the policies that operated [at the jail] and [those policies] enforced by his subordinates at the jail." *Id.* at 1203. Similarly, here, Plaintiff alleges that the policies enacted by Defendant Elder and Gillespie, [Doc. #124], ¶¶ 14, 57, caused the violation of her constitutional rights. Further, Plaintiff alleges that Defendants Elder and Gillespie make facility assignments to people in custody solely on the basis of the individual's genitalia, in contravention of widely accepted standards, *Id.*, ¶ 42, which caused the violation of Plaintiff's constitutional rights in numerous ways. *Id.*, ¶¶ 47-122.

Further, where the "underlying unconstitutional misconduct was so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of it," a factfinder may infer that the governing officials *did* know about the misconduct. *Jojola v. Chavez*, 55 F.3d 488 (10th Cir. 1995). The violation of Ms. Griffith's rights was no secret, and transgender inmates at the El Paso County Jail are constantly housed in facilities that do not correspond with their gender identity, subjecting them to discrimination and exposing them to an extreme risk of assault and harassment. [Doc. #124], ¶ 67. This case is very similar to *Lopez v. LeMaster*, in which the Tenth Circuit held that a sheriff was liable for deliberate indifference because he did not take action to prevent inmates from being attacked by other inmates at the jail, despite being aware of prior attacks and deficiencies in staffing and surveillance that prevented the jail from preventing attacks. 172 F.3d 756, 760-64 (10th Cir. 1999). As alleged, Defendants Elder and Gillespie are personally liable for the violation of Plaintiff's Constitutional rights.

Finally, *Dodds* and *Lopez* clearly establish that an official who implements an official policy that causes the violation of the Constitution is not entitled to qualified immunity.

4.2 <u>**Plaintiff adequately alleges that Defendants violated her rights under the Fourteenth Amendment's Equal Protection Clause.**</u>

The Equal Protection Clause of the Fourteenth Amendment directs that "all persons similarly situated should be treated alike," thereby protecting against intentional discrimination by way of classifications that reflect "a bare . . . desire to harm a politically unpopular group." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1050 (7th Cir. 2017) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). As alleged, Ms. Griffith is a transgender woman and Defendants knew as much. [Doc. #124], ¶¶ 25-27, 110-112. Defendants' decision to disregard Ms. Griffith's identity as a transgender woman, and instead treat her as a male inmate, violated her Fourteenth Amendment rights.

S.A. 062

### 4.2.1 **As alleged, Defendants engaged in sex- and gender-based discrimination against Ms. Griffith.**

Refusing to allow transgender individuals to use public facilities that correspond with their gender identities is sex- and gender-based discrimination under the Fourteenth Amendment. *Adams v. Sch. Bd.*, 968 F.3d 1286, 1302 (11th Cir. 2020); *Grimm v. Gloucester Cty. Sch. Bd.*, 976 F.3d 399, 402 (4th Cir. 2020); *Whitaker*, 858 F.3d at 1048-49. When an inmate is "placed in a facility based on their genitalia… a sex-based classification is used, and intermediate scrutiny must be applied." *Hampton v. Baldwin*, No. 3:18-CV-550-NJR-RJD, 2018 U.S. Dist. LEXIS 190682, at *32-37 (S.D. Ill. Nov. 7, 2018); *see also Tay v. Dennison*, 457 F. Supp. 3d 657 (S.D. Ill. 2020); *Doe v. Mass. Dep't of Corr.*, No. 17-12255-RGS, 2018 U.S. Dist. LEXIS 99925, at *25 (D. Mass. June 14, 2018) (holding that a transgender prisoner's "compulsory assignment to a men's prison caused Doe to be treated differently from other female prisoners"); *Iglesias v. Fed. Bureau of Prisons*, No. 19-CV-415-NJR, 2021 U.S. Dist. LEXIS 245517, at *72 (S.D. Ill. Dec. 27, 2021). Defendants violated Ms. Griffith's rights under the Equal Protection Clause in the same way by housing her in an all-male unit and denying her access to women's facilities, solely based on her transgender status and the fact that she has male genitalia. [Doc. #124], ¶¶ 42, 47-70. In other words, a similarly situated woman to Ms. Griffith would not be housed in an all-male facility.

Moreover, Defendants discriminated against Ms. Griffith by denying her items that cisgender women have access to, including clothing and grooming products, solely based on her transgender status. [Doc. #124], ¶¶ 110-122. The United States Supreme Court has long held that sex stereotyping based on preconceived notions about appropriate dress for men and women is intolerable sex discrimination. *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); *Smith v. City of Salem*, 378 F.3d 566, 574 (6th Cir. 2004) ("After *Price Waterhouse*, an employer who discriminates against women because, for instance, they do not wear dresses or makeup, is

**S.A. 063**

engaging in sex discrimination because the discrimination would not occur but for the victim's

sex."); *Dawson v. Bumble & Bumble*, 398 F.3d 211, 221 (2d Cir. 2005). Simply put, "it is

impossible to discriminate against a person for being homosexual or transgender without

discriminating against that individual based on sex." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731,

1741 (2020). Plaintiff adequately alleges that Defendants' actions constitute sex- and gender-based

discrimination.

### 4.2.2 **Plaintiff, as a transgender woman, is a member of a suspect, or quasi-suspect, class.**

A growing consensus of courts have held that transgender individuals constitute a suspect

or quasi-suspect class.[1] And, when evaluating transgender individuals under the four-factor test

outlined for determining whether a class qualifies as suspect or quasi-suspect, it becomes clear that

discrimination against transgender individuals merits heightened scrutiny. Heightened scrutiny is

appropriate when the class being discriminated against: (1) has been "historically subjected to

discrimination," (2) has a defining characteristic bearing no "relation to ability to perform or

contribute to society," (3) has "obvious, immutable, or distinguishing characteristics," and (4) is a

---

[1] *See, e.g., Grimm*, 972 F.3d at 610-13 (holding that transgender people constitute a quasi-suspect class); *Crowder v. Diaz*, No. 2:17-CV-1657-TLN-DMC, 2019 U.S. Dist. LEXIS 140306, at *30 (E.D. Cal. Aug. 16, 2019) (same); *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 288 (W.D. Pa. 2017); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015) (same); *Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 873 (S.D. Ohio 2016) (same); *M.A.B. v. Bd. of Educ.*, 286 F. Supp. 3d 704, 718-19 (D. Md. 2018) (same); *Norsworthy*, 87 F. Supp. 3d at 1119 (same); *F.V. v. Barron*, 286 F. Supp. 3d 1131, 1145 (D. Idaho 2018) (same); *Karnoski v. Trump*, 2018 U.S. Dist. LEXIS 63563, 2018 WL 1784464 (W.D. Wash. Apr. 13, 2018) (same); *see also Flack v. Wis. Dept. of Health Servs.*, 328 F. Supp. 3d 931, 951-53 (W.D. Wis. 2018) (explaining in a ruling on a preliminary injunction why heightened scrutiny would likely apply to transgender persons); *Doe v. Wash. State Dep't of Corr.*, No. 4:21-CV-5059-TOR, 2021 U.S. Dist. LEXIS 93455, at *21 (E.D. Wash. May 17, 2021); *McQueen v. Brown*, No. 2:15-cv-2544 JAM AC P, 2018 U.S. Dist. LEXIS 66377, 2018 WL 1875631, at *3 (E.D. Cal. Apr. 19, 2018*), report and recommendation adopted*, No. 2:15-cv-2544 JAM AC P, 2018 U.S. Dist. LEXIS 91170, 2018 WL 2441713 (E.D. Cal. May 31, 2018) (collecting cases); *Karnoski v. Trump*, No. C17-1297-MJP, 2018 U.S. Dist. LEXIS 63563, 2018 WL 1784464, at *1 (W.D. Wash. Apr. 13, 2018) ("The Court also rules that, because transgender people have long been subjected to systemic oppression and forced to live in silence, they are a protected class.").

S.A. 064

"minority or is politically powerless." *Windsor v. United States*, 699 F.3d 169, 181 (2d Cir. 2012), *aff'd on other grounds*, 570 U.S. 744 (2013); *see also Bowen v. Gilliard*, 483 U.S. 587, 602 (1987); *Cleburne*, 473 U.S. at 440-41. Transgender individuals, like Ms. Griffith, meet all of these criteria.

First, "[i]t is generally accepted that transgender individuals face an alarming rate of discrimination, harassment, and violence." *Crowder*, 2019 U.S. Dist. LEXIS 140306, at *32-35;[2] *see also Grimm v. Gloucester Cty. Sch. Bd.*, 302 F. Supp. 3d 730, 749 (E.D. Va. 2018). For example, the transgender community "suffers from high rates of employment discrimination, economic instability, and homelessness." *Grimm*, 972 F.3d at 611. Additionally, transgender individuals frequently experience harassment in places such as schools, medical settings, and retail stores, while also experiencing physical assault in places such as schools and places of public accommodation, at high levels and being disproportionate victims of violent crime. *Id.* "In the prison context, [PREA] exposed heightened risk of sexual assault against LGBTQI prisoners and the atypical severity of punishments LGBTQI people face solely for being themselves" and "transgender inmates are thirteen times more likely to be assaulted than other prisoners." *Crowder*, 2019 U.S. Dist. LEXIS 140306, at *33. And, the El Paso County Jail's treatment of Ms. Griffith is an exemplar of how "current measures and policies continue to target transgender persons for differential treatment." *Grimm*, 972 F.3d at 611.

Second, in *Windsor*, the Second Circuit concluded "the aversion homosexuals experience has nothing to do with aptitude or performance." 699 F.3d at 182-83. "The same can be said of

---

[2] Citing Jaime M. Grant et al., *Injustice at Every Turn: A Report of the National Transgender Discrimination Survey*, Nat'l Center for Transgender Equality (2011), available at https://www.transequality.org/sites/default/files/docs/resources/NTDS_Report.pdf.

**S.A. 065**

discrimination leveled at transgender people." *Crowder*, 2019 U.S. Dist. LEXIS 140306, at \*35;

*Grimm*, 972 F.3d at 611.

Third, the Fourteenth Amendment is meant to protect citizens from discrimination based

on circumstances beyond their control. *See Plyler*, 457 U.S. at 216 n.14. "[B]eing transgender is

not a choice." *Grimm*, 972 F.3d at 612. At least three courts, based on substantial evidence, have

acknowledged that gender identity is biologically determined. *Id.*; *Crowder*, 2019 U.S. Dist.

LEXIS 140306, at \*35-36; *Doe v. McConn*, 489 F. Supp. 76, 78 (S.D. Tex. 1980) ("These findings

indicate that the transsexual has not made a choice to be as he is, but rather that the choice has

been made for him through many causes preceding and beyond his control"). And, "given the

discrimination transgender individuals face, it is illogical to assert that a person would actively

choose this 'lifestyle.'" *Crowder*, 2019 U.S. Dist. LEXIS 140306, at \*35-36 (quoting *Hernandez-

Montiel v. Immigration & Naturalization Serv.*, 225 F.3d 1084, 1095 (9th Cir. 2000) (stating

a transgender asylum applicant's female sexual identity "must be fundamental, or [s]he would not

have suffered this persecution and would have changed years ago")).

Fourth, "transgender people constitute a minority lacking political power" given that

"approximately 0.6% of the adult population in the United States" identifies as transgender.

*Grimm*, 972 F.3d at 612. "[T]ransgender persons are underrepresented and have not gained

positions of significant power" and "no acknowledged transgender person has ever held a

significant position in Congress or the federal judiciary." *Crowder*, 2019 U.S. Dist. LEXIS

140306, at \*36-37 (citing *Adkins*, 143 F. Supp. 3d at 140 ("[T]here is no indication that there have

ever been any transgender members of the United States Congress or the federal judiciary.");

*M.A.B. v. Bd. of Educ.*, 286 F. Supp. 3d 704, 721 (D. Md. 2018) ("Only two openly transgender

candidates have ever been elected; both won seats in a state legislature.")). Importantly, "the

examples of discrimination" against transgender individuals (which this case represents) "affirm

**S.A. 066**

what we intuitively know: Transgender people constitute a minority that has not yet been able to meaningfully vindicate their rights through the political process." *Grimm*, 972 F.3d at 612.

For these reasons, a growing consensus of courts that have held "transgender persons constitute a quasi-suspect class" and discrimination against them is subject to heightened scrutiny. *Id.* at 613. Ms. Griffith is a member of a quasi-suspect class.

> ### 4.2.3 Defendants' deliberate decision to disregard Ms. Griffith's female gender identity, and instead treat her as a male inmate, was not substantially related to an important interest and violated the Equal Protection clause.

Under intermediate scrutiny, "classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives" in order to be upheld. *Craig v. Boren*, 429 U.S. 190, 197 (1976). "When a sex-based classification is used, the burden rests with the state to demonstrate that its proffered justification is 'exceedingly persuasive.'" *Whitaker*, 858 F.3d at 1050 (citing *United States v. Virginia*, 518 U.S. 515, 533 (1996)). "It is not sufficient to provide a hypothesized or *post hoc* justification created in response to litigation." *Id.* The Tenth Circuit has recognized that "[a]t least since *Virginia*, [the arc of the Supreme Court's equal protection jurisprudence] bends toward requiring more—not less—judicial scrutiny when asserted physical differences are raised to justify gender-based discrimination[.]" *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805 (10th Cir. 2019). Ultimately, the question this Court must answer is whether Defendants' "policy of placing transgender inmates in the prison of their assigned sex at birth [is] substantially related to the achievement of prison security?" *Hampton*, 2018 U.S. Dist. LEXIS 190682, at *32-37. The answer to that question is a resounding no.

As alleged, there was no reason for Defendants to assign Plaintiff – who for decades has lived in society as a woman, and who has previously been housed with female offenders in the Colorado Department of Corrections – to an all-male unit other than the fact that she has male

genitalia and her sex assigned at birth was male. [Doc. #124], ¶¶ 42, 47-70. Transgender inmates

do not generally pose a greater security threat than cisgender inmates. *Doe*, 2018 U.S. Dist.

LEXIS 99925, 2018 WL 2994403, at *10 (citing *Virginia*, 518 U.S. at 531 and holding that

"generalized concerns for prison security are insufficient to meet the 'demanding' burden placed

on the State to justify sex-based classifications"). Defendants' placement of Plaintiff in an all-male

facility is particularly glaring in light of her previous placement with female inmates in the

CDOC, of which, as alleged, Defendants were aware. [Doc. #124], ¶ 65. Given the lack of any

justification for housing Ms. Griffith in an all-male unit other than her genitalia and sex assigned

at birth, that classification does not pass intermediate scrutiny.

Therefore, based on substantial precedent, it is clear that, as alleged, Plaintiff's placement

in an all-male unit was not substantially related to an important government interest. *See Tay*, 457

F. Supp. 3d at 682 (holding that a transgender prisoner's placement in a men's prison was not

substantially related to an important government interest even though the prisoner had a history of

violent behavior); *Hampton*, 2018 U.S. Dist. LEXIS 190682, 2018 WL 5830730, at *12 (finding

that a transgender female inmate's equal protection claim based on her placement in a

men's prison had a "greater than negligible chance of success on the merits"); *Doe*, 2018 U.S.

Dist. LEXIS 99925, 2018 WL 2994403, at *9 (refusing to dismiss transgender woman prisoner's

equal protection claim because "the DOC ha[d] not met its burden of demonstrating

that housing her and other similarly situated transgender prisoners in facilities that correspond to

their birth sex serves an important governmental interest"); *Norsworthy*, 87 F. Supp. 3d at 1120

(finding that a transgender woman prisoner adequately stated equal protection claim

against prison officials for denying her sex reassignment surgery).

Finally, Defendants are not entitled to qualified immunity based on the caselaw and well-

established legal principles outlined above. Particularly, the Supreme Court's decision in *Bostock*,

S.A. 068

the weight of authority from other circuits holding that discrimination against transgender individuals violates the Fourteenth Amendment, and the Tenth Circuit's decision in *Free the Nipple-Fort Collins* would have put Defendants on notice that they were violating Ms. Griffith's Fourteenth Amendment rights.

### 4.2.4 Separately, the sexual harassment that Ms. Griffith was subjected to demonstrates that Defendants violated the Equal Protection clause.

Ms. Griffith was subjected to significant verbal and physical harassment by staff and other inmates. "[I]t is well-settled that sexual harassment also violates the Equal Protection clause[.]" *Lucente v. Cty. of Suffolk*, 980 F.3d 284, 304, 305 (2d Cir. 2020); *Doe v. Beaumont Indep. Sch. Dist.*, No. 1:21-CV-00132, 2022 U.S. Dist. LEXIS 125296, at *31 n.15 (E.D. Tex. July 14, 2022) (citing cases). "To succeed on her sexual harassment claim under the Equal Protection Clause, [Ms. Griffith] must establish (1) the harassment was intentional and based on sex and (2) the harassment was 'sufficiently severe or pervasive.'" *Hampton*, 2018 U.S. Dist. LEXIS 190682, at *37-39 (quoting *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990). "[A] plaintiff wishing to sustain an equal protection claim of sexual harassment must show both 'sexual harassment' and an 'intent' to harass based upon that plaintiff's membership in a particular class of citizens." *Id*. at 1040.

As alleged, Ms. Griffith was sexually harassed by Defendant Mustapick who, on intake to the El Paso County Jail, ordered Ms. Griffith to undress, bend over, and "spread [her] sexy cheeks," and then grabbed his own penis while threatening Ms. Griffith that he was "going to go balls deep in that ass". [Doc. #124], ¶¶ 71-83. After this egregious harassment, Ms. Griffith continued to be consistently harassed and mis-gendered by deputies because she is a transgender woman (including an incident where a deputy called Ms. Griffith a "blind faggot"). *Id.*, ¶¶ 97-109. Ms. Griffith was also assaulted by another inmate because she was discriminatorily placed into a unit that does not correspond with her gender identity. *Id.*, ¶ 84-88. Given all of this, Ms. Griffith

**S.A. 069**

has alleged a compelling sexual harassment claim under the Equal Protection clause McNamarah, Chan Tov, Misgendering as Misconduct, 68 UCLA L. Rev. Disc. 40, 43 (2020).[3] Defendant Mustapick is not entitled to qualified immunity based on the caselaw and well-established legal principles outlined here.

### 4.3 **Plaintiff adequately alleges that Defendants violated her substantive due process rights under the Fourteenth Amendment.**

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees—who have not been adjudged guilty of any crime—from any conditions or restrictions that amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979); *see also Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002).[4] "[I]f a restriction or condition is not reasonably related to a

---

[3] Citing *G. G. ex rel. Grimm v Gloucester Cty. Sch. Bd.*, 822 F3d 709, 716 (4th Cir 2016) (finding misgendering "display[s] hostility"), *vacated*, 137 S Ct 1239 (2017); *Hampton*, 2018 U.S. Dist. LEXIS 190682, 2018 WL 5830730, at *2 (quoting medical testimony that "misgendering transgender people can be degrading, humiliating, invalidating, and mentally devastating" and holding that transgender woman had a strong equal protection claim based on sexual harassment in a male prison and was likely to succeed on the merits where prisoners and correctional officers constantly misgendered her and verbally abused her with slurs such as "fag," "it," "he-she", and "dick-sucker"); *Prescott v Rady Children's Hosp.-San Diego*, 265 F Supp 3d 1090, 1096 (S.D. Cal. 2017) ("For a transgender person with gender dysphoria, being referred to by the wrong gender pronoun is often incredibly distressing."); *Rumble v Fairview Health Servs.*, No. 14-CV-2037, 2015 U.S. Dist. LEXIS 31591, at *71 (D. Minn. Mar. 16, 2015) (rejecting defendant's characterization of misgendering as a "perceived slight[]" and concluding it was "objectively offensive behavior"); *Doe v City of New York*, 42 Misc. 3d 502 (Sup Ct NY County) (concluding purposeful misgendering as "not a light matter, but one which is laden with discriminatory intent"); *see also Gregory v. Jeffreys*, No. 21-1097, 2021 U.S. Dist. LEXIS 206187, at *10 (C.D. Ill. Oct. 26, 2021) (holding that "Plaintiff has adequately alleged Defendant Warden Jackson violated Plaintiff's equal protection rights based on a policy and practice of allowing staff to sexually harass transgender inmates"); *Tay*, 457 F. Supp. 3d at 683 (S.D. Ill. 2020); *Hecox v. Little*, 479 F. Supp. 3d 930, 957 (D. Idaho 2020) (finding that "misgendering" was "concerning" given that it is "degrading, mean, and potentially mentally devastating to transgender individuals"); *Joyner v. Snyder*, No. 06-3062, 2007 U.S. Dist. LEXIS 7214, 2007 WL 401269, at *2 (C.D. Ill. Feb. 1, 2007) (finding that prisoner sufficiently stated an equal protection violation where prisoner alleged that he was harassed and discriminated against because of his sexual orientation).

[4] Pretrial detainees possess greater constitutional rights than prisoners. *Stone v. City & County of San Francisco*, 968 F.2d 850, 857 n.10 (9th Cir. 1992); *see also Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016) ("Eighth Amendment protections apply only once a prisoner

legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees[.]" *Bell*, 441 U.S. at 539 Punishment occurs if an official action causes the "infliction of pain" on an inmate that is "unnecessary and wanton." *Jordan v. Gardner*, 986 F.2d 1521, 1525 (9th Cir. 1993). Physical injury need not result for the punishment to state a cause of action, for the wanton infliction of psychological pain is also prohibited. *Benefield v. McDowall,* 241 F.3d 1267, 1272 (10th Cir. 2001); *Calhoun v. Detella,* 319 F.3d 936, 939 (7th Cir. 2003).

### 4.3.1 Defendant El Paso County subjected Ms. Griffith to unconstitutional conditions of confinement through near-constant sexual harassment and unwanted cross-gender touching.

"[A] female detainee has the right not to be sexually harassed, verbally or physically, by other detainees or guards." *Shaw v. District of Columbia*, 944 F. Supp. 2d 43, 58-59 (D.D.C. 2013); *Farmer v. Brennan*, 511 U.S. at 834 (1994) (unsolicited sexual touching, harassment, and coercion are "simply not part of the penalty that criminal offenders pay for their offenses against society" (internal quotations omitted)).[5] El Paso County officials' continuous harassment of Ms. Griffith and repeated unwanted cross-gender touching of her, as amply alleged, violated her substantive due process rights. [Doc. #124], ¶¶ 97-109.

---

has been convicted of a crime, while pretrial detainees are entitled to the potentially more expansive protections of the Due Process Clause of the Fourteenth Amendment.").

[5] *See also Women Prisoners of the District of Columbia Dep't of Corrections v. D.C.*, 877 F. Supp. 634, 664-67 (D.D.C. 1994) (sexual assault, coercion and harassment of the sort alleged by plaintiff violate contemporary standards of decency and can cause severe physical and psychological harm); *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (holding that where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the harassment itself may also be sufficient evidence of a malicious and sadistic state of mind"); *Joseph v. U.S. Fed. Bureau of Prisons*, 232 F.3d 901 (10th Cir. 2000) ("[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the unnecessary and wanton infliction of pain[] that is forbidden by the Eighth Amendment."); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir.1998).

### 4.3.2 **Defendant Mustapick subjected Ms. Griffith to unconstitutional conditions of confinement through the cross-gender visual body-cavity search he performed on her.**

A visual body-cavity search violates the Constitution where the search was "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Fillmore v. Page,* 358 F.3d 496, 505 (7th Cir. 2004); *Calhoun,* 319 F.3d at 939. "[E]xposing a person's naked body involuntarily is a severe invasion of personal privacy." *Colbruno v. Kessler,* 928 F.3d 1155, 1161-63 (10th Cir. 2019) (holding that pretrial detainee who was walked naked through public areas of a hospital had a valid claim under the Fourteenth Amendment that his jailers violated clearly established law). Forcing Ms. Griffith to be naked in front of a male guard, who then made her spread her "sexy" butt cheeks to "go balls deep" while grabbing his own penis, [Doc. #124], ¶¶ 71-83, certainly rises to "calculated harassment unrelated to prison needs" with the intent to humiliate Ms. Griffith. *Richards v. Wexford,* 2021 U.S. App. LEXIS 31545, 2021 WL 4892160, at *3 (7th Cir. Oct. 20, 2021). This is highlighted by the multiple courts that have held that actions similar to, and less egregious than, the actions of Defendant Mustapick imposed unconstitutional conditions of confinement on the plaintiff-inmate; these cases and legal principles also demonstrate why Defendant Mustapick is not entitled to qualified immunity.[6]

---

[6] *See Vazquez v. Cty. of Kern,* 949 F.3d 1153, 1163-64 (9th Cir. 2020) (holding that a female pretrial detainee had shown Fourteenth Amendment violation where a guard had watched a female detainee shower, along with: (1) calling the detainee "babe"; (2) telling the detainee that she had a "big butt"; (3) commenting on the detainee's shower gown; (4) telling the detainee that he had seen her in the shower and that she should leave her boyfriend to find someone like him; and (5) telling the detainee about a sexual dream he had about her and that he wanted the dream to come true); *Kent v. Johnson,* 821 F.2d 1220, 1227- 28 (6th Cir. 1987) (holding that plaintiff sufficiently alleged a violation of his constitutional rights where he alleged "that female prison guards have allowed themselves unrestricted views of his naked body in the shower, at close range and for extended periods of time, to retaliate against, punish and harass him for asserting his right to privacy"); *Semelbauer v. Muskegon Cnty.*, No. 1:14-cv-1245, 2015 U.S. Dist. LEXIS 189417, 2015 WL 9906265, at *3-4 (W.D. Mich. Sept. 11, 2015) (permitting plaintiff to proceed on separate claims that the viewing of female inmates by male guards violated both her Fourth and Eighth Amendment rights); *Payette v. Hoenisch,* 284 Fed. Appx. 348, 2008 U.S. App. LEXIS 14441, No. 07-3249, 2008 WL 2648917, at *5 (7th Cir. 2008) (holding that plaintiff's evidence

### 4.3.3 Defendant El Paso County subjected Ms. Griffith to unconstitutional conditions of confinement through its officials' repeated cross-gender pat-down searches of her.

The cross-gender pat-down searches inflicted on Ms. Griffith violated her Fourteenth Amendment rights by imposing on her an unconstitutional condition of confinement. [Doc. #124], ¶¶ 89-96. Multiple courts have held that repeated cross-gender pat-down searches of women, absent emergency circumstances that would necessitate performing a cross-gender pat-down search, impose unconstitutional conditions of confinement. *See Jordan*, 986 F.2d at 1526; *Colman v. Vasquez*, 142 F.Supp.2d 226 (D. Conn. 2001); *Nelson v. City of Stamford*, No. 3:09-cv-1690 (VLB), 2012 U.S. Dist. LEXIS 8907, at *72-73 (D. Conn. Jan. 25, 2012). For example, in *Colman*, a court addressed the constitutionality of cross-gender at searches in the context of a female prisoner incarcerated in a special unit for victims of sexual assault who was forced to submit to pat searches by male guards. 142 F.Supp.2d at 226. The *Colman* court noted that "'women experience unwanted touching by men differently from men subject to comparable touching by women.'" 142 F.Supp.2d at 232 (quoting *Jordan*, 986 F.2d at 1521). And, in *Jordan*, the Court found that women who expressed significant emotional distress at being continually

---

"that he was strip searched in front of a window in which everyone in the booking department, including inmates and officials of both sexes, could see him . . . create a triable dispute whether the search was conducted 'in a harassing manner intended to humiliate and inflict psychological pain'") (quoting *Calhoun,* 319 F.3d at 939); *Solan v. Ranck,* No. CV-06-0049, 2007 U.S. Dist. LEXIS 84903, 2007 WL 4111424, at *8 (M.D. Pa. 2007) (holding that Eighth Amendment claim was stated where plaintiff alleged that correctional officers deliberately prevented him from placing his towel around his waist then dragged him naked in front of a large group of people of both sexes; this allegation supports the inference that they intended to humiliate him, an action without any penological justification, due to the fact that defendants deliberately put the plaintiff on display naked); *see also Vasquez v. Raemisch,* 480 F. Supp. 2d 1120, 1131-32 (W.D. Wis. 2007) (holding that Eighth Amendment claim was stated as to strip search where the plaintiff alleged his constitutional rights were violated by the manner of the search whereby several officers made contact with his genitals; the court held that "[e]ven if legitimate security reasons existed for proceeding directly to a manual search, there could be no legitimate purpose for using a strip search as a means of obtaining sexual gratification or conducting it in a manner intended to humiliate the prisoner, which is what petitioner alleges respondents . . . were doing").

S.A. 073

being subjected to cross-gender pat-down searches had a claim for violation of their Constitutional rights. *Jordan*, 986 F.2d at 1531 (en banc) (holding that a cross-gender clothed body search policy at a women's prison constituted cruel and unusual punishment because many of the inmates had histories of sexual or physical abuse by men and because cross-gender bodily searches, even if conducted properly, would likely inflict psychological trauma).

Here, Ms. Griffith was part of a particularly vulnerable population, transgender woman inmates, and suffered from Gender Dysphoria. [Doc. #124], ¶¶ 48-49. She is also blind. *Id.*, ¶¶ 50. The searches were not performed under exigent circumstances or due to any emergency; she was routinely patted-down by male deputies. *Id.*, ¶¶ 89-96. Ms. Griffith has adequately alleged a claim against El Paso County for violating her Fourteenth Amendment rights through its customary practice, which was done pursuant to El Paso County policy, of subjecting her to continuous cross-gender pat-down searches. *Id.*, ¶¶ 89-96.

### 4.3.4 Defendants El Paso County, Ford, O'Neal, Noe, Gillespie, and Elder violated Ms. Griffith's rights under the United States and Colorado Constitutions by failing to protect her from assault.

Prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832. More to the point, they "have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. "A prison official violates the [Constitution] 'when a substantial risk of serious harm, *of which the official is subjectively aware*, exists[,] the official does not respond reasonably to the risk,'" and the official's actions or inaction causes the injury. *Id*. The prison official must be both aware of the risk and draw the inference. *Farmer*, 511 U.S. at 837. The Supreme Court in *Farmer* held that circumstantial evidence and the obviousness of the substantial risk of harm, not just actual notification, may be used to establish subjective awareness. 511 U.S. at 842-44. Further, allegations suggesting the substantial risk was "long-standing, pervasive, [or] well-documented" and the defendants "had

19

been exposed to information concerning the risk and thus must have known about it ... could be sufficient ... to find that [the defendants] had actual knowledge of the risk." *Id.* at 842-43 (internal quotation marks and citation omitted).

When analyzing subjective awareness, courts have considered the obviousness of the risk to inmate safety, the defendant's knowledge about the vulnerability of certain types of inmates to risk of harm, prison policies pertaining to such inmates, and their housing placements. *See Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81-82 (6th Cir. 1995).[7] Placing Ms. Griffith, a blind, transgender woman, into a general population male ward was nearly *per se* deliberately indifferent to a risk that she would be assaulted by male inmates. *See Diamond v. Owens*, 131 F. Supp. 3d 1346, 1376-79 (M.D. Ga. 2015) (holding that a non-violent, transgender female inmate, faced a substantial risk of sexual assault at closed-security facilities because the risk was obvious and that guards are obviously aware from PREA that transgender inmates face a substantial vulnerability to sexual assault).

*Farmer* itself provides strong and binding authority that Defendants violated Ms. Griffith's rights by not protecting her from male inmates. In *Farmer*, a transgender inmate, allegedly known to be vulnerable to sexual assault, complained prison officials were deliberately indifferent to a substantial risk of sexual assault by placing her in general population at a "higher security facility" known for its violent environment and history of assaults. *Farmer*, 511 U.S. at 825. The Supreme Court emphasized the constitutional right of prisoners to be reasonably protected from the

---

[7] *See also Green v. Hooks*, 2013 U.S. Dist. LEXIS 124806, 2013 WL 4647493, at *2-*3 (S.D. Ga.); *Shaw*, 944 F. Supp. 2d at 59-60 ("Plaintiff ... points ... to [reports, regulations, and professional guidelines] ... to provide factual grounding to support the inference that the risk to transgender detainees was obvious, well-documented, and known to [d]efendants." (internal quotation marks and citation omitted)); *Newsome v. Higham*, 2010 U.S. Dist. LEXIS 29521, 2010 WL 1258013, at *3-*4 (M.D. Ga.); *Farmer v. Carlson*, 685 F. Supp. 1335, 1342 (M.D. Penn. 1988) ("Clearly, placing plaintiff, a twenty-one year old transsexual, into the general population at ... a [high-]security institution, could pose a significant threat to internal security in general and to plaintiff in particular.").

S.A. 075

violence of other inmates. *Id.* at 833 ("[G]ratuitously allowing the beating or rape of one prisoner by another serves no 'legitimate penological objectiv[e].'" (citation omitted)). The Supreme Court ultimately held that "a prison official may be held liable... if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. Here, Defendants were aware that Ms. Griffith is a transgender female, knew she is blind, and knew, because of these two things, that she placing her into an all-male unit would make her particularly vulnerable to sexual assault. [Doc. #124], ¶¶ 47-50.  They also knew that incarceration standards dictated that transgender women are vulnerable to sexual assault when placed in all-male units. *Id.*, ¶¶ 42-43, 45-46. Still, Defendant El Paso County took no action to move her to a female unit. This violated Ms. Griffith's rights. *See Diamond*, 131 F. Supp. 3d at 1379-80.

Finally, Defendants Ford, O'Neal, Noe, Gillespie, and Elder are not entitled to qualified immunity based on the caselaw and well-established legal principles outlined above.

### 4.4 <u>Plaintiff adequately alleges that Defendants El Paso County, Elder, Gilespie, Mustapick, and Elliss subjected her to unlawful searches under the Fourth Amendment.</u>

Whether a particular search is constitutional is judged by "balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. Courts make this determination by balancing four non-exclusive factors. *Id.*; *see also Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016). Those factors are: "[1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted." *Id.*

Defendant Mustapick's visual body-cavity of Ms. Griffith, which included an inspection of her anal and genital areas, violated her constitutional rights. [Doc. #124], ¶¶ 71-83; *see Maricopa Cnty. Sheriff's Dep't*, 629 F.3d at 1142 (holding that a cross-gender strip search was unreasonable

S.A. 076

as a matter of law where there was no emergency). A strip-search, let alone a visual body-cavity search, is "one of the clearest forms of degradation in Western Society" and the indignity imposed by strip searches is multiplied when one's body is "viewed by a member of the opposite gender." *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994); *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir.1993) ("[A] strip search is an invasion of personal rights of the first magnitude."). Courts have held that blanket policies subjecting all newly-arrested detainees in a local correctional facility to visual body cavity searches, even when performed by guard who is a member of the same gender as the detainee, are unconstitutional. *See Shain v. Ellison*, 273 F.3d 56, 64-65 (2d Cir. 2001); *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994). In order for a visual body cavity search to be found reasonable under the circumstances, there must be some "'particularized suspicion,' arising either from the nature of the charge or specific circumstances relating to the arrestee and/or the arrest," that the arrestee is concealing weapons or other contraband. *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986) (citing *United States v. Montoya De Hernandez*, 473 U.S. 531, 540 (1985)); *Murcia v. County of Orange*, 226 F. Supp. 2d 489, 494 (S.D.N.Y. 2002).

First, "regardless of who performs the search, a visual body cavity search, such as the one conducted here, is invasive." *Harris*, 818 F.3d at 58. A search "that involves a stranger peering without consent at a naked individual, and in particular at the most private portions of that person's body, is a serious invasion of privacy." *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318 (2012) (Breyer, J., dissenting).[8]

---

[8] *See also Canedy*, 16 F.3d at 185 ("[O]ne of the clearest forms of degradation in Western Society is to strip a person of his clothes. The right to be free from strip searches and degrading body inspections is thus basic to the concept of privacy." (quoting 3 George B. Trubow, ed., *Privacy Law and Practice*, ¶ 25.02[1] (1991))); *Cookish v. Powell*, 945 F.2d 441, 446 (1st Cir. 1991) ("[A] 'severe if not gross interference with a person's privacy [] occurs when guards conduct a visual inspection of body cavities.").

S.A. 077

Second, "while all forced observations or inspections of the naked body implicate a privacy concern, it is generally considered a greater invasion to have one's naked body viewed by a member of the opposite sex." *Canedy*, 16 F.3d at 185; *see also Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011). For this reason, "[c]ourts throughout the country have universally frowned upon cross-gender strip searches in the absence of an emergency or exigent circumstances." *Byrd*, 629 F.3d at 1143.[9]  "Indeed, best-practice standards in prison management typically discourage cross-gender strip searches." *Harris*, 818 F.3d at 59. For example, the 2009 National Prison Rape Elimination Commission Report "determined that[,] '[t]o prevent abuse, . . . the [Commission's recommended] standard on this subject strictly prohibits non-medical staff from conducting cross-gender strip and visual body cavity searches—except in the case of an emergency—because of their extraordinarily intrusive nature.'" *Byrd*, 629 F.3d at 1142 (quoting the Commission Report at 63). Likewise, the American Correctional Association's recommended standard for cross-gender strip searches "provide[s] that, except in emergency situations, visual inspections of inmate body cavities are conducted by officers of the same sex, in private." *Id.* (quoting Standards for Adult Correctional Institutions § 4-4194 (2003)).

Third, a visual body-cavity search conducted in an unprofessional manner is unreasonable. *See Byrd*, 629 F.3d at 1143 ("[W]e have consistently recognized the 'frightening and humiliating invasion' occasioned by a strip search, 'even when conducted with all due courtesy.'" (quoting *Way v. Cty. of Ventura*, 445 F.3d 1157, 1160 (9th Cir. 2006))). As the Supreme Court stated in *Bell*: "[O]n occasion a security guard may conduct the search in an

---

[9] *See also Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981) ("Most people, however, have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating. When not reasonably necessary, that sort of degradation is not to be visited upon those confined in our prisons."); *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993) (citing *Lee* and "join[ing] other circuits in recognizing a prisoner's constitutional right to bodily privacy").

S.A. 078

abusive fashion. Such abuse cannot be condoned. The searches must be conducted in a reasonable manner." *Bell*, 441 U.S. at 560 (citations omitted). Here, the visual body-cavity search was conducted in a disgusting and degrading manner by a male guard who made clear his prurient gratification, despite the ready availability of female officers to do the search. *See, e.g., Lee*, 641 F.2d at 1120 ("[I]t was wholly unnecessary for the male guards to remain in the room and to restrain the plaintiff while her underclothing was forcefully removed.").

Fourth, there was no justification for subjecting Ms. Griffith to a cross-gender visual body-cavity search. *See, e.g., Byrd*, 629 F.3d at 1137 n.2, 1142, 1143; *Hayes*, 70 F.3d at 1148.

Fifth, the fact that the visual body-cavity search was conducted outside of the presence of other individuals makes it less reasonable because there was more chance for abuse. *See Byrd*, 629 F.3d at 1143. Indeed, Defendant Mustapick predictably seized this opportunity to sexually degrade Ms. Griffith for his own prurient gratification.

The Tenth Circuit, in an analogous case, held that a cross-gender strip-search, less egregious than the one performed by Defendant Mustapick, violated an inmate's right to be free from unreasonable searches and seizures. In *Hayes v. Marriott*, the male plaintiff alleged that a video-taped strip search conducted in the presence of female corrections officers violated his constitutional rights under the Fourth Amendment. 70 F.3d 1144, 1145 (10th Cir. 1995). Despite an affidavit from a prison official attesting that no females actively participated in the strip search and expressing staffing considerations, the Tenth Circuit reversed the grant of summary judgment in favor of the prison officials. *Id*. at 1147-48. In doing so, the Tenth Circuit explicitly recognized that an inmate's privacy rights may be violated by a single cross-gender strip-search. *Id*. at 1147. And, in another case, the Tenth Circuit held that an officer who forced a female inmate to expose her breasts to a female deputy in order to pump her breast milk, without any penological justification, violated her right to be free from unreasonable searches. *Shroff v. Spellman*, 604 F.3d

S.A. 079

1179, 1191 (10th Cir. 2010). Importantly, the Tenth Circuit defined the right of the plaintiff that was violated as the "personal right not to be required to expose her breasts before another person." *Id.*

Ultimately, the caselaw is clear that "cross-gender strip searches" let alone cross-gender visual body-cavity searches, "in the absence of an emergency violate an inmate's right under the Fourth Amendment to be free from unreasonable searches." *Byrd*, 629 F.3d at 1144-47; *Cookish*, 945 F.2d at 442; *Moore v. Carwell*, 168 F.3d 234, 235 (5th Cir. 1999); *Shaw*, 944 F. Supp. 2d at 56-57. Therefore, Ms. Griffith has adequately alleged that Defendants violated her rights and that they are not entitled to qualified immunity.

### 4.5 **Defendants El Paso County, Elder, Gilespie, Mustapick, and Elliss violated Ms. Griffith's rights under the Fourteenth Amendment by unconstitutionally invading her right to privacy and bodily integrity.**

"Visual body cavity searches are invasive and degrading, occasioning a serious invasion of privacy and working a significant harm to a person's bodily integrity." *Sloley v. Vanbramer*, 945 F.3d 30, 38 (2d Cir. 2019); *Vazquez*, 949 F.3d at 1165 (alteration in original) (quoting *Hydrick v. Hunter*, 500 F.3d 978, 1000 (9th Cir. 2007) ("[T]he Fourteenth Amendment protects a sphere of privacy, and the most 'basic subject of privacy . . . the naked body.'"); *Shroff*, 604 F.3d at 1191 ("In a civilized society, one's anatomy is draped with constitutional protections.").

"[A]ll forced observations or inspections of the naked body implicate a privacy concern." *Canedy*, 16 F.3d at 185. To state the obvious, visual body-cavity searches are even more intrusive as they "require an arrestee not only to strip naked in front of a stranger, but also to expose the most private areas of her body to others. This is often, as here, done while the person arrested is required to assume degrading and humiliating positions." *Swain v. Spinney*, 117 F.3d 1, 6 (1st Cir. 1997). The freedom from such "degrading body inspections is . . . basic to the concept of privacy." *Canedy*, 16 F.3d at 185 (internal quotation marks omitted); *Byrd*, 845 F.3d at 922-24

(noting that the right to bodily privacy may be violated if, for example, the viewing of an inmate's naked body while showering and/or using the toilet is "frequent[]" and "up close" or "neither obscured nor distant").

Moreover, "any reasonable adult in our society would understand that the involuntary exposure of an adult's nude body is a significant imposition on the victim. And law-enforcement officers in this circuit have been taught this lesson repeatedly." *Colbruno*, 928 F.3d at 1163-65.[10] Several other circuits have recognized that officials can violate the Eighth Amendment (which imposes a higher burden than the Fourteenth Amendment) by forcing inmates to expose their naked bodies for the purpose of humiliation. *See Calhoun*, 319 F.3d at 939; *Kent*, 821 F.2d at 1227-28; *Lee*, 641 F.2d at 1119. When considering Defendant Mustapick's sexually degrading statements and gesture, in combination with his position of power over Ms. Griffith and the humiliating position that he had Ms. Griffith in when he made the statements, it is clear that he violated her right to privacy and bodily integrity. *See Vazquez*, 949 F.3d at 1162; *Fontana v. Haskin*, 262 F.3d 871, 881-82 n.6. (9th Cir. 2001). According to this authority, Defendants Elder, Gilespie, Mustapick, and Elliss all violated Ms. Griffith's clearly established rights.

### 4.6 **Defendant Elliss failed to intervene to prevent the violation of Ms. Griffith's Fourth and Fourteenth Amendment rights.**

---

[10] In *Cumbey v. Meachum*, 684 F.2d 712 (10th Cir. 1982), the Tenth Circuit reversed the dismissal of a prisoner's complaint that his constitutional rights had been violated because female prison guards "are assigned to posts where they observe[d] him dressing and undressing and using the toilet and the shower," holding that "[a]lthough the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether." *Id.* at 713-14. More recently, the Tenth Circuit stated that "exposing a person's naked body involuntarily is a severe invasion of personal privacy" in a case where it held that parading a naked inmate through a hospital violated his clearly established right to privacy and bodily integrity under the Fourteenth Amendment. *Colbruno*, 928 F.3d at 1163-65; *see also Hill v. Bogans*, 735 F.2d 391 (10th Cir. 1984) (holding that the Denver jail had violated a detainee's constitutional rights by requiring him to expose his naked body in a public area of the jail in front of "ten to twelve people [] milling about.").

S.A. 081

As alleged, Defendant Elliss failed to intervene to prevent the violation of Ms. Griffith's Constitutional rights. [Doc. #124], ¶¶ 71-83. "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008). For failure to intervene liability to attach, a plaintiff must simply establish that "officers have knowledge of a constitutional violation," *Jones v. Norton*, 809 F.3d 564 (10th Cir. 2015), and "a realistic opportunity to intervene to prevent the harm from occurring." *Vondrak*, 535 F.3d at 1210. The Tenth Circuit has repeatedly found an officer to possess knowledge where there was indeed an underlying constitutional violation, and where the officer was "on the scene[,]" *Casey v. City of Federal Heights*, 509 F.3d 1278, 1283 (10th Cir. 2017), or "present for the [violation]." *Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008). Here, as alleged, Defendant Elliss was present for the violation and explicitly allowed it to occur. [Doc. #124], ¶¶ 74-77. Ms. Griffith begged Defendant Elliss to let a woman search her. *Id.* Defendant Elliss refused and actively chose to leave and allow Defendant Mustapick to search Ms. Griffith unsupervised. *Id.* Under a failure to intervene theory, Ms. Griffith has adequately alleged that Defendant Elliss violated her Constitutional rights.

Finally, it is clearly established that officers who are present for constitutional violations by other officers, and do nothing to intervene, violate the Constitution. *Vondrak*, 535 F.3d at 1210 (an officer is liable if the officer had observed or had reason to know "that any constitutional violation has been committed by a law enforcement official."); *Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008). Defendant Elliss' violation was "obvious" and "particularly clear[.]" *Casey,* 509 F.3d at 1283. And, the Tenth Circuit has time and again held that when officials are on the scene and fail to intervene, regardless of the constitutional violation occurring, they are liable under clearly established law. *See Reid v. Wren*, 57 F.3d 1081, at *2 (10th Cir. 1995); *Walton v.*

S.A. 082

*Gomez (In re Estate of Booker)*, 745 F.3d 405, 422 n.25 (10th Cir. 2014); *see also Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994).

### 4.7 <u>Plaintiff adequately alleges municipal liability against El Paso County.</u>

#### 4.7.1 **El Paso County maintained a facially unconstitutional policies relating to the treatment of transgender inmates.**

Where an official policy or practice is unconstitutional on its face, it necessarily follows that a policymaker was not only aware of the specific policy, but was also aware that a constitutional violation was most likely to occur. *See Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003); *Craig v. Floyd County*, 643 F.3d 1306, 1310 (11th Cir. 2011); *Heaney v. Costigan*, Civil Action No. 09-cv-01006-MSK-BNB, 2012 U.S. Dist. LEXIS 55655, at *3 (D. Colo. Apr. 20, 2012). Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving issues of fault and causation is straightforward. *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). The conclusion that the action taken or directed by the municipality itself, or its authorized decisionmaker, violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains. *Id*. If a plaintiff is able to demonstrate that a municipality promulgated a policy that was unconstitutional on its face, she does not also need to prove that the policy was promulgated with knowing disregard for its consequences — knowledge is presumed. *Cf. Burge*, 336 F.3d at 370.

Under this framework, Ms. Griffith need not prove deliberate indifference to establish municipal liability. Although a pattern of unconstitutional action is generally required to prove municipal liability, "a constitutional violation may be such a 'known and obvious' or 'highly predictable consequence' of an ongoing course of action that knowledge of past violations is unnecessary." *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 913 (3d Cir. 2003) (citing *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)); *Brown*, 520

28

U.S. at 409.

As alleged, El Paso County's policies, on their face, violate the Constitution and caused the violation of Ms. Griffith's constitutional rights. First, Ms. Griffith was housed in an all-male unit based specifically on El Paso County policy. [Doc. #124], ¶¶ 54, 57, 58, 66. Second, per El Paso County policy, Ms. Griffith was subjected to a cross-gender visual body cavity search. *Id.*, ¶ 74. Third, Ms. Griffith was subjected to continuous cross-gender pat down searches without any exigency or other penological basis pursuant to El Paso County policy. *Id.*, ¶ 94. Fourth, Ms. Griffith was denied access to gender-affirming clothing because of the official policies of El Paso County. *Id.*, ¶ 118. Because the violations of Ms. Griffith's rights were due to unconstitutional official policies, El Paso County's knowledge "necessarily follows[,]" *Hobart v. City of Stafford*, No. 4:09-CV-3332, 2015 U.S. Dist. LEXIS 47953, at *37-39 (S.D. Tex. Apr. 13, 2015)[,] and dismissing Ms. Griffith's claims against El Paso County is inappropriate.

### 4.7.2 **El Paso County officials customarily violated Ms. Griffith's rights over the course of a year and a half.**

To establish municipal liability, a plaintiff must show (1) the existence of a municipal custom, (2) that the defendant enacted or maintained the custom with the requisite state of mind, and (3) that the custom is the moving force behind the injury alleged. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). Municipal liability is cognizable where there is "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* State of mind and causation are "satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

**S.A. 084**

Courts in this District have held that a plaintiff pleads existence of a continuing, persistent, and widespread practice of unconstitutional conduct through allegations demonstrating "multiple harms that occurred to the plaintiff himself" especially when those harms "occurred in the open" and involved "multiple officials[.]" *Arakji v. Hess*, No. 15-cv-00681-CMA, 2015 U.S. Dist. LEXIS 161600, at *16-17 (D. Colo. Dec. 2, 2015) (quoting *Taylor*, 2011 U.S. Dist. LEXIS 97985, at *3). Other authority holds that the repeated violation of an inmate's constitutional rights over the course of their incarceration demonstrates *Monell* liability. *See Crowson v. Wash. Cty. State of Utah*, 983 F.3d 1166, 1191 (10th Cir. 2020); *Cady v. Cumberland Cty. Jail*, No. 2:10-cv-00512-NT, 2013 U.S. Dist. LEXIS 109195, *112 (D. Me. Mar. 22, 2013); *Jacoby v. DuPage Cty. Ill.*, No. 12 CV 6539, 2013 U.S. Dist. LEXIS 89934, at *9 (N.D. Ill. June 26, 2013); *Rykard v. City of Dothan*, No. l:10-cv-868-MHT [wo], 2011 U.S. Dist. LEXIS 101135, at *9 (M.D. Ala. Aug. 9, 2011); *see also Smith v. Corr. Corp. of Am., Inc.*, 674 F. Supp. 2d 201, 206 (D.D.C. 2009).

This is not a case where a decision by a single employee (or even a few employees) caused a single violation of Ms. Griffith's constitutional rights. This is a case where at least a half dozen El Paso County officials (and medical contractors), over the course of a year and a half, made *repeated* decisions to: (1) house Ms. Griffith in a facility that did not correspond with her gender identity despite her many requests to be moved to an all-women facility, [Doc. #124], ¶¶ 47-66; (2) continuously subject her to cross-gender pat-down searches without any exigency or penological justification, *Id.*, ¶¶ 89-93; (3) constantly mis-gender her, *Id.*, ¶¶ 97-105; and (4) deny her access to gender-affirming clothing items simply because she is a transgender woman. *Id.*, ¶¶ 110-118. It is unfathomable that every El Paso County official that interacted with Ms. Griffith chose the same course of action over the entirety of Mr. Griffith's incarceration absent their decisions being guided by El Paso County's customs and practices. Because of the many separate wrongful actions (and inactions) committed by El Paso County officials, the events underlying the

S.A. 085

Defendants' violations of Ms. Griffith's rights <u>alone</u> is sufficient evidence of a pattern to hold it liable under *Monell. Crowson v. Wash. Cty. State of Utah*, 983 F.3d at 1191.

### 4.7.3 **Defendant Elder's decisions, as a final policymaker for El Paso County, subject the County to *Monell* liability.**

Defendant Elder "is a final policymaker with regard to [the El Paso County] jail, such that his actions 'may fairly be said to be those of the municipality.'" *Lopez*, 172 F.3d at 763 (quoting *Brown*, 520 U.S. at 404); *see also Layton v. Bd. of Cty. Comm'rs*, 512 F. App'x 861, 870-72 (10th Cir. 2013). A decision by municipal policymakers on a single occasion can satisfy the "official policy" requirement of *Monell. Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). Where action is directed by a "final policymaker," the municipality is equally responsible whether that action is taken only once or repeatedly. *Id*. at 484-85.

Here, Defendant Elder possesses final policymaking authority in the operation of the El Paso County and his decisions regarding the Jail's treatment of transgender individuals, in and of themselves, are the decisions of El Paso County. "[F]inal policymaking authority is a legal issue to be determined by the court based on local and state law." *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995). Colorado law explicitly grants that Defendant Elder, as the elected Sheriff of El Paso County, "shall have charge and custody of the jails of the county, and of the prisoners in the jails, and shall supervise them himself or herself or through a deputy or jailer." C.R.S. § 30-10-511. Defendant Elder's authority as to the operation of the El Paso County Jail is unlimited and unchecked.[11] In accordance with the undeniable fact that sheriffs have complete authority over the operation of their county jail, courts have consistently found that Colorado sheriffs are final policymakers when it comes to the operation of jails. *E.g. Cortese v. Black*, 838 F. Supp. 485, 495-96 (D. Colo. 1993) (holding that Larimer County Sheriff was a "final policymaker"); *Carrillo v.*

---

[11] *See, e.g.*, C.R.S. §§ 30-10-503, 504, 506 and 522.

S.A. 086

*Suthers*, 2014 U.S. Dist. LEXIS 184359, *32 (D. Colo. December 29, 2014) (noting that "a sheriff is typically the final policymaker for matters concerning the operations of a county jail"). And, as alleged, the circumstances of Defendant Elder's authority make clear that he is a final policymaker for the El Paso County Jail's treatment of transgender individuals. [Doc. #124], ¶ 14. Because Defendant Elder is not "meaningfully constrained by policies not of that official's own making," Defendant's decisions are "final -- i.e., are [not] subject to any meaningful review," and the decision in how to treat transgender individuals is "within the realm of [his] grant of authority" at state law. *Randle*, 69 F.3d at 448. For these reasons, the decisions alleged to have been made by Defendant Elder are attributable to El Paso County and implicate its liability for the violation of Ms. Griffith's constitutional rights. [Doc. #124], ¶ 42 (make facility assignments to people in custody solely on the basis of the individual's genitalia); *Id.*, ¶¶ 54, 57, 106 (policy of housing Ms. Griffith in an all-male unit and condoning discriminatory and harassing treatment of transgender prisoners); *Id.*, ¶ 118 (denial of gender appropriate undergarments and lipstick); *Id.*, ¶ 160 (allowing male deputies to search transgender women without any supervision).

### 4.8 <u>Plaintiff adequately alleges claims under the Enhance Law Enforcement Integrity act.</u>

#### 4.8.1 The Enhance Law Enforcement Integrity Act authorizes a claim against Defendants in their official capacities.

The Enhance Law Enforcement Integrity Act establishes a cause of action against any "peace officer . . . who, acting under color of state law, subjects or causes to be subjected . . . any other person to the deprivation of any individual rights that create binding obligations on government actors secured by the bill of rights, section II of the state constitution." The statutory definitions further provide that "peace officer" means "any person employed by a political subdivision of the state required to be certified by the P.O.S.T. board," including "sheriffs." C.R.S. §§ 24-31-901(3), 16- 2.5-102 (emphasis added). Thus, the statutory language on its face

S.A. 087

establishes a cause of action against sheriffs whose actions result in deprivations of constitutional rights. Section 13-21-131's use of the phrase "peace officer" distinguishes it from its federal counterpart under 42 U.S.C. § 1983, which establishes a cause of action against "any person" whose conduct causes a deprivation of federal constitutional rights. The Supreme Court has interpreted "person" to include municipal corporations. *See Monell*, 436 U.S. at 690-95. Thus, in Section 1983 cases, plaintiffs may bring suit for deprivations of constitutional rights directly against municipalities.

Defendants misapprehend the import of this distinction. First, Defendants' argument that the Enhance Law Enforcement Integrity Act does not authorize claims against peace officers in their official capacity would render meaningless one of the key remedial schemes of Section 13-21-131. *Cf. State, Dep't of Revenue, Motor Vehicle Div. v. Borquez*, 751 P.2d 639, 643 (Colo. 1988) (en banc) ("Rules of statutory construction require that in the interpretation of a statute, the legislature will be presumed to have inserted every part for a purpose, and to have intended that every part of a statute should be carried into effect."). C.R.S. § 13-21-131(1) provides that peace officers may be "liable to the injured party for legal or equitable relief or any other appropriate relief." The statute further provides that "in actions for injunctive relief, a court shall deem a plaintiff to have prevailed if the plaintiff's suit was a substantial factor or significant catalyst in obtaining the results sought by the litigation." C.R.S. § 13-21-131(3). Without the ability to bring official capacity suits, these provisions of the statute that allow for injunctive relief and discuss "results sought by the litigation" would be rendered mere surplusage. For example, an official capacity suit may seek a change in a municipality's training which would be beyond the control of an individual officer. Although a sheriff may temporarily have the authority in their individual capacity to implement such a change, if that sheriff dies or leaves office, the claim would not

S.A. 088

survive. Only by suing the sheriff, and his deputies, in his official capacity could such equitable relief be obtained. *Cf. Kentucky v. Graham*, 473 U.S. 159, 166, n. 11(1985).

Second, reading the Enhance Law Enforcement Integrity Act to preclude official capacity suits against peace officers would contravene the Act's broad statutory purpose and scheme. The Enhance Law Enforcement Integrity Act is significantly broader than the provisions contained within C.R.S. §13-21-131, which involves only the private civil cause of action. During opening remarks when the Act was first presented, its co-prime sponsor summarized the bill as follows:

> Senate Bill 217 promotes accountability and integrity in law enforcement in a few ways. It mandates the use of body cameras, reigns in the use of deadly force by officers including outlawing chokeholds as methods of apprehension, prevents the rehiring of officers who are found guilty . . . of violent or unlawful behavior; requires public reporting on the use of force in the field; revokes qualified immunity for law enforcement which has served as a shield for many of them from accountability and has significantly denied families justice. Members, the time is now for accountability, transparency, and integrity within our law enforcement.

Hearing on S.B. 20-217 Before the Sen. Comm. on State, Veterans, & Military Affairs, Jun. 4, 2020, 2020 Leg. (statement of Sen. Leroy Garcia), at 5:39-6:33. Additionally, the Enhance Law Enforcement Integrity Act is significantly broader than its federal counterpart, Section 1983. In particular, the Enhance Law Enforcement Integrity Act provides that "[s]tatutory immunities and statutory limitations on liability, damages, or attorney fees do not apply," that "[t]he 'Colorado Governmental Immunity Act' . . . does not apply," and that "[q]ualified immunity is not a defense to liability." C.R.S. § 13-21-131(2)(a)-(b). By any measure, the Enhance Law Enforcement Integrity Act was a sweeping reform intended to apply broadly to actions involving police misconduct. Defendants ask this Court to rule that civil actions against officers in their official capacities—the only type of action that would allow litigants to bring claims seeking to prove a causal connection between departmental policies and deprivations of constitutional rights—should be precluded as a matter of law. Such a ruling would directly contravene the legislature's intent to

S.A. 089

promote "accountability, transparency, and integrity." As such, this court should rule that official capacity suits are cognizable under C.R.S. § 13-21-131.

### 4.8.2 Plaintiff has alleged sufficient facts to plausibly state a claim against Defendants Elder and Gillespie in their individual capacities.

Contrary to Defendants' argument, the Enhance Law Enforcement Integrity Act's plain language creates liability against any peace officer, including "sheriffs" and "deputy sheriffs," C.R.S. § 16-2.5-102, who meet the statutory criteria for liability. Under the explicit terms of the statute, any "peace officer… employed by a local government"—whether in a supervisory role or otherwise—is liable under the Enhance Law Enforcement Integrity Act if she, under color of law, "subjects or causes to be subjected…any other person to the deprivation of any individual rights that create binding obligations on government actors secured by the bill of rights, article II of the state constitution." C.R.S. § 13-21-131(1).

When interpreting a statute, a court's "primary purpose is to give effect to the General Assembly's intent." *Ray v. People*, 2019 COA 24, ¶ 13. Courts "endeavor to effectuate the purpose of the legislative scheme, reading that scheme as a whole, giving consistent effect to all of its parts, and avoiding constructions that would render any words or phrases superfluous or would lead to illogical or absurd results." *Butler v. Bd. of Cty. Comm'rs*, 2021 COA 32, ¶ 9. To determine the legislative purpose of a statute, courts "focus first on the language of the statute," giving "the statutory words and phrases their plain and ordinary meanings." *Id.* "As the supreme court has instructed, '[i]f the statutory language is clear and unambiguous, [a court will] apply it as written—venturing no further.'" *Ray*, ¶ 13 (citation omitted).

The Enhance Law Enforcement Integrity Act clearly imposes liability on sheriffs and other supervisory peace officers like Defendants Elder and Gillespie, who, under the color of law, violate or cause a violation of an individual's rights that are secured by Colorado's Bill of Rights. The statute explicitly defines "peace officer" by reference to "section 24-31-901(3)." Section 24-

S.A. 090

31-901(3)'s definition of peace officer includes "any person employed by a political subdivision of the state required to be certified by the P.O.S.T. board pursuant to section 16-2.5-102" and Section 16-2.5-102, in turn, includes in its definition sheriffs and deputy sheriffs. Thus, the statutory scheme explicitly and unambiguously contemplates liability against a sheriff and deputy sheriff like Defendants Elder and Gillespie.[12]

Regardless what substantive elements the legislature intended that a plaintiff would need to prove to establish liability under the statute, the plain language clearly contemplates sheriffs and deputy sheriffs as potential defendants. Whether any given sheriff or deputy sheriff is in fact liable for a particular incident will depend on the facts of the specific case at issue, but the statute's reach clearly will extend to impose liability on a sheriff or deputy sheriff if she "subject[ed] or cause[ed] to be subjected…[the plaintiff] to the deprivation of any individual rights…secured by [Colorado's] bill of rights,." C.R.S. § 13-21-131(1). For the reasons below, Plaintiff plausibly pleaded that Defendants Elder and Gillespie caused her to be subjected to such a violation, and the ultimate causation determination, a factual question, is for the jury to make.

Further, the Enhance Law Enforcement Integrity Act was intended to be much broader than its federal counterpart, which has been severely judicially narrowed by many federal courts over the past several decades. Statutes such as Colorado's, which give vitality to state constitutional protections, provide rights independent of potentially similar rights arising from the federal constitution. "[U]nless expressly adopted by a state legislature authorizing civil actions to

---

[12] Claims against sheriffs like Elder an Gillespie were specifically contemplated in the drafting of the Law Enforcement Integrity Act. *See, e.g.* Leslie Herod, *et al.*, *Colorado took a revolutionary step to reform policing. Here's how we did it.* USA Today (Oct. 28, 2021), https://www.usatoday.com/story/opinion/2021/10/28/colorado-hold-cops-accountable-qualified-immunity/6101915001/.

S.A. 091

redress violation of state constitutions, the intent of the 1871 federal legislature that enacted Section 1983 is irrelevant to the construction of [a] state civil rights act." Gary S. Gildin, *Redressing Deprivations of Rights Secured by State Constitutions Outside the Shadow of the Supreme Court's Constitutional Remedies Jurisprudence*, 115 Penn St. L. Rev. 877, 904 (2011).

Additionally, the Enhance Law Enforcement Integrity Act is silent on whether it imposes a heightened standard of liability on claims against individuals like sheriffs and deputy sheriffs. In the face of such silence, interpretation turns to "other aids to statutory construction, such as the consequences of a given construction, the end to be achieved by the statute, and the statute's legislative history." *Butler*, ¶ 10. The Act was passed amid state and nationwide protests, including massive marches and demonstrations outside the state capitol in Denver, in response to the murder of George Floyd by Minneapolis police.[13] The legislation implemented "[f]ar-reaching reforms to Colorado policing."[14] "The law contained a raft of changes that reformers have long sought, but the most significant provision is one that no state ha[d] successfully passed before, and the change that cops fear most: Police officers can now be sued, they can no longer claim 'qualified immunity' from civil damages if they knowingly violate the law on the job, and they could personally be on the hook for up to $25,000 in penalties stemming from a lawsuit."[15] The Act explicitly provides that "[s]tatutory immunities and statutory limitations on liability, damages, or attorney fees do not apply to claims brought pursuant to this section [13-12-131]"; the "'Colorado Governmental Immunity Act' [CGIA] ...does not apply to claims brought pursuant to this section"; and "[q]ualified immunity is not a defense to liability." C.R.S. § 13-21-131(2).

---

[13] *See, e.g.*, Russell Berman, *The State Where Protests Have Already Forced Major Police Reform*, THE ATLANTIC (July 17, 2020), https://www.theatlantic.com/politics/archive/2020/07/police-reform-law-colorado/614269/.

[14] Saja Hindi, *Here's what Colorado's police reform bill does*, THE DENVER POST (June 13, 2020), https://www.denverpost.com/2020/06/13/colorado-police-accountability-reform-bill/.

[15] Berman, https://www.theatlantic.com/politics/archive/2020/07/police-reform-law-colorado/614269.

S.A. 092

Further, "if [a] peace officer's employer determines that the officer did not act upon a good faith and reasonable belief that the action was lawful, then the peace officer is personally liable and shall not be indemnified by the peace officer's employer for five percent of the judgment or settlement or twenty-five thousand dollars, whichever is less." C.R.S. § 13-21-131(4). Based on the context in which it was enacted, its stated purpose to hold peace officers accountable for their unlawful conduct and increase law enforcement integrity, its explicit elimination of federally developed qualified immunity, CGIA immunity, and other limitations on liability, and its requirement that individual peace officers are personally financially liable for their violations, legislators indisputably intended that Section 13-21-131 be far more broad-reaching than federal law under Section 1983.

Moreover, the Enhance Law Enforcement Integrity Act's elimination of qualified immunity, a federal judicially created doctrine that serves to greatly restrict liability under Section 1983, is in itself a powerful rejection by the Colorado legislature of federal limitations on civil accountability for peace officers. Qualified immunity is not found in the Constitution or federal statute but rather was created by the Supreme Court; the doctrine "operates like absolute immunity" by "protect[ing] law enforcement officers from having to face any consequences for wrongdoing." *Jamison v. McClendon*, 476 F. Supp. 3d 386, 391, 404 (S.D. Miss. 2020). Qualified immunity "serve[s] as a shield" and "protect[s] [officers] from accountability," rendering section 1983 almost toothless in the face of "thousands [who] have died at the hands of law enforcement over the years,…the death toll continu[ing] to rise," and the "[c]ountless more [who] have suffered from other forms of abuse and misconduct by police." *Id.* at 392. As Fifth Circuit Judge Willett points out while urging reconsideration of qualified immunity's application, "it's curious how this entrenched, judge-created doctrine excuses constitutional violations by limiting the statute Congress passed to redress constitutional violations." *Zadeh v. Robinson*, 928 F.3d 457, 480-81

S.A. 093

(5th Cir. 2019) (Willett, J., concurring in part and dissenting in part). Colorado legislators purposefully enacted the Enhance Law Enforcement Integrity Act, and the broader statutory scheme in which it sits,[16] against this backdrop of increasing judicial and scholarly criticism of qualified immunity and other judicially created restrictions on the federal civil rights remedy. Consciously aware of the shortcomings of Section 1983 now that federal courts have severely blunted its reach, state legislators deliberately intended for the Enhance Law Enforcement Integrity Act to broaden peace officer liability beyond that imposed by Section 1983 in order to increase accountability and hopefully reduce police misconduct.

The federal "supervisory liability" standards that Defendants urge are nowhere to be found in the statute. Because the application of such standards would contravene and undermine the Act's purpose to expand liability for peace officers who violate the law, this Court should reject Defendants' attempt to interpose federal standards into Colorado's ambitious police reform legislative scheme. Instead, this Court should apply familiar principles of tort liability in determining whether Ms. Griffith plausibly pleaded that Defendants Elder and Gillespie caused Ms. Griffith to be subject to a violation of her state constitutional rights.

The Enhance Law Enforcement Integrity Act creates a state cause of action in tort. Moreover, the substantive rights of the Enhance Law Enforcement Integrity Act are defined by reference to Colorado Constitution's Bill of Rights, which "serve[] to protect the rights of individuals when infringed upon by governmental action." *People v. Vigil*, 127 P.3d 916, 938 (Colo. 2006). Accordingly, rather than adopting complex and contrived supervisory liability standards from judicially created federal law on Section 1983, this Court need look no further than these two areas of Colorado law to determine Defendants' liability under Colorado's Enhance Law

---

[16] For example, the Act also provides that officers convicted of or found liable of using excessive force, or failing to intervene therein, will lose their peace officer certification, with no opportunity to become recertified. *See* C.R.S. § 24-31-904.

S.A. 094

Enforcement Integrity Act.

"Under traditional tort principles, the plaintiff must show that the defendant's conduct 'proximately caused' the claimed injury." *Lorenzen v. Pinnacol Assurance*, 2019 COA 54, ¶ 23 (citation omitted). "Proximate cause has two components: causation in fact and legal causation." *Id.* at ¶ 24. "Legal causation…refers to the scope or foreseeability of liability." *Id.* "As to causation in fact, the test is whether, but for the alleged [tortious conduct], the harm would not have occurred," or alternatively, whether "the defendant's conduct was a necessary component of a causal set that would have caused the injury." *Id.* at ¶ 25 (citation omitted). Regarding causation in fact, black letter tort law provides that "[i]f more than one act or failure to act contributed to the claimed injury, then each act or failure to act may have been a cause of the injury." CJI-Civ 9:20. "A cause does not have to be the only cause or the last or nearest cause. It is enough if the act or failure to act joins in a natural and probable way with some other act or failure to act to cause some or all of the claimed injury." *Id.*

Therefore, to state a plausible claim against Defendants Elder and Gillespie, Ms. Griffith need only plead sufficient facts to allow the reasonable inference that assuming the truth of all factual allegations, the supervised Defendants' unlawful treatment of Ms. Griffith would not have occurred but for Defendant Elder's and Gillespie's conduct, and Ms. Griffith's unlawful treatment "was a foreseeable risk" of Defendant Elder's and Gillespie's policies. *Danko v. Conyers*, 2018 COA 14, ¶ 39. These standards of causation are consistent with and dictated by section 13-12-131(1), which provides that liability is established if the plaintiff proves that a peace officer "under color of law, subjects or ***causes to be subjected***,… any other person" to a violation of Colorado's Bill of Rights. (Emphasis added.)

The Complaint and the reasonable inferences therefrom plausibly assert that Defendants Elder and Gillespie were on notice that the jail's policies were contrary to well-established

S.A. 095

national standards for the treatment of transgender individuals, 40-46, and that Defendants Elder and Gillespie put policies into place that violated these standards and the Constitutional rights of transgender individuals like Ms. Griffith. [Doc. #124], ¶¶ 42, 54, 57, 106, 114, 117, 118. Further, the Complaint alleges that Defendant Gillespie was specifically aware of the discriminatory treatment inflicted on Ms. Griffith and did nothing to stop the violation of her Constitutional rights. *Id.*, ¶¶ 57, 114, 117. Accordingly, the Complaint plausibly pleads a claim for relief against Defendants Elder and Gillespie.

### 4.8.3 Defendants O'Neal, Noe, and Ford are "peace officers."

Defendants O'Neal, Noe, and Ford are sheriff's deputies for El Paso County. [Doc. #124], ¶¶ 16, 19, 20. The Enhance Law Enforcement Integrity Act states that "peace officer, as defined in section 24-31-901 (3), who, under color of law, subjects or causes to be subjected, including failing to intervene, any other person to the deprivation of any individual rights that create binding obligations on government actors secured by the bill of rights, article II of the state constitution, is liable to the injured party for legal or equitable relief or any other appropriate relief." C.R.S. § 13-21-131(1). C.R.S. § 24-31-901(3) defines a peace officer as "any person employed by a political subdivision of the state required to be certified by the P.O.S.T. board pursuant to section 16-2.5-102, a Colorado state patrol officer as described in section 16-2.5-114, and any noncertified deputy sheriff as described in section 16-2.5-103(2)." Finally, C.R.S. § 16-2.5-102 states that P.O.S.T. certified "peace officers" include deputy sheriffs and C.R.S. § 16-2.5-103(2) states that "[a] noncertified deputy sheriff or detention officer is a peace officer employed by a county or city and county whose authority is limited to the duties assigned by and while working under the direction of the chief of police, sheriff, an official who has the duties of a sheriff in a city and county, or chief executive of the employing law enforcement agency." Conspicuously absent from the law are any limitations for peace officers for their constitutional violations while performing

S.A. 096

administrative work. Clearly, as pled and under the plain language of the relevant statutes, Defendants O'Neal, Noe, and Ford are "peace officers" subject to suit under the Enhance Law Enforcement Integrity Act.

### 4.9 <u>Plaintiff states multiple claims for the violation of her rights under the Colorado Constitution.</u>[17]

Generally, the Colorado Supreme Court has "determined that the Colorado Constitution provides more protection for our citizens than do similarly or identically worded provisions of the United States Constitution." *People v. Young*, 814 P.2d 834, 842 (Colo. 1991).[18] The Colorado Supreme Court has repeatedly recognized "that the Colorado Constitution, written to address the concerns of our own citizens and tailored to our unique regional location, is a source of protection for individual rights that is independent of and supplemental to the protections provided by the United States Constitution." *Id.* As outlined below, Defendants violated Ms. Griffith's Colorado Constitutional rights.

#### 4.9.1 **Defendants Elder, Gillespie, O'Neal, Mustapick, Elliss, Noe, and Ford violated Ms. Griffith's rights under the Colorado Constitution's Equal Rights Amendment.**

Defendants' decision to disregard Ms. Griffith's gender identity, and instead treat her as a male inmate, violates the Colorado Constitution's Equal Rights Amendment ("ERA"). In Colorado, classifications based solely on sex are prohibited. Colo. Const. Art. II, Section 29. "This amendment prohibits unequal treatment based exclusively on the circumstance of sex, social stereotypes connected with gender, and culturally induced dissimilarities." *People v. Salinas*, 551 P.2d 703, 705 (Colo. 1976). Importantly, the Colorado ERA requires that any "classifications

---

[17] Should this Court elect to import the federal standards, and apply them to Ms. Griffith's state law claims, those claims are adequately pled as outlined above.

[18] *See, e.g., Bock v. Westminster Mall Co.*, 819 P.2d 55, 59-60 (Colo. 1991); *People v. Oates,* 698 P.2d 811 (Colo. 1985); *People v. Sporleder,* 666 P.2d 135 (Colo. 1983); *Charnes v. DiGiacomo,* 612 P.2d 1117 (Colo. 1980); *People v. Paulsen,* 601 P.2d 634 (Colo. 1979); *People ex rel. Juhan v. Dist. Court for Cty. of Jefferson*, 439 P.2d 741 (Colo. 1968).

S.A. 097

based exclusively on sexual status receive the closest judicial scrutiny." *People v. Green*, 183 Colo. 25, 514 P.2d 769 (1973).

While there is little jurisprudence in Colorado on the ERA and its application in the prison context, looking at an analogue situation in federal law is instructive. When the government discriminates on the basis of race in prisoner placement, the Fourteenth Amendment (like the ERA) requires strict scrutiny. *See Johnson v. California*, 543 U.S. 499, 512 (2005); *Lee v. Washington*, 390 U.S. 333, 333 (1968). And, in applying strict scrutiny, the Supreme Court has explicitly stated that under strict scrutiny analysis, "[t]he purpose of the narrow tailoring requirement is to ensure that 'the means chosen 'fit' th[e] compelling goal so closely that there is little or no possibility that the motive for the classification was illegitimate racial prejudice or stereotype.'" *Grutter v. Bollinger*, 539 U.S. 306 (2003) (quoting *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989)). While "necessities of prison security and discipline are a compelling government interest" they only justify "those uses of race [or, in this case, gender] that are narrowly tailored to address those necessities." *Johnson*, 543 U.S. at 512 (cleaned up). And, ultimately, the burden is squarely on the government to establish both that its interest is compelling and that its means are narrowly tailored. *Grutter*, 539 U.S. at 306.

What does strict srutiny mean in practice? Well, Justice Scalia posited that "only a social emergency rising to the level of imminent danger to life and limb--for example, a prison race riot, requiring *temporary* segregation of inmates--can justify an exception to the principle embodied in the Fourteenth Amendment that '[o]ur Constitution is color-blind, and neither knows nor tolerates classes among citizens[.]'" *J. A. Croson Co.*, 488 U.S. at 521 (Scalia, J., concurring in judgment) (emphasis added) (quoting *Plessy v. Ferguson*, 163 U.S. 537, 559 (1896) (Harlan, J., dissenting)). As alleged, Defendants cannot meet their burden of showing that their decision to place Ms. Griffith in an all-male unit was narrowly tailored to a compelling government interest. And, it is

S.A. 098

absolutely clear that Ms. Griffith was not *temporarily* housed in an all-male unit because of an

immediate threat of violence. At least under Justice Scalia's conception of strict scrutiny, Ms.

Griffith's automatic placement in an all-male unit based on her status as a transgender, rather than

cisgender, woman, and the corresponding treatment to which she was subjected by County

officials because of it, was not narrowly tailored to a compelling government interest. Therefore,

Ms. Griffith has adequately alleged a claim under the ERA.

> ### 4.9.2  Defendants Elder, Gillespie, Mustapick, and Elliss violated Ms. Griffith's rights under Colo. Const. Art. II, Section 25 by subjecting her to unreasonable searches[19] and by invading her right to privacy and bodily integrity.

This Court should apply a standard consistent with Colorado tort law in assessing Ms.

Griffith's claim that Defendants unreasonably searched her and invaded her right to privacy and

bodily integrity under the Colorado Constitution. The elements of such a negligence standard are

that Defendants owed Ms. Griffith a constitutional duty to be free from unreasonable searches, that

they violated their duty, that they were the cause of the violation of that duty, and that Ms. Griffith

suffered damages. *See Davenport v. Cmty. Corr. of the Pikes Peak Region*, 942 P.2d 1301, 1303

(Colo. App. 1997). First, as alleged, Defendants owed Ms. Griffith a constitutional duty given that

she was a ward of the El Paso County Jail and they were peace officers within the meaning of the

Enhance Law Enforcement Integrity Act. *See Cisneros v. Elder*, 2022 CO 13M (Colo. 2022).

Because Defendants, who were Ms. Griffith's jailers, had a special relationship with her, they had

a duty to protect her from harm. *See Leake v. Cain*, 720 P.2d 152, 159 (Colo. 1986); Restatement

(Second) of Torts § 315 (1965). And, the Colorado Constitution's Due Process Clause protects

substantive rights. *See Coal. for Equal Rights, Inc. v. Owens*, 458 F. Supp. 2d 1251, 1263 (D.

---

[19] Should this Court find that Ms. Griffith's unreasonable search claims are better characterized under Colo. Const. Art. II, Section 7, Plaintiff requests that her claims be dismissed without prejudice with leave to amend.

Colo. 2006). Second, Defendant Mustapick breached that duty through his unreasonable search, Defendant Elliss breached that duty through her failure to intervene to prevent Defendant Mustapick's unreasonable search, and Defendants Elder and Gillespie violated their duty by implementing policies that required Defendant Mustapick engage in an unreasonable search of Ms. Griffith. Third and fourth, Defendants' actions caused the unreasonable search and Ms. Griffith to suffer damages. For these reasons, Ms. Griffith has alleged a claim under the Colorado Constitution's Art. II, Section 25.

### 4.9.3 Defendants violated Ms. Griffith's rights under Colo. Const. Art. II, Section 20 by subjecting her to cruel and unusual punishment.

This Court should also apply a standard consistent with Colorado tort law in assessing Ms. Griffith's claim that Defendants subjected her to cruel and unusual punishment under the Colorado Constitution. That same elements outlined above apply. *See Davenport*, 942 P.2d at 1303. First, as alleged, Defendants owed Ms. Griffith a Constitutional duty given that she was a ward of the El Paso County Jail and they were peace officers within the meaning of the Enhance Law Enforcement Integrity Act. *See Cisneros v. Elder*, 2022 CO 13M (Colo. 2022). Under Colo. Const. Art. II, Section 20, Defendants had a legal duty to not subject her to cruel and unusual punishment. This includes, necessarily, that they could not place her in negligently harm's way resulting in her assault by another inmate,[20] subject her to near-constant sexual harassment, require her to undergo repeated cross-gender pat-down searches, or force her to endure a cross-gender visual body-cavity searches that included grossly inappropriate sexual harassment. Because Defendants, who were

---

[20] A basic proposition of tort law is that the amount of care demanded by the standard of reasonable conduct must be in proportion to the risk; the greater the danger, the higher is the degree of caution which the person owing the duty must exercise. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts 34, at 208-09 (5th ed. 1984); *Bayer v. Crested Butte Mt. Resort*, 960 P.2d 70, 72 (Colo. 1998). Clearly, Defendants failed to exercise the requisite care when they placed Ms. Griffith in an all-male unit given the standards outlining the extreme risk she would face in such a setting. [Doc. #124], 40-46.

S.A. 100

Ms. Griffith's jailers, had a special relationship with her, they had a duty to protect her from harm. *See Leake v. Cain*, 720 P.2d 152, 159 (Colo. 1986); Restatement (Second) of Torts § 315 (1965). All of these actions by Defendants caused the violation of Ms. Griffith's rights under the Constitution's Colo. Const. Art. II, Section 20.

### 4.10   **Plaintiff adequately alleges a violation of her rights under the Americans with Disabilities Act ("ADA") and Rehabilitation act of 1973 (Rehab Act").**

The ADA was crafted to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). To state a claim, a plaintiff must show "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against; and (3) that such an exclusion, denial of benefits, or discrimination was by reason of his disability." *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000). The Rehab Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

### 4.10.1   **Plaintiff adequately alleges that she is a person with a disability.**

The definition of "disability" in both statutes is virtually identical. *See* 42 U.S.C. § 12101(b)(1) (ADA) (defining disability as "a physical or mental impairment that substantially limits one or more major life activities."); 29 U.S.C. § 705(9) (Rehabilitation Act) (defining a disability as "a physical or mental impairment that constitutes or results in a substantial impediment to employment"). In light of the twinned definitions, courts routinely apply the same legal analysis in interpreting claims under both statutes. *See Nunes v. Massachusetts Dep't of Corr.*, 766 F.3d 136, 144 (1st Cir. 2014) (noting that the court "need make no distinction between the two statutes for purposes of our analysis").

**S.A. 101**

Ms. Griffith extensively outlines that she suffers from Gender Dysphoria and that

Defendants were aware of Ms. Griffith's diagnosis. [Doc. #124], ¶¶ 25-32. The DSM-5 recognizes

Gender Dysphoria as a mental disability that requires medical treatment, *Id.*, ¶ 22, and an

impairment that substantially limits a number of Ms. Griffith's major life activities. *Id.*, ¶¶33-38.

Multiple courts have held that Gender Dysphoria is covered under the Americans with Disabilities

Act because Gender Dysphoria is a disability that substantially limits a transgender person's

endocrine and reproductive systems, and results from a physical impairment. *See Doe v. Mass.*

*Dep't of Corr.,* No. 17-12255-RGS, 2018 U.S. Dist. LEXIS 99925, at *12-14 (D. Mass. June 14,

2018); *Tay*, 2020 U.S. Dist. LEXIS 76911, 2020 WL 2100761, at *3; *Shorter v. Barr*, 2020 U.S.

Dist. LEXIS 71453, 2020 WL 1942785, at *9 (N.D. Fla. Mar. 13, 2020), *report and*

*recommendation adopted*, 2020 U.S. Dist. LEXIS 70773, 2020 WL 1942300 (Apr. 22, 2020); *Doe*

*v. Pa. Dep't of Corr.*, No. 1:20-cv-00023-SPB-RAL, 2021 U.S. Dist. LEXIS 31970, at *26 (W.D.

Pa. Feb. 19, 2021). Thus, as alleged and under the relevant legal authority, Ms. Griffith is a person

with a disability for purposes of the ADA and Rehab Act.

### 4.10.2 Plaintiff adequately alleges that she was discriminated against because of her disability.

Defendants denied Ms. Griffith the services, programs, and activities of the El Paso

County Jail as this provision "has been interpreted to be a catchall phrase that prohibits all

discrimination by a public entity." *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d

Cir. 2012) (internal quotation marks and citation omitted); *see also Hason v. Med. Bd. of*

*California*, 279 F.3d 1167, 1172-1173 (9th Cir. 2002) ("[T]he ADA's broad language brings

within its scope anything a public entity does."). When a correctional institution assigns a

transgender woman "to a men's prison by virtue of her gender assignment at birth and denie[s]

access to facilities and programs that would correspond with her gender identification" it violates

the ADA. *Doe*, 2018 U.S. Dist. LEXIS 99925, at *22. Assigning a transgender inmate to a unit

based on biological sex "injects them into a prison environment that is contrary to a critical aspect of their prescribed treatment (that they be allowed to live as, in [Ms. Griffith]'s case, a woman). *Id.*, at *23. And, because Ms. Griffith "has adequately stated a claim under the ADA, it follows that her Rehabilitation Act claim is equally viable." *Id.* For these reasons, Ms. Griffith has adequately alleged claims under the ADA and Rehab Act.

### 4.10.3  Even after *Cummings*, the Rehab Act and ADA provide for emotional distress and other types of damages.

It is important to note that *Cummings v. Premier Rehab Keller, P.L.L.C.*, is a plurality opinion as the five justices did not agree on a single rationale, or the same or similar grounds, for their holding, making it non-binding. 142 S. Ct. 1562 (2022); *see Marks v. United States*, 430 U.S. 188, 193-94 (1977). But, even if this Court considers *Cummings* as controlling precedent, it does not apply to this case for a number of reasons.

First, *Cummings* does not address claims under the ADA. Therefore, Ms. Griffith's ADA claims are unaffected by *Cummings*.

Second, the *Cummings* court relied on a contract law analysis to limit the damages available under the Rehab Act. Under contract law, "the rights of the parties must necessarily be determined by the law as it was when the contract was made." *Town of Koshkonong v. Burton*, 104 U.S. 668, 679 (1881). At the time Ms. Griffith was injured, it was well-settled that emotional anguish damages may be claimed and be reimbursed pursuant to the ADA and Rehab Act. *See e.g., Delano-Pyle v. Vict. County*, 302 F.3d 567 (5th Cir. 2002) cert denied 2003 LEXIS 5495 (Oct. 6, 2003). There is nothing in *Cummings* that states it is retroactive and, therefore, emotional distress damages are available to Ms. Griffith based on principles of contract law.

Third, even if this Court were to conclude that emotional-distress damages are unavailable under the Rehab Act and ADA, Plaintiff is entitled to other forms of compensatory damages. A Defendant is subject to those remedies otherwise available for a breach of contract. *Cummings*,

**S.A. 103**

142 S. Ct. at 1571. Contract damages are ordinarily based upon the injured party's expectation

interest and are intended to give that person the benefit of her bargain by awarding her a sum of

money that will, to the extent possible, put her in as good a position as she would have been, had

the contract been performed. Restatement (Second) of Contracts §347 cmt. A (Am. L. Inst. 1981).

Here, when Ms. Griffith was at the El Paso County Jail, she surely had an expectation she would

be treated the same as her non-disabled peers and not less so because of her disability. Recently, in

a post-*Cummings* decision, a district court confirmed the availability of such damages to make the

subject of unlawful discrimination whole. *Montgomery v. District of Columbia*, 2022 U.S. Dist.

LEXIS 9228 at *74, 76-77 (D.D.C., May 23, 2022). Similarly, Ms. Griffith would be entitled to

compensatory damages for dignitary harm because she, and every other inmate, would have

entered the El Paso County Jail under the assumption they would be treated with dignity and

respect. *See Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2nd Cir. 2008). And, even if the

Court were to conclude that no form of compensatory damages is available under federal law, Ms.

Griffith is still entitled to nominal damages. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021)

(noting that "every violation of a right imports damage").

### 4.10.4   Plaintiff adequately alleges that Defendants intentionally discriminated against her and is entitled to recover compensatory damages.

Intentional discrimination does not require discriminatory animus but rather may be

"inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its

questioned policies will likely result in a violation of federally protected rights." *Powers v. MJB*

*Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999). There is a two-pronged test for this

standard: knowledge that a harm to a federally protected right is substantially likely; and a failure

to act upon that likelihood. *Havens v. Colorado Dep't of Corr.*, 897 F.3d 1250, 1264 (10th Cir.

2018). Generally, courts have held that there exists a sufficient evidentiary basis for a factfinder to

determine that intentional discrimination occurred under § 504 and/or Title II when the defendant

S.A. 104

deliberately made *no good faith effort* to reasonably accommodate a plaintiff's known disability, thereby subjecting the plaintiff to disability discrimination.[21]

Here, Ms. Griffith has adequately alleged that El Paso County – directly and through its agents – had knowledge that a harm to her federally protected rights was substantially likely, and failed to act upon that likelihood. *See Havens*, 897 F.3d at 1264. When Ms. Griffith first entered El Paso County Jail, she was an openly transgender woman with a feminine appearance and during her intake screening, she notified El Paso County Jail and its healthcare personnel that she was a transgender woman with a diagnosis of Gender Dysphoria. [Doc. #124], ¶¶ 47-48. Ms. Griffith repeatedly and explicitly requested placement in a women's facility as an accommodation for her known disability. *Id.*, ¶¶ 48-70. One of El Paso County's officials even did an ADA review of Ms. Griffith's housing classification. *See Havens*, 897 F.3d at 1266 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.") (internal citations omitted). Ms. Griffith's classification and placement in an all-male facility was by no means an inadvertent mistake either. It was done intentionally and for one reason: her disability. This subjects Defendants to compensatory damages.

5. **Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion in its entirety.

---

[21] *See Updike v. Multnomah Cty.*, 870 F.3d 939, 954 (9th Cir. 2017); *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1140 (9th Cir. 2001); *Bartlett v. N.Y. State Bd. of Law Exam'rs*, 156 F.3d 321, 330-31 (2d Cir. 1998); *Center v. City of West Carrollton*, 227 F. Supp. 2d 863, 868, 872 (S.D. Ohio 2002); *see also Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185 (10th Cir. 2007); *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 397 (D. Md. 2011); *Armstrong v. Schwarzenegger*, 622 F.3d 1058 (9th Cir. 2010); *see also Barber v. Colorado*, 562 F.3d 1222, 1229 (10th Cir. 2009) ("a public entity does not 'act' by proffering just any accommodation"); *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 829 (D. Md. 1998) ("in cases where a public accommodation is on notice that its failure to provide an accommodation may violate the Rehabilitation Act and intentionally opts to provide a lesser accommodation, compensatory damages are available.").

Dated this 8th day of August 2022.

KILLMER, LANE & NEWMAN, LLP

*s/ Andy McNulty*

_____

Andy McNulty
Mari Newman
1543 Champa St., Ste. 400
Denver, CO 80202
Phone: (303) 571-1000
Fax: (303) 571-1001
amcnulty@kln-law.com
mnewman@kln-law.com

ATTORNEYS FOR PLAINTIFF

S.A. 106

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on August 8, 2022, I electronically filed the foregoing **RESPONSE TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (6)** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Nathan J. Whitney
Terry Sample
Chris Strider
County Attorney's Office
El Paso County
nathanwhitney@elpasoco.com
terrysample@elpasoco.com
chrisstrider@elpasoco.com

*Counsel for Defendants*

                                    *s/ Andy McNulty*

**S.A. 107**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00387-NRN

DARLENE GRIFFITH

Plaintiff,

v.

EL PASO COUNTY, COLORADO, e*t al.*

Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THIRD
AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) and (6)**

---

Defendants El Paso County ("El Paso County"), Bill Elder ("Elder"), Cy Gillespie ("Gillespie"), Dawne Elliss ("Elliss"), Andrew Mustapick ("Mustapick"), Elizabeth O'Neal ("O'Neal"), Brande Ford ("Ford"), and Tiffany Noe ("Noe") (collectively the "Defendants"), through the Office of the County Attorney of El Paso County, Colorado, submit their Reply in Support of their Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 124, the "Complaint") under Fed. R. Civ. P. 12(b)(1) and (6) as follows:

**I.   INTRODUCTION[1]**

The law surrounding the housing and treatment of transgender individuals, including those diagnosed with Gender Dysphoria, in correctional institutions is exceedingly murky.  Plaintiff's claims fail in the absence of clarity because (i) the rights

---

[1] The defined terms used in this Reply have the same meaning as the defined terms used in the Motion to Dismiss.

alleged by Plaintiff do not exist, (ii) there is no clearly established law that would deprive the Individual Defendants of qualified immunity, and (iii) Defendants did not act with deliberate indifference.  Plaintiff's claims asserted under the Act also fail because Plaintiff seeks to bend the Act's plain language beyond its breaking point.  *See, e.g.*, *Ditirro v. Sando*, 2022 WL 3452486, at * 5 (Colo. App. Aug. 18, 2022).  For these reasons and the others set forth in the Motion to Dismiss, the Court must dismiss the Complaint in its entirety.

## II.      ARGUMENT

### A. THE COURT HAS NO JURISDICTION OVER THE CLAIMS ASSERTED AGAINST EL PASO COUNTY; BUT EVEN IF THE COURT HAS JURISDICTION, PLAINTIFF HAS FAILED TO STATE A PLAUSIBLE CLAIM AGAINST EL PASO COUNTY

The Response provides no argument explaining how this Court can exercise jurisdiction over El Paso County when it has not been properly named in the Complaint as required by C.R.S. § 30-11-105.  *See Calahan v. Jefferson Cnty.,* 429 P.2d 301, 302 (Colo. 1967).  Further, even if this Court can exercise jurisdiction over El Paso County, the Response fails to explain how the Complaint states a plausible claim against it given that,

> [u]nder Colorado law, the county sheriff is a separate and distinct position from the board of county commissioners. [T]he Board [of County Commissioners] does not exercise managerial control over either the sheriff or the detention center and its staff.  The Board of Commissioners is granted certain enumerated powers which do not include management of county jails.

*Mullen v. Comm'rs for Adams Cnty.*, 2022 WL 1266618, at * 5 (D. Colo. Apr. 28, 2022) (Recommendation of (then) Magistrate Wang) (internal quotations and citations omitted).

**S.A. 109**

Consequently, the Court must dismiss all claims asserted against El Paso County pursuant to Fed. R. Civ. P. 12(b)(1) or (5).

## B. PLAINTIFF HAS FAILED TO STATE A PLAUSIBLE VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS

### i.      *No Equal Protection Violation*

Plaintiff asserts an equal protection claim under the Fourteenth Amendment arguing that the Court should apply strict scrutiny to CJC's decisions regarding Plaintiff's housing classification and access to feminine products.  Response, p. 7-8.  The Court should reject Plaintiff's argument because, if it does not, every decision a correctional institution makes with respect to a transgender inmate will be subject to the highest level of scrutiny.  This would run counter to the Supreme Court's warning in *Bell v. Wolfish* that the courts should stay out of the day-to-day management of correctional institutions.  441 U.S. 520, 547 (1979) ("[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions.  Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").  Moreover, the Tenth Circuit has already ruled that transgender status is not a suspect or quasi-suspect class. *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1985); *Druley v. Paxton*, 601 F. App'x 632, 635-36 (10th Cir. 2015) (unpublished); *Qz'Etax v. Ortiz*, 170 F. App'x 551, 553 (10th Cir. 2006) (unpublished).  Plaintiff's Equal Protection claim consequently fails because she does not assert that CJC's decisions lacked a rational basis (i.e., were not related to her biological sex).

3

Furthermore, Plaintiff has failed to show that she is similarly situated to biological females detained in CJC because she is not "alike in all relevant aspects," *Grissom v. Roberts*, 902 F.3d 1162, 1173 (10th Cir. 2018), in that she has not undergone gender reassignment surgery. *See, e.g.*, *Shaw v. Dist. of Columbia*, 944 F.Supp.2d 43 (Dist. D.C. May 13, 2013) (treating the plaintiff, a transgender woman, the same as a biological female because she underwent gender reassignment surgery and had her sex legally changed to female).

In the Response, Plaintiff expands her Equal Protection claim to include the alleged sexual harassment she was subject to in CJC. Response, p. 14-15. But this claim does not appear anywhere in her Complaint. *See* Doc. 124, ¶¶ 123-138. Plaintiff cannot amend her Complaint in response to a dispositive motion. *See San Agustin, Jr. v. El Paso County*, 2019 WL 4059167, * 10 (D. Colo. Aug. 28, 2019) (citing Fed. R. Civ. P. 15). Accordingly, the Court must dismiss Plaintiff's Equal Protection claim pursuant to Fed. R. Civ. P. 12(b)(6).

### ii.   No Other Violation of the Fourteenth Amendment

In the Response, Plaintiff claims that Defendants should be held liable for the "near-constant" harassment she was allegedly subjected to in CJC. Response, p. 16. Yet Plaintiff fails to explain how any Defendant contributed to the "near-constant" harassment. Response, p. 16. Plaintiff has, therefore, failed to establish personal participation of any Defendant as required by *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008).

4

The Response goes on to assert unconstitutional conditions of confinement based on Mustapick's visual body cavity search of Plaintiff.  Response, p. 17.  Plaintiff's assertion fails because Mustapick's alleged comments do not rise to the level of a constitutional violation.  *Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.11 (10th Cir. 1998) ("Although plaintiffs allege [defendant] subjected them to severe verbal sexual harassment and intimidation, these acts of verbal harassment alone are not sufficient to state a claim under the Eighth Amendment."); *Adkins v. Rodriguez*, 59 F.3d 1034, 1037-38 (10th Cir. 1995) (verbal sexual harassment did not amount to Eighth Amendment violation).

The Response also asserts unconstitutional conditions of confinement based upon repeated cross-gender pat-down searches.  Response, p. 18-19.  But again, Plaintiff does not identify who conducted the pat-down searches or state when many of these pat-down searches occurred. (*See* Doc. 124, ¶ 89-96).  Plaintiff's imprecise allegations fail to state a constitutional claim. *Robbins*, 519 F.3d at 1250.

The Response next asserts a failure to protect claim.  Response, pp. 19-21.  Yet again, Plaintiff fails to explain how the Complaint's allegations establish the personal participation of each Defendant.  *See id.*  Instead, the Response, like the Complaint, "use[s] either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, [making it] impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."  *Id*.

Finally, the Response alleges a failure to intervene claim against Ellis.  *Id.* pp. 26-28.  As Plaintiff acknowledges, however, a failure to intervene claim cannot succeed

**S.A. 112**

unless the officer has knowledge of a constitutional violation. *Id.* p. 27, quoting *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015). No constitutional violation occurred, however, because Mustapick's alleged comments during his visual search of Plaintiff do not rise to the level of a constitutional violation. *See Barney*, 143 F.3d at 1310 n.11; *Adkins*, 59 F.3d at 1037-38. Without an underlying constitutional violation, Plaintiff's failure to intervene claim fails. *See Jones*, 809 F.3d at 576 (citing *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005)). In sum, for the reasons set forth herein and in the Motion to Dismiss, the Court must dismiss Plaintiff's Fourteenth Amendment Claims pursuant to Fed. R. Civ. P. 12(b)(6).

### iii.    *No Fourth Amendment Violation*

Contrary to Plaintiff's arguments, the Complaint does not state a plausible Fourth Amendment violation. In *Bell,* the Supreme Court discussed the factors that must be considered in assessing the reasonableness of prisoner searches:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

441 U.S. at 559.

As explained in the Motion to Dismiss, the application of these factors does not result in a plausible constitutional violation. First, the *visual* body cavity search of Plaintiff was indisputably reasonable given that it was performed as Plaintiff entered CJC and before she was admitted into the general population. *Archuleta v. Wagner*, 523 F.3d 1278, 1284 (10th Cir. 2008) (reasonableness of strip search turns in part on whether

6

inmate will be housed in general population); *Hyberg v. Enslow*, 801 F. App'x 647, 650-51 (10th Cir. 2020) (unpublished) (finding no plausible Fourth Amendment claim where inmate was strip searched in a designated area "with limited access for other inmates and staff" before returning to general population, and where staff made insensitive comments). Second, the only individuals present during the visual strip search were Ellis and Mustapick, both of whom performed part of the search in a private area of CJC. Plaintiff's strip search was not video recorded as was the case in *Hayes v. Marriott*, 70 F.3d 1144, 1145 (10th Cir. 1995), or conducted without a penological purpose as was the case in *Shroff v. Spellman*, 604 F.3d 1179 (10th Cir. 2010). Third, Plaintiff argues that she was subject to a cross-gender search because Mustapick, a biological male, participated in the search. Yet Plaintiff presents no authority suggesting that Mustapick's visual search of Plaintiff constitutes a cross-gender search given they share the same biological sex. Fourth, the verbal statements attributed to Mustapick are insufficient to establish a constitutional violation. Indeed, in *Adkins*, the Tenth Circuit found that similar verbal harassment did not amount to a constitutional violation. 59 F.3d at 1037-38; *see also Hayes*, 70 F.3d at 1145.

Accordingly, tor the reasons set forth herein and in the Motion to Dismiss, the Court must dismiss Plaintiff's Fourth Amendment Claim pursuant to Fed. R. Civ. P. 12(b)(6).

## C. PLAINTIFF HAS FAILED TO MEET THE TWO-PART BURDEN TO OVERCOME THE DEFENSE OF QUALIFIED IMMUNITY

To avoid the application of qualified immunity, Plaintiff bears the substantial burden of showing that (1) the actions of the Defendants violated Plaintiff's constitutional or

statutory rights, and (2) that the rights were clearly established at the time of Defendants' alleged violation. *Albright v. Rodriguez*, 51 F.3d 1531,1534 (10th Cir. 1995). To be clearly established, a plaintiff may point to "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (citations omitted). Plaintiff appears to argue that she does not need to identify a case on point because less specificity, or no specificity, is required due to the supposedly egregious nature of the conduct alleged. Response, p. 5-6. Plaintiff's argument is unfounded because this is not one of the rare cases where the alleged conduct is, in fact, so egregious that the Defendants' presumption of qualified immunity may be rebutted without citing to "on point" precedent or the weight of persuasive authority. *See Dist. of Columbia v. Wesby*, 138 S. Ct 577, 590 (2018); *Ashaheed v. Currington*, 7 4.th 1236, 1248 (10th Cir. 2021) (quoting *Taylor v. Riojas*, 141 S.Ct. 52, 53 (2020) (*per curiam*)).

Plaintiff next asserts that *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010), and *Lopez v. LeMaster*, 172 F.3d 756 (10th Cir. 1999), clearly establish the law surrounding her claims of supervisory liability. Response at 7. Not so. *Dodds* merely recognized the viability of supervisory liability following the Supreme Court's decision in *Aschroft v. Iqbal* and is factually inapposite. 614 F.3d at 1194; *see also B.I.C. v. Gillen*, 761 F.3d 1099, 1105 (10th Cir. 2014) (a plaintiff "cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it."). *Lopez* is factually inapposite because, unlike here, it involved specific, identifiable threats to the safety of a specific inmate. 172 F.3d at 758 (plaintiff was placed in general population

after he reported to jailer that another inmate "poked [him] in the stomach with a broom and accused him of 'messing with' the inmate's sister and mother.")  In contrast, this case involves generalized risks to the safety of female transgender inmates housed in male wards.

Plaintiff also claims that the law surrounding her Fourteenth Amendment claims is clearly established.  *See* Response, p. 7 -21.  Not so.  The authority cited by Plaintiff consists largely of non-binding decisions from circuit courts other than the Tenth Circuit and district courts outside of Colorado.  To the extent Plaintiff cites a Supreme Court or Tenth Circuit decision, such decisions are factually inapposite and far from "on point."  For instance, Plaintiff cites the Supreme Court's decision *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1741 (2020), in support of her Fourteenth Amendment sex- and gender-based discrimination claim.  Response, p. 9.  But as this Court is aware, *Bostock*'s holding was confined to Title VII of the Civil Rights Act of 1964.  Plaintiff also cites *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805 (10th Cir. 2019), and suggests that it is clearly established that strict scrutiny applies to her Equal Protection claim. Response, p. 12.  *Free the Nipple-Fort Collins* is factually inapposite because it dealt with challenges to a municipal ordinance that prevented females from going topless in public. 916 F.3d at 795.  Moreover, the extension of strict scrutiny advocated for by Plaintiff runs counter to binding Supreme Court precedent, such as *Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."), and Tenth Circuit precedent, such as *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1985).

Plaintiff fails to show that the law was clearly established in connection with her Fourth Amendment claim alleging an unreasonable search.  To being with, under the circumstances presented here, the mere fact Plaintiff was strip searched does not give rise to a Fourth Amendment violation.  *See Hyberg*, 801 F. App'x at 650-51 (finding no plausible Fourth Amendment claim where inmate was strip searched in a designated area "with limited access for other inmates and staff" before returning to general population, and where staff made insensitive comments).  To the extent Plaintiff takes issue with how the strip search was conducted, the law was not so clearly established as to deprive Mustapick or Ellis of qualified immunity because none of the cases cited by Plaintiff involve similar facts—the strip search of a transgender female, who has not undergone gender reassignment surgery, by a biological male and a biological female.  Moreover, the law was not sufficiently clear with the respect to the alleged comments made by Mustapick during the strip search because, in *Adkins*, the Tenth Circuit found that similar verbal harassment did not amount to a constitutional violation.  59 F.3d at 1037-38.

While the law may one day be as Plaintiff argues it should be now, the Defendants cannot be deprived of qualified immunity for failing to predict how courts will rule on these hotly contested and rapidly evolving legal issues.

### D. PLAINTIFF HAS FAILED TO STATE A PLAUSIBLE § 1983 CLAIM OF SUPERVISORY LIABILITY AGAINST ELDER OR GILLESPIE

As explained in the Motion, Plaintiff fails to state a plausible claim for supervisory liability applying the three factors enumerated in *Dodds*, 614 F.3d 1185.  In particular, Elder and Gillespie could not, and reasonably should not, have known that their alleged policies "would cause others to deprive the plaintiff of her constitutional rights," *id.* at 1211

(Tymkovich, J., concurring) (quotations omitted), because the alleged rights may not exist and, to the extent they do, they are not clearly established.  *See, e.g., Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994-96 (6th Cir. 2017) ("But a municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established.") (internal citations and quotations omitted); § II(C) above.  Accordingly, the Court should dismiss Plaintiff's claims asserted against Elder and Gillespie in their individual capacities pursuant to Fed. R. Civ. P. 12(b)(6).

### E.  THE COMPLAINT FAILS TO STATE A MUNICIPAL LIABILITY CLAIM

The Response clarifies that Plaintiff only seeks to impose municipal liability based upon a formal policy, an informal custom, and a final decision by a policy maker.  Plaintiff fails to plausibly allege municipal liability under any of these theories.

Plaintiff's assertion of a formal policy fails because she does not identify any specific written policy.  To this point, Plaintiff asserts that there was an official policy of housing transgender females in male wards, but she does not identify where such policy exists in writing or how it was adopted by any EPSO policymaker.  Consequently, this claim of municipal liability fails.  *See Carney v. Cty. & Cnty. of Denver*, 534 F.3d 1268, 1274 (10th Cir. 2008) (dismissing the allegation of a formal policy because plaintiff has neither alleged nor produced any evidence suggesting that her purported discrimination was caused by any legislative action by 'an official whose acts may fairly be said to be those of the municipality itself.'")

Plaintiff's assertion of an informal custom is premised upon *Crowson v. Wash. Cnty. State of Utah*, 983 F.3d 1166 (10th Cir. 2020), and a smattering of district court decisions finding that municipal liability can be established through the aggregation of different state actors' conduct, even if no individual actor committed a constitutional violation.  First, *Crowson* is a "limited exception" to the standard municipal liability inquiry.  983 F.3d at 1191.  Thus, the Court should follow the approach taken in *Taylor v. Armor Corr. Health Servs., Inc.,* and "decline[] to sidestep well-settle constitutional principle and find that, because [Plaintiff] has alleged a high number of incidents that, by themselves, do not give rise to a constitutional violation, the collective sum necessarily gives rise to a constitutional injury."  2021 WL 4556213, at * 14 (*report and recommendation adopted* 2021 WL 4272717 (D. Colo. Sept. 21, 2021)). Second, to the extent *Crowson* is applicable, it does not eliminate the requirement that a plaintiff show that the alleged custom was "widespread," commonly done through allegations of similarly situated individuals mistreated in a similar way.  *See Carney*, 534 F.3d at 1274.  Plaintiff's failure to make such a showing seriously undermines this claim, *see id*., and Plaintiff provides no explanation as to how this claim can survive in the absence of such a showing.  *See Johnson v. Davis Cnty.*, 2022 WL 830202, at ** 3-4 (10th Cir. Mar. 21, 2022) (unpublished) (acknowledging *Crowson* and finding that plaintiffs' municipal liability claim failed because "plaintiffs point[ed] to no prior similar constitutional violations…").

Plaintiff's claim of municipal liability based upon a final decision by a policymaker also fails.  First, Plaintiff does not identify any specific decision made by Elder that resulted in a constitutional violation because the allegations regarding Elder's decisions are merely

formulaic.   Second, the Response fails to explain how Elder acted with deliberate indifference—a necessary element for this claim—given that the surrounding law is unclear.   *See Arrington-Bey*, 858 F.3d at 994-96 ("But a municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established.") (internal citations and quotations omitted); *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018); *Nicholas v. Wany Cnty., Mich.*, 822 F. App'x 445, 451-52 (6th Cir. 2020) (unpublished); *Townes v. City of New York*, 176 F.3d 138, 143-44 (2d Cir. 1999); *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007); *Moya v. City of Clovis*, 2019 WL 6255217, at * 10 (D.N.M. Nov. 22, 2019) (unpublished) ("But a municipal policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established.") (emphasis in original, quotations and citations omitted); ***see also*** *Montoya v. City & Cnty. of Denver*, 2021 WL 8087380, at *2 n.3 (D. Colo. July 27, 2021) (unpublished) (noting that the issue of whether a municipal entity can be deliberately indifferent to a right that is not clearly established was left open by *Contreras ex rel. A.L. v. Dona Ana Cnty. Comm'rs*, 965 F.3d 114, 1124 (10th Cir. 2020) (Carson, J. concurring)). Plaintiff should not, therefore, be able to maintain her claim of municipal liability based upon a final decisionmaker.

According, the Court must dismiss Plaintiff's municipal liability claims pursuant to Fed. R. Civ. P. 12(b)(6).

**F.   THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM UNDER THE ACT**

> ***i.      No Direct Claim for Municipal Liability Exists Under the Act***

On August 18, 2022, the Colorado Court of Appeals ruled that no direct claim of municipal liability exists under the Act because "based on the plain language of the statute…it grants plaintiffs…the right to assert the specified civil rights action only against individual peace officers, not against the peace officers' employers." *Ditirro*, 2022 WL 3452486, at * 5. The Colorado Court of Appeals agrees with Defendants and this Court should too.

ii.    **The Complaint Fails to State a Claim for Supervisory Liability Against Elder or Gillespie Under the Act**

The Colorado Court of Appeals arrived at its conclusion in *Ditirro* by applying basic rules of statutory construction requiring a court to first look "to the express language of the statute, construing words and phrases according to the grammar and common usage." *Id*. at * 5 (internal quotations and citations omitted).

As argued in the Motion, the Court should not create a cause of action for supervisory liability under the Act because the Act's plain language does not expressly allow for it. The *Ditirro* decision bolsters Defendants' argument because it stands to reason that, if the Act's plain language does not provide for municipal liability, it also does not provide for supervisory liability. Yet the Response suggests that Defendants advocate for the interposition of § 1983 supervisory liability principles into the Act. *See* Response, p. 39. Not so. Defendants argue that no such cause of action exists.

Implicitly acknowledging that the Complaint does not state a claim for supervisory liability under more onerous § 1983 principles, Plaintiff implores this Court to transform the Act's cause of action for a constitutional violation into a simple tort and suggests she has stated a plausible claim for relief under less onerous "traditional tort principles."

Response, p. 40.  The Act's plain language provides no support for Plaintiff's position and Plaintiff cites no authority in support of her argument.  *See, e.g., id.* at p. 39 (stating, without citation to any authority, that the Act "creates a state cause of action in tort.").  The Court should reject Plaintiff's unsupported argument wholesale and find that no cause of action exists for supervisory liability under the Act.

But if such a cause exists, the Court should apply § 1983 supervisory liability principles and find that Plaintiff has failed to state such a claim, particularly due to the absence of deliberate indifference.

### iii.    O'Neal, Noe, and Ford Are Not "Peace Officers"

Colorado law enforcement agencies employ many individuals that do not meet the Act's definition of a "peace officer," such as dispatch operators, front desk clerks, information technology specialists, nurses, custodians, mechanics, and other administrative and civilian employees.  The plain language of the Act does not create a cause of action against these administrative and civilian employees because, unlike peace officers, they are not P.O.S.T. certified and are not tasked with enforcing Colorado's laws.  *See, e.g., Fraternal Order of Police, Colo. Lodge N. 27 v. City & Cnty. of Denver*, 914 P.2d 483, 486 (Colo. App. 1995) ("However, the legislative discussions concerning the addition of the phrase that a peace officer 'has the authority to enforce all the laws of the state of Colorado while acting within the scope of his authority and in the performance of his duties' generally indicate that the legislative intent was to allow peace officers to act in their law enforcement capacity only when they were on duty."), *aff'd* 926 P.2d 582 (Colo. 1996).

**S.A. 122**

The Complaint's allegations concerning O'Neal, Noe, and Ford do not show that they satisfy the Act's definition of a "peace officer." The Complaint alleges that Noe classified Plaintiff into an all-male unit upon Plaintiff's intake at CJC, (Doc. 124, ¶ 54), Ford did an ADA interview of Plaintiff but did not place Plaintiff into an all-female unit (*id*. at ¶ 55), and O'Neal reviewed and denied Plaintiff's request for a transfer to an all-female unit (*Id*. at ¶ 57). Such duties do not plausibly assert that O'Neal, Noe, and Ford are "peace officers" as opposed to administrative employees, such as ADA coordinators or inmate intake coordinators. Consequently, Claims 5, 6, 7, 8, 9, 15, and 16 asserted against O'Neal, Ford, and Noe must be dismissed.

### iv.     The Complaint Does Not State a Plausible Claim Under the Act

The Response acknowledges that there is "little jurisprudence" surrounding some of Plaintiff's claims asserted under the Act.  *See* Response, p. 42.  For instance, Plaintiff argues that the Complaint states a violation of the Colorado Constitution's Equal Rights Amendment ("ERA") because this amendment "prohibits unequal treatment based exclusively on the circumstances of sex, social stereotypes connected with gender, and culturally induced dissimilarities." *Id*. (quoting *People v. Salinas,* 551 P.2d 703, 706 (Colo. 1976)).  Plaintiff's reliance on *Salinas* is misplaced. [2]  First, *Salinas* provides little, if any,

---

[2] Plaintiff's reliance on *People v. Green*, 514 P.2d 769 (Colo. 1973), is also misplaced. First, *Green* provides little, if any, guidance because it also involved a rapist's contention "that his conviction and sentence deny him equal protection of the law because statutes dealing with the crime of rape discriminate between the sexes."  *Id*. at 770.  Second, *Green* held that "*legislative classifications* based solely on sexual status must receive the closest judicial scrutiny."  *Id*. (emphasis added).  This case does not involve legislative classifications.  Third, the Colorado Supreme Court issued its decision in *Salinas* three years after its decision in *Green*.  Thus, *Salinas* controls.

guidance because it involved a convicted rapist's assertion that Colorado's statutory rape statute was unconstitutional.  *Salinas*, 551 P.2d at 705-06.  Second, the portion of *Salinas* quoted by Plaintiff is followed by this sentence: "However, [the ERA] does not prohibit differential treatment among the sexes when, as here, that treatment is reasonably and genuinely based on physical characteristics unique to just one sex."  *Id*. at 706 (citations omitted).  Following *Salinas*, then, Plaintiff fails to state a plausible claim under the ERA because she alleges that her housing and treatment in CJC were based upon characteristics unique to her biological sex.

Plaintiff's other claims asserted under the Act are supported by state court decisions espousing general tort principles.  *See* Response 44-46 (citing *Davenport v. Cmty. Corr. of the Pikes Peak Region*, 942 P.2d 1301, 1303 (Colo. App. 1997); *Leake v. Cain*, 720 P.2d 152, 159 (Colo. 1986)).  As explained above, Plaintiff's effort to transform her constitutional claims into simple torts finds no support in the Act's plain language and runs counter to the Court of Appeals' rationale in *Ditirro*.  Moreover, Plaintiff's inability to cite to any Colorado case recognizing the specific rights alleged under the Colorado Constitution only furthers Defendants' argument that "this federal Court should not recognize rights for the first time under the Colorado Constitution."  Motion, p. 32 (citing *Younger v. Harris*, 401 U.S. 37 (1971)); *see also People v. Young*, 814 P.2d 834, 843 (Colo. 1991) ("This history reflects our repeated recognition that the Colorado Constitution, written to address the concerns of our own citizens and tailored to our unique regional location, is a source of protection for individual rights that is independent of and

supplemental to the protections provided by the United States Constitution."). Accordingly, the Court should dismiss Plaintiff's claims asserted under the Act.

### G. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM UNDER THE ADA OR REHABILITATION ACT

#### i. *The Complaint Fails to Allege a Covered Disability*

When Defendants filed the Motion to Dismiss, there was no circuit court opinion addressing whether Gender Dysphoria falls within the ADA's categorical exclusion of coverage for "gender identity disorders not resulting from physical impairments," 42 U.S.C. § 12211(b)(1).  On August 16, 2022, a divided Fourth Circuit held that Gender Dysphoria is covered by the ADA.  *Williams v. Kincaid*, 2022 WL 3364824, at ** 3-7 (4th Cir. 2022).

Defendants maintain that Gender Dysphoria is excluded from coverage under the ADA because (i) *Williams* is not binding precedent in this District; (ii) there remains a significant disagreement amongst district courts as to whether Gender Dysphoria is excluded from coverage under the ADA; and (iii) in *Michaels v. Akal Sec., Inc.*, a court in this District ruled that "[g]ender dysphoria, as a gender identity disorder, is specifically exempted as a disability…"  2010 WL 2573988, at *6 (D. Colo. Jun. 24, 2010) (unpublished).  But fortunately, the Court does not need to wade into these murky legal waters because Plaintiff's ADA and Rehabilitation Act claims clearly fail for the other reasons set forth below.

#### ii. *The Complaint Fails to Allege Causation*

The Response provides no cogent argument regarding causation.  Plaintiff argues that the ADA applies to "anything a public entity does" regardless of whether it is done

because of a person's disability.   Response, p. 47 (quoting *Hason v. Med. Bd. of California*, 279 F.3d 1167, 1172-73 (9th Cir. 2002)).   This argument belies binding precedent such as *Crane v. Utah Dep't of Corr.* where the Tenth Circuit held that "the ADA merely requires the plaintiff's disability be a but-for cause (i.e., 'by reason of') of the discrimination, rather than—as the Rehabilitation Act requires—its sole cause (i.e., 'solely by reason of')." 15 F.4th 1296, 1312-13 (10th Cir. 2021) (internal citations omitted).

Relying on *Doe v. Mass. Dep't of Corr.*, Plaintiff goes on to argue that a correctional institution violates the ADA when it assigns a transgender woman to a men's prison "by virtue of her gender assignment at birth" or denies a transgender woman access to facilities and programs that would "correspond to her gender identification."   Response, p. 47 (citing *Doe*, 2018 WL 2994403, at * 8 (D. Mass. June 14, 2018)).   The problem with Plaintiff's reliance on *Doe* is that Doe's disability discrimination claims were premised upon her "Gender Dysphoria (GD) disability" and "GD diagnosis," not her transgender status or gender identity.   *Doe*, 2018 WL 2994403, at ** 1 and 6.

Unlike *Doe*, the Complaint clearly alleges that Plaintiff was subject to discrimination because of her transgender status or gender identity, not her Gender Dysphoria diagnosis (the alleged disability).   (*See, e.g.,* Doc. 124, ¶¶ 1 ("El Paso County's policy of refusing to house transgender inmates based on their gender identity…"); 3 ("Defendants denied [Plaintiff] clothing that conforms with her gender identity despite the fact that cisgender women are allowed panties and lipstick."); 50 ("El Paso County, as a matter of policy, refuses to house transgender women in female housing facilities."); 71 ("It is El Paso County's official policy that transgender women (including those with Gender Dysphoria)

S.A. 126

are searched, including strip searched, by male staff and not female staff." ); 98 ("El Paso County refuses to recognize transgender women…as the women they are.  Instead, El Paso County officials routinely refer to these women…using the male names they were assigned at birth…[and] routinely refer to these women as 'men' or using male pronouns…")).  That is to say, the Complaint does not allege a sufficient causal link between Plaintiff's Gender Dysphoria diagnosis and the conduct of which she complains.

And by now arguing that the ADA and Rehabilitation Act claims are based upon Plaintiff's transgender status or gender identity, not her Gender Dysphoria diagnosis, Plaintiff confirms that her claims fall squarely within the categorical exclusion discussed in Section II.G.i above and Section IV. H.1 of the Motion.

### iii.   Plaintiff Cannot Pursue Remedies That Were Not Traditionally Available in Breach of Contract Actions

The Response urges this Court to disregard *Cummings v. Premier Rehab Keller P.L.L.C.* where the Supreme Court recently held that damages available under the Rehabilitation Act are limited to those remedies traditionally available in breach of contract actions.  142 S. Ct. 1562, 1571-76 (2022).  The Court should not bite.

*Montgomery v. Dist. Of Columbia*, cited in the Response, disproves Plaintiff's argument.  There, the district court applied *Cummings* retroactively to preclude the plaintiff from seeking emotional distress damages and other types of damages that are not "the usual contract remedies in private suits," such as reputation damages.  2022 WL 1618741, at * 26 (D.D.C. May 23, 2022) (citing *Cummings*, 142 S. Ct. at 1571)).  The district court also extended *Cummings*' holding to the plaintiff's claim asserted under Title II of the ADA because Title II "incorporates the remedies, procedures, and rights set

**S.A. 127**

forth in the [Rehabilitation Act]; hence if a certain category of damages is not available under Section 504, it is not available under Title II either." *Id*. at * 24 (internal citations and quotations omitted).   In sum, *Montgomery* validates Defendants' arguments and confirms that the only damages available under the Rehabilitation Act and Title II of the ADA are "those damages [that] fit within categories of damages that would be traditionally recoverable in a breach of contract case." *Id*.

Plaintiff further argues that *Montgomery* allows her to seek damages related to the "failure to reasonably accommodate [her] disability [that] led [her] to suffering greater injury or indignity than other arrestees." *Id*. at * 24.  To the extent these are something other than emotional distress damages, Plaintiff has failed to state a claim because she does not plausibly allege that she suffered any greater damage or indignity *because of her disability* as described in Section II.G.ii above and Section IV.H.2 of the Motion (*i.e.*, no causation).

### iv.   The Complaint Fails to State a Claim for Compensatory Damages Under the ADA or Rehabilitation Act

The Response does not confront the question posed in the Motion: how can an entity be deliberately indifferent under Title II of the ADA and Rehabilitation Act when the existence of the right alleged is unclear?

Compensatory damages are only available under Title II of the ADA and Rehabilitation Act in instances of intentional discrimination which can be inferred from a defendant's deliberate indifference to a strong likelihood that the pursuit of its questioned policies will likely result in a violation of federally protected rights and a corresponding failure to act. *Havens v. Colo. Dep't. of Corr.*, 897 F.3d 1250, 1264 (10th Cir. 2018).  But

21

it is unclear whether Gender Dysphoria falls within the ADA's categorical exclusion of coverage. As explained above, "[n]o federal court of appeals or the Supreme Court ha[d]…addressed whether [this] exclusion applies to gender dysphoria," *Venson v. Gregson*, 2021 WL 673371, at *2 (S.D. Ill. Feb. 22, 2021) (unpublished), until August 16, 2022, when a divided Fourth Circuit ruled that Gender Dysphoria falls outside the applicable exclusion. *See Williams*, 2022 WL 3364824, at ** 3-7. Moreover, there remains a significant disagreement amongst district courts on this issue, *see London v. Evans*, 2019 WL 5726983, at * 6 n.3 (D. Del. Nov. 5, 2019), including a decision from this District ruling that Gender Dysphoria falls within the applicable exclusion. *Michaels*, 2010 WL 2573988, at *6 (D. Colo. Jun. 24, 2010). It is thus exceedingly unclear whether Gender Dysphoria has any protections under Title II of the ADA and Rehabilitation Act.

In similarly unclear circumstances, the Eighth Circuit held that a municipal entity was not deliberately indifferent under Title II of the ADA or Rehabilitation Act because it lacked clear notice that its actions would violate any rights protected by these statutes. *See Roberts v. City of Omaha*, 723 F.3d 966, 975-76 (8th Cir. 2013). The Response offers no reason why this Court should reject the Eighth Circuit's sound rationale in *Roberts*. Accordingly, this Court should find that the Complaint fails to plausibly allege deliberate indifference.

## H. THE COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFF'S CADA CLAIMS AND PLAINTIFF DOES NOT DISPUTE IT

The Response provides no argument addressing Plaintiff's Colorado Anti-Discrimination Act claims, particularly that this Court lacks jurisdiction over them

because Plaintiff failed to exhaust her administrative remedies.  Accordingly, the Court

must dismiss Claims 12 and 13 for the reasons set forth in Section IV.I of the Motion.

### III.    <u>CONCLUSION</u>

Defendants respectfully ask the Court to enter an order dismissing Plaintiff's

Complaint with prejudice, awarding Defendants reasonable attorneys' fees and costs, and

for such other and further relief the Court deems just and proper.

Dated this 26th day of August 2022.

By: s/ *Nathan J. Whitney*
Nathan J. Whitney, #39002
Senior Assistant County Attorney
Terry A. Sample, #33919
Senior Assistant County Attorney
Chris Strider, #33919
Assistant County Attorney
Steven Martyn, #47429
Assistant County Attorney
El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
(719) 520-6485 (Main Line)
(719) 520-7264 (Office)
Email:
nathanwhitney@elpasoco.com
chrisstrider@elpasoco.com
terrysample@elpasoco.com
stevenmartyn@elpasoco.com

S.A. 130

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2022, I electronically filed a true copy of the Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Andy McNulty
Mari Newman
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001
amcnulty@kln-law.com

s/*Dee Lambert*
Paralegal

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00387-NRN-CMA

DARLENE GRIFFITH,

     Plaintiff,

v.

EL PASO COUNTY, COLORADO, *et al*.

     Defendants.

---

**OBJECTION TO REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT
PURSUANT TO Fed. R. Civ. P. 12(b)(1) and (6) [Doc. #165]**

---

1. **<u>Introduction</u>**

     Plaintiff Darlene Griffith is a transgender woman who has been diagnosed with Gender

Dysphoria. In the community, she lives in accordance with her female gender identity.

Despite this well-documented history, Defendants Bill Elder, Cy Gillespie, Elizabeth O'Neal,

Tiffany Noe, and Brande Ford purposefully housed Plaintiff in an all-male unit in the El Paso

County Jail. Even in the face of Plaintiff's repeated requests to be moved to a unit that

corresponds with her gender identity, Defendants continued to deny her this reasonable

accommodation. Defendants' decision to house Plaintiff in a unit that does not conform with

her gender identity also subjected Plaintiff to repeated discrimination and harassment.

Plaintiff brought this case to protect "the rights of transgender people in public spaces and not

forc[e] them to exist on the margins." *G.G. v. Gloucester Cty. Sch. Bd.*, 853 F.3d 729, 730

(4th Cir. 2017) (Davis, J., concurring). It is a case that is, at its core, "about governmental

validation of the existence and experiences of transgender people, as well as the simple

recognition of their humanity." *Id.*

**S.A. 132**

2. **<u>Relevant Factual Allegations</u>**

As alleged in Plaintiff's Third Amended Complaint, El Paso County and its officials violated Plaintiff's Constitutional and statutory rights in a variety of different ways. First, Defendants Ford, O'Neal, Noe, Gillespie, and Elder intentionally disregarded Plaintiff's repeated requests to be housed in a unit that corresponded with her female gender identity. [Doc. #124], ¶¶ 47-70. Defendants made this conscious decision despite knowing that Plaintiff suffered from Gender Dysphoria that was exacerbated by being housed in an all-male unit and that doing so would expose her to risk of sexual assault and harassment. *Id.*

Second, Defendant Mustapick sexually harassed Plaintiff during an unconstitutional cross-gender visual body-cavity search while Defendant Elliss stood by and did nothing to intervene. *Id.*, ¶¶ 71-83. After Defendant Elliss left Plaintiff alone with Defendant Mustapick (a male deputy), Defendant Mustapick ordered Plaintiff to take off her socks, pants, and panties, place her hands on the wall, bend over, and "spread [her] sexy cheeks." *Id.*, ¶ 77. Defendant Mustapick then told Plaintiff that he was "going to go balls deep in that ass" while grabbing his own penis in view of Plaintiff. *Id.*, ¶78. Defendant Mustapick's threatening and demeaning search of Plaintiff served no legitimate penological purpose. *Id.*, ¶ 80.

Third, Defendants Elder, Gillespie, Ford, O'Neal, and Noe failed to protect Plaintiff by housing her in an all-male unit, which predictably led to her being assaulted by a male inmate. That inmate approached Plaintiff while she was laying in her bunk and groped her right breast while telling Plaintiff, "you know you want this dick." *Id.*, ¶¶ 84-88.

Fourth, because of Defendants' Elder, Gillespie, Ford, O'Neal, and Noe's decision to house Plaintiff in an all-male facility, El Paso County officials subjected Plaintiff to continuous cross-gender pat-down searches. *Id.*, ¶¶ 89-96. Male deputies repeatedly touched Plaintiff's breasts and groin when patting her down. *Id.*, ¶ 90.

**S.A. 133**

Fifth, because of Defendants' Elder, Gillespie, Ford, O'Neal, and Noe's decision to house Plaintiff in an all-male facility, El Paso County officials constantly mis-gendered Plaintiff throughout her incarceration. *Id.*, ¶¶ 97-109. In one instance, an El Paso County deputy called Plaintiff a "blind faggot" in front of other inmates. *Id.*, ¶ 100. Mis-gendering is a form of sexual harassment.

Sixth, because of Defendants' Elder, Gillespie, Ford, O'Neal, and Noe's decision to house Plaintiff in an all-male facility, she was denied the ability to dress in accordance with her gender identity. *Id.*, ¶¶ 110-122. Plaintiff repeatedly requested gender affirming clothing, but was denied each time. *Id.*, ¶¶ 115-117.

Importantly, all of this conduct that violated Plaintiff's Constitutional and statutory rights was undertaken either pursuant to official El Paso County Jail policies (enacted and implemented by Defendant Elder and Gillespie), *id.*, ¶¶ 42, 57, 74, 81, 94, 106, 117, 118, and/or the widespread customs and practices at the El Paso County Jail. Doc. *Id.*, ¶¶ 67, 87, 94, 106, 118. These policies, customs, and practices directly caused the violation of Plaintiff's Constitutional rights. *Id.*, ¶¶ 42, 57, 67, 74, 81, 87, 94, 106, 117, 118. All of these actions by Defendants also caused Plaintiff to engage in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration. *Id.*, ¶¶ 69, 83, 96, 109, 122.

## 3. PROCEDURAL HISTORY

Defendants filed a motion to dismiss Plaintiff's Third Amended Complaint in its entirety. [Doc. #132]. Plaintiff responded and outlined why dismissal is improper. [Doc. #147]. On February 27, 2023, Magistrate Judge Neureiter issued a report and recommendation. [Doc. #165]. In that order, Magistrate Judge Neureiter recommended dismissing all of Plaintiff's claims. *Id.* Plaintiff timely objects to that order.

## 4. STANDARD OF REVIEW

### 4.1 **The general standard of review disfavors granting motions to dismiss.**

S.A. 134

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. P. 72(b)(3) requires that the district court judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." A party properly objects if its objection is both timely and specific. *U.S. v. One Parcel of Real Prop. Known as 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id*. In conducting its review, "[t]he district judge may accept, reject, or modify the [recommendation]; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

"There is a strong presumption against dismissal for failure to state a claim under Rule 12(b)(6)" *Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1055 (D. Colo. 2012). Evaluating a Rule 12(b)(6) motion, a court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011). Generally, a complaint will survive a Rule 12(b)(6) motion if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### 4.2  <u>Qualified immunity does not shield defendants from liability where their conduct is egregious, or where caselaw puts them on notice their conduct is unconstitutional.</u>

To show that a right was clearly established, a plaintiff may point to "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (citations omitted). But, even absent such a showing, qualified immunity does not shield a defendant when "a reasonable officer would understand that what he is doing violates that right." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Nor does qualified immunity require the plaintiff to show "the very act in question previously was held unlawful." *Gutierrez*, 841 F.3d at 899 (10th Cir.

4

2016). "[N]ot every constitutional violation has factual antecedents," and courts "can occasionally rely on the general proposition that it would be 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted…even though existing precedent does not address similar circumstances.'" *Colbruno v. Kessler*, 928 F.3d 1156, 1165 (10th Cir. 2019) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018)). The Tenth Circuit has held, in line with Supreme Court precedent, that "general statements of the law are not inherently incapable of giving fair and clear warning to officers as long as the unlawfulness of an action is apparent[.]" *Ashaheed v. Currington*, 7 F.4th 1236, 1246 (U.S. 10th Cir. 2021).

5. **ARGUMENT**

　　5.1 **Plaintiff adequately alleges that El Paso County is a proper defendant.**

　　　　The Magistrate Judge erroneously determined that El Paso County was not a proper defendant. "As the United States Supreme Court repeatedly has stated, a § 1983 action appropriately is pleaded against a municipality either by naming the municipality itself or by naming a municipal official in his or her official capacity." *Stump v. Gates*, 777 F.Supp. 808, 816 n.3 (D. Colo. 1991) (Carrigan, J.) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989); *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Plaintiff has done exactly that by naming El Paso County, Colorado as a Defendant. The County is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[T]he real party in interest is the entity."). Numerous courts presiding over Section 1983 actions in this District have correctly concluded that the county that employs the defendant law enforcement officers is the proper defendant because counties are "persons" under § 1983.[1] Thus, El Paso County, Colorado is a proper Defendant in this matter.

---

[1] *See Lounsbury v. Darr*, 2012 U.S. Dist. LEXIS 33904, at *3-4 (D. Colo. Mar. 14, 2012) (Babcock, J.); *Pixley v. Adams County*, 2011 U.S. Dist. LEXIS 111639, at *3 (D. Colo. Sept.

S.A. 136

5.2 **Plaintiff adequately alleges that Defendants Elder and Gillespie personally participated in the violation of her Constitutional rights.**

The Magistrate Judge erroneously determined that Plaintiff had not adequately alleged that Defendants Elder and Gillespie personally participated in the violation of her constitutional rights. "Personal involvement [in a constitutional violation] does not require direct participation because § 1983 states any official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (citation omitted). In *Dodds*, the court held that a sheriff was personally responsible under Section 1983 where the enforcement of jail policy caused the violation of the plaintiff's constitutional rights when the sheriff was "responsible for the policies that operated [at the jail] and [those policies] enforced by his subordinates at the jail." *Id.* at 1203. Similarly, here, Plaintiff alleges that the policies enacted by Defendant Elder and Gillespie, [Doc. #124], ¶¶ 14, 57, caused the violation of her constitutional rights. Further, Plaintiff alleges that Defendants Elder and Gillespie make facility assignments to people in custody solely on the basis of the individual's genitalia, in contravention of widely accepted standards, *Id.*, ¶ 42, which caused the violation of Plaintiff's constitutional rights in numerous ways. *Id.*, ¶¶ 47-122.

Further, where the "underlying unconstitutional misconduct was so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of it," a factfinder may infer that the governing officials *did* know about the misconduct. *Jojola v. Chavez*, 55 F.3d 488 (10th Cir. 1995). The violation of Plaintiff's rights

---

28, 2011) (Babcock, J.); *Moore v. Commerce City Police Dep't*, 2011 U.S. Dist. LEXIS 151897, at *2 (D. Colo. Jan. 20, 2011); *Cross v. Denver Sheriff's Dep't*, 2014 U.S. Dist. LEXIS 147731, at *6-7 (D. Colo. Oct. 15, 2014); *Hammond v. Beicker*, 2014 U.S. Dist. LEXIS 130184, at *7 (D. Colo. Sept. 17, 2014) (Babcock, J.); *O'Neill v. El Paso County Sheriff's Dep't*, 2014 U.S. Dist. LEXIS 106412, at *2 (D. Colo. Aug. 4, 2014) (Shaffer, J.); *Dodds v. Trinity Group*, 2014 U.S. Dist. LEXIS 32675, at *2 (D. Colo. Mar. 13, 2014); *Stump*, 777 F.Supp. at 816.

**S.A. 137**

was no secret, and transgender inmates at the El Paso County Jail are constantly housed in facilities that do not correspond with their gender identity, subjecting them to discrimination and exposing them to an extreme risk of assault and harassment. [Doc. #124], ¶ 67. This case is very similar to *Lopez v. LeMaster*, in which the Tenth Circuit held that a sheriff was liable for deliberate indifference because he did not take action to prevent inmates from being attacked by other inmates at the jail, despite being aware of prior attacks and deficiencies in staffing and surveillance that prevented the jail from preventing attacks. 172 F.3d 756, 760-64 (10th Cir. 1999). As alleged, Defendants Elder and Gillespie are personally liable for the violation of Plaintiff's Constitutional rights.[2]

### 5.3 **Plaintiff adequately alleges that Defendants violated her rights under the Fourteenth Amendment's Equal Protection clause.**

The Magistrate Judge erroneously concluded that Plaintiff had not adequately alleged that Defendants violated her rights under the Fourteenth Amendment's Equal Protection clause. The Equal Protection clause of the Fourteenth Amendment directs that "all persons similarly situated should be treated alike," thereby protecting against intentional discrimination by way of classifications that reflect "a bare . . . desire to harm a politically unpopular group." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1050 (7th Cir. 2017) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). As alleged, Plaintiff is a transgender woman and Defendants knew as much. [Doc. #124], ¶¶ 25-27, 110-112. Defendants' decision to disregard Plaintiff's identity as a transgender woman, and instead treat her as a male inmate, violated her Fourteenth Amendment rights.

#### 5.3.1 **As alleged, Defendants engaged in sex- and gender-based discrimination against Plaintiff.**

---

[2] *Dodds* and *Lopez* clearly establish that an official who implements an official policy that causes the violation of the Constitution is not entitled to qualified immunity.

The Magistrate Judge erred in failing to consider that Defendants engaged in sex-and gender-based discrimination, which triggers intermediate scrutiny. Refusing to allow transgender individuals to use public facilities that correspond with their gender identities is sex- and gender-based discrimination under the Fourteenth Amendment. *Adams v. Sch. Bd.*, 968 F.3d 1286, 1302 (11th Cir. 2020); *Grimm v. Gloucester Cty. Sch. Bd.*, 976 F.3d 399, 402 (4th Cir. 2020); *Whitaker*, 858 F.3d at 1048-49. When an inmate is "placed in a facility based on their genitalia… a sex-based classification is used, and intermediate scrutiny must be applied." *Hampton v. Baldwin*, No. 3:18-CV-550-NJR-RJD, 2018 U.S. Dist. LEXIS 190682, 2018 WL 5830730, at *32-37 (S.D. Ill. Nov. 7, 2018); *see also Tay v. Dennison*, 457 F. Supp. 3d 657 (S.D. Ill. 2020); *Doe v. Mass. Dep't of Corr.*, No. 17-12255-RGS, 2018 U.S. Dist. LEXIS 99925, at *25 (D. Mass. June 14, 2018) (holding that a transgender prisoner's "compulsory assignment to a men's prison caused Doe to be treated differently from other female prisoners"); *Iglesias v. Fed. Bureau of Prisons*, No. 19-CV-415-NJR, 2021 U.S. Dist. LEXIS 245517, at *72 (S.D. Ill. Dec. 27, 2021).[3] Defendants violated Plaintiff's rights under the Equal Protection Clause in the same way by housing her in an all-male unit and denying her access to women's facilities, solely based on her transgender status and the fact that she has male genitalia. [Doc. #124], ¶¶ 42, 47-70. The Supreme Court recently held that transgender classifications are sex-based. *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (2020). Every Court of Appeals that has considered whether transgender classifications are sex-based, and, consequently, are deserving of intermediate scrutiny has concluded they are, and intermediate scrutiny applies. *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 607 (4th Cir. 2020); *EEOC v. R.G.*, 884 F.3d 560, 580 (6th Cir. 2018); *Whitaker v. Kenosha*

---

[3] *Nation v. White*, No. 5:20-cv-P104-BJB, 2021 U.S. Dist. LEXIS 36388, at *12 (W.D. Ky. Feb. 26, 2021); *Lesperance v. Manning*, No. 2:16-cv-0764 JAM AC P, 2019 U.S. Dist. LEXIS 150710, at *14 (E.D. Cal. July 30, 2019).

S.A. 139

*Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017); *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011).[4] At least one court in this District has found that discrimination against transgender individuals constitutes sex-based discrimination. *EEOC v. A&E Tire, Inc.*, 325 F. Supp. 3d 1129, 1134 (D. Colo. 2018).

Moreover, Defendants discriminated against Plaintiff by denying her items to which cisgender women have access, including clothing and grooming products, solely based on her transgender status. [Doc. #124], ¶¶ 110-122. The United States Supreme Court has long held that sex stereotyping based on preconceived notions about appropriate dress for men and women is intolerable sex discrimination. *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); *Smith v. City of Salem*, 378 F.3d 566, 574 (6th Cir. 2004) ("After *Price Waterhouse*, an employer who discriminates against women because, for instance, they do not wear dresses or makeup, is engaging in sex discrimination because the discrimination would not occur but for the victim's sex."); *Dawson v. Bumble & Bumble*, 398 F.3d 211, 221 (2d Cir. 2005).

Simply put, "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Bostock*, 140 S. Ct. at 1741. Plaintiff adequately alleges that Defendants' actions constituted sex- and gender-based discrimination.

### 5.3.2 Plaintiff, as a transgender woman, is a member of a suspect, or quasi-suspect, class.

The Magistrate Judge erred in concluding that transgender individuals are not members of a suspect or quasi-suspect class. A growing consensus of courts have held that

---

[4] *See also Smith v. City of Salem*, 378 F.3d 566, 577 (6th Cir. 2004); *Doe v. Boyertown Area Sch. Dist.*, 893 F.3d 179, 199 (3d Cir. 2018)."

S.A. 140

transgender individuals constitute a suspect or quasi-suspect class.[5] And, when evaluating transgender individuals under the four-factor test outlined for determining whether a class qualifies as suspect or quasi-suspect, it becomes clear that discrimination against transgender individuals merits heightened scrutiny. Heightened scrutiny is appropriate when the class being discriminated against: (1) has been "historically subjected to discrimination," (2) has a defining characteristic bearing no "relation to ability to perform or contribute to society," (3) has "obvious, immutable, or distinguishing characteristics," and (4) is a "minority or is politically powerless." *Windsor v. United States*, 699 F.3d 169, 181 (2d Cir. 2012), *aff'd on other grounds*, 570 U.S. 744 (2013); *see also Bowen v. Gilliard*, 483 U.S. 587, 602 (1987); *Cleburne*, 473 U.S. at 440-41. Transgender individuals, like Plaintiff, meet all of these criteria.

First, "[i]t is generally accepted that transgender individuals face an alarming rate of discrimination, harassment, and violence." *Crowder*, 2019 U.S. Dist. LEXIS 140306, at *32-35;[6] *see also Grimm v. Gloucester Cty. Sch. Bd.*, 302 F. Supp. 3d 730, 749 (E.D. Va. 2018). For example, the transgender community "suffers from high rates of employment

---

[5] *See, e.g., Grimm*, 972 F.3d at 610-13; *Crowder v. Diaz*, No. 2:17-CV-1657-TLN-DMC, 2019 U.S. Dist. LEXIS 140306, at *30 (E.D. Cal. Aug. 16, 2019); *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 288 (W.D. Pa. 2017); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015); *Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 873 (S.D. Ohio 2016); *M.A.B. v. Bd. of Educ.*, 286 F. Supp. 3d 704, 718-19 (D. Md. 2018); *Norsworthy*, 87 F. Supp. 3d at 1119; *F.V. v. Barron*, 286 F. Supp. 3d 1131, 1145 (D. Idaho 2018); *Karnoski v. Trump*, 2018 U.S. Dist. LEXIS 63563, 2018 WL 1784464 (W.D. Wash. Apr. 13, 2018); *see also Flack v. Wis. Dept. of Health Servs.*, 328 F. Supp. 3d 931, 951-53 (W.D. Wis. 2018); *Doe v. Wash. State Dep't of Corr.*, No. 4:21-CV-5059-TOR, 2021 U.S. Dist. LEXIS 93455, at *21 (E.D. Wash. May 17, 2021); *McQueen v. Brown*, No. 2:15-cv-2544 JAM AC P, 2018 U.S. Dist. LEXIS 66377, 2018 WL 1875631, at *3 (E.D. Cal. Apr. 19, 2018*), report and recommendation adopted*, No. 2:15-cv-2544 JAM AC P, 2018 U.S. Dist. LEXIS 91170, 2018 WL 2441713 (E.D. Cal. May 31, 2018); *Karnoski v. Trump*, No. C17-1297-MJP, 2018 U.S. Dist. LEXIS 63563, 2018 WL 1784464, at *1 (W.D. Wash. Apr. 13, 2018).
[6] Citing Jaime M. Grant et al., *Injustice at Every Turn: A Report of the National Transgender Discrimination Survey*, Nat'l Center for Transgender Equality (2011), available at https://www.transequality.org/sites/default/files/docs/resources/NTDS_Report.pdf.

discrimination, economic instability, and homelessness." *Grimm*, 972 F.3d at 611. Additionally, transgender individuals frequently experience harassment in places such as schools, medical settings, and retail stores, while also experiencing physical assault in places such as schools and places of public accommodation, at high levels and being disproportionate victims of violent crime. *Id.* "In the prison context, [PREA] exposed heightened risk of sexual assault against LGBTQI prisoners and the atypical severity of punishments LGBTQI people face solely for being themselves" and "transgender inmates are thirteen times more likely to be assaulted than other prisoners." *Crowder*, 2019 U.S. Dist. LEXIS 140306, at *33. And, the El Paso County Jail's treatment of Plaintiff is an exemplar of how "current measures and policies continue to target transgender persons for differential treatment." *Grimm*, 972 F.3d at 611.

Second, in *Windsor*, the Second Circuit concluded "the aversion homosexuals experience has nothing to do with aptitude or performance." 699 F.3d at 182-83. "The same can be said of discrimination leveled at transgender people." *Crowder*, 2019 U.S. Dist. LEXIS 140306, at *35; *Grimm*, 972 F.3d at 611.

Third, the Fourteenth Amendment is meant to protect citizens from discrimination based on circumstances beyond their control. *See Plyler*, 457 U.S. at 216 n.14. "[B]eing transgender is not a choice." *Grimm*, 972 F.3d at 612. At least three courts, based on substantial evidence, have acknowledged that gender identity is biologically determined. *Id.*; *Crowder*, 2019 U.S. Dist. LEXIS 140306, at *35-36; *Doe v. McConn*, 489 F. Supp. 76, 78 (S.D. Tex. 1980) ("These findings indicate that the transsexual has not made a choice to be as he is, but rather that the choice has been made for him through many causes preceding and beyond his control"). And, "given the discrimination transgender individuals face, it is illogical to assert that a person would actively choose this 'lifestyle.'" *Crowder*, 2019 U.S. Dist. LEXIS 140306, at *35-36 (quoting *Hernandez-Montiel v. Immigration & Naturalization Serv.*,

**S.A. 142**

225 F.3d 1084, 1095 (9th Cir. 2000) (stating a transgender asylum applicant's female sexual identity "must be fundamental, or [s]he would not have suffered this persecution and would have changed years ago")).

Fourth, "transgender people constitute a minority lacking political power" given that "approximately 0.6% of the adult population in the United States" identifies as transgender. *Grimm*, 972 F.3d at 612. "[T]ransgender persons are underrepresented and have not gained positions of significant power" and "no acknowledged transgender person has ever held a significant position in Congress or the federal judiciary." *Crowder*, 2019 U.S. Dist. LEXIS 140306, at *36-37 (citing *Adkins*, 143 F. Supp. 3d at 140 ("[T]here is no indication that there have ever been any transgender members of the United States Congress or the federal judiciary."); *M.A.B. v. Bd. of Educ.*, 286 F. Supp. 3d 704, 721 (D. Md. 2018) ("Only two openly transgender candidates have ever been elected; both won seats in a state legislature.")). Importantly, "the examples of discrimination" against transgender individuals (which this case represents) "affirm what we intuitively know: Transgender people constitute a minority that has not yet been able to meaningfully vindicate their rights through the political process." *Grimm*, 972 F.3d at 612.

For these reasons, a growing consensus of courts that have held "transgender persons constitute a quasi-suspect class" and discrimination against them is subject to heightened scrutiny. *Id*. at 613. Plaintiff is a member of a quasi-suspect class.

### 5.3.3 *Brown v. Zavaras* does not control this case.

The Magistrate Judge erred in concluding that *Brown v. Zavaras* controls this case. 63 F.3d 967 (10th Cir. 1995). First, *Brown* never addressed whether discrimination against transgender individuals constitutes sex- or gender-based discrimination. This Court can, and should, hold as much, which triggers intermediate scrutiny. Second, *Brown* did not engage in the requisite four-factor analysis for determining whether transgender individuals are a

**S.A. 143**

suspect or quasi-suspect class. *Id.* at 971. This failure to apply binding precedent, which this Court must apply in determining whether transgender individuals are part of a suspect or quasi-suspect class, makes *Brown* inapplicable. *See Windsor*, 699 F.3d at 181; *see also Bowen*, 483 U.S. at 602; *Cleburne*, 473 U.S. at 440-41. Second, as the Magistrate Judge properly recognized, the Ninth Circuit authority on which *Brown* rests has been overruled and, therefore, *Brown* is no longer applicable. *See Schwenk v. Hartford*, 204 F.3d 1187, 1201 (9th Cir. 2000). Third, *Brown* is inapposite nearly every single case that has been decided since, which "have analyzed the relevant factors for determining suspect class status and held that transgender people are at least a quasi-suspect class." *Grimm*, 972 F.3d at 610 (citing cases). This overwhelming authority deems *Brown* to be bad law. It should be discarded on the scrap heap of past decisions, like *Plessy*, *Korematsu*, and *Bowers*, that allowed for state-sanctioned discrimination.

### 5.3.4 Defendants' deliberate decision to disregard Plaintiff's female gender identity, and instead treat her as a male inmate, was not substantially related to an important interest and violated the Equal Protection clause.

Under intermediate scrutiny, "classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives" in order to be upheld. *Craig v. Boren*, 429 U.S. 190, 197 (1976). "When a sex-based classification is used, the burden rests with the state to demonstrate that its proffered justification is 'exceedingly persuasive.'" *Whitaker*, 858 F.3d at 1050 (citing *United States v. Virginia*, 518 U.S. 515, 533 (1996)). "It is not sufficient to provide a hypothesized or *post hoc* justification created in response to litigation." *Id.* The Tenth Circuit has recognized that "[a]t least since *Virginia*, [the arc of the Supreme Court's equal protection jurisprudence] bends toward requiring more—not less—judicial scrutiny when asserted physical differences are raised to justify gender-based discrimination[.]" *Free the Nipple-Fort Collins v. City of Fort*

**S.A. 144**

*Collins*, 916 F.3d 792, 805 (10th Cir. 2019). Ultimately, the question this Court must answer is whether Defendants' "policy of placing transgender inmates in the prison of their assigned sex at birth [is] substantially related to the achievement of prison security?" *Hampton*, 2018 U.S. Dist. LEXIS 190682, 2018 WL 5830730, at *32-37. The answer to that question is a resounding no.

As alleged, there was no reason for Defendants to assign Plaintiff – who for decades has lived in society as a woman, and who has previously been housed with female offenders in the Colorado Department of Corrections ("CDOC") – to an all-male unit other than the fact that she has male genitalia and her sex assigned at birth was male. [Doc. #124], ¶¶ 42, 47-70. Courts have held that transgender inmates do not generally pose a greater security threat than cisgender inmates. *Doe*, 2018 U.S. Dist. LEXIS 99925, 2018 WL 2994403, at *10 (citing *Virginia*, 518 U.S. at 531 and holding that "generalized concerns for prison security are insufficient to meet the 'demanding' burden placed on the State to justify sex-based classifications"). Defendants' placement of Plaintiff in an all-male facility is particularly glaring in light of her previous placement with female inmates in the CDOC, of which, as alleged, Defendants were aware. [Doc. #124], ¶ 65. As alleged, given the lack of any justification for housing Plaintiff in an all-male unit other than her genitalia and sex assigned at birth, that classification does not pass intermediate scrutiny. And, based on substantial precedent, it is clear that, as alleged, Plaintiff's placement in an all-male unit was not substantially related to an important government interest. *See Tay*, 457 F. Supp. 3d at 682; *Hampton*, 2018 U.S. Dist. LEXIS 190682, 2018 WL 5830730, at *12; *Doe*, 2018 U.S. Dist. LEXIS 99925, 2018 WL 2994403, at *9; *Norsworthy*, 87 F. Supp. 3d at 1120.[7]

---

[7] The Individual Defendants are not entitled to qualified immunity based on the caselaw and well-established legal principles outlined above. Particularly, the Supreme Court's decision in *Bostock*, the weight of authority from other circuits holding that discrimination against transgender individuals violates the Fourteenth Amendment, and the Tenth Circuit's decision

### 5.3.5 **Even if this Court finds that Plaintiff is not a member of a suspect or quasi-suspect class, Defendants' actions fail rational basis review.**

The Magistrate Judge incorrectly held that Defendants' actions satisfy rational basis review.[8] "[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare … desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *U.S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 534–535 (1973). For example, in *Romer v. Evans*, the Supreme Court of the United States overturned a Colorado constitutional amendment that denied gays and lesbians access to the protection of antidiscrimination laws. 517 U. S. 620, 632, 635 (1996). The amendment, the Supreme Court held, was "divorced from any factual context from which we could discern a relationship to legitimate state interests," and "its sheer breadth [was] so discontinuous with the reasons offered for it" that the initiative seemed "inexplicable by anything but animus." *Id*. Similarly, here, Defendants' actions, and policy, of making facility assignments to people in custody solely on the basis of the individual's genitalia, despite knowing that this places transgender people at risk for victimization and that these discriminatory placement decisions and denial of gender-affirming clothing were taken without an important or legitimate governmental interest or rational reason, and they had no penological basis to deny Plaintiff a safe and appropriate placement in a female facility,

---

in *Free the Nipple-Fort Collins* would have put Defendants on notice that they were violating Plaintiff's Fourteenth Amendment rights.

[8] There are two versions of the rational basis test: traditional rational basis review and a more rigorous rational basis standard "sometimes referred to as 'rational basis with a bite.'" *Dairy v. Bonham*, No. C-13-1518 EMC, 2013 U.S. Dist. LEXIS 103033, 2013 WL 3829268, at *5 n.4 (N.D. Cal. July 23, 2013) (citations omitted); *see also* Erwin Chemerinsky, *Constitutional Law: Principles and Policies*, 680 (3d ed. 2006). The rational basis "with a bite" standard, which applies in this case, is less deferential to the legislative enactment, and a challenged law will be struck down if the court determines that it is in fact arbitrary, irrational, and/or unreasonable. *See, e.g., Cleburne*, 473 U.S. at 450 (striking down a city ordinance that reflected nothing more than "irrational prejudice"); *Romer*, 517 U.S. at 634 (striking down a state initiative grounded solely in "animosity toward the class of persons affected"); *Moreno*, 413 U.S. at 534 (holding that discrimination against "hippies" was not a valid state objective). "

**S.A. 146**

based on her sex, gender identity, characteristics, risk factors, and her history of sexual victimization in male facilities. [Doc. #124], ¶¶ 42, 110–22, 134.

Ultimately, even under the rational basis test, discriminatory animus toward a group is not a valid state objective. *Cleburne*, 473 U.S. at 446–447; *Moreno*, 413 U.S. at 534–535. The practical effect of Defendants' actions was "to impose a disadvantage, a separate status, and so a stigma upon" transgender individuals. *United States v. Windsor*, 570 U.S. 744, 770 (2013). This is not a rational basis for government officials' actions and policies. This Court need not hold, therefore, that transgender individuals are members of a "suspect class" in order to allow Plaintiff's claims to continue to discovery in this case.

### 5.3.6 Separately, the sexual harassment to which Plaintiff was subjected demonstrates that Defendants violated the Equal Protection clause.

The Magistrate Judge did not consider the second basis for Plaintiff's Equal Protection claim: that she was subjected to significant verbal and physical harassment by staff and other inmates. "[I]t is well-settled that sexual harassment also violates the Equal Protection clause[.]" *Lucente v. Cty. of Suffolk*, 980 F.3d 284, 304, 305 (2d Cir. 2020); *Doe v. Beaumont Indep. Sch. Dist.*, No. 1:21-CV-00132, 2022 U.S. Dist. LEXIS 125296, at *31 n.15 (E.D. Tex. July 14, 2022) (citing cases). "To succeed on her sexual harassment claim under the Equal Protection Clause, [Plaintiff] must establish (1) the harassment was intentional and based on sex and (2) the harassment was 'sufficiently severe or pervasive.'" *Hampton*, 2018 U.S. Dist. LEXIS 190682, at *37-39 (quoting *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990). "[A] plaintiff wishing to sustain an equal protection claim of sexual harassment must show both 'sexual harassment' and an 'intent' to harass based upon that plaintiff's membership in a particular class of citizens." *Id*. at 1040.

As alleged, Plaintiff was sexually harassed by Defendant Mustapick who, on intake to the El Paso County Jail, ordered Plaintiff to undress, bend over, and "spread [her] sexy

16

cheeks," and then grabbed his own penis while threatening Plaintiff that he was "going to go balls deep in that ass". [Doc. #124], ¶¶ 71-83. After this egregious harassment, Plaintiff continued to be consistently harassed and mis-gendered by deputies because she is a transgender woman (including an incident where a deputy called Plaintiff a "blind faggot"). *Id.*, ¶¶ 97-109. Plaintiff was also assaulted by another inmate because she was discriminatorily placed into a unit that does not correspond with her gender identity. *Id.*, ¶ 84-88. Given all of this, Plaintiff has alleged a compelling sexual harassment claim under the Equal Protection clause. *See* McNamarah, Chan Tov, *Misgendering as Misconduct*, 68 UCLA L. Rev. Disc. 40, 43 (2020).[9]

### 5.4 <u>Plaintiff adequately alleges that Defendants violated her substantive due process rights under the Fourteenth Amendment.</u>

The Magistrate Judge erred in finding that Plaintiff has not adequately alleged a violation of her substantive due process rights. *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

#### 5.4.1 **Defendants subjected Plaintiff to unconstitutional conditions of confinement through near-constant sexual harassment and unwanted cross-gender touching.**

The Magistrate Judge erred in concluding that Plaintiff has not plead a claim against Defendants El Paso County, Elder, Gillespie, Noe, and Ford for subjecting her to near-constant sexual harassment and unwanted cross-gender touching. "[A] female detainee has the right not to be sexually harassed, verbally or physically, by other detainees or guards." *Shaw v. District of Columbia*, 944 F. Supp. 2d 43, 58-59 (D.D.C. 2013); *Farmer v. Brennan*,

---

[9] Citing *G. G. ex rel. Grimm v Gloucester Cty. Sch. Bd.*, 822 F3d 709, 716 (4th Cir 2016), *vacated*, 137 S Ct 1239 (2017); *Hampton*, 2018 U.S. Dist. LEXIS 190682, 2018 WL 5830730, at *2; *Prescott v Rady Children's Hosp.-San Diego*, 265 F Supp 3d 1090, 1096 (S.D. Cal. 2017); *Rumble v Fairview Health Servs.*, No. 14-CV-2037, 2015 U.S. Dist. LEXIS 31591, at *71 (D. Minn. Mar. 16, 2015); *Doe v City of New York*, 42 Misc. 3d 502 (Sup Ct NY County); *see also Gregory v. Jeffreys*, No. 21-1097, 2021 U.S. Dist. LEXIS 206187, at *10 (C.D. Ill. Oct. 26, 2021); *Tay*, 457 F. Supp. 3d at 683 (S.D. Ill. 2020); *Hecox v. Little*, 479 F. Supp. 3d 930, 957 (D. Idaho 2020); *Joyner v. Snyder*, No. 06-3062, 2007 U.S. Dist. LEXIS 7214, 2007 WL 401269, at *2 (C.D. Ill. Feb. 1, 2007).

511 U.S. at 834 (1994) (unsolicited sexual touching, harassment, and coercion are "simply not part of the penalty that criminal offenders pay for their offenses against society" (internal quotations omitted)).[10] Defendants Elder's, Gillespie's, Noe's, Ford's, and O'Neal's decisions to house Plaintiff in an all-male unit foreseeably resulted in her continuous harassment and repeated unwanted cross-gender touching. [Doc. #124], ¶¶ 97-109. This violated her due process rights.

> ### 5.4.2   Defendant Mustapick subjected Plaintiff to unconstitutional conditions of confinement through the cross-gender visual body-cavity search he performed on her.

The Magistrate Judge erred in concluding that Plaintiff has not alleged Defendant Mustapick violated her clearly established due process rights through his cross-gender visual body-cavity search of her. A visual body-cavity search violates the Constitution where the search was "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Fillmore v. Page,* 358 F.3d 496, 505 (7th Cir. 2004); *Calhoun,* 319 F.3d at 939. "[E]xposing a person's naked body involuntarily is a severe invasion of personal privacy." *Colbruno v. Kessler*, 928 F.3d 1155, 1161-63 (10th Cir. 2019) (holding that pretrial detainee who was walked naked through public areas of a hospital had a valid claim under the Fourteenth Amendment that his jailers violated clearly established law). Forcing Plaintiff to be naked in front of a male guard, who then made her spread her "sexy" butt cheeks to "go balls deep" while grabbing his own penis, [Doc. #124], ¶¶ 71-83, certainly rises to "calculated harassment unrelated to prison needs" with the intent to humiliate Plaintiff. *Richards v. Wexford*, 2021 U.S. App. LEXIS 31545, 2021 WL 4892160, at *3 (7th Cir. Oct. 20, 2021). This is highlighted by the multiple courts that have held that actions similar to, and less

---

[10] *See also Women Prisoners of the District of Columbia Dep't of Corrections v. D.C.*, 877 F. Supp. 634, 664-67 (D.D.C. 1994); *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Joseph v. U.S. Fed. Bureau of Prisons*, 232 F.3d 901 (10th Cir. 2000); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir.1998).

S.A. 149

egregious than, the actions of Defendant Mustapick constituted unconstitutional conditions of confinement; these cases and legal principles also demonstrate why Defendant Mustapick is not entitled to qualified immunity.[11] It was also clearly established by the Tenth Circuit's decision in *Colbruno*, 928 F.3d at 1161.

### 5.4.3 Defendants El Paso County, Elder, Gillespie, Noe, Ford, and O'Neal subjected Plaintiff to unconstitutional conditions of confinement by forcing her to endure repeated cross-gender pat-down searches.

The Magistrate Judge erred in finding that Plaintiff has not pled with adequate specificity that Defendants Elder's, Gillespie's, Noe's, and Ford's decisions to house Plaintiff in an all-male unit foreseeably resulted in Plaintiff being subjected to repeated cross-gender pat-down searches, which violated her due process rights. The cross-gender pat-down searches inflicted on Plaintiff violated her Fourteenth Amendment rights by imposing on her an unconstitutional condition of confinement. [Doc. #124], ¶¶ 89-96. Multiple courts have held that repeated cross-gender pat-down searches of women, absent emergency circumstances that would necessitate performing a cross-gender pat-down search, impose unconstitutional conditions of confinement. *See Jordan*, 986 F.2d at 1526; *Colman v. Vasquez*, 142 F.Supp.2d 226 (D. Conn. 2001); *Nelson v. City of Stamford*, No. 3:09-cv-1690 (VLB), 2012 U.S. Dist. LEXIS 8907, at *72-73 (D. Conn. Jan. 25, 2012). For example, in *Colman*, a court addressed the constitutionality of cross-gender at searches in the context of a female prisoner incarcerated in a special unit for victims of sexual assault who was forced to submit to pat searches by male guards. 142 F.Supp.2d at 226. The *Colman* court noted that

---

[11] *See Vazquez v. Cty. of Kern*, 949 F.3d 1153, 1163-64 (9th Cir. 2020); *Kent v. Johnson*, 821 F.2d 1220, 1227- 28 (6th Cir. 1987); *Semelbauer v. Muskegon Cnty.*, No. 1:14-cv-1245, 2015 U.S. Dist. LEXIS 189417, 2015 WL 9906265, at *3-4 (W.D. Mich. Sept. 11, 2015); *Payette v. Hoenisch,* 284 Fed. Appx. 348, 2008 U.S. App. LEXIS 14441, No. 07-3249, 2008 WL 2648917, at *5 (7th Cir. 2008); *Solan v. Ranck,* No. CV-06-0049, 2007 U.S. Dist. LEXIS 84903, 2007 WL 4111424, at *8 (M.D. Pa. 2007); *see also Vasquez v. Raemisch,* 480 F. Supp. 2d 1120, 1131-32 (W.D. Wis. 2007).

"'women experience unwanted touching by men differently from men subject to comparable touching by women.'" 142 F.Supp.2d at 232 (quoting *Jordan*, 986 F.2d at 1521). And, in *Jordan*, the Court found that women who expressed significant emotional distress at being continually being subjected to cross-gender pat-down searches had a claim for violation of their Constitutional rights. *Jordan*, 986 F.2d at 1531 (*en banc*) (holding that a cross-gender clothed body search policy at a women's prison constituted cruel and unusual punishment because many of the inmates had histories of sexual or physical abuse by men and because cross-gender bodily searches, even if conducted properly, would likely inflict psychological trauma).

Here, Plaintiff was part of a particularly vulnerable population, transgender woman inmates, and suffered from Gender Dysphoria. [Doc. #124], ¶¶ 48-49. She is also blind. *Id.*, ¶¶ 50. The searches were not performed under exigent circumstances or due to any emergency; she was routinely patted-down by male deputies. *Id.*, ¶¶ 89-96. Defendants purposefully housed her in an all-male unit, which they knew would expose her to continuous cross-gender pat-down searches. *Id.*, ¶¶ 54, 57, 135. Plaintiff has adequately alleged a claim against Defendants El Paso County, Elder, Gillespie, Noe, Ford, and O'Neal for causing her to be subject to continuous cross-gender pat-down searches. *Id.*, ¶¶ 89-96.

### 5.4.4 Defendants El Paso County, Elder, Gillespie, Noe, Ford, and O'Neal violated Plaintiff's rights under the United States and Colorado Constitutions by failing to protect her from assault.

The Magistrate Judge erred in finding that Plaintiff has not pled with adequate specificity that Defendants El Paso County's, Elder's, Gillespie's, Noe's, Ford's, and O'Neal's decisions to house Plaintiff in an all-male unit failed to protect her from assault. Prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832. More to the point, they "have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. "A prison official

S.A. 151

violates the [Constitution] 'when a substantial risk of serious harm, *of which the official is subjectively aware*, exists[,] the official does not respond reasonably to the risk,'" and the official's actions or inaction causes the injury. *Id*. The prison official must be both aware of the risk and draw the inference. *Farmer*, 511 U.S. at 837. The Supreme Court in *Farmer* held that circumstantial evidence and the obviousness of the substantial risk of harm, not just actual notification, may be used to establish subjective awareness. 511 U.S. at 842-44. Further, allegations suggesting the substantial risk was "long-standing, pervasive, [or] well-documented" and the defendants "had been exposed to information concerning the risk and thus must have known about it ... could be sufficient ... to find that [the defendants] had actual knowledge of the risk." *Id*. at 842-43 (internal quotation marks and citation omitted).

When analyzing subjective awareness, courts have considered the obviousness of the risk to inmate safety, the defendant's knowledge about the vulnerability of certain types of inmates to risk of harm, prison policies pertaining to such inmates, and their housing placements. *See Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81-82 (6th Cir. 1995).[12] Placing Plaintiff, a blind, transgender woman, into a general population male ward was nearly *per se* deliberately indifferent to a risk that she would be assaulted by male inmates. *See Diamond v. Owens*, 131 F. Supp. 3d 1346, 1376-79 (M.D. Ga. 2015) (holding that a non-violent, transgender female inmate, faced a substantial risk of sexual assault at closed-security facilities because the risk was obvious

---

[12] *See also Green v. Hooks*, 2013 U.S. Dist. LEXIS 124806, 2013 WL 4647493, at *2-*3 (S.D. Ga.); *Shaw*, 944 F. Supp. 2d at 59-60 ("Plaintiff ... points ... to [reports, regulations, and professional guidelines] ... to provide factual grounding to support the inference that the risk to transgender detainees was obvious, well-documented, and known to [d]efendants." (internal quotation marks and citation omitted)); *Newsome v. Higham*, 2010 U.S. Dist. LEXIS 29521, 2010 WL 1258013, at *3-*4 (M.D. Ga.); *Farmer v. Carlson*, 685 F. Supp. 1335, 1342 (M.D. Penn. 1988) ("Clearly, placing plaintiff, a twenty-one year old transsexual, into the general population at ... a [high-]security institution, could pose a significant threat to internal security in general and to plaintiff in particular.").

and that guards are obviously aware from PREA that transgender inmates face a substantial vulnerability to sexual assault).

*Farmer* itself provides strong and binding authority that Defendants violated Plaintiff's rights by not protecting her from male inmates. In *Farmer*, a transgender inmate, allegedly known to be vulnerable to sexual assault, complained prison officials were deliberately indifferent to a substantial risk of sexual assault by placing her in general population at a "higher security facility" known for its violent environment and history of assaults. *Farmer*, 511 U.S. at 825. The Supreme Court emphasized the constitutional right of prisoners to be reasonably protected from the violence of other inmates. *Id.* at 833 ("[G]ratuitously allowing the beating or rape of one prisoner by another serves no 'legitimate penological objectiv[e].'" (citation omitted)). The Supreme Court ultimately held that "a prison official may be held liable... if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. Here, Defendants were aware that Plaintiff is a transgender female, knew she is blind, and knew, because of these two things, that placing her into an all-male unit would make her particularly vulnerable to sexual assault. [Doc. #124], ¶¶ 47-50. They also knew that incarceration standards dictated that transgender women are vulnerable to sexual assault when placed in all-male units. *Id.*, ¶¶ 42-43, 45-46. Still, Defendants purposefully housed her in an all-male unit, which they knew would expose her to continuous cross-gender pat-down searches. *Id.*, ¶¶ 54, 57, 135. This violated Plaintiff's rights. *See Diamond*, 131 F. Supp. 3d at 1379-80.[13]

5.5 **Plaintiff adequately alleges that Defendants EL Paso County, Elder, Gillespie, Mustapick, and Elliss subjected her to multiple unlawful searches under the Fourth Amendment.**

---

[13] Defendants El Paso County, Elder, Gillespie, Noe, Ford, and O'Neal are not entitled to qualified immunity based on the caselaw and well-established legal principles outlined above.

The Magistrate Judge erred in finding that Plaintiff has not adequately plead that Defendants El Paso County, Elder, Gillespie, Mustapick, and Elliss are liable for the cross-gender visual body-cavity search conducted by Defendants Mustapick and Elliss. Whether a particular search is constitutional is judged by "balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. Courts make this determination by balancing four non-exclusive factors. *Id.*; *see also Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016). Those factors are: "[1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted." *Id.*

Defendant Mustapick's visual body-cavity of Plaintiff, which included an inspection of her anal and genital areas, violated her constitutional rights. [Doc. #124], ¶¶ 71-83; *see Maricopa Cnty. Sheriff's Dep't*, 629 F.3d at 1142 (holding that a cross-gender strip search was unreasonable as a matter of law where there was no emergency). A strip-search, let alone a visual body-cavity search, is "one of the clearest forms of degradation in Western Society" and the indignity imposed by strip searches is multiplied when one's body is "viewed by a member of the opposite gender." *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994); *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir.1993). Courts have held that blanket policies subjecting all newly-arrested detainees in a local correctional facility to visual body cavity searches, even when performed by guard who is a member of the same gender as the detainee, are unconstitutional. *See Shain v. Ellison*, 273 F.3d 56, 64-65 (2d Cir. 2001); *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994). In order for a visual body cavity search to be found reasonable under the circumstances, there must be some "'particularized suspicion,' arising either from the nature of the charge or specific circumstances relating to the arrestee and/or the arrest," that the arrestee is concealing

weapons or other contraband. *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986); *Murcia v. County of Orange*, 226 F. Supp. 2d 489, 494 (S.D.N.Y. 2002).

First, "regardless of who performs the search, a visual body cavity search, such as the one conducted here, is invasive." *Harris*, 818 F.3d at 58. A search "that involves a stranger peering without consent at a naked individual, and in particular at the most private portions of that person's body, is a serious invasion of privacy." *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318 (2012) (Breyer, J., dissenting).[14]

Second, "while all forced observations or inspections of the naked body implicate a privacy concern, it is generally considered a greater invasion to have one's naked body viewed by a member of the opposite sex." *Canedy*, 16 F.3d at 185; *see also Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011). For this reason, "[c]ourts throughout the country have universally frowned upon cross-gender strip searches in the absence of an emergency or exigent circumstances." *Byrd*, 629 F.3d at 1143.[15] "Indeed, best-practice standards in prison management typically discourage cross-gender strip searches." *Harris*, 818 F.3d at 59. For example, the 2009 National Prison Rape Elimination Commission Report "determined that[,] '[t]o prevent abuse, . . . the [Commission's recommended] standard on this subject strictly prohibits non-medical staff from conducting cross-gender strip and visual body cavity searches—except in the case of an emergency—because of their extraordinarily intrusive nature.'" *Byrd*, 629 F.3d at 1142 (quoting the Commission Report at 63). Likewise, the American Correctional Association's recommended standard for cross-gender strip

---

[14] *See also Canedy*, 16 F.3d at 185 ("[O]ne of the clearest forms of degradation in Western Society is to strip a person of his clothes. The right to be free from strip searches and degrading body inspections is thus basic to the concept of privacy." (quoting 3 George B. Trubow, ed., *Privacy Law and Practice*, ¶ 25.02[1] (1991))); *Cookish v. Powell*, 945 F.2d 441, 446 (1st Cir. 1991) ("[A] 'severe if not gross interference with a person's privacy [] occurs when guards conduct a visual inspection of body cavities.").
[15] *See also Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981); *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993).

searches "provide[s] that, except in emergency situations, visual inspections of inmate body cavities are conducted by officers of the same sex, in private." *Id.* (quoting Standards for Adult Correctional Institutions § 4-4194 (2003)).

Third, a visual body-cavity search conducted in an unprofessional manner is unreasonable. *See Byrd*, 629 F.3d at 1143. As the Supreme Court stated in *Bell*: "[O]n occasion a security guard may conduct the search in an abusive fashion. Such abuse cannot be condoned. The searches must be conducted in a reasonable manner." *Bell*, 441 U.S. at 560 (citations omitted). Here, the visual body-cavity search was conducted in a disgusting and degrading manner by a male guard who made clear his prurient gratification, despite the ready availability of female officers to do the search. *See, e.g., Lee*, 641 F.2d at 1120.

Fourth, there was no justification for subjecting Plaintiff to a cross-gender visual body-cavity search. *See, e.g., Byrd*, 629 F.3d at 1137 n.2, 1142, 1143; *Hayes*, 70 F.3d at 1148.

Fifth, the fact that the visual body-cavity search was conducted outside of the presence of other individuals makes it less reasonable because there was greater chance for abuse. *See Byrd*, 629 F.3d at 1143. Indeed, Defendant Mustapick predictably seized this opportunity to sexually degrade Plaintiff for his own prurient gratification.

The Tenth Circuit, in an analogous case, held that a cross-gender strip-search, less egregious than the one performed by Defendant Mustapick, violated an inmate's right to be free from unreasonable searches and seizures. In *Hayes v. Marriott*, the male plaintiff alleged that a video-taped strip search conducted in the presence of female corrections officers violated his constitutional rights under the Fourth Amendment. 70 F.3d 1144, 1145 (10th Cir. 1995). Despite an affidavit from a prison official attesting that no females actively participated in the strip search and expressing staffing considerations, the Tenth Circuit reversed the grant of summary judgment in favor of the prison officials. *Id*. at 1147-48. In doing so, the Tenth Circuit explicitly recognized that an inmate's privacy rights may be violated by a single

S.A. 156

cross-gender strip-search. *Id*. at 1147. And, in another case, the Tenth Circuit held that an officer who forced a female inmate to expose her breasts to a female deputy in order to pump her breast milk, without any penological justification, violated her right to be free from unreasonable searches. *Shroff v. Spellman*, 604 F.3d 1179, 1191 (10th Cir. 2010). Importantly, the Tenth Circuit defined the right of the plaintiff that was violated as the "personal right not to be required to expose her breasts before another person." *Id.*

Ultimately, the caselaw is clear that "cross-gender strip searches" let alone cross-gender visual body-cavity searches, "in the absence of an emergency violate an inmate's right under the Fourth Amendment to be free from unreasonable searches." *Byrd*, 629 F.3d at 1144-47; *Cookish*, 945 F.2d at 442; *Moore v. Carwell*, 168 F.3d 234, 235 (5th Cir. 1999); *Shaw*, 944 F. Supp. 2d at 56-57.

### 5.6 **Defendants El Paso County, Elder, Gillespie, Mustapick, and Elliss violated Plaintiff's rights under the Fourteenth Amendment by unconstitutionally invading her right to privacy and bodily integrity.**

The Magistrate Judge erred in finding that Plaintiff has not adequately pled that Defendants El Paso County, Elder, Gillespie, Mustapick, and Elliss are liable for the violation of Plaintiff's Fourteenth Amendment rights through the cross-gender visual body-cavity search conducted by Defendants Mustapick and Elliss. "Visual body cavity searches are invasive and degrading, occasioning a serious invasion of privacy and working a significant harm to a person's bodily integrity." *Sloley v. Vanbramer*, 945 F.3d 30, 38 (2d Cir. 2019); *Vazquez*, 949 F.3d at 1165 (quoting *Hydrick v. Hunter*, 500 F.3d 978, 1000 (9th Cir. 2007); *Shroff*, 604 F.3d at 1191.

"[A]ll forced observations or inspections of the naked body implicate a privacy concern." *Canedy*, 16 F.3d at 185. To state the obvious, visual body-cavity searches are even more intrusive as they "require an arrestee not only to strip naked in front of a stranger, but also to expose the most private areas of her body to others. This is often, as here, done

while the person arrested is required to assume degrading and humiliating positions." *Swain v. Spinney*, 117 F.3d 1, 6 (1st Cir. 1997). The freedom from such "degrading body inspections is . . . basic to the concept of privacy." *Canedy*, 16 F.3d at 185 (internal quotation marks omitted); *Byrd*, 845 F.3d at 922-24.

Moreover, "any reasonable adult in our society would understand that the involuntary exposure of an adult's nude body is a significant imposition on the victim. And law-enforcement officers in this circuit have been taught this lesson repeatedly." *Colbruno*, 928 F.3d at 1163-65.[16] Several other circuits have recognized that officials can violate the Eighth Amendment (which imposes a higher burden than the Fourteenth Amendment) by forcing inmates to expose their naked bodies for the purpose of humiliation. *See Calhoun*, 319 F.3d at 939; *Kent*, 821 F.2d at 1227-28; *Lee*, 641 F.2d at 1119. When considering Defendant Mustapick's sexually degrading statements and gesture, in combination with his position of power over Plaintiff and the humiliating position that he had Plaintiff in when he made the statements, it is clear that he violated her right to privacy and bodily integrity. *See Vazquez*, 949 F.3d at 1162; *Fontana v. Haskin*, 262 F.3d 871, 881-82 n.6. (9th Cir. 2001). According to this authority, Defendants El Paso County, Elder, Gillespie, Mustapick, and Elliss all violated Plaintiff's clearly established rights.

5.7 **Defendant Elliss failed to intervene to prevent the violation of Plaintiff's Fourth and Fourteenth Amendment rights.**

---

[16] In *Cumbey v. Meachum*, the Tenth Circuit reversed the dismissal of a prisoner's complaint that his constitutional rights had been violated because female prison guards "are assigned to posts where they observe[d] him dressing and undressing and using the toilet and the shower," holding that "[a]lthough the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether." 684 F.2d 712, 713-14 (10th Cir. 1982). More recently, the Tenth Circuit stated that "exposing a person's naked body involuntarily is a severe invasion of personal privacy" in a case where it held that parading a naked inmate through a hospital violated his clearly established right to privacy and bodily integrity under the Fourteenth Amendment. *Colbruno*, 928 F.3d at 1163-65.

The Magistrate Judge erred by failing to consider an additional basis for liability against Defendant Elliss: that she failed to intervene to prevent the violation of Plaintiff's Fourth and Fourteenth Amendment rights. As alleged, Defendant Elliss failed to intervene to prevent the violation of Plaintiff's Constitutional rights. [Doc. #124], ¶¶ 71-83. "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008). For failure to intervene liability to attach, a plaintiff must simply establish that "officers have knowledge of a constitutional violation," *Jones v. Norton*, 809 F.3d 564 (10th Cir. 2015), and "a realistic opportunity to intervene to prevent the harm from occurring." *Vondrak*, 535 F.3d at 1210. The Tenth Circuit has repeatedly found an officer to possess knowledge where there was indeed an underlying constitutional violation, and where the officer was "on the scene[,]" *Casey v. City of Federal Heights*, 509 F.3d 1278, 1283 (10th Cir. 2017), or "present for the [violation]." *Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008). Here, as alleged, Defendant Elliss was present for the violation and explicitly allowed it to occur. [Doc. #124], ¶¶ 74-77. Plaintiff begged Defendant Elliss to let a woman search her. *Id.* Defendant Elliss refused and actively chose to leave and allow Defendant Mustapick to search Plaintiff unsupervised. *Id.* Under a failure to intervene theory, Plaintiff has adequately alleged that Defendant Elliss violated her Constitutional rights.

Finally, it is clearly established that officers who are present for constitutional violations by other officers, and do nothing to intervene, violate the Constitution. *Vondrak*, 535 F.3d at 1210 (an officer is liable if the officer had observed or had reason to know "that any constitutional violation has been committed by a law enforcement official."); *Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008). Defendant Elliss' violation was "obvious" and "particularly clear[.]" *Casey,* 509 F.3d at 1283. And, the Tenth Circuit has time and again held

S.A. 159

that when officials are on the scene and fail to intervene, regardless of the constitutional violation occurring, they are liable under clearly established law. *See Reid v. Wren*, 57 F.3d 1081, at *2 (10th Cir. 1995); *Walton v. Gomez (In re Estate of Booker)*, 745 F.3d 405, 422 n.25 (10th Cir. 2014); *see also Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994).

### 5.8 **Plaintiff adequately alleges municipal liability against El Paso County.**

As outlined above, contrary to the conclusions in the Magistrate Judge's Report and Recommendation, Plaintiff has adequately alleged multiple violations of her constitutional rights. For the reasons outlined in briefing at the motion to dismiss stage, [Doc. #147], she has also adequately alleged municipal liability.

### 5.9 **Plaintiff adequately alleges that Defendants intentionally discriminated against her in violation of the Americans with Disabilities Act and Rehabilitation Act and is therefore entitled to recover compensatory damages.**

The Magistrate Judge erred in holding that Plaintiff had not adequately alleged intentional discrimination. Intentional discrimination does not require discriminatory animus but rather may be "inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999). There is a two-pronged test for this standard: knowledge that a harm to a federally protected right is substantially likely; and a failure to act upon that likelihood. *Havens v. Colorado Dep't of Corr.*, 897 F.3d 1250, 1264 (10th Cir. 2018). Generally, courts have held that there exists a sufficient evidentiary basis for a factfinder to determine that intentional discrimination occurred under § 504 and/or Title II when the defendant deliberately made *no good faith*

*effort* to reasonably accommodate a plaintiff's known disability, thereby subjecting the plaintiff to disability discrimination.[17]

Here, Plaintiff has adequately alleged that El Paso County – directly and through its agents – had knowledge that a harm to her federally protected rights was substantially likely, and failed to act upon that likelihood. *See Havens*, 897 F.3d at 1264. When Plaintiff first entered El Paso County Jail, she was an openly transgender woman with a feminine appearance and during her intake screening, she notified El Paso County Jail and its healthcare personnel that she was a transgender woman with a diagnosis of Gender Dysphoria. [Doc. #124], ¶¶ 47-48. Plaintiff repeatedly and explicitly requested placement in a women's facility as an accommodation for her known disability. *Id.*, ¶¶ 48-70. One of El Paso County's officials even did an ADA review of Plaintiff's housing classification. *See Havens*, 897 F.3d at 1266 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). Plaintiff's classification and placement in an all-male facility was by no means an inadvertent mistake either. It was done intentionally and for one reason: her disability. This subjects Defendants to compensatory damages.

6. **Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that this Court reject the holdings of the Magistrate Judge's Report and Recommendation as outlined above.[18]

---

[17] *See Updike v. Multnomah Cty.*, 870 F.3d 939, 954 (9th Cir. 2017); *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1140 (9th Cir. 2001); *Bartlett v. N.Y. State Bd. of Law Exam'rs*, 156 F.3d 321, 330-31 (2d Cir. 1998); *Center v. City of West Carrollton*, 227 F. Supp. 2d 863, 868, 872 (S.D. Ohio 2002); *see also Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185 (10th Cir. 2007); *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 397 (D. Md. 2011); *Armstrong v. Schwarzenegger*, 622 F.3d 1058 (9th Cir. 2010); *see also Barber v. Colorado*, 562 F.3d 1222, 1229 (10th Cir. 2009); *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 829 (D. Md. 1998).
[18] The claims not addressed in the Magistrate Judge's report and recommendation also should not be dismissed for the reasons outlined in Plaintiffs' Response To Defendants' Motion To Dismiss Third Amended Complaint Pursuant To Fed. R. Civ. P. 12(b)(1) and (6), which is incorporated herein by reference. *See* [Doc. #147].

Dated this 8th day of March 2023.

KILLMER, LANE & NEWMAN, LLP

*s/ Andy McNulty*

_____
Andy McNulty
Mari Newman
1543 Champa St., Ste. 400
Denver, CO 80202
Phone: (303) 571-1000
Fax: (303) 571-1001
amcnulty@kln-law.com
mnewman@kln-law.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2023, I electronically filed the foregoing **OBJECTION TO REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO Fed. R. Civ. P. 12(b)(1) and (6) [Doc. #165]** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Nathan J. Whitney
Terry Sample
Chris Strider
County Attorney's Office
El Paso County
nathanwhitney@elpasoco.com
terrysample@elpasoco.com
chrisstrider@elpasoco.com

*Counsel for Defendants*

*s/ Andy McNulty*_____

S.A. 162

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00387-CMA-NRN

DARLENE GRIFFITH

Plaintiff,

v.

EL PASO COUNTY, COLORADO, et al.

Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO REPORT AND
RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS THIRD AMENDED
COMPLAINT PURSUANT TO Fed. Civ. P. 12(b)(1) and (6) [Docs. 163 and 169]**

---

Defendants, through the Office of the County Attorney of El Paso County,
Colorado, submit their Response to Plaintiff's Objection to Report and Recommendation
on Defendants' Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P.
12(b)(1) and (6) (Doc. 169) as follows:

## I.    INTRODUCTION[1]

Plaintiff is a transgender female who has been diagnosed with Gender Dysphoria.
She asserts 16 claims for relief under federal and state laws alleging that: (i) during intake
into CJC, she was misgendered by the female deputy who visually searched her upper
torso, and verbally harassed and threatened by the male deputy who visually searched
her lower torso; (ii) she asked to be housed in a female ward but was housed in a male

---

[1] The defined terms used herein have the same meaning as the defined terms used in
the Motion to Dismiss (Doc. 132) and Defendants' Reply (Doc. 155).

ward instead, where she was sexually assaulted by a male inmate, misgendered by deputies, and subject to pat down searches by male deputies; and (iii) she was denied access to female undergarments and grooming products.

Defendants filed their Motion to Dismiss (Doc. 132) in June 2022 and sought dismissal of all of Plaintiff's claims because, among other reasons, there was no violation of Plaintiff's constitutional rights, the individual Defendants are entitled to qualified immunity, the Complaint fails to allege municipal liability, and EPSO was not deliberately indifferent under the ADA or Rehabilitation Act.   The next month, Plaintiff filed her Response to the Motion to Dismiss (Doc. 147) and Defendants filed their Reply in Support of the Motion to Dismiss (Doc. 155) (the "Reply).

The Honorable United States Magistrate Judge Neureiter issued a thorough Report and Recommendation (Doc. 165) (the "Recommendation" or "R. & R.") on February 27, 2023, in which he recommended dismissal of all of Plaintiff's federal claims and declination of supplemental jurisdiction over Plaintiff's state law claims.  Plaintiff filed her Objection to the Recommendation (Doc. 169) (the "Objection" or "Obj.") on March 8, 2023.

As explained below, the Objection merely restates Plaintiff's arguments from her Response without identifying any specific legal or factual errors in the Recommendation. The Court should thus adopt the Recommendation's well-reasoned findings, which are in line with existing Tenth Circuit and Supreme Court precedent.

S.A. 164

## II.     STANDARD OF REVIEW

This Court set forth the standard of review applicable to the review of a magistrate's recommendation under Fed. R. Civ. P. 72(b)(3) in *Viscarelli v. Simone*, No. 20-cv-01859-CMA-MEH, 2021 WL 21906, at * 2 (D. Colo. Jan. 4, 2021).   This Court set forth the standards of review applicable to motions to dismiss under Fed. R. Civ. P. 12(b)(1) and (6) in *Simon v. Burtlow*, No. 20-cv-01207-CMA-KMT, 2012 WL 4059782, at * 2 (D. Colo. Sept. 7, 2021).

## III.     ARGUMENT

Magistrate Judge Neureiter meticulously considered Plaintiff's claims and recommended that each one be dismissed.  The grounds for dismissal ranged from a lack of plausible allegations in the Complaint, to the absence of clearly established case law, to each individual Defendant's entitlement to qualified immunity.  Plaintiff objects to these findings, but she mostly parrots arguments she made before instead of identifying specific errors in the Recommendation.  The Defendants respectfully ask the Court to deny Plaintiff's attempt to relitigate this case, and instead adopt the Recommendation in full.

### A.  Plaintiff Has Forfeited the Right to De Novo Review of the Recommendation

The Objection seeks a second bite at the apple by recycling the Response's arguments instead of identifying specific legal or factual flaws in the Recommendation. *See, e.g.*, *Wiggins v. Colvin*, No. 1:12-cv-196, 2014 WL 184414, at * 1 (W.D.N.C. Jan. 15, 2014) ("General objections include those that merely restate or reformulate arguments a party has made previously to a magistrate judge.").  That is to say, the Objection is not specific enough to "enable the district judge to focus the attention on those issues—

3

factual and legal—that are at the heart of the parties' dispute." *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).

In the absence of specificity, Plaintiff has forfeited the right to de novo review. *See id.* at 1061 (generally, "a party's objection…must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."); *Hatlee v. Hardey*, No. 13-cv-02469-RM-MJW, 2015 WL 5719644, at * 3 (D. Colo. Sept. 29, 2015) ("In the absence of a timely and specific objection, 'the district court may review a magistrate's recommendation under any standard it deems appropriate.'") (citing *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1997)).  The Court should therefore apply a clear error standard to its review.  *See* Fed. R. Civ. P. 72(b) Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

Regardless of which standard the Court applies, however, the Court should not set aside any portion of the Recommendation for the reasons described below.

**B.  The Magistrate Correctly Recommended Dismissal of El Paso County as a Party**

Plaintiff contends that she properly named El Paso County as a defendant, yet she does not address the authority that the Magistrate Judge relied upon to find otherwise. *See* Obj. p. 5. The Magistrate Judge correctly recommended dismissal of Plaintiff's claims against El Paso County for two reasons. R. & R. p. 14.  First, C.R.S. § 30-11-105 provides that suits against a county must be brought in the name of "the board of county commissioners of the county of …….."  This is the "exclusive method by which jurisdiction over a county can be obtained."  *Calahan v. Jefferson Cnty.*, 429 P.2d 301, 302

4

(Colo. 1967).  A plain reading of the Complaint shows that "Plaintiff's naming of…El Paso County as a defendant is defective, and the County can be dismissed due to this jurisdictional defect alone."  R. & R. p. 14.

Second, El Paso County and EPSO are separate entities.  EPSO, rather than El Paso County, is responsible for CJC's operations.  *See* C.R.S. § 30-10-511; *Terry v. Sullivan,* 58 P.3d 1098, 1102 (Colo. App. 2002).   The Complaint cursorily alleges misconduct on the part of EPSO employees that cannot be attributed to El Paso County.  Accordingly, the Magistrate Judge correctly recommended dismissal of the claims against El Paso County under Fed. R. Civ. P. 12(b)(6).  R. & R. p. 14.

### C. The Magistrate Judge Correctly Recommended Dismissal of Plaintiff's Individual § 1983 Claims Because the Defendants are Entitled to Qualified Immunity

Qualified immunity is an affirmative defense to a § 1983 action that protects government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020). Plaintiff must satisfy a substantial two-part burden to show that (1) Defendants' actions violated Plaintiff's constitutional or statutory rights, and (2) that the rights in question were clearly established at the time of Defendants' alleged violations. *Albright v. Rodriguez*, 51 F.3d 1531,1534 (10th Cir. 1995).

As discussed below, Plaintiff has not shown that Defendants' alleged actions violated constitutional or statutory rights.  And even if the Court finds that the first prong of the qualified immunity inquiry is satisfied, Plaintiff still fails to establish that the rights

in question were clearly established. A right is clearly established if the law was "sufficiently clear that a reasonable official would have understood that his conduct violated the right." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001).  This generally requires a "Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id*. (internal quotations omitted).

Plaintiff's objection states that clearly establishing a constitutional right can be accomplished occasionally in the absence of binding precedent addressing similar circumstances. Obj. p.5, ¶ 1.  However, Plaintiff fails to identify how the Magistrate Judge erred in applying the two-part standard to determine whether Defendants are entitled to qualified immunity.  The Court should therefore find that the individual Defendants are entitled to qualified immunity.

### D. The Magistrate Judge Correctly Applied Binding Precedent to Recommend Dismissal of Plaintiff's Equal Protection Claim

Plaintiff argues that the Magistrate Judge erred by "failing to consider that Defendants engaged in sex- and gender-based discrimination, which triggers intermediate scrutiny." Obj. p. 8, ¶ 1.  However, Plaintiff neither cites authority overruling binding Tenth Circuit precedent nor states grounds by which the Magistrate Judge may abandon *stare decisis*. *See Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995) (holding that transgender is not a suspect or quasi-suspect class under the 14th Amendment). Indeed, the Magistrate Judge did consider whether intermediate scrutiny applies in this

6

**S.A. 168**

case and correctly determined that unless and until the Tenth Circuit rules otherwise, its decision in *Brown* remains controlling. R. & R. pp. 20-21.

The Magistrate Judge also correctly noted that Plaintiff failed to identify any controlling authority overruling *Brown*. R. & R. p. 21.  Absent such authority, the Defendants could not be on notice that their conduct violated a constitutional or statutory right.  The authority cited by Plaintiff consists largely of non-binding decisions from appellate courts outside the Tenth Circuit and district courts outside of Colorado. Although it is not necessary for the facts in the cited authority to correspond exactly to the situation the plaintiff complains of, the "plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Trotter v. Regents*, 219 F.3d 1179, 1184 (10th Cir. 2000) (internal quotations omitted).  Plaintiff fails to do so here.  The Court should thus adopt the Recommendation.

### E.  The Magistrate Judge Correctly Recommended Dismissal of Plaintiff's Fourth Amendment Claim

Plaintiff objects to the Magistrate Judge's finding that the searches conducted in this case did not violate the Constitution.  Obj. p. 23, ¶1.  The balancing test set forth in *Bell v. Wolfish* is the controlling standard when determining the reasonableness of a government search. 441 U.S. 520, 559 (1979) ("Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.").  The Magistrate Judge correctly considered these factors in evaluating the searches at issue in this case and distinguished any

S.A. 169

alleged inappropriate behavior from that found in cases where a prison strip search was deemed unreasonable. R. & R. pp. 31-33.

The balance of the *Bell* factors weighs against a finding of unconstitutional behavior by Defendants. First, the *visual* body cavity search of Plaintiff was reasonable because it was performed as Plaintiff entered the jail and before she was admitted into the general population. *Archuleta v. Wagner*, 523 F.3d 1278, 1284 (10th Cir. 2008) (reasonableness of strip search turns in part on whether inmate will be housed in general population); *Hyberg v. Enslow*, 801 F. App'x 647, 650-51 (10th Cir. 2020) (unpublished) (finding no plausible Fourth Amendment claim where inmate was strip searched in a designated area "with limited access for other inmates and staff" before returning to general population, and where staff made insensitive comments). Second, the only individuals present during the visual strip search were Defendants Elliss and Mustapick, who each performed part of the search in a private area of CJC. Plaintiff's strip search was not video recorded like the search in *Hayes v. Marriott*, 70 F.3d 1144, 1145 (10th Cir. 1995), or conducted without a penological purpose as in *Shroff v. Spellman*, 604 F.3d 1179 (10th Cir. 2010). Third, Plaintiff argues that she was subject to a cross-gender search because Mustapick, a biological male, participated in the search. Yet Plaintiff presents no authority suggesting that Mustapick's visual search of Plaintiff constitutes a cross-gender search given that they share the same biological sex. Fourth, the verbal statements attributed to Mustapick are insufficient to establish a constitutional violation. Indeed, in *Adkins v. Rodriguez*, the Tenth Circuit found that similar verbal harassment did

not amount to a constitutional violation. 59 F.3d 1034, 1037-38 (10th Cir. 1995); *see also*

*Hayes*, 70 F.3d at 1145.

Finally, the Magistrate Judge correctly found that even if Defendants' conduct

violated Plaintiff's right to be free from unreasonable searches, Defendants are entitled

to qualified immunity because that right was not so clearly established as to put a

reasonable person in the Defendants' position on notice that the conduct was violative.

R. & R. p. 34, ¶1. The Court should adopt the Magistrate Judge's well-reasoned analysis.

### F. The Magistrate Judge Correctly Found that Plaintiff Failed to State a Conditions of Confinement Claim, a Substantive Due Process Claim, or a Failure to Protect Claim Under the Fourteenth Amendment

Plaintiff realleges that Elder, Gillespie, Noe, Ford, and O'Neal's "decisions to house

[her] in an all-male unit foreseeably resulted in her continuous harassment and repeated

unwanted cross-gender touching." Obj. pp. 17-22. As the Magistrate Judge correctly

found, however, Plaintiff's allegations are "too generalized and imprecise to adequately

allege personal participation as to the specified individual Defendants." R. & R. pp. 28-

29; *see Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (in § 1983 cases, it

is crucial that the complaint "make clear exactly *who* is alleged to have done *what* to

*whom*" (emphasis in original). Indeed, Plaintiff fails to allege personal participation by

Elder or Gillespie, as the Defendants argued in their Motion to Dismiss at pages 9-10.

Similarly, O'Neal's only involvement in the incidents alleged was telling Plaintiff that her

grievance was denied—an action that does not establish her personal participation in any

constitutional violation. *See* R. & R. p. 26, citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

As for Noe and Ford, Plaintiff does not establish the subjective or objective elements of deliberate indifference. *See* R. & R. p. 26. Instead, Plaintiff alleges that placing her into general population in a male ward "was nearly *per se* deliberately indifferent to a risk that she would be assaulted by male inmates." Obj. p. 21. The cases Plaintiff cites, however, do not support the *per se* liability she seeks to impose. For example, in *Greene v. Bowles*, the Sixth Circuit denied a prison warden's summary judgment motion because the transgender plaintiff presented information suggesting the warden knew about her specific vulnerabilities and the violent history of a predatory inmate who ultimately assaulted her. 361 F.3d 290, 294-95 (6th Cir. 2004). Similarly, a United States District Court in Georgia did not dismiss a transgender inmate's failure-to-protect claims where she alleged prison officials had extensive information about her past assaults at other facilities, the officials took no action after learning she was assaulted multiple times at their facility, and the officials were told by a doctor that the plaintiff "stood a high risk of sexual assault at [the prison] given its population." *Diamond v. Owens*, 131 F.Supp.3d 1346, 1376 (M.D. Ga. Sept. 14, 2015). These cases highlight the importance of alleging facts from which an official could infer that "a substantial risk of serious harm exists," and that the official "dr[e]w the inference" from those facts. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Here, Plaintiff fails to allege that Noe and Ford—or any other Defendant—had specific knowledge of a risk to Plaintiff and ignored it. Since Plaintiff has not plausibly alleged deliberate indifference, the Court should dismiss Plaintiff's claims.

Regarding Mustapick, the Magistrate Judge found that he was entitled to qualified immunity because Plaintiff did not meet her burden of "showing that it is clearly established that cross-gender searches of transgender women, even ones accompanied by odious verbal harassment, violate a clearly established constitutional right, nor is the conduct so egregious and the right so obvious that it could be deemed clearly established even without materially similar cases." R. & R. p. 28. Plaintiff challenges this finding by citing numerous cases purportedly showing otherwise, but these cases are largely inapposite. *See* Obj. pp. 18-19. For example, in *Fillmore v. Page*, the Seventh Circuit considered a strip-search through the lens of a prisoner's *excessive force* claims, the strip-search in question did not involve a cross-gender search of a transgender prisoner, and the court found no constitutional violation. 358 F.3d 496, 504-05 (7th Cir. 2004). Plaintiff also cites the Tenth Circuit's 2019 decision in *Colbruno v. Kessler*, but that case involved deputies walking a naked detainee through the public areas of a hospital. 928 F.3d 1155, 1160 & 1165-66 (10th Cir. 2019). Plaintiff, in contrast, was strip-searched in "a separate room" and was not seen by deputies other than Mustapick and Elliss, let alone members of the public. Compl. ¶ 73. The Seventh Circuit's unpublished decision in *Richards v. Wexford of Indiana LLC* is similarly irrelevant because it involved a doctor's rectal examination of a prisoner in view of two officers and three inmates in filthy conditions. No. 20-2567, 2021 WL 4892160, at *1 (7th Cir. Oct. 20, 2021) (unpublished). Finally, none of the cases crammed into footnote 11 of Plaintiff's Objection deal with cross-gender searches of transgender inmates. The Magistrate Judge correctly found that

S.A. 173

Plaintiff did not meet her burden on the clearly established prong of the qualified immunity analysis, and the Court should do the same.

Plaintiff further contends that the Magistrate Judge "fail[ed] to consider an additional basis for liability against Defendant Elliss: that she failed to intervene to prevent the violation of Plaintiff's Fourth and Fourteenth Amendment rights." Obj. p. 28. Plaintiff is incorrect. After finding that Mustapick was entitled to qualified immunity, the Court found that Elliss had qualified immunity "by extension…on any claim that she failed to intervene." R. & R. p. 28. This conclusion is sound because there must be a constitutional violation in the first place before a failure to intervene can be found. *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) ("Plaintiffs focus their arguments on the officers' opportunities to intervene, but ignore the requirement that the officers must have knowledge of a constitutional violation."). The Court should therefore grant Elliss qualified immunity.

Plaintiff goes on to argue that the Defendants violated her right to privacy and bodily integrity. Obj. pp. 26-27. But as the Defendants argued on page 18 of their Motion to Dismiss, Plaintiff can only succeed on this claim if she alleges government action that shocks the conscience. Conscience-shocking behavior "requires a high level of outrageousness," such as sexual assault or rape of a prisoner by guards. *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995); *see Hall v. Zavaras*, No. 08-cv-00999-DME, 2008 WL 5044553, at *4 (D. Colo. Nov. 19, 2008). While the conduct Plaintiff levies against Mustapick is troubling if true, it is not "so egregious and the right so obvious that it could be deemed clearly established even without materially similar cases." R. & R. p. 28.

Further, Plaintiff does not clearly allege the personal participation of any other individual Defendant in conscience-shocking behavior. The Court should thus dismiss Plaintiff's claims as the Magistrate Judge recommended.

**G. The Magistrate Judge Correctly Recommended Dismissal of the § 1983 Claims Asserted Against Elder and Gillespie Under a Supervisory Liability Theory**

The Magistrate Judge correctly recommended dismissal of the § 1983 claims asserted against Elder and Gillespie under a theory of supervisory liability. Supervisory liability requires a plaintiff to show "an affirmative link… between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). "When an official is sued on the basis of his supervisory status and policy-making authority, a plaintiff may establish the affirmative link by demonstrating that the defendant: '(1) promulgated, created, implemented or possessed responsibility for the continued operation of a policy, (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'" *Yoemans ex rel. Ishmael v. Campbell*, 501 F. Supp. 3d 1034, 1053 (D. Colo. 2020) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)).

Plaintiff claims that Gillespie personally violated her equal protection rights by denying her access to female clothing and grooming products. Compl. ¶¶ 114, 117.) The Magistrate Judge correctly determined that these allegations do not amount to a constitutional violation under binding Tenth Circuit precedent and Gillespie is therefore entitled to qualified immunity. R. & R., pp. 17-30. Further, the Magistrate Judge correctly

**S.A. 175**

determined that Plaintiff's assertion of § 1983 liability based on Gillespie's status as a commander are premised upon conclusory allegations which cannot "nudge[] [the plaintiff's] claims across the line from conceivable to plausible…"  R. & R. ¶ 10, quoting *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Magistrate Judge went on to address the supervisory liability claims against Elder in conjunction with Plaintiff's *Monell* claims against EPSO.  R. &. R. pp. 34-35.  As with Gillespie, the Magistrate Judge correctly recommended dismissal because Plaintiff failed to plausibly assert an underlying constitutional violation.  *Id.*

Plaintiff's Objection offers nothing new and asserts error based on the same conclusory allegations the Magistrate Judge found unpersuasive.  Accordingly, the Court should dismiss the § 1983 claims asserted against Elder and Gillespie under a supervisory liability theory.

## H.  The Magistrate Judge Correctly Recommended Dismissal of Plaintiff's *Monell* Claims

The Magistrate Judge correctly recommended dismissal of Plaintiff's *Monell* claims because Plaintiff failed to plausibly allege an underlying constitutional violation. Municipalities cannot be held liable for the unconstitutional actions of their employees under a theory of *respondeat superior*.  *Bd. of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 405 (1997).  Municipalities may instead be liable under § 1983 when the execution of a policy or custom "inflicts the injury" upon the plaintiff. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978).  But a *Monell* claim "cannot survive a determination that there has been no constitutional violation."  *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1186 (10th Cir. 2020).

Here, the Magistrate Judge comprehensively examined pertinent precedent and authorities before correctly determining that Plaintiff's *Monell* claims fail due to the absence of an underlying constitutional violation.  R. & R. pp. 15-34.  Further, even if an underlying constitutional violation were found, the Complaint still fails to articulate the other necessary components of a *Monell* claim as explained in Section IV.F of the Motion to Dismiss and Section II.E of the Reply.  Plaintiff's *Monell* claims must therefore be dismissed.

## I. The Magistrate Judge Correctly Recommended Dismissal of Plaintiff's ADA and Rehabilitation Act Claims Because EPSO Was Not Deliberately Indifferent

Plaintiff's Response failed to "confront the question posed in the Motion: how can an entity be deliberately indifferent under Title II of the ADA and Rehabilitation Act when the existence of the right alleged is unclear?"  Defs.' Reply, p. 21; *see also* Pl.'s Reply, pp. 49-50.  This question remains unanswered in Plaintiff's Objection.

Compensatory damages are only available under Title II of the ADA and Rehabilitation Act in instances of intentional discrimination which can be inferred from a defendant's deliberate indifference to a strong likelihood that the pursuit of its questioned policies will likely result in a violation of federally protected rights and a corresponding failure to act.  *Havens v. Colo. Dep't. of Corr.*, 897 F.3d 1250, 1264 (10th Cir. 2018).

But it is unclear whether Gender Dysphoria falls within the ADA's categorical exclusion of coverage as discussed in Section IV.H.1. of the Motion to Dismiss and Section II.G.i. of the Reply.  Indeed, "[n]o federal court of appeals or the Supreme Court ha[d]…addressed whether [this] exclusion applies to gender dysphoria" until August

2022, when a divided Fourth Circuit ruled that Gender Dysphoria falls outside the applicable exclusion.  *Venson v. Gregson*, No. 18-cv-2185-MAB, 2021 WL 673371, at *2 (S.D. Ill. Feb. 22, 2021); *see Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022).  Moreover, a significant disagreement amongst district courts remains on this issue, *see London v. Evans*, No. 19-559, 2019 WL 5726983, at *6 n.3 (D. Del. Nov. 5, 2019), and this Court has found that Gender Dysphoria falls within the applicable exclusion.  *Michaels v. Akal Sec., Inc.*, No. 09-cv-01300-ZLW-CBS, 2010 WL 2573988, at *6 (D. Colo. Jun. 24, 2010).

It is thus exceedingly unclear whether Gender Dysphoria has any protections under Title II of the ADA and the Rehabilitation Act.  *See* R. & R., p. 41 ("While the Court believes that discrimination based on gender dysphoria violates the ADA and RA, this is not remotely settled law.")).  Accordingly, the Magistrate Judge correctly applied *Roberts v. City of Omaha*, 723 F.3d 966, 975-76 (8th 2013), to recommend dismissal of Plaintiff's ADA and Rehabilitation Act claims for failing to plausibly allege deliberate indifference. R. & R., p. 41.

## V.  CONCLUSION

Defendants respectfully ask the Court to affirm the findings of the Magistrate Judge's Report and Recommendations as outlined above.

Dated this 22ND of March, 2023.

By: s/ *Nathan J. Whitney*
Nathan J. Whitney, #39002
Senior Assistant County Attorney
Bryan Schmid, #41873
Senior Assistant County Attorney
Chris Strider, #33919
Assistant County Attorney
Steven Martyn, #47429

16

El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
(719) 520-6485
Email:
nathanwhitney@elpasoco.com
bryanschmid@elpasoco.com
chrisstrider@elpasoco.com
stevenmartyn@elpasoco.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2023, I electronically filed a true copy of the **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO Fed. Civ. P. 12(b)(1) and (6) [Doc. #163 and 169]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Andy McNulty
Mari Newman
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 Fax
amcnulty@kln-law.com

  s/*Dee Lambert*
Paralegal

17

S.A. 179

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2023, I electronically filed a true, correct and complete copy of the foregoing Supplemental Appendix with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system.

Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  October 20, 2023          /s/ Dee Lambert
                                 Legal Office Administrator
                                 El Paso County Attorney's Office

**S.A. 180**