No. 23-1135

IN THE

# United States Court of Appeals for the Tenth Circuit

_____

DARLENE GRIFFITH, Plaintiff/Appellant,

v.

EL PASO COUNTY, COLORADO; BILL ELDER, individually and in his official capacity as Sheriff of the El Paso County Sheriff's Office; CY GILLESPIE, in his individual capacity; ELIZABETH O'NEAL, in her individual capacity, ANDREW MUSTAPICK, in his individual capacity; DAWNE ELLISS, in her individual capacity; TIFFANY NOE, in her individual capacity; BRANDE FORD, in her individual capacity, Defendants/Appellees.

_____

On Appeal from the
United States District Court for the District of Colorado
The Honorable Christine M. Arguello
Civil Action No. 1:21-cv-00387-CMA-NRN

_____

**DEFENDANTS' - APPELLEES' RESPONSE BRIEF**

_____

NATHAN WHITNEY
OFFICE OF THE COUNTY
ATTORNEY OF EL PASO
COUNTY, COLORADO
200 South Cascade Avenue
Colorado Springs, Colorado 80903
(719) 520-6485

STEVEN W. MARTYN
OFFICE OF THE COUNTY
ATTORNEY OF EL PASO
COUNTY, COLORADO
200 South Cascade Avenue
Colorado Springs, Colorado 80903
(719) 520-6485

Counsel for Defendants/Appellees

**ORAL ARGUMENT NOT REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iv

STATEMENT OF RELATED CASES ........................................................1

STATEMENT OF JURISDICTION............................................................1

INTRODUCTION .....................................................................................1

STATEMENT OF THE ISSUES.................................................................4

STATEMENT OF THE CASE....................................................................5

     I.     Procedural Background ..........................................................5

     II.    The Complaint's Material Allegations ..................................7

        A.  Material Allegation Related to Griffith's Housing Classification ..7

        B. Material Allegations Related to Griffith's Initial Strip-Search ...................................................................................10

        C. Material Allegations Regarding an Alleged Sexual Assault by Another Inmate.................................................................11

        D. Material Allegations Regarding Pat-Down Searches of Griffith by Male Deputies.................................................................11

        E. Material Allegations Regarding Misgendering by Deputies .......12

        F. Material Allegations Regarding Griffith's Ability to Dress in Accordance with her Gender Identity ....................................12

SUMMARY OF THE ARGUMENT ........................................................13

STANDARD OF REVIEW .....................................................................13

ARGUMENT ..........................................................................................14

I.      Griffith   Waived   Her   Right   to   Seek   Appellate   Review
........................................................................................14

II.     The  District  Court  Correctly  Dismisssed  Griffith's  Fourteenth
Amendment Equal Protection Claims (Claim 1) ................................17

III.    The District Court Properly Dismissed Griffith's Fourth and Fourteenth
Amendment Claims (Claims 3 and 4)..................................................19

IV.     The  District  Court  Correctly  Dismissed  Griffith's  Conditions  of
Confinement  Claim (Claim 2)............................................................23

V.      The District Court Correctly Granted the El Paso County Defendants
Qualified  Immunity ......................... ...................................................25

VI.     The  District  Court  Correctly  Dismissed  Griffith's  Claims  Brought
Under the  ADA and Rehabilitation Act .............................................30

        A. The  District  Court  Correctly  Dismissed  Griffith's  ADA  and
        Rehabilitation      Act  Claims  Because  There  is  No  Law  Clearly
        Establishing Gender Dysphoria as a Disability...................................31

        B.     Griffith's New Argument Lacks Merit........................................34

        C.  Griffith's  Assertion  that  She  Adequately  Pled  Deliberate
        Indifference Lacks Merit......................................................................37

        D.  This  Court  Should  Refuse  to  Consider  Griffith's  Argument
        Regarding the  Application of Cummings v Premier Rehab Keller ...39

VII.    The District Court Correctly Dismissed Griffith's Claims of Municipal
Liability  .............................................................................................40

CONCLUSION ....................................................................................45

STATEMENT REGARDING ORAL ARGUMENT ..............................47

CERTIFICATE OF COMPLIANCE.....................................................48

CERTIFICATE OF DIGITAL SUBMISSION .......................................................49

CERTIFICATE OF SERVICE .................................................................................50

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Rodriguez*,
59 F.3d 1034, 1037-38 (10th Cir. 1995) ........................................................... 21, 28

*Albright v. Oliver*,
510 U.S. 266, 271 (10th Cir. 1994) ........................................................................22

*Allman v. Colvin*,
813 F.3d 1326, 1330 (10th Cir. 2016) ....................................................................16

*Archuleta v. Wagner*,
523 F.3d 1278, 1284 (10th Cir. 2008) ....................................................................20

*Arrington-Bey v. City of Bedford Heights*,
858 F.3d 988, 994-96 (6th Cir. 2017) ............................................................... 43, 45

*Asabedo v. Kan. State Univ.*,
559 F. App'x 668, 671 (10th Cir. 2014) ..................................................................34

*Ashcroft v. Iqblal,*
556 U.S. 662 (2009) ................................................................................................36

*Barney v. Pulsipher*,
143 F.3d 1299, 1310 n.11 (10th Cir. 1998) ............................................................28

*Bd. of Cnty. Comm'rs v. Brown*,
520 U.S. 397, 404-405, 407-408, 410 (1997) ................................. 25, 40, 41, 43-45

*Bell v. Wolfish*,
441 U.S. 520, 547, 559 (1979) ......................................................................... 18-21

*Brammer-Hoelter v. Twin Peaks Charter Acad.,*
602 F.3d 1175, 1189 (10th Cir. 2010) ............................................................. 41, 42

*Brown v. Zavaras*,
63 F.3d 967, 971-972 (10th Cir.1995) .............................................................. 17, 24

*Bustillos v. El Paso Cnty. Hosp. Dist.,*
891 F.3d 214, 222 (5th Cir. 2018) ...........................................................43

*Cacioppo v. Town of Vail, Colo.*,
528 F. App'x 929, 934 (10th Cir. 2013) (unpublished)...........................45

*Cadena v. El Paso Cnty.,*
 946 F.3d 717, 726 (5th Cir. 2020) ...........................................................38

*Carney v. City & Cnty. of Denver,*
534 F.3d 1269, 1274 (10th Cir. 2008) ............................................. 41, 42

*Carter-el v. Boyer*,
No. 1:19cv243 (TSE/MSN), 2020 WL 939289, at *4 (E.D. Va. Feb. 25, 2020)....29

*City of Canton v. Harris*,
489 U.S. 378, 388 (1989).........................................................................42

*Colbruno v. Kessler*,
928 F.3d 1155, 1163 (10th Cir. 2019) ............................................. 23, 24

*Connick v. Thompson*,
563 U.S. 51, 61 (2011)..................................................................... 42, 43

*Contreras ex rel. A.L. v. Dona Ana Cnty. Comm'rs*,
965 F.3d 114, 1124 (10th Cir. 2020) .......................................................44

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833, 848 (1998)..........................................................................22

*Crane v. Utah Dep't of Corr.*,
15 F.4th 1296, 1312-13 (10th Cir. 2021)..................................................30

*Crowson v. Washington Cnty. Utah*,
983 F.3d 1166, 1191 (10th Cir. 2020) ....................................................40

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
142 S. Ct. 1562 (2022) ............................................................ 38, 39, 40

v

*Cunningham v. Univ. of N.M. Bd. of Regent*,
531 F. App'x 909, 919 (10th Cir. 2013) (unpublished) ........................................... 30

*Dodds v. Richardson*,
614 F.3d 1185, 1195, 1211 (10th Cir. 2010) ........................................... 25

*Doe ex rel. Doe v. City of Pawtucket*,
633 F.Supp.3d 583 (D.R.I. Sept. 29, 2022) ........................................... 39

*Doe v. Pa. Dep't of Corr.*,
No. 1:20-cv-00023-SPB-RAL, 2021 WL 1583556, at *8-9 (W.D. Pa. Feb. 19, 2021) ........................................... 32

*Doherty v. Bice*,
18-cv-10898 (NSR), 2023 WL 5103900, at *5-6 (S.D. N.Y. Aug. 9, 2023) ......... 39

*Druley v. Patton*,
601 F. App'x 632, 635-36 (10th Cir. 2015) (unpublished) ..................................... 18

*Duvall v. Cnty. of Kitsap*,
260 F.3d 1124 (9th Cir. 2001) ................................................. 38

*Estate of Booker v. Gomez*,
745 F.3d 405, 435 (10th Cir. 2014) ........................................... 25

*Farmer v. Brennan*,
472 U.S. 511, 525 (1985) ........................................... 23

*Florence v. Bd. of Chosen Freeholders*,
566 U.S. 318, 332 (2012) ........................................... 21

*Foote v. Spiegel*,
118 F.3d 1416, 1423 (10th Cir. 1997) ..................................... 27

*Gallagher v. Shelton*,
587 F.3d 1063, 1069 (10th Cir. 2009) ..................................... 26

*Galvan v. Carothers*,
855 F. Supp. 285, 293 (D. Alaska 1994) ...................................................29

*Gonzalez De Gomez v. Adams Cnty.*,
22-1199, 2023 WL 5163988, at *2 (10th Cir. Aug. 11, 2023) ...........................2, 14

*Green v. Hooks*,
798 F. App'x 411, 422-23 (11th Cir. 2020) (unpublished) .....................................27

*Hall v. Zavaras,*
No. 08-cv-00999-DME, 2008 WL 5044553, at *4 (D. Colo. Nov. 19, 2008)
(unpublished) .......................................................................................22

*Hans v. Bd. of Shawnee Cnty. Comm'rs*,
No. 16-4117-DDC, 2018 WL 1638503, at * 18 (D. Kan. Apr. 5, 2018)................35

*Hans v. Bd. of Shawnee Cnty. Comm'rs*,
775 F. App'x 953, 956 (10th Cir. 2019) (unpublished)..........................................36

*Havens v. Colo. Dep't. of Corr.*,
897 F.3d 1250, 1264, 1267 (10th Cir. 2018) .................................................... 31, 34

*Hejmej v. Peconic Bay Med. Ctr.*,
17-cv-782 (JMA) (SIL), 2022 WL 4551696, at *1 (E.D.N.Y. Sept. 29, 2022) ......39

*Hulen v. Yates*,
322 F.3d 1229, 1237 (10th Cir. 2003) .......................................................28

*Hunter v. HCA*,
812 F. App'x 774, 777 (10th Cir. 2020) (unpublished)..........................................16

*Hyberg v. Enslow*,
801 F. App'x 647, 650-51 (10th Cir. 2020) (unpublished) ............................. 20, 21

*In re Key Energy Res.*,
230 F.3d 1197, 1201 n.3 (10th Cir. 2000) ................................................15

*Jenkins v. Wood*,
81 F.3d 988, 994 (10th Cir. 1996) ...........................................................43

*Johnson v. Reyna*,
57 F.4th 769, 778 n.7 (10th Cir. 2023) ...................................................16

*Kincaid v. Williams*,
45 F.4th 759, 765-770 (2022) ................................................................32

*Kincaid v. Williams*,
143 S.Ct. 2414 (2023).............................................................................33

*Kovatsenko v. Kentucky Cmty. & Techn. Coll.*,
5:23-066-DCR, 2023 WL 3346108, *4 (E.D. Ken. May 10, 2023) .......................39

*Martinez v. Martinez*,
294 F. App'x 410, 413 (10th Cir. 2008) (unpublished)...........................................16

*McClendon v. City of Albuquerque*,
79 F.3d 1014, 1022 (10th Cir. 1996) ....................................................23

*Michaels v. Akal Sec., Inc.*,
No. 09-cv-01300-ZLW-CBS, 2010 WL 2573988, at *6 (D. Colo. Jun. 24, 2010)
....................................................................................................32

*Miller v. Shell Oil Co.*,
345 F.2d 891, 893 (10th Cir. 1965) ......................................................37

*Montgomery v. Dist. Of Columbia*,
No. 18-1928(JDB), 2022 WL 1618741, at *23-26 (D.D.C. May 23, 2022) ..........39

*Monell v. Dep't of Sec. Servs. of N.Y.*
436 U.S. 658, 694 (1978)................................................................ 25, 40

*Montoya v. City & Cnty. of Denver,*
No. 16-cv-01457-JLK, 2021 WL 8087380, at *2 n.3 (D. Colo. July 27, 2021) .....44

*Moore v. Astrue*,
491 F. App'x 921, 923 (10th Cir. 2012) (unpublished).......................................3, 14

*Morales-Fernandez v. I.N.S.*,
418 F.3d 1116, 1119 (10th Cir. 2005) ...................................................16

*Moya v. City of Clovis*,
No. 18-494-GBW-KRS, 2019 WL 6255217, at *10 (D.N.M. Nov. 22, 2019) 44, 45

*Myers v. Okla. Cnty. Bd. of Cnty. Commr's*,
151 F.3d 1313, 1316 (10th Cir. 1998) ....................................................41

*Naisha v. Metzger*,
No. 20-3056, 2021 WL 5632063, at *1-2 (3d Cir. 2021) (unpublished) ...............29

*Nicholas v. Wany Cnty., Mich.*,
822 F. App'x 445, 451-52 (6th Cir. 2020) (unpublished) .......................................43

*Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*,
No. 3:20-cv-11-MAB, 2023 WL 348320, at *2 (S.D. Ill. Jan. 20, 2023) ..............39

*Porro v. Barnes*,
624 F.3d 1322, 1326 (10th Cir. 2010) ....................................................23

*Qz'Etax v. Ortiz*,
170 F. App'x 551, 553 (10th Cir. 2006) ..................................................18

*Randle v. City of Aurora*,
69 F.3d 441, 447 (10th Cir. 1995) ..........................................................42

*Rasdall v. Barnhart*,
116 F. App'x 948, 949-50 (10th Cir. 2004)............................................15

*Richison v. Ernest Group, Inc.*,
634 F.3d 1123, 1131 (10th Cir. 2011) ............................................ 16, 17

*Roberts v. City of Omaha*,
723 F.3d 966, 975-76 (8th Cir. 2013) ............................................ 33, 34

*Schneider v. City of Grand Junction Police Dep't*,
717 F.3d 760, 768-70 (10th Cir. 2013) ........................................... 25, 41

*Supre v. Ricketts*,
792 F.2d 958, 963 (10th Cir. 1986) ................................................ 17, 18

*Szabla v. City of Brooklyn Park*,
486 F.3d 385, 393 (8th Cir. 2007) ...........................................................44

*Tele-Commc'ns, Inc. v. Comm'r*,
104 F.3d 1229, 1233 (10th Cir. 1997) ....................................................35

*Townes v. City of New York*,
176 F.3d 138, 143-44 (2d Cir. 1999) ......................................................43

*Thomas v. Arn*,
474 U.S. 140, 147, 150 (1985)...................................................... 1, 2, 14

*Turner v. Safley*,
482 U.S. 78, 89 (1987)...............................................................................20

*Tyler v. City of Manhattan*,
118 F.3d 1400, 1403 (10th Cir. 1997) .............................................. 35, 36

*Uhlrig v. Harder*,
64 F.3d 567, 574 (10th Cir. 1995) ...........................................................22

*Ullery v. Bradley*,
949 F.3d 1282, 1289 (10th Cir. 2020) ....................................................29

*Updike v. Multnomah Cnty.*,
870 F.3d 939, 954 (9th Cir. 2017) ...........................................................38

*U.S. v. One Parcel of Real Property Known as 2121 East 30th Street*,
73 F.3d 1057, 1059-61 (10th Cir. 1996) ............................. 1, 2, 14, 15, 24

*Vega v. Suthers*,
195 F.3d 573, 580 (10th Cir. 1999) .........................................................15

*Venson v. Gregson*,
No. 3:18-cv-2185-MAB, 2021 WL 673371, at *2 (S.D. Ill. Feb. 22, 2021)
(unpublished) .............................................................................................32

*Wardell v. Duncan*,
470 F.3d 954, 958 (10th Cir. 2006) ..........................................................................16

*Williams v. Colo. Dep't of Corr.,*
No. 21-cv-02595-NYN-NRN, 2023 WL 3585210, at \*5-6 (D. Colo. May 22, 2023)
.........................................................................................................................39

*Ziankovich v. Large*,
833 Fed. App'x 721, 724-25 (10th Cir. 2020) (unpublished).............................3, 15

**Statutes**

42 U.S.C. § 1983 ....................................................................... 5, 27, 40, 44

C.R.S. § 13-21-131 ....................................................................................5

42 U.S.C. § 12102(1)(A) .........................................................................31

42 U.S.C. § 12211(b)(1) ..........................................................................32

28 C.F.R. § 115.42(c)...............................................................................19

## STATEMENT OF RELATED CASES

There are no prior or related appeals.

## STATEMENT OF JURISDICTION

The El Paso County Defendants concur with Griffith's "Statement of Jurisdiction" but maintain that Griffith waived her right to appellate review under the firm waiver rule.

## INTRODUCTION

The firm waiver rule bars Griffith from seeking appellate review. As relevant here, this rule provides that a litigant waives the right to appellate review of factual and legal questions if she fails to file a specific objection to a magistrate's recommendation in the district court. *U.S. v. One Parcel of Real Property Known as 2121 East 30th Street*, 73 F.3d 1057, 1059-60 (10th Cir. 1996). An objection is sufficiently specific if it "'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the dispute...'" *Id*. at 1059 (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). Griffith's objection was not sufficiently specific, as the district court found. This Court should find that Griffith waived her appeal and end its inquiry there. But even if the Court considers Griffith's arguments, they are unavailing.

Griffith's Third Amended Complaint ("Complaint") asserts claims about her treatment in the El Paso County Criminal Justice Center ("CJC") as a transgender

woman diagnosed with Gender Dysphoria. El Paso County, Bill Elder, Cy Gillespie, Dawne Elliss, Andrew Mustapick, Elizabeth O'Neal, Brande Ford, and Tiffany Noe (collectively the "El Paso County Defendants") filed a Motion to Dismiss Griffith's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) ("Motion to Dismiss"). S.A. 15-55. After briefing by the parties, the Magistrate Judge issued a comprehensive Report and Recommendation ("Recommendation") calling for the dismissal of Griffith's Complaint on multiple grounds. A. 83-125. Griffith filed an Objection to the Recommendation ("Objection") in which she recycled the same arguments, often verbatim, made in response to the Motion to Dismiss. S.A. 132-162. The El Paso County Defendants responded that the Objection lacked sufficient specificity under the firm waiver rule. *Id.* 163-179.

In its Order Adopting the Recommendation ("Order"), the District Court Judge agreed, finding that the Objection was "largely a restatement—often verbatim—of [Griffith's] arguments presented in Response to the Motion to Dismiss" that "d[id] not enable the Court to 'focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" A. 140 (quoting *Thomas*, 474 U.S. at 147, and citing *One Parcel*, 73 F.3d at 1060).

Griffith does not appeal this determination and offers no argument to avoid the application of the firm waiver rule. She is, therefore, barred from seeking appellate review. *See Gonzalez De Gomez v. Adams Cnty.*, No. 22-1199, 2023 WL

5163988, at *2 (10th Cir. Aug. 11, 2023) (unpublished) (the firm waiver rule barred appellate review where a counseled appellant addressed it "[o]nly in her reply brief…after [appellee] pointed out the waiver…."); *Moore v. Astrue*, 491 F. App'x 921, 923 (10th Cir. 2012) (unpublished) (the firm waiver rule barred appellate review because the counseled appellant "ignore[d] [it] in his opening appeal brief…."); *Ziankovich v. Large*, 833 Fed. App'x 721, 724-25 (10th Cir. 2020) (unpublished) (the firm waiver rule barred appellate review where an attorney, licensed in New York but appearing pro se, did not "address the district court's determination that his objections to the magistrate judge's decision were not sufficiently specific" in his opening brief and did "not dispute the district court's determination that his objections were not sufficiently specific nor d[id] he provide any other argument…to avoid applying the firm waiver rule.").

Even if this Court considers the merits of Griffith's appeal, the district court's Order should be affirmed.  In the face of exceedingly murky law surrounding the housing and treatment of transgender individuals, including those diagnosed with Gender Dysphoria, in correctional institutions, Griffith's claims fail because (i) the rights she alleges do not exist, (ii) there is no clearly established law that would preclude the application of qualified immunity, and (iii) she cannot show that any El Paso County Defendant acted with deliberate indifference.

## STATEMENT OF ISSUES

1.      Griffith did not provide a specific objection to the Recommendation and did not address the waiver issue on appeal.  Did Griffith waive her right to appellate review under the firm waiver rule?

2.      Published precedent from this Circuit states that transgender status is not a protected class.  Did the district court correctly dismiss Griffith's Equal Protection Claim (Claim 1)?

3.      The El Paso County Defendants did not violate a clearly established constitutional right.  Did the district court correctly dismiss Griffith's claims brought under the Fourth and Fourteenth Amendments (Claims 3 and 4)?

4.      Griffith did not plausibly allege any El Paso County Defendants' participation in a constitutional violation.  Did the district court correctly dismiss Griffith's unconstitutional conditions of confinement claim (Claim 2)?

5.      The district court found that the El Paso County Defendants were entitled to qualified immunity.  Should this Court reach the same conclusion?

6.      Griffith did not plausibly allege deliberate indifference to a disability. Did the district court correctly dismiss Griffith's claims brought under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Rehabilitation Act") (Claims 10 and 11)?

7.    The district court found that Griffith did not plausibly allege any constitutional violations.  Did the district court correctly dismiss Griffith's claims alleging municipal liability?

## STATEMENT OF THE CASE

### I.    Procedural Background

In her Complaint, Griffith alleged violations of 42 U.S.C. § 1983; the ADA; the Rehabilitation Act; and the Enhance Law Enforcement Integrity Act, C.R.S. § 13-21-131.  Griffith's claims concerned her treatment in CJC as a transgender woman diagnosed with Gender Dysphoria.

The El Paso County Defendants moved to dismiss Griffith's Complaint under Fed. R. Civ. P. 12(b)(1) and (6).  S.A. 15-55.  Griffith filed a Response to the Motion to Dismiss, *id.* 56-107, and the El Paso County Defendants filed a Reply in Support of the Motion to Dismiss.  *Id.* 108-131.

The Magistrate Judge issued a meticulous Recommendation calling for each of Griffith's claims to be dismissed. The grounds for dismissal ranged from a lack of plausible allegations, to the absence of clearly established case law, to each individual Defendant's entitlement to qualified immunity, to lack of jurisdiction.  A. 83-125.

Griffith then filed the Objection in which she restated the Response's arguments instead of identifying specific legal or factual flaws in the

Recommendation. S.A. 132-162. In response, the El Paso County Defendants argued that Griffith waived her right to de novo review of the Recommendation by the District Court Judge (and subsequent appellate review) because the Objection was not sufficiently specific. *Id.* 165-166.

The District Court Judge issued an Order adopting the Recommendation in full. A. 126-146. The District Court Judge explained that, "[r]ather than identifying specific legal or factual errors in the Recommendation, [Griffith] merely reargues her positions and asks the Court to interpret the facts and authorities differently in order to arrive at a more favorable result. Although the Court understands [Griffith's] intention to preserve her objection to the entirety of the Recommendation, such an objection does not enable the Court to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." A. 140 (citation and quotation omitted). Nevertheless, the District Court Judge went on to conduct a discretionary de novo review of the Recommendation addressing "only a few points raised in the Objection" because there was "little to add to Judge Neureiter's comprehensive and correct analysis." *Id.*

Griffith filed this appeal identifying five issues for consideration. Op. Br., 3-4. Griffith does not appeal the district court's determination that her Objection lacked sufficient specificity under the firm waiver rule.

## II.   The Complaint's Material Allegations

Griffith appeals the district court's dismissal of certain claims under Rule 12(b)(6).  The Complaint's material allegations are summarized as follows:

### A. Material Allegations Related to Griffith's Housing Classification

Griffith is a transgender woman who has been diagnosed with Gender Dysphoria.  A. 27-28, ¶ 2.  Elder was the elected sheriff of the El Paso County Sheriff's Office ("EPSO") and was responsible for running CJC during Griffith's detention. *Id.* 29-30, ¶ 14. Gillespie is an EPSO Commander responsible for overseeing CJC's operations. *Id.* 30, ¶ 15; 35, ¶ 42.

Griffith entered CJC on July 20, 2020, as a pretrial detainee and an openly transgender woman with a feminine appearance. *Id.* 36, ¶ 47. During the intake process, Griffith informed unidentified individuals at CJC that she is a transgender woman diagnosed with Gender Dysphoria and requested placement in the women's ward because she feared abuse, being misgendered, and being searched by male deputies.  *Id.* 37, ¶ 48.

Separately during intake into CJC, Noe classified Griffith into a men's ward "despite knowing that [Griffith] is a transgender woman and that [Griffith] wished to be placed into [a women's ward]." *Id.*, ¶ 54. Griffith did not plausibly allege that Noe knew of her Gender Dysphoria diagnosis or her fear that she would be abused, misgendered, or searched by male deputies in the men's ward.

Ford held an ADA interview with Griffith on July 29, 2020, during which Griffith told Ford that she wished to be placed in a women's ward because "[i]t was clear to [Ford]" that she is a transgender woman. *Id*. 37-38, ¶ 55. Ford wrote in Griffith's records that there were no disability concerns related to Griffith's housing. *Id*. 38, ¶ 55. Griffith did not plausibly allege that Ford knew of her Gender Dysphoria diagnosis or her fear that she would be abused, misgendered, or searched by male deputies in the men's ward.

Three months later, in October 2020, Griffith submitted a grievance "which she believed would be transmitted to…Gillespie" requesting placement in a women's ward "because she is a transgender woman." *Id.* ¶ 57. The grievance also stated that Griffith had been placed in a women's ward in a different facility. *Id.*  In response, "O'Neal stated that El Paso County had reviewed Ms. Griffith's request and denied her the accommodation of housing her in a facility that corresponded with her gender identity." *Id*.  Griffith did not plausibly allege that O'Neal knew of Griffith's Gender Dysphoria diagnosis or her fear that she would be abused, misgendered, or searched by male deputies in the men's ward.

The Complaint also contained allegations about Griffith's kites, grievances, and communications with individuals who are not parties to this case in which she discussed her placement in the men's ward. On December 9, 2020, Griffith submitted a grievance requesting placement in a women's ward, complaining that deputies

were referring to her using male pronouns, and noting that she had previously been placed in a women's ward in a different facility. *Id*. ¶ 58. On January 4, 2021, an unidentified individual responded by denying Griffith's request. *Id.* On January 15, 2021, Griffith submitted another grievance regarding her housing and the conduct of "numerous staff regarding the issue," and notifying CJC and its medical provider that she had been placed in a women's ward in a different facility. *Id.* 39, ¶ 59. One week later, Griffith told Raymond Carrington (a jail mental health provider employed by WellPath) that she was experiencing anxiety because of her treatment as a transgender inmate and her fear of retaliation from grieving said conduct. *Id.* ¶ 60. That same day, Griffith also wrote a grievance asking to be transferred to a women's ward. *Id*. ¶ 61. On February 26, 2021, Griffith asked an unidentified mental health provider why she continued to be housed in the men's ward and notified the provider of her resulting anxiety and depression. *Id.* ¶ 62. On March 9, 2021, Griffith wrote a grievance asking that Christine Mohr (a formerly named party employed by WellPath) provide information to EPSO about Griffith's Gender Dysphoria. *Id.* 39-40, ¶ 63. On March 10, 2021, Griffith wrote a kite complaining about her placement in CJC. *Id.* 40, ¶ 64. On March 11, 2021, Griffith informed Mohr that she wanted to be housed in a women's ward and had previously been housed in a women's ward in a different facility, and Mohr informed Griffith she would consult with EPSO regarding Griffith's housing. *Id*., ¶ 65. On March 19,

2021, Mohr acknowledged talking to unidentified EPSO officials about Griffith's concerns and, on March 27, Mohr told Griffith that she would not be moved to a female ward.  *Id.* ¶ 66.

### B. Material Allegations Related to Griffith's Initial Strip-Search

Griffith was subjected to a "visual body-cavity search" upon intake at CJC. *Id.* 41, ¶ 72.  Griffith was taken to a separate room where a male deputy (Mustapick) and female deputy (Elliss) arrived; Griffith asked Mustapick to leave. *Id.* ¶¶ 73-74. Elliss informed Griffith that, per her sergeant's orders, a male deputy would be present during the search and conduct part of the search because Griffith was "still a male" in CJC's "system."  *Id.* 41-42, ¶ 74.  Elliss instructed Griffith to take off her shirt and Griffith complied.   Elliss visually inspected Griffith's breasts while Mustapick was present.  *Id.* at 42, ¶¶ 75-76.  Elliss then gave Griffith a sports bra and allegedly told Mustapick, "he is all yours now to strip out" before leaving the room.  *Id.* 42, ¶ 76.  Mustapick instructed Griffith to remove the clothing on the lower half of her body and Griffith complied.  *Id.* ¶ 77.  Mustapick allegedly told Griffith to "spread [her] sexy cheeks," that he was "going to go balls deep in that ass" while grabbing his own groin, and that Griffith "had better not tell anyone" about what he said and did, or Griffith would be "brutalized" by CJC guards.  *Id.* ¶¶ 77-79 (brackets in original).

## C. Material Allegations Regarding an Alleged Sexual Assault by Another Inmate

Griffith alleged that, on November 18, 2021, another inmate groped her right breast and said, "you know you want this dick." *Id.* 43, ¶¶ 84-85. Afterward, Griffith asked to see a mental health provider and to be moved to a female ward. *Id.* 43, ¶ 86. Griffith broadly asserted that "[t]his was not the first time that [Griffith] was assaulted by the other inmate" but provided no further allegations about the inmate's identity or any other purported assault. *Id.* 44, ¶ 87.

## D. Material Allegations Regarding Pat-Down Searches of Griffith by Male Deputies

On January 20, 2021, Griffith wrote in a grievance that her anxiety went "through the roof" when she was patted down by male deputies and that she was "being singled out as a transgender woman for different treatment." *Id*. ¶ 90. On January 21, 2021, Griffith complained to the jail medical provider about the impact of male pat-downs on her mental health. *Id*. The next day, Griffith wrote a grievance because she was continually subject to cross-gender pat-down searches, including one where a deputy intentionally touched her breast. *Id*. 44-45, ¶ 91. On January 23, 2021, Griffith wrote a kite regarding the lack of accommodations for her Gender Dysphoria, citing cross-gender pat-down searches. The following month, Griffith

wrote a grievance because she was subjected to "non-routine cross-gender pat down searches on a daily basis...." *Id.* 45, ¶¶ 92-93.

### E. Material Allegations Regarding Misgendering by Deputies

Griffith alleged that she was misgendered by sergeants and deputies throughout her incarceration at CJC. *Id.* 46, ¶ 99. Griffith alleged that, on September 16, 2020, a deputy yelled a derogatory term in reference to Griffith after she complained that other inmates in her ward were not required to wear shirts. *Id.* ¶ 100. On November 10, 2020, and December 9, 2020, Griffith submitted grievances because she was repeatedly misgendered by deputies. *Id.* ¶ 101. On February 3, 2021, Griffith submitted a grievance because she was being verbally harassed by unidentified male deputies. *Id.* 47, ¶ 102. On February 26, 2021, Griffith informed a medical provider that deputies continued to call her "sir." *Id.* On June 23, 2021, Griffith submitted a grievance because she was misgendered by a CJC official. *Id.* ¶ 103. And, on July 1, 2021, Griffith told Carrington that she identifies as female, wished jail personnel would refer to her using female pronouns, she might harm herself, and WPATH standards of care should be followed in CJC. *Id.* ¶ 104. Carrington informed unidentified CJC officials about Griffith's statements, but no action was taken. *Id.*

### F. Material Allegations Regarding Griffith's Ability to Dress in Accordance with Her Gender Identity

Despite stating that "Elliss gave [Griffith] a sports bra" upon intake, *id.* 42, ¶ 76, Griffith asserted that her requests for a women's sports bra and underwear were denied even after she submitted grievances on September 7 and October 24, 2020. *Id.* 48-49, ¶¶ 110-114. Griffith alleged that she eventually elevated her concerns to Gillespie, who also denied her request. *Id.* 49, ¶ 114. On March 11, 2021, Griffith expressed concerns about her lack of access to female undergarments to CJC's medical provider. *Id.* ¶ 116. On March 27, 2021, the same provider told Griffith that CJC officials decided not to issue female panties to Griffith. *Id.*

### SUMMARY OF THE ARGUMENT

Griffith waived her right to seek appellate review under the firm waiver rule because she failed to file a sufficiently specific objection to the Magistrate Judge's Recommendation in the district court. This Court should therefore deny Griffith's appeal. But even if the Court reaches the merits of this appeal, it should affirm the district court's dismissal of Griffith's claims. In the face of exceedingly murky law surrounding the housing and treatment of transgender individuals—including those diagnosed with Gender Dysphoria—in correctional institutions, Griffith's claims fail because (i) the rights she alleges do not exist, (ii) there is no clearly established law

that would preclude the application of qualified immunity, and (iii) she cannot show that any of the El Paso County Defendants acted with deliberate indifference.

## STANDARD OF REVIEW

The El Paso County Defendants agree that this Court reviews de novo a district court's Rule 12(b)(6) dismissal but maintain that Griffith is not entitled to appellate review under the firm waiver rule.

## ARGUMENT

### I.    Griffith Waived Her Right to Seek Appellate Review

This Court's firm waiver rule provides that the failure to make timely and specific objections to a magistrate's recommendation waives mandatory de novo review by the district court and appellate review of both factual and legal questions. *One Parcel*, 73 F.3d at 1059-60.  Since Griffith failed to make specific objections to the Recommendation below, the firm waiver rule forecloses this appeal.

The District Court Judge found that Griffith's Objection was a restatement, often verbatim, of her Response to the Motion to dismiss that "d[id] not enable the Court to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."   A. 140 (quoting *Thomas*, 474 U.S. at 150, and citing *One Parcel*, 73 F.3d at 1059). In other words, the District Court Judge ruled that the firm waiver rule applies because the Objection was not sufficiently specific.  Griffith does not appeal this determination.  She is thus barred from seeking appellate review. *See*

*Gonzalez de Gomez*, 2023 WL 5163988, at *2; *Moore*, 491 F. App'x at 923; *Ziankovich*, 833 F. App'x at 724-25.

Griffith may try to argue in her reply brief that the District Court Judge's discretionary de novo review of the Recommendation salvages her right to appellate review. This Court's precedent dooms such an argument. *See One Parcel*, 73 F.3d at 1061 ("[T]he district court's decision to conduct a de novo review, sua sponte, does not warrant lifting the bar of appellate review under the circumstances presented here."); *Vega v. Suthers*, 195 F.3d 573, 580 (10th Cir. 1999) ("[A] district court's decision to review [a recommendation] *de novo*, despite the lack of an appropriate objection, does not, standing alone, preclude application of the [firm] waiver rule [on appeal]."); *In re Key Energy Res.*, 230 F.3d 1197, 1201 n.3 (10th Cir. 2000) ("[E]ven had the district court performed the de novo review normally triggered only by timely and specific objections to the magistrate's report and recommendation, that fact would not preclude application of the [firm] waiver rule or somehow 'revive' appellant's claims…."); *Rasdall v. Barnhart*, 116 F. App'x 948, 949-50 (10th Cir. 2004) (unpublished) (although the district court considered and rejected an untimely objection, "the law is clear in this circuit that such discretionary largess by the district court does not negate the *appellate*-waiver consequences….") (emphasis in original).

Griffith may also try to argue that one of three exceptions to the firm waiver rule applies. Such an argument would be unpersuasive. The first exception applies when a pro se litigant has not been informed of the time period for objecting or the consequences of failing to object. *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005). Under the second exception, the firm waiver rule may be suspended in the "interest of justice." *Wardell v. Duncan*, 470 F.3d 954, 958 (10th Cir. 2006). Finally, the third exception provides that the firm waiver rule may be suspended upon a showing of plain error. *Martinez v. Martinez*, 294 F. App'x 410, 413 (10th Cir. 2008) (unpublished). Plain error, if argued, "often proves to be an extraordinary, nearly insurmountable burden…." *Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) (quotations and citation omitted).

None of these exceptions applies. The first exception is inapplicable because Griffith was represented by competent counsel at all relevant times. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (the first exception did not apply because the appellant was represented by counsel). The second exception is inapplicable because "the interest-of-justice exception applies to a counseled party 'only in the rare circumstance in which a represented party did not receive a copy of the magistrate [judge's] R & R.'" *Hunter v. HCA*, 812 F. App'x 774, 777 (10th Cir. 2020) (unpublished) (citing *Vega*, 95 F.3d at 580). The final exception is inapplicable because Griffith does not argue the plain error exception, and this Court "need not

consider it." *Johnson v. Reyna*, 57 F.4th 769, 778 n.7 (10th Cir. 2023) (citation omitted). Indeed, "the failure to argue for plain error and its application on appeal— surely marks the end of the road for an argument for reversal not first presented to the district court." *Richison*, 634 F.3d at 1131 (citation omitted).

In sum, the firm waiver rule precludes Griffith's appeal. The Court should proceed no further in its review.

## II.    The District Court Correctly Dismissed Griffith's Fourteenth Amendment Equal Protection Claims (Claim 1)

Griffith claimed that the El Paso County Defendants discriminated against her on the basis of sex by denying her housing classification preference; denying her access to female cosmetics and undergarments; and allowing her to be strip searched by a male deputy. The district court correctly dismissed Griffith's equal protection claims because controlling case law in this jurisdiction does not identify transgender as a suspect class and Griffith failed to establish that the El Paso County Defendants did not have a rational basis for their classification decisions. A. 100-101.

This Court has addressed constitutional issues related to transgender inmates in two controlling cases, *Supre* and *Brown*. In 1986, this Court affirmed that a particular course of care for transgender inmates was not mandated by the constitution, denying attorney's fees following dismissal of that inmate's claim. *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986). The Court revisited the question of equal protection for transgender individuals in 1995, ruling that

transgender is not a suspect or quasi-suspect class warranting heightened scrutiny of the government's classification decisions. *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir.1995). *Supre* and *Brown* have been upheld by this Court in subsequent cases over the last 30 years. *See Qz'Etax v. Ortiz*, 170 F. App'x 551, 553 (10th Cir. 2006) (unpublished) (holding that prison's decision to deny gender-affirming care to transgender inmate did not implicate a fundamental right or a suspect class); *see also Druley v. Patton*, 601 F. App'x 632, 635-36 (10th Cir. 2015) (unpublished) (prison's denial of transgender inmate's request for female undergarments and to be housed in female facility did not warrant heightened scrutiny).

The El Paso County Defendants made their decisions regarding Griffith's housing and searches in consideration of all available information to them at the time Griffith was incarcerated in CJC. Those decisions, like all inmate classification decisions, were made to preserve Griffith's safety, the safety of other inmates, and the efficient function of CJC. To subject those decisions to unnecessarily heightened scrutiny would stand in stark opposition to well-established precedent affording deference to the decisions of jail administrators. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline

and to maintain institutional security."). Because Griffith is not considered a member of a suspect class under *Brown* and because her Complaint does not implicate a fundamental right, the district court was correct in dismissing her equal protection claim.

Applying heightened scrutiny would also undermine regulations promulgated pursuant to the Prison Rape Elimination Act, particularly 28 C.F.R. § 115.42(c), which states:

> In deciding whether to assign a transgender...inmate to a facility for male or female inmates, and in making other housing and programming assignments, the agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security concerns.

This regulation reinforces the fact that housing and programming decisions concerning transgender inmates should be left to the discretion of correctional institutions, and thus subject to rational basis review.

## III. The District Court Properly Dismissed Griffith's Fourth and Fourteenth Amendment Claims (Claims 3 and 4)

Griffith alleged violations of her 4th Amendment right to be free from unreasonable searches and seizures and her 14th Amendment right to substantive dues process arising from the strip search conducted during her booking into the El Paso County Jail.  A. 54, ¶ 150; A. 55-56, ¶¶ 156-164; Op. Br., 34-46.  Regarding Griffith's Fourth Amendment claim, the Supreme Court set out the test for the reasonableness of a search in carceral settings, requiring the court to balance the

need for the search against the infringement on the inmate's personal rights. *Bell*, 441 U.S. at 559. The district court correctly found that the needs of jail administration justified the visual strip search of Griffith. A. 109-110, 112-116. This court should affirm that finding.

A jail regulation that impinges on an inmate's constitutional rights is deemed valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). In analyzing whether a strip search is reasonable, "[c]ourts must consider the scope of the particular intrusion, the manner in which its conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559. Measured against these factors, Griffith's strip search was valid.

First, the complaint of intrusion was minor under the circumstances. The strip search occurred as Griffith entered CJC to be housed in general population, which is a standard procedure implemented for safety and security reasons. *See Archuleta v. Wagner*, 523 F.3d 1278, 1284 (10th Cir. 2008) (reasonableness of strip search turns in part on whether inmate will be housed in general population). The only individuals present during Plaintiff's strip search were Mustapick and Elliss. Plaintiff's nude body was not exposed to any other staff or inmates. *See Hyberg v. Enslow*, 801 F. App'x 647, 650-51 (10th Cir. 2020) (unpublished) (finding no plausible Fourth Amendment claim where inmate was strip searched in a designated

area "with limited access for other inmates and staff" before returning to general population, and where staff made insensitive comments).

Griffith argues that she plausibly alleged a constitutional violation because Elliss and Mustapick purportedly made abusive comments. Op. Br., 39-40. But verbal statements made during a search are insufficient to establish a constitutional violation. *See Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995) (holding that verbal sexual harassment by a prison guard did not violate a constitutional right); *Hyberg*, 801 F. App'x at 650-51.

The remaining *Bell* factors also weigh against a constitutional violation. The justification for the strip search of Plaintiff was strong. Plaintiff was strip searched during intake into CJC to ensure the safety and security of the facility. Such searches ensure that newly admitted inmates being housed in general population do not introduce weapons or contraband into the facility. *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 332 (2012) (contraband undermines security when introduced into a secure facility); *see also Hyberg*, 801 F. App'x 650 ("[T]here are obvious security concerns inherent when an inmate will be placed in the general prison population." (citation omitted)). The allegations further establish that the strip search was not conducted in a public area in CJC, but in an area where only Elliss and Mustapick could observe Griffith. *See id.* (discussing setting of a search). Accordingly, the third and fourth *Bell* factors do not support finding a constitutional

violation. Nor do the authorities discussed above show that the strip search alleged by Griffith violated a clearly established constitutional right.

As for her 14th Amendment substantive due process claim, Griffith does not clearly explain what she must plausibly allege to state a viable claim. *See* Op. Br., 34-46. As the El Paso County Defendants explained below, government action violates substantive due process if it "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). To satisfy this standard, "the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). This "requires a high level of outrageousness, because the Supreme Court has admonished that a substantive due process violation requires more than an ordinary tort." *Id.* And the Supreme Court "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Albright v. Oliver*, 510 U.S. 266, 271 (10th Cir. 1994).

As relevant here, actions that shock the conscience include sexual assault and rape of prisoners by guards. *Hall v. Zavaras*, No. 08-cv-00999-DME, 2008 WL 5044553, at *4 (D. Colo. Nov. 19, 2008) (unpublished). While the alleged statements that Griffith attributes to Elliss and Mustapick are deeply hurtful and

upsetting, they do not rise to the egregious level of a sexual assault or rape. The Court should thus affirm the dismissal of Griffith's Fourteenth Amendment claim.

## IV. The District Court Correctly Dismissed Griffith's Conditions of Confinement Claim (Claim 2)

As a pretrial detainee, Griffith's challenge to the conditions of her confinement is governed by the Fourteenth Amendment's due process clause. *See Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010). The Eighth Amendment proscription against cruel and unusual punishment, however, "provides the benchmark" for claims challenging a pretrial detainee's conditions of confinement. *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1022 (10th Cir. 1996) (citations omitted). To succeed under the Eighth Amendment, Griffith must prove both an objective and a subjective component. The objective component requires Griffith to show that the alleged deprivation denied "the minimal civilized measure of life's necessities," while the subjective component requires Griffith to show that the individual El Paso County Defendants had "a sufficiently culpable state of mind, i.e., deliberate indifference." *Id.* (citations and quotation omitted). Under the deliberate indifference standard, an official is only liable if he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A pretrial detainee can also establish a due process violation "by providing

only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Colbruno v. Kessler*, 928 F.3d 1155, 1163 (10th Cir. 2019) (quotation and citation omitted). *See* A. 107 (district court reciting both standards).

The El Paso County Defendants moved to dismiss Griffith's conditions of confinement claim on several grounds, including a lack of personal participation by each Defendant, a failure to plausibly allege deliberate indifference, and a failure to plausibly allege a constitutional violation. S.A. 27-30. Griffith "ignore[d] these arguments" in her briefing. A. 107. She did so again in her objection to the Magistrate Judge's Recommendation. *See* S.A. 148-49. This Court should find that Griffith has waived her right to review of this issue. *See One Parcel*, 73 F.3d at 1059.

Even if the Court considers Griffith's argument now, it is unavailing. Griffith attempts to make out a due process violation under *Colbruno*, which requires "objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." 928 F.3d at 1163. As argued here and in the district court, however, the El Paso County Defendants' classification of Plaintiff as male, housing Plaintiff in the male ward, and employing reasonable search procedures were all rationally related in the need to provide for the safe and secure function of CJC. This is so because Plaintiff has not undergone gender affirmation surgery and still has male

genitalia. S.A. 26-27; *e.g.*, A. 32, 47 (allegations stating Griffith has male genitals). This, the district court found, was rationally related to a legitimate government interest under *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1985). A. 105-07, 142-44.

Griffith also argues that Elder, as former sheriff, was responsible for CJC's "policies for the treatment of transgender women." Op. Br., 50. She posits that this establishes Elder's personal participation under a theory of supervisory liability. *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (personal participation may be satisfied under a theory of supervisory liability). Supervisory liability requires a plaintiff to first show an underlying constitutional violation committed by the supervisor's subordinate. The plaintiff must then show (1) the defendant's personal involvement; (2) a causal connection; and (3) a culpable state of mind. *See id.* Personal involvement requires a plaintiff to "show an 'affirmative link' between the supervisor and the constitutional violation." *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (quotations omitted). Personal participation may be established by showing that the individual enacted a "policy or custom" recognizable under *Monell*. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768-70 (10th Cir. 2013). A causal connection requires a showing that "the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights."

*Dodds*, 614 F.3d at 1211 (Tymkovich, J., concurring) (quotations omitted). Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).

Here, Griffith did not plausibly establish an underlying constitutional violation, as the district court found. A. 116-117, 137-38, 146. Nor has Griffith plausibly alleged the existence of a policy or custom; a causal link; or that Elder acted with deliberate indifference. This Court should uphold the dismissal of Griffith's claim against Elder.[1]

Finally, Griffith contends that Defendants Noe, Ford, and O'Neal "plainly satisfy the personal participation standard" because Griffith "informed all of them that she feared being housed in a male unit because she is a transgender woman." Op. Br., 51-52. This is not so. Griffith alleges that O'Neal told her that an October 2020 grievance asking to be moved to a female ward was denied by EPSO. A. 38, ¶ 57. This lone communication to Griffith about another official's denial of a grievance does not establish O'Neal's personal participation in a constitutional violation. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (claims against prison

---

[1] Griffith does not appeal the district court's dismissal of this claim against Gillespie. Op. Br., 50 n.15.

officials properly dismissed where officials' only alleged involvement was the denial of grievances); A. 108 (Magistrate Judge recommending dismissal on this ground).

The Court should also uphold the dismissal of Griffith's claims against Noe and Ford. Griffith alleged that Noe knew Griffith was transgender and wished to be housed in the female ward but placed her in a male ward. A. 37, ¶ 54. Griffith alleged that Ford conducted an initial interview with her in July 2020 for purposes of the Americans with Disabilities Act, and that it was clear to Ford that Griffith was transgender.  A. 37-38, ¶ 55.  Griffith goes on to allege that all El Paso County Defendants failed to protect her from sexual assault by other CJC inmates.  A. 43 ¶ 84-86; A. 54 ¶ 151.

As an initial matter, these allegations state that Noe and Ford were the only El Paso County Defendants involved in Griffith's housing assignment.  Griffith has not stated a claim challenging the conditions of her confinement against the remaining Defendants.  *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").  Further, Griffith's allegations fail to state a constitutional violation because they do not show that Noe and Ford's actions constituted deliberate indifference.  *See Green v. Hooks*, 798 F. App'x 411, 422-23 (11th Cir. 2020) (unpublished) (prison officials were not deliberately indifferent when they housed a transgender inmate in a general population dormitory, despite subsequent sexual

assaults).  The Magistrate Judge correctly recommended that Griffith "d[id] not plausibly allege that Defendants Noe or Ford were aware that Plaintiff would be at risk of substantial harm if placed in the all-male facility or that they disregarded that risk."  A. 108.  This Court, like the district court, should reach that conclusion.[2]

## V.    The District Court Correctly Granted the El Paso County Defendants Qualified Immunity

The El Paso County Defendants raised the qualified immunity defense to Griffith's constitutional claims.  S.A. 37-39.  Griffith thus bears the burden of showing that (1) a constitutional violation occurred, and (2) the violation was of a right clearly established at the time of the alleged violation.  *Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003).  To determine whether a right was clearly established, the Court must ask whether the contours of the right are so clearly defined that a

---

[2] In the district court, Griffith also brought her conditions of confinement claim against Elliss and Mustapick, the deputies who performed her strip search. A. 53-54 (Claim Two brought against all Defendants). On appeal, Griffith does not address either deputy with respect to this claim. Even if she did, the sexual harassment that Plaintiff attributes to Mustapick and the single instance of misgendering that Plaintiff attributes to Elliss do not state a constitutional claim. *Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.11 (10th Cir. 1998) ("Although plaintiffs allege [defendant] subjected them to severe verbal sexual harassment and intimidation, these acts of verbal harassment alone are not sufficient to state a claim under the Eighth Amendment."); *Adkins*, 59 F.3d at 1037-38; A.33-34 (finding no plausible constitutional violation and recommending qualified immunity on the "clearly established" prong of qualified immunity).

reasonable person would recognize their actions as violative of that right. *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020).

For the reasons stated above, Griffith did not establish that a constitutional violation occurred.  Nor could Griffith show a clearly established right.  The district court correctly noted that this case arises "during a time period of shifting jurisprudence among the circuit courts." A. 134.  The mercurial nature of the law on these issues is further evidenced by Griffith's failure to cite binding precedent.  Indeed, for every persuasive case cited by Griffith, there appear to be an equal number opposing her position. *See Naisha v. Metzger*, No. 20-3056, 2021 WL 5632063, at *1-2 (3d Cir. 2021) (unpublished) (granting qualified immunity to male deputy who conducted visual strip search of transgender inmate and laughed at inmate, because law was not clearly established); *see generally Carter-el v. Boyer*, No. 1:19cv243 (TSE/MSN), 2020 WL 939289, at *4 (E.D. Va. Feb. 25, 2020) (observing that "little if any case law addresses the issue of the propriety of cross-gender searches of transgender inmates"); *see also Galvan v. Carothers*, 855 F. Supp. 285, 293 (D. Alaska 1994) ("[P]laintiff's right not to be housed on an all male ward [sic] was not clearly established at the time of the alleged violations.").  The weight of non-binding authority from other jurisdictions is not so great as to put a reasonable jail custodian or classification manager on notice that their actions may violate a transgender inmate's constitutional rights.  For that reason, the district court

correctly granted the El Paso County Defendants qualified immunity and its ruling should be affirmed.

## VI.   The District Court Correctly Dismissed Griffith's Claims Brought Under the ADA and Rehabilitation Act

Griffith alleged that she was subject to discrimination because of her Gender Dysphoria diagnosis and denied reasonable accommodations for this condition in violation of the ADA and Rehabilitation Act.  A. 68-74.  She sought compensatory damages and injunctive relief for these alleged violations.   The district court dismissed Griffith's claims for compensatory damages because the Complaint did not allege that EPSO acted with deliberate indifference.  A. 122-123.  The district court also dismissed Griffith's claims for injunctive relief because they were moot after Griffith was moved to a female ward and given access to female clothing and grooming products.  *Id.* 123.  Griffith does not appeal the dismissal of her request for injunctive relief.

Courts examine ADA and Rehabilitation Act claims using a similar framework requiring a plaintiff to show that: (1) she is a qualified individual with a disability; (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) her exclusion, denial, or discrimination was by reason of her disability.  42 U.S.C. § 12132; *Cunningham v. Univ. of N.M. Bd. of Regents*, 531 F. App'x 909, 919 (10th Cir. 2013) (unpublished) (noting that because

the same substantive standards apply, court's rulings with regard to the ADA apply with equal force to the Rehabilitation Act); *but see Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1312-13 (10th Cir. 2021) (discussing the different causal standards under Title II of the ADA and Rehabilitation Act).

The ADA defines the term "disability" broadly to include "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). But, it excludes "gender identity disorders not resulting from physical impairments...." *Id*. § 12211(b).

Compensatory damages under the ADA and Rehabilitation Act are only available in instances of intentional discrimination. *See Havens v. Colo. Dep't. of Corr.*, 897 F.3d 1250, 1264 (10th Cir. 2018). Intentional discrimination can be inferred from a defendant's deliberate indifference to a strong likelihood that the pursuit of its questioned policies will likely result in a violation of federally protected rights and a corresponding failure to act. *Id*.

### A. The District Court Correctly Dismissed Griffith's ADA and Rehabilitation Act Claims Because There is No Law Clearly Establishing Gender Dysphoria as a Disability

In the Motion to Dismiss, EPSO argued that Griffith failed to allege deliberate indifference because "it is unclear whether the right alleged [Gender Dysphoria's status as a disability]…is protected under the ADA and Rehabilitation Act at all." S.A. 52. Griffith's Response did not explain how EPSO could act with deliberate

indifference in these circumstances.  *See* S.A. 104-105, 128 ("The Response does not confront the question posed in the Motion: how can an entity be deliberately indifferent under Title II of the ADA and Rehabilitation Act when the existence of the right alleged is unclear?").  The district court agreed with the El Paso County Defendants and dismissed Griffith's claims.

The district court's Order is correct. When the El Paso County Defendants filed their Motion to Dismiss, no circuit court had ruled on the issue of whether Gender Dysphoria is excluded from the ADA's definition of a disability under 42 U.S.C. § 12211(b)(1).  *See Venson v. Gregson*, No. 3:18-cv-2185-MAB, 2021 WL 673371, at *2 (S.D. Ill. Feb. 22, 2021).  The few district courts that addressed the issue were split.  *See, e.g.*, *Doe v. Pa. Dep't of Corr.*, No. 1:20-cv-00023-SPB-RAL, 2021 WL 1583556, at *8-9 (W.D. Pa. Feb. 19, 2021) *report and recommendation adopted,* No. CV 20-23, 2021 WL 1115373 (W.D. Pa. Mar. 24, 2021).  And, the only decision from the District of Colorado to have previously ruled upon this issue stated that "[g]ender dysphoria, as a gender identity disorder, is specifically exempted as a disability…."  *Michaels v. Akal Sec., Inc.*, No. 09-cv-01300-ZLW-CBS, 2010 WL 2573988, at *6 (D. Colo. Jun. 24, 2010).

During briefing on the Motion to Dismiss, the Fourth Circuit issued an opinion in *Kincaid v. Williams*, 45 F.4th 759, 765-770 (2022), ruling that Gender Dysphoria is protected under the ADA because it is not a "gender identity disorder."  Sheriff

Kincaid subsequently sought Supreme Court review but her petition for certiorari was denied, leaving this issue in flux. *Kincaid v. Williams*, 143 S.Ct. 2414 (2023). Justices Alito and Thomas dissented from the denial of certiorari, writing that,

> [i]f the Fourth Circuit's decision is correct, there should be no delay in providing the protection of the ADA to all Americans who suffer from "feeling[s] of stress and discomfort" resulting from their "assigned sex." But if the Fourth Circuit's decision is wrong—and there is certainly a reasonable argument to that effect—then the 32 million residents of the Fourth Circuit should not have to bear the consequences while other courts wrestle with the same legal issue.

*Id*. at 2415. Thus, Gender Dysphoria's status as a disability is no clearer today than it was when Griffith filed her Complaint.

Yet, Griffith now asks this Court to wrestle with the same legal issue the Supreme Court refused to consider. But, the district court's decision did not hinge on whether Gender Dysphoria is, in fact, a disability under the ADA and Rehabilitation Act. Rather, the district court could not "say that…EPSO was deliberately indifferent to the 'strong likelihood' of a harm to a right that may not even be protected by the ADA and [Rehabilitation Act]," because Gender Dysphoria's status as a disability "is not remotely settled law." A. 123 (citing *Roberts v. City of Omaha*, 723 F.3d 966, 975-76 (8th Cir. 2013) ("Taking all of the

disputed facts in Robert's favor, nothing in the law clearly established the ADA and Rehabilitation Act applied to the undisputed circumstances of this case.")).[3]

The district court's ruling comports with the law and common sense—an entity must have reason to know that a right exists before it can be deliberately indifferent to the likelihood that its actions will violate that right. *See Havens*, 897 F.3d at 1267 ("Deliberate indifference requires actual knowledge; allegations that one would have or 'should have known' will not satisfy the knowledge prong of deliberate indifference.") (quotation omitted). To rule otherwise would place public entities in the precarious position of having to predict how courts will rule on complex legal issues, such as the one presented here. The district court's ruling should, therefore, be affirmed.

## B. Griffith's New Argument Lacks Merit

The district court's Order resolved the deliberate indifference question as it was framed by the parties in the district court. Griffith now argues, for the first time on appeal, that she was not required to plead deliberate indifference because it is akin to an affirmative defense. *See* Op. Br., 56 (citing *Asabedo v. Kan. State Univ.*, 559 F. App'x 668, 671 (10th Cir. 2014)). Stated otherwise, Giffith argues that her

---

[3] Griffith argues that *Roberts* is inapplicable because it involved a failure to train claim. This is a distinction without a difference. In this case and in *Roberts*, the plaintiffs were required to establish deliberate indifference. The elements of deliberate indifference are identical regardless of whether the ADA claim is premised upon a failure to train or a failure to accommodate.

claims for compensatory damages should have survived the Motion to Dismiss even though she failed to allege that EPSO acted with a sufficiently culpable state of mind.

Griffith did not make this argument in the district court. *See* S.A. 103, 161 (contrarily arguing that the Complaint "adequately alleged that El Paso County— directly and through its agents—had knowledge that a harm to her federally protected rights was substantially likely, and filed to act upon that likelihood."). Griffith has, therefore, forfeited her new argument. *See Tele-Commc'ns, Inc. v. Comm'r*, 104 F.3d 1229, 1233 (10th Cir. 1997) ("In order to preserve the integrity of the appellate structure, we should not be considered a 'second-shot' forum, a forum where secondary, back-up theories may be mounted for the first time…Parties must be encouraged to 'give it everything they've got' at the trial level.") (citations omitted). And, Griffith should not be allowed to sidestep her forfeiture by alluding to amicus briefs filed by non-parties. *See Tyler v. City of Manhattan*, 118 F.3d 1400, 1403 (10th Cir. 1997).

Griffith's new argument is unavailing even if considered. Somewhat recently, a court in the District of Kansas dismissed an ADA claim seeking compensatory damages because the plaintiff failed to allege deliberate indifference in a pretrial order. *Hans v. Bd. of Shawnee Cnty. Comm'rs*, No. 16-4117-DDC, 2018 WL 1638503, at *18 (D. Kan. Apr. 5, 2018). In doing so, the trial court stated that "our Circuit generally has held that if a plaintiff fails to allege a theory of discrimination

under the ADA in the Complaint or Pretrial Order, whichever is operative, plaintiff waives that theory of liability." *Id*.

On appeal, the plaintiff failed to address the trial court's ruling in his opening brief. *Hans,* 775 F. App'x 953, 956 (10th Cir. 2019) (unpublished). Consequently, this Court refused to disturb the trial court's ruling, *id.*, relying on *Tyler*, 118 F.3d at 1403, a case where the plaintiff also failed to address the dismissal of his ADA claim for failure to plead deliberate indifference on appeal.

On two prior occasions (in *Tyler* and *Hans*), this Court has refused to consider the contention that Griffith now advances: that deliberate indifference does not need to be pled. This Court should not stray from *Tyler* and *Hans* because they are in line with *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). There, the Supreme Court addressed the application of *Twombly*'s pleading standard to claims of discrimination, finding that "the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Id*. at 676 (citation omitted). The Supreme Court then affirmed the trial court's dismissal because the "respondent's complaint does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind." *Id*. at 683.

Such is the case here. Pleading deliberate indifference is akin to pleading a discriminatory purpose. The district court, therefore, properly viewed deliberate

indifference as an essential element of Griffith's ADA and Rehabilitation Act claims and properly dismissed said claims for her failure to allege this essential element.

Griffith's new argument still fails even if deliberate indifference were an affirmative defense rather than a pleading requirement. This Court has long held that "a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim. If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under [Rule 12(b)(6)]." *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965).

The absence of deliberate indifference appeared on the face of the Complaint. There, Griffith alleged that Gender Dysphoria is a protected disability under the ADA and Rehabilitation Act. As discussed above, this is an unsettled area of law. Thus, the district court properly ruled, as a matter of law, that EPSO could not have been deliberately indifferent in these unsettled circumstances. The district court's ruling should, therefore, be affirmed.

## C. Griffith's Assertion that She Adequately Pled Deliberate Indifference Lacks Merit

Griffith contends that she was only required to show that EPSO was deliberately indifferent to the facts pled (*i.e.*, that she requested an accommodation), not to the likelihood that the facts pled would result in a violation of a federally

protected right (*i.e.*, that the denial of her accommodation request would likely violate the ADA or Rehabilitation Act).  *See* Op. Br., 57-59.

Griffith's argument relies on inapposite cases where the defendants failed to accommodate plaintiffs whose disabilities were undisputed and obviously protected by the ADA and Rehabilitation Act.  *See, e.g.*, *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) (hearing-impaired inmate denied accommodation during court hearings); *Updike v. Multnomah Cnty.*, 870 F.3d 939, 954 (9th Cir. 2017) (hearing-impaired inmate denied accommodations while in county jail); *Cadena v. El Paso Cnty.*, 946 F.3d 717, 726 (5th Cir. 2020) (inmate using a wheelchair denied accommodation in county jail).  Thus, in these cases, the defendants knew or should have known that their failure to accommodate would likely violate rights protected by the ADA and Rehabilitation Act.

This case is markedly different because Griffith alleged Gender Dysphoria, a condition that is arguably excluded from the ADA's definition of a "disability" as discussed above.  In these contrasting and uncertain circumstances, EPSO simply could not be deliberately indifferent to the likelihood that its actions would violate a right protected by the ADA or Rehabilitation Act.  The district court's ruling should, therefore, be affirmed.

### D. This Court Should Refuse to Consider Griffith's Argument Regarding the Application of *Cummings v. Premier Rehab Keller*

On appeal, Griffith argues that *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022), does not impact her ADA or Rehabilitation Act claims. Op. Br., 61-64. The district court, however, did not base its dismissal on *Cummings*, noting that the parties' arguments regarding this decision were "interesting...but in the end, they need not be decided now...." A. 122. This Court, like the district court, should not consider Griffith's argument.

Still, the courts that have considered *Cummings'* application have overwhelmingly sided with the El Paso County Defendants. *See Montgomery v. Dist. of Columbia,* No. 18-1928 (JDB)*, 2022 WL 1618741, at *23-26 (D.D.C. May 23, 2022) (finding the *Cummings* precluded plaintiff from seeking emotional distress damages under Title II of the ADA); *Williams v. Colo. Dep't of Corr.*, No. 21-cv-02595-NYN-NRN, 2023 WL 3585210, at *5-6 (D. Colo. May 22, 2023) (same); *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, No. 3:20-cv-11-MAB, 2023 WL 348320, at *2 (S.D. Ill. Jan. 20, 2023) (same); *Kovatsenko v. Kentucky Cmty. & Techn. Coll.*, 5:23-066-DCR, 2023 WL 3346108, at *4 (E.D. Ken. May 10, 2023) (same); *Doherty v. Bice*, 18-cv-10898 (NSR), 2023 WL 5103900, at *5-6 (S.D. N.Y. Aug. 9, 2023) (same); *see also Doe ex rel. Doe v. City of Pawtucket*, 633 F.Supp.3d 583 (D.R.I. Sept. 29, 2022) ("[T]o the extent that Plaintiff seeks nominal damages for harm that is properly characterized as emotional distress, the Court rejects such

a facial rebranding[.]"); *but see Hejmej v. Peconic Bay Med. Ctr.*, 17-cv-782 (JMA) (SIL), 2022 WL 4551696, at *1 (E.D.N.Y. Sept. 29, 2022) (finding that plaintiff could pursue nominal damages under the Rehabilitation Act).

Thus, if this Court is inclined to address *Cummings*' impact, it should find that Griffith is precluded from seeking emotional distress damages and nominal damages under the ADA and Rehabilitation Act if she had viable claims.

## VII. The District Court Correctly Dismissed Griffith's Claims of Municipal Liability

The district court correctly found that Griffith did not state a municipal liability claim because she did not state an underlying constitutional violation. A. 116-117, 146; *but see Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1191 (10th Cir. 2020) (with "a limited exception" (that Griffith does not invoke), there "must be a constitutional violation, not just an unconstitutional policy, for a municipality to be held liable."). This Court should affirm the district court's finding.

This Court may affirm the dismissal of Griffith's municipal liability claim for other reasons as well. Municipalities cannot be held liable for the unconstitutional actions of their employees under a theory of respondeat superior. *Brown*, 520 U.S. at 405 (1997). Municipalities may instead be liable under § 1983 when the execution of a policy or custom "inflicts the injury" upon the plaintiff. *Monell v. Dep't of Sec. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). To state a cognizable *Monell* claim, a plaintiff must first establish an underlying constitutional violation and then show the

existence of a municipal custom or policy and a direct causal link between the custom or policy and the violation alleged. *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998). An official policy or custom may be proven by the existence of a formally promulgated policy; a well-settled custom or practice; a final decision by a municipal policymaker; failure to train or supervise; or ratification by the final policymaker of the decisions of subordinates to whom authority was delegated subject to the policymaker's review and approval. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010). Griffith must establish causation by showing that "the municipality was the 'moving force' behind the injury alleged.'" *Schneider*, 717 F.3d at 770 (citations omitted). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Brown*, 520 U.S. at 405.

Neither Griffith's Complaint nor her briefing before this Court clearly articulates a theory of municipal liability. *See* A. 28 ¶ 4; A. 29-30 ¶ 14; A. 52 ¶ 135; A. 53 ¶ 145; A. 55 ¶ 160; A. 56-57 ¶¶ 168, 170-72; A. 77 ¶ 312. For instance, the Complaint refers to formal policies but fails to identify any specific EPSO policy that caused the alleged constitutional violations. Griffith thus cannot succeed under this theory of municipal liability. *See Carney v. City & Cnty. of Denver*, 534 F.3d

1269, 1274 (10th Cir. 2008) (plaintiff must turn to other theories of municipal liability where she fails to identify a formal policy).

Likewise, the Complaint offers conclusory allegations about an informal custom. While municipal liability may be based "on an informal custom so long as this custom amounts to a widespread practice that, although not authorized by written laws or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law," *Brammer-Hoelter*, 602 F.3d at 1189, it generally requires a showing of "evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney*, 534 F.3d at 1274. The Complaint does not identify any similarly situated individuals that were mistreated in a similar way, which "seriously undermines [Plaintiff's] claim." *Id.* (quoting *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995)).

The Complaint does not explicitly assert municipal liability under a failure to train or supervise theory. But even if it did, such a theory would fail due to a lack of precise, plausible allegations. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Thus, to establish a failure to train or supervise claim, a plaintiff must show that the alleged failure "amounts to deliberate indifference to the rights of the persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). In other words, a "plaintiff must

prove the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can be reasonably said to have been indifferent to the need for additional training." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (internal citations omitted). Deliberate indifference in this context ordinarily requires showing a pattern of similar constitutional violations by untrained employees. *See Brown*, 520 U.S. at 407-08.

The Complaint does not identify any similarly situated individuals who were mistreated in a similar way, as explained above. Griffith may, in turn, argue that her allegations satisfy the "narrow range of circumstances" in which a single incident may be sufficient to show deliberate indifference. *Connick*, 536 U.S. at 64 (2011). If such an argument were made, it should fail because numerous courts have found that a municipal entity cannot be deliberately indifferent in the context of a failure to train or supervise where the right asserted is not clearly established, such as in this case. *See Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994-96 (6th Cir. 2017) ("But a municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established.") (internal citations and quotations omitted); *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018); *Nicholas v. Wany Cnty., Mich.*, 822 F. App'x 445, 451-52 (6th Cir. 2020) (unpublished); *Townes v. City of New York*,

176 F.3d 138, 143-44 (2d Cir. 1999); *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007); *Moya v. City of Clovis*, No. 18-494-GBW-KRS, 2019 WL 6255217, at *10 (D.N.M. Nov. 22, 2019); *see also Montoya v. City & Cnty. of Denver*, No. 16-cv-01457-JLK, 2021 WL 8087380, at *2 n.3 (D. Colo. July 27, 2021) (noting that the issue of whether a municipal entity can be deliberately indifferent to a right that is not clearly established was left open by *Contreras ex rel. A.L. v. Dona Ana Cnty. Comm'rs*, 965 F.3d 114, 1124 (10th Cir. 2020) (Carson, J. concurring)).

The Complaint also alludes to municipal liability by virtue of a final decision by a policymaker. In this context, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404 (emphasis in original). In other words, Griffith must show that a final policymaker's decision directly deprived her of a constitutional right or was made with deliberate indifference. *Id*. at 404-08.

Because the Complaint does not plausibly allege that Elder's decisions pertained directly to Griffith, she must show that his decisions were made with deliberate indifference. *See id*. at 404-07. But in situations such as this, where the existence of the alleged right is unclear, courts have found that policymakers cannot act with the requisite degree of deliberate indifference. *See Moya*, 2019 WL

6255217, at *10 ("But a municipal policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established.") (emphasis in original, quoting *Arrington-Bey*, 858 F.3d at 994); *see also Szbala v. City of Brooklyn Park*, 486 F.3d 385, 292 (8th Cir. 2007).

Absent an articulable theory of municipal liability, the Complaint fails to satisfy the "rigorous standards…of causation." *Brown*, 520 U.S. at 405. Instead, the Complaint seemingly relies on a hybrid theory of municipal liability, alleging elements of various types of customs or policies but failing to fully develop any. This Court has rejected such an approach because it "would be at odds with the Court's conservative, restrictive approach regarding the individual theories of liability." *Cacioppo v. Town of Vail, Colo.*, 528 F. App'x 929, 934 (10th Cir. 2013) (unpublished). The Court thus has additional grounds beyond the one identified by the district court for dismissing Griffith's municipal liability claim.

## CONCLUSION

The district court properly dismissed Griffith's claims. For the reasons set forth above, this Court should affirm the district court's Order.

Dated:        October 20, 2023

OFFICE OF THE COUNTY ATTORNEY
OF EL PASO COUNTY, COLORADO

By: */s/ Nathan J. Whitney*
Nathan J. Whitney, Reg. No. 39002
First Assistant County Attorney
Steven W. Martyn, Reg. No. 47429
Assistant County Attorney
El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
(719)520-6485 (Main Office Line)
NathanWhitney@elpasoco.com
StevenMartyn@elpasoco.com
*Attorneys for Appellees*

**STATEMENT REGARDING ORAL ARGUMENT**

The El Paso County Defendants do not request oral argument because Griffith

is barred from seeking appellate review by the firm waiver rule.

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. of App.

P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R.

App. P. 32(f), this document contains 11, 394 words.

2.      This document complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has

been prepared in a proportionally spaced typeface using Microsoft Office Word for

Microsoft Office 365 in Times New Roman 14-point type.

Dated:        October 20, 2023

                              OFFICE OF THE COUNTY ATTORNEY
                              OF EL PASO COUNTY, COLORADO

                              By:  */s/ Nathan J. Whitney*
                                    Nathan J. Whitney, Reg. No. 39002
                                    First Assistant County Attorney
                                    Steven W. Martyn, Reg. No. 47429
                                    Assistant County Attorney
                                    El Paso County Attorney's Office
                                    200 S. Cascade Ave.
                                    Colorado Springs, CO 80903
                                    (719)520-6485 (Main Office Line)
                                    NathanWhitney@elpasoco.com
                                    StevenMartyn@elpasoco.com

                                    *Attorneys for Appellees*

48

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

1. All required privacy redactions have been made per 10th Cir. R. 25.5;

2. If required to file additional hard copies, that the ECF submission is an exact copy of those documents; and

3. The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Palo Alto Cortex XDR, Version 8.1.1, most recently updated on August 14, 2023, and according to the program are free of viruses.

Dated:      October 20, 2023

OFFICE OF THE COUNTY ATTORNEY OF EL PASO COUNTY, COLORADO

By: */s/ Nathan J. Whitney*
Nathan J. Whitney, Reg. No. 39002
First Assistant County Attorney
Steven W. Martyn, Reg. No. 47429
Assistant County Attorney
El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
(719)520-6485 (Main Office Line)
NathanWhitney@elpasoco.com
StevenMartyn@elpasoco.com

*Attorneys for Appellees*

# CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2023, I electronically filed the foregoing document through the Court's electronic filing system, and that it has been served on all counsel of record through the court's electronic filing system.

Kilmer, Lane & Newman, LLP
Andy McNulty
Mari Newman
1543 Champa Street, Suite 400
Denver, CO 80202
amcnulty@kln-law.com
mnewman@kln-law.com

Roderick & Solange MacArthur Justice Center
Meghan Palmer
Devi Rao
501 H Street NE, Suite 275
Washington, SC 20002
Meghan.Palmer@macarthurjustice.org
Devi.Rao@macarthurjustice.org

*Counsel for Appellant/Plaintiff, Darlene Griffith*

**AMICI CURIAE**

Civil Rights Education and Enforcement Center
Cynthia Louise Rice
1245 E. Colfax Avenue
Suite 400
Denver, CO 80218
crice@creeclaw.org

Disability Rights Education & Defense Fund
Maria Michelle Uzeta
3075 Adeline Street
Suite 210
Berkeley, CA 94703

muzeta@dredf.org

*Counsel for the following:*
*Disability Rights Education and Defense Fund*
*The Arc of the United States*
*Autistic Self Advocacy Network*
*Autistic Women and Nonbinary Network*
*The Judge David L. Bazelon Center for Mental Health Law*
*The Coelho Center for Disability Law, Policy and Innovation*
*Civil Rights Education and Enforcement Center*
*Disability Law Colorado*
*Disability Rights Advocates*
*Disability Rights Bar Association*
*Impact Fund*
*National Association for Rights Protection and Advocacy*
*National Disability Rights Network*
*Transgender Legal Defense & Education Fund*

U.S. Department of Justice
Jonathan Backer
Tovah Calderon
Kristen Clarke
Civil Rights Appellate Sec.
Ben Franklin Station
P.O. Box 14403
MJB 3710
Washington, DC 20044-4403
Jonathan.backer@usdoj.gov
Tovah.R.Calderon@usdoj.gov

*Counsel for the United States of America*

American Civil Liberties Union Foundation
Harper S. Seldin
125 Broad Street
18th Floor
New York, NY 10004
hseldin@aclu.org

ACLU of Colorado

Annie Kurtz
Timothy MacDonald
303 East 17th Avenue
Suite 350
Denver, CO 80203
akurtz@clu-co.org
tmacdonald@aclu-co.org

***Counsel for the American Civil Liberties Union of Colorado***

Kyle Courtneay Velte
University of Kansas School of Law
1535 West 15th Street
Lawrence, KS 66045
kvelte@ku.edu

Ezra Young
Law Office of Ezra Young
210 North Sunset Drive
Ithaca, NY 14850
Ezra@ezrayoung.com

*Counsel for Jeremiah Ho, Dru Levasseur, Nancy Marcus, Dara Purvis, Eliot Tracz, Ann Tweedy, Kyle Velte and Ezra Young*

/s/ Dee Lambert
Legal Office Administrator
El Paso County Attorney's Office