No. 23-1135

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

DARLENE GRIFFITH,

*Plaintiff-Appellant,*

v.

EL PASO COUNTY, COLORADO; BILL ELDER, in his individual and official capacities; CY GILLESPIE, in his individual capacity; ELIZABETH O'NEAL, in his individual capacity; ANDREW MUSTAPICK, in his individual capacity; DAWNE ELLISS, in her individual capacity; TIFFANY NOE, in her individual capacity; BRANDE FORD, in her individual capacity,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Colorado
No. 1:21-cv-00387-CMA-NRN, The Honorable Christine M. Arguello

**PLAINTIFF-APPELLANT'S REPLY BRIEF**

Andrew McNulty
Mari Newman
NEWMAN | MCNULTY
1490 N. Lafayette Street
Suite 304
Denver, CO 80218
andy@newman-mcnulty.com
(720) 850-5770

Devi M. Rao
Wynne Muscatine Graham
RODERICK & SOLANGE
 MACARTHUR JUSTICE CENTER
501 H St. NE, Suite 275
Washington, DC 20002
devi.rao@macarthurjustice.org
(202) 869-3449

*Counsel for Plaintiff-Appellant Darlene Griffith*

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

SUMMARY OF ARGUMENT ...................................................................... 1

ARGUMENT ............................................................................................... 5

    I.  Ms. Griffith Plausibly Alleged An Equal Protection Claim. ........... 5

    II. Ms. Griffith Plausibly Alleged Claims Relating to Defendant
        Mustapick's Abusive and Invasive Strip Search. .......................... 9

    III. Ms. Griffith Plausibly Alleged A Conditions of Confinement
         Claim Relating to Her Housing Placement.................................. 12

    IV. Ms. Griffith Stated Disability Claims Under the ADA and
         RA.............................................................................................. 18

    V. This Court Should Remand to the District Court to Address
        Ms. Griffith's Municipal Liability Claims In the First
        Instance, But Should It Reach the Issue, She Stated a
        *Monell* Claim. .......................................................................... 21

    VI. Defendants' Waiver Arguments Are Meritless............................. 24

CONCLUSION ......................................................................................... 29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

CERTIFICATE OF DIGITAL SUBMISSION

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Adkins v. Rodriquez,*
    59 F.3d 1034 (10th Cir. 1995) ............................................................ 10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................... 18, 19

*Bell v. Wolfish,*
    441 U.S. 520 (1979) .......................................................................... 9

*Bostock v. Clayton County,*
    140 S. Ct. 1731 (2020) .................................................................. 2, 7

*Brown v. Zavaras,*
    63 F.3d 967 (10th Cir. 1995) ...................................................... 1, 5, 6

*Carney v. City & Cnty. of Denver,*
    534 F.3d 1269 (10th Cir. 2008) ........................................................ 23

*Casanova v. Ulibarri,*
    595 F.3d 1120 (10th Cir. 2010) ........................................................ 28

*Colbruno v. Kessler,*
    928 F.3d 1155 (10th Cir. 2019) ................................................... 13, 14

*Cummings v. Premier Rehab Keller,*
    142 S. Ct. 1562 (2022) ............................................................... 3, 20

*Dennis v. City of Philadelphia,*
    19 F.4th 279 (3d Cir. 2021) ............................................................. 19

*Diestel v. Hines,*
    506 F.3d 1249 (10th Cir. 2007) ........................................................ 28

*Diversey v. Schmidly,*
    738 F.3d 1196 (10th Cir. 2013) ........................................................ 14

*Dodds v. Richardson,*
    614 F.3d 1185 (10th Cir. 2010) ........................................................ 15

ii

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
   545 U.S. 546 (2005) ............................................................................ 20

*Farmer v. Brennan*,
   511 U.S. 825 (1994) ............................................................................ 17

*Forth v. Laramie County Sch. Dist. No. 1*,
   85 F.4th 1044 (10th Cir. 2023) ......................................................... 21

*Gates v. Unified School Dist. No. 449 of Leavenworth Cty., Kan.*,
   996 F.2d 1035 (10th Cir. 1993) ......................................................... 23

*Green v. Hooks*,
   798 F. App'x 411 (11th Cir. 2020) ............................................. 16, 17

*Hayes v. Marriott*,
   70 F.3d 1144 (10th Cir. 1995) ............................................................. 9

*Holliday v. Dept. of Health and Human Servs.*,
   188 F.3d 518 (10th Cir. 1999) ........................................................... 26

*Johnson v. California*,
   543 U.S. 499 (2005) .............................................................................. 8

*Moore v. United States*,
   950 F.2d 656 (10th Cir. 1991) ........................................................... 27

*Palmer v. Salazar*,
   324 F. App'x. 729 (10th Cir. 2009) ................................................... 28

*Sealock v. Colorado*,
   218 F.3d 1205 (10th Cir. 2000) ......................................................... 26

*Shroff v. Spellman*,
   604 F.3d 1179 (10th Cir. 2020) ........................................................... 9

*Smith v. Colvin*,
   625 F. App'x. 896 (10th Cir. 2015) ................................................... 26

*Soliz v. Chater*,
   82 F.3d 373 (10th Cir. 1996) ............................................................. 26

*Supre v. Ricketts*,
    792 F.2d 958 (10th Cir. 1986) ................................................................. 6

*Thomas v. Arn*,
    474 U.S. 140 (1985) ................................................................. 25, 28

*United States v. One Parcel of Real Property*,
    73 F.3d 1057 (10th Cir. 1996) ................................................... 27

*United States v. Trujillo-Terrazas*,
    405 F.3d 814 (10th Cir. 2005) ................................................... 28

*Vega v. Suthers*,
    195 F.3d 573 (10th Cir. 1999) ................................................... 28

*Zumwalt v. Astrue*,
    220 F. App'x. 770 (10th Cir. 2007) ............................................ 27

**Statutes**

Colo. Rev. Stat. § 30-10-511 ......................................................... 15

**Other Authorities**

Federal Rule of Civil Procedure 72(b) ........................................... 26

## SUMMARY OF ARGUMENT

Ms. Griffith's opening brief explained in detail the errors the district court made in addressing the many serious claims she raised in her operative complaint. The United States, as *amicus curiae*, likewise weighed in as to several errors made by the district court relating to Ms. Griffith's Equal Protection and disability-related claims. The Defendants largely fail to respond—and have appeared to concede—most of the issues raised in this appeal. The few arguments they do present are meritless.

I. Ms. Griffith plausibly alleged an Equal Protection Claim. First, notwithstanding this Court's decision in *Brown v. Zavaras*, 63 F.3d 967 (10th Cir. 1995), El Paso County's sex-based housing, clothing, and grooming product policies are subject to intermediate scrutiny, regardless of Ms. Griffith's gender identity, because they reflect sex-based distinctions. The United States, as *amicus curiae*, agrees. Defendants entirely fail to respond to the doctrinal points raised by either Ms. Griffith or the United States, effectively conceding this argument. Second, even as to the question of the County's discrimination of Ms. Griffith on the basis of her gender identity, *Brown* is no barrier to her

1

claim. *Brown* did not squarely address the issue of the appropriate level of scrutiny for such claims, and even if it had it has subsequently been invalidated by *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). Again, Defendants have no response. This Court should therefore reverse the district court as to Ms. Griffith's Equal Protection claim.

II. Ms. Griffith also plausibly alleged claims related to Defendant Mustapick's abusive and invasive strip search. Defendants' arguments to the contrary might, perhaps, support a non-abusive search by a female officer, but simply have no application here—where the cross-gender search was conducted in a "sickening" and "reprehensible" manner. A.110, 115. And Ms. Griffith explained that the law prohibiting such searches was clearly established, to which Defendants do not meaningfully respond.

III. Ms. Griffith also plausibly alleged a conditions of confinement claim relating to her housing placement—where she was subjected to daily cross-gender searches, sexual harassment, and extreme emotional distress. Defendants claim that Ms. Griffith did not plausibly allege that the conditions she faced were not rationally related to a legitimate governmental purpose or were excessive in relation to that purpose, but

they are wrong. Moreover, Ms. Griffith adequately alleged personal participation as to Defendants Elder, Noe, and Ford.

IV. Ms. Griffith stated disability claims under the Americans with Disabilities Act and the Rehabilitation Act. The district court erred in dismissing her claim on the ground that she failed to allege that the Defendants knew she was disabled *within the meaning of the ADA*. Defendant entirely fail to engage with the multiple pages of analysis in Ms. Griffiths' opening brief on this question, not to mention the United States' detailed refutation of the district court's conclusion. Again, they have effectively conceded the issue. To the extent this Court wishes to reach the issue, *Cummings v. Premier Rehab Keller*, 142 S. Ct. 1562 (2022), has no bearing on Ms. Griffith's ADA claim because (1) the ADA is not a Spending Clause statute, and (2) it only applies to compensatory, and not nominal, damages. Defendants provide no meaningful analysis on these issues, either.

V. The district court did not address Ms. Griffith's municipal liability claims because it erroneously concluded that none of her constitutional claims survived. Rather than spending their time and effort in their brief responding to the issues that were *actually* raised by

3

the opening brief, Defendants spill much ink trying to convince this Court to reach—and reject—Ms. Griffith's municipal liability claims in the first instance. If this Court is inclined to address the merits of Ms. Griffith's municipal liability claim, it should hold that she stated a claim, because she identified several policies and customs that resulted in the constitutional violations she alleged, including El Paso County's policy of assigning transgender detainees to housing units based solely on their genitalia, and of allowing male deputies to strip search transgender women without any supervision.

VI. Lacking in persuasive arguments on the merits of Ms. Griffith's claims, Defendants spend the most time trying to persuade this Court that her *entire appeal* is somehow waived because of an alleged failure to object to the magistrate judge's report and recommendation with sufficient specificity. Waiver simply does not apply. In thirty pages, Ms. Griffith's Objection identified, and provided legal analysis on, a number of specific errors made in the magistrate judge's Recommendation—those same errors the district court made and she is now pursuing on appeal. And the district court, for its part, took those objections seriously and addressed the right issues; it just came out the wrong way. This is a far

cry from a situation where firm waiver applies: when a party entirely fails to object, or submits objections along the lines of "I object." The Court should see this play for what it is—a desperate attempt to avoid a reversal on the merits.

This Court should reverse the district court as to Ms. Griffith's Equal Protection, strip search, conditions of confinement, and disability claims, and vacate and remand for that court to address her municipal liability claims in the first instance. Should this Court wish to reach her municipal liability claim in the first instance; it should hold that Ms. Griffith stated a claim.

## ARGUMENT

### I.  Ms. Griffith Plausibly Alleged An Equal Protection Claim.

Ms. Griffith's opening brief explained that, notwithstanding this Court's decision in *Brown v. Zavaras*, 63 F.3d 967 (10th Cir. 1995), El Paso County's sex-based housing, clothing, and grooming product policies are subject to intermediate scrutiny, regardless of her gender identity, because they reflect sex-based distinctions. OB 21-23.[1] The United

---

[1] This brief uses "OB" to refer to the opening brief in citations, and "AB" to refer to the answering brief.

States, as *amicus curiae*, agrees. Brief for the United States at 9-13 [hereinafter "U.S. Br."]; *see also* Brief for the A.C.L.U. at 8; Brief for Legal Scholars of Sex and Gender at 4-5, 7-9 [hereinafter "Legal Scholars Br."] (sex discrimination is no less sex discrimination because it is experienced by a transgender person). Defendants entirely fail to respond to the doctrinal points raised by either Ms. Griffith or the United States, effectively conceding this argument. Their entire Equal Protection argument hinges on two cases—*Supre v. Ricketts*, 792 F.2d 958 (10th Cir. 1986), and *Brown v. Zavaras*, 63 F.3d 967 (10th Cir. 1995).

Even on the face of Defendants' description of *Supre*, AB 17, it is evident that case has nothing to do with this one. In *Supre*, this Court addressed whether a plaintiff was a "prevailing party" for the purpose of attorney's fees relating to an Eighth Amendment medical-care claim. 792 F.2d at 962. It was not an Equal Protection case, and Defendants do not even attempt to explain its relevance here.

*Brown*, of course, *is* relevant to the disposition of this case. That is because, contrary to the case law described in the opening brief under which intermediate scrutiny would apply, the district court believed itself bound by *Brown* to apply rational basis review. A.101-04. Ms. Griffith

6

made several arguments in her opening brief as to why this was erroneous. First, Ms. Griffith explained that *Brown* is irrelevant to the disposition of this case because even if *Brown* dictated that Ms. Brown was not a member of a suspect class on the basis of her transgender *status*, the challenged policies still trigger heightened scrutiny for the independent reason that they are sex-based *classifications*—regardless of the identity of the plaintiff. OB 24. As noted above, the United States agrees. U.S. Br. at 9-13. Second, Ms. Griffith argued, *Brown* does not control this case because *Brown* did not actually resolve the level of scrutiny that applies and therefore does not have stare decisis effect. OB 24-26. Again, the United States agrees. U.S. Br. at 13-15. Third, Ms. Griffith explained, to the extent *Brown was* a binding decision about the level of scrutiny applicable to gender identity claims, it has been subsequently invalidated by *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), and this Court should overrule it. OB 26-29; *see also* Legal Scholars Br. at 14-15. And Ms. Griffith explained why the four-factor test for finding a suspect class is easily met for transgender individuals, as the district court acknowledged, OB 19-31, and that, when viewed under the appropriate intermediate level of scrutiny—or even rational basis

"with bite" review—she stated a plausible Equal Protection claim, OB 31-33.

Bafflingly, Defendants do not respond to *any of this*. *See generally* AB 17-18. The only thing approaching an argument on Ms. Griffith's Equal Protection claim is one based in policy, not law: that applying intermediate scrutiny "would stand in stark opposition to well-established precedent affording deference to the decisions of jail administrators." AB 18. But deference is not limitless, and prison and jail policies that discriminate on the basis of protected classes are subject to intermediate- or strict-scrutiny like those of any other government actor, and may be upheld only when they are appropriately tailored. *See, e.g.*, *Johnson v. California*, 543 U.S. 499, 502, 506-07, 512 (2005) (striking down policy of racially segregating prisoners when they enter a new facility, based on "asserted rationale . . . that it is necessary to prevent violence caused by racial gangs," and collecting prior cases). All told, Defendants do not—and cannot—defend the application of *Brown* in this case, or dispute the district court's holding that Ms. Griffith stated a claim under intermediate scrutiny. They have effectively conceded away this claim.

## II. Ms. Griffith Plausibly Alleged Claims Relating to Defendant Mustapick's Abusive and Invasive Strip Search.

Ms. Griffith explained in her opening brief that she stated plausible violations of the Fourth and Fourteenth Amendments relating to Defendant Mustapick's strip search of her in a "sickening" and "reprehensible" manner. A.110, 115; OB 34-40. She explained that "a strip search represents a serious intrusion upon personal rights," *Shroff v. Spellman*, 604 F.3d 1179, 1191 (10th Cir. 2020), and that in light of the added constitutional concerns with *cross-gender* strip searches, courts— including this one—have sanctioned them only where necessitated by emergency, *see, e.g.*, *Hayes v. Marriott*, 70 F.3d 1144, 1147-48 (10th Cir. 1995) (holding plaintiff stated a plausible claim where he was forced to submit to a body-cavity search in view of members of the opposite gender). What's more, Ms. Griffith noted that even a legitimate search may violate constitutional rights if conducted in an abusive or humiliating manner. *Bell v. Wolfish*, 441 U.S. 520, 560 (1979).

Defendants, for their part, argue that the search wasn't bad enough to trigger the Constitution's protections. First, they argue the "intrusion was minor under the circumstances" because it was performed as Ms. Griffith entered the jail to be housed in general population. AB 20; *see*

*also* AB 21 ("Plaintiff was strip searched during intake into CJC to ensure the safety and security of the facility."). That might justify a non-abusive search by an officer of the same gender as Ms. Griffith, but it has no bearing on the search Ms. Griffith experienced. Recall that after ordering Ms. Griffith to remove all of her clothing, Defendant Mustapick commanded her to bend over and "spread [her] sexy cheeks," before threatening that he was "going to go balls deep in that ass" while grabbing his own penis. A.42. He searched her genitals in an "extremely aggressive" manner, and then threatened Ms. Griffith to remain silent about what she just experienced—if she didn't, he would make sure the guards brutalized her. *Id.* Defendants argue that the abusive comments are irrelevant, AB 21, but the published case they cite, *Adkins v. Rodriquez*, 59 F.3d 1034 (10th Cir. 1995), addresses an Eighth Amendment violation based on verbal conduct *without* allegations of touching; here Ms. Griffith's claim was based on verbal harassment in the context of a *physical search*, which is an entirely different type of claim. In short, Defendants' scant arguments addressed to Ms. Griffith's

Fourth and Fourteenth Amendment claims[2] arising from Defendant Mustapick's abusive search fail to persuade, and the district court erred in dismissing them.[3]

As to qualified immunity, Ms. Griffith explained in her opening brief that her right to be free from an abusive, cross-gender strip search was clearly established and, regardless, prior caselaw was not necessary in this situation to put Defendants on notice that their conduct was unconstitutional. OB 41-46. Defendants do not respond to the *many* on-point cases Ms. Griffith cites; rather, they argue—only in platitudes and as to presumably *all* (?) of her claims—that the district court correctly

---

[2] Defendants inaccurately state that "Griffith does not clearly explain what she must plausibly allege to state a viable" Fourteenth Amendment claim on these facts. AB 22. As the district court noted, and which Ms. Griffith repeated in her brief, the legal standards under the Fourth and Fourteenth Amendments are similar. *See* A.112; OB 34 & n.11. Ms. Griffith also noted that Eighth Amendment claims are relevant to Ms. Griffith's Fourteenth Amendment claims because this Court generally "appl[lies] an analysis identical to that applied in Eighth Amendment cases," which if anything is *more favorable* to defendants. OB 37 n.12 (quoting *Burke v. Regalado*, 935 F.3d 960, 991 & n.9 (10th Cir. 2019)).

[3] Defendants do not respond to Ms. Griffith's argument that the district court additionally erred in dismissing her claims against Defendants Elliss and Elder relating to the search, since they enabled and facilitated Defendant Mustapick's abusive search. OB 40-41 n.13.

11

granted them qualified immunity. AB 28-29. It did not, for the reasons
Ms. Griffith already explained. OB 41-46. For a doctrine based on a close-
reading of the law, Defendants' surface-level engagement here is telling.

## III. Ms. Griffith Plausibly Alleged A Conditions of Confinement Claim Relating to Her Housing Placement.

As she argued in her opening brief, Ms. Griffith plausibly alleged
that her experience in the all-male housing unit—where she was
subjected to daily cross-gender searches, sexual harassment, and
extreme emotional distress—stated a conditions of confinement claim.
OB 46-52.[4] Specifically, she met both elements of such a claim, because
she alleged that (1) she was incarcerated under conditions that posed a
substantial risk of serious harm to her health or safety; and (2) the
conditions were not rationally related to a legitimate governmental

---

[4] At one point, Ms. Griffith's brief referred to this claim as brought under
the Eighth Amendment. OB 46. That was a mistake. Ms. Griffith, as a
pretrial detainee, has a conditions of confinement claim that arises under
the Fourteenth Amendment, as reflected in her Complaint, A.53, and
throughout her opening brief. The standard stated and applied in the
brief was correct: "a pre-trial detainee, like Ms. Griffith, must show that
the challenged conditions were not rationally related to a legitimate
governmental objective or were excessive in relation to that purpose." OB
47 (citing *Colbruno*, 928 F.3d at 1163); *see also* AB 23-24 (same).
Additionally, as Defendants acknowledge, Eighth Amendment cases
"provide[] the benchmark" for such claims. AB 23; *see also supra* n. 2.

objective or were excessive in relation to that purpose. OB 46-49. Defendants do not dispute that the first prong is met here. Nor could they. In addition to the well-known and significant risks associated with housing transgender women in men's facilities, A.34-36 (citing national standards and reports establishing that transgender women are at heightened risk of victimization in men's facilities), Ms. Griffith repeatedly alerted Defendants to her suffering and begged for accommodation, A.32-33, 37, 39, 44-45.

Rather, Defendants erroneously claim that Ms. Griffith failed to sufficiently allege the no-rational-relation prong. AB 24.[5] Specifically, Defendants quote *Colbruno* for their argument that Ms. Griffith had the burden of putting forth "objective evidence" on this front. AB 24. But that language in *Colbruno* was pulled from a case asking what a plaintiff was required to prove *at trial* in order to "establish" such a violation. *Colbruno*, 928 F.3d at 1163 (quoting *Kingsley v. Hendrickson*, 576 U.S.

---

[5] Defendants also claim, briefly, that waiver applies, AB 24, but it does not. Ms. Griffith plausibly alleged personal participation, deliberate indifference, and a constitutional violation in her operative complaint, A.35, 37-38, 40-50, 53-54; in her opposition to the motion to dismiss, S.A.57-59, 61-62, 70-76, and in her Objection to the magistrate judge's report and recommendation, S.A.137-38 & n. 2, 148-51.

389, 398 (2015)). Of course, at the motion to dismiss stage a plaintiff isn't required to provide "objective evidence" of anything—just plausible allegations. *See Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013).

Ms. Griffith has met that standard. OB 48-49. She alleged that rather than "provid[ing] for the safe and secure function of CJC," as Defendants contend, AB 24, El Paso County's housing policy undermines safety and security for transgender inmates like Ms. Griffith, A.34-36, and a policy cannot be "rationally related" to an end that it actively undermines. Moreover, Ms. Griffith emphasized that she was housed in a female facility in Colorado, which presumably has penological objectives similar to El Paso County's, making clear that the County's housing policies were, at a minimum, excessive in relation to its aims. OB 7, 9. Insofar as Defendants argue to the contrary, discovery will be telling. For now, Ms. Griffith has made out plausible allegations sufficient to satisfy this element at the motion to dismiss stage. *Colbruno*, 928 F.3d at 1163. Consistent with the liberal pleading standards and the serious risks of housing transgender women in men's facilities, courts

have allowed similar claims to go forward. *See* OB 49 (citing cases at motion to dismiss phase). This Court should do the same.

Defendants' arguments to the contrary—focused on personal participation—are unavailing. As to Defendant Elder, Defendants offer nothing of substance. Their "argument" on this question amounts to three meagre sentences: one sentence asserting there is no underlying constitutional violation; one sentence stating, without elaboration, "[n]or has Griffith plausibly alleged the existence of a policy or custom; a causal link; or that Defendant Elder acted with deliberate indifference"; and a third sentence stating just that "[t]his Court should uphold the dismissal of Griffith's claim against Elder." AB 26.

But Ms. Griffith explained at length in her opening brief—which remains unrebutted by Defendants—that Defendant Elder, as sheriff, was responsible for the jail's policies which caused the violation of Ms. Griffith's constitutional rights. OB 50; *see* Colo. Rev. Stat. § 30-10-511.[6] And as this Court has recognized in *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010), it is sufficient to allege that Defendant Elder

---

[6] The existence of the policies are discussed below in the section on municipal liability. *See infra* at 22.

"deliberately enforced or actively maintained the policies in question at the jail." OB 50-51. Thus, this Court should reject Defendants' *ipse dixit* contention that Ms. Griffith failed to demonstrate Defendant Elder's personal participation in the constitutional violations she alleges.

Defendants' attempt to bolster the district court's holding that she failed to satisfy the personal participation standard as to Defendants Noe and Ford fares no better. *See* AB 26-27; A.108.[7] Specifically, Defendants contend that Ms. Griffith failed to demonstrate that Defendants Noe and Ford were deliberately indifferent when they placed Ms. Griffith in a male housing unit and refused to change her placement, respectively. AB 27; *but see* OB 51-52. But Defendants' only support for this argument is an unpublished Eleventh Circuit opinion that is factually and legally dissimilar to Ms. Griffith's case. *See Green v. Hooks*, 798 F. App'x 411 (11th Cir. 2020). In *Green*, a transgender plaintiff challenged her placement in general population, and the Eleventh Circuit affirmed the district court's grant of summary judgment against her because "the

---

[7] In light of the caselaw cited by Defendants, AB 26, Ms. Griffith does not press her appeal regarding the district court's personal participation ruling as to Defendant O'Neal. She reserves the right to seek leave to amend to supplement her allegations as to Defendant O'Neal, when back in the district court.

record"—which included statements from the plaintiff herself informing the defendant that she "was okay"—did "not support such an argument." *Id.* at 416, 423. If this unpublished, out-of-circuit case is at all instructive, it supports Ms. Griffith, because it shows that housing-related claims by transgender prisoners routinely survive a motion to dismiss. *See also* OB 49 (collecting cases). But it says nothing about Ms. Griffith's allegations of deliberate indifference on the part of *these* Defendants in *this* case, where Ms. Griffith repeatedly alerted officials to the deleterious effects of her placement in a male ward.[8] Their placement of Ms. Griffith in a male unit thus constituted deliberate indifference.[9]

---

[8] Moreover, the conduct challenged in *Green* took place in 2012, 798 F. App'x at 413-19, almost a decade before the misconduct alleged by Ms. Griffith. During that decade, our cultural understanding of the risks faced by transgender individuals in prison deepened and the standards for their care progressed, A.34-35, such that corrections officials were on notice of the "obvious" risks of improper housing assignments. *See Farmer*, 511 U.S. at 842 (1994).

[9] This Court should also reject the district court's statement that Ms. Griffith "has not demonstrated that her right to be placed in a female unit was clearly established, given the binding Tenth Circuit precedent described above." A.108. This argument fails for the same reason the Defendants' qualified immunity argument fails. *See supra* at 11-12.

In sum, each of Defendants' attempted arguments with respect to the plausibility of Ms. Griffith's conditions of confinement claim fall flat, and this Court should reject them.

## IV. Ms. Griffith Stated Disability Claims Under the ADA and RA.

Ms. Griffith alleged claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA), which the district court erroneously dismissed. At the outset, Ms. Griffith explained in her opening brief that she plausibly alleged a violation of the statutes, OB 52-55, as the district court correctly held, A.117-21, and Defendants do not argue to the contrary, *see* AB 30-31. Instead, Defendants parrot the district court's conclusion that any allegations that they acted intentionally fail as a matter of law because it was unclear that Ms. Griffith's gender dysphoria was a "disability." AB 31-34.

To start, Ms. Griffith was not required to plead and prove intentional discrimination because it is an affirmative defense. OB 55-56.[10] Defendants' citation to *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), is not

---

[10] This argument is properly presented to this Court, as it is intertwined with the intentional discrimination arguments Ms. Griffith presented in both her Response to Defendants' Motion to Dismiss, S.A.104-05, and in

on point, because it stands for the uncontroversial proposition that a plaintiff needs to plead and prove the elements of a (different) cause of action, *id.* at 676; it does not speak to the distinct question of whether— given that intentional discrimination is not an element of the claim, but a requirement for receiving compensatory damages—a plaintiff needs to plead it.

To the extent Ms. Griffith is required to include allegations regarding intentional discrimination, the district court erred in concluding she failed to plead as much. OB 56-61. As Ms. Griffith explained in her opening brief, intentional discrimination does not require animus; all that it requires in this context is allegations that a defendant deliberately makes no good faith effort to reasonably accommodate a plaintiff's known disability. OB 56-57. Defendants repeat the district court's belief that Ms. Griffith needed to show that they knew she was disabled *within the meaning of the ADA*, notably without citing any precedent that would support such a requirement. AB 37-38. And

---

her Objection to the magistrate's Report, S.A.160-61; *see Dennis v. City of Philadelphia*, 19 F.4th 279, 287-88 (3d Cir. 2021) (noting that parties may, on appeal, "reframe their argument within the bounds of reason'" (internal quotations omitted)).

they entirely fail to engage with the multiple pages of analysis in Ms. Griffiths' opening brief (OB 59-61)—not to mention the United States' detailed refutation of the district court's conclusion, U.S. Br. at 15-26—on this point. That they cannot muster a substantive defense of the district court on its "settled law" requirement for ADA liability speaks volumes.

Finally, to the extent this Court wishes to reach the issue, *Cummings v. Premier Rehab Keller*, 142 S. Ct. 1562 (2022), has no bearing on Ms. Griffith's ADA claim because (1) the ADA is not a Spending Clause statute, and (2) it only applies to compensatory, and not nominal, damages. OB 61-64. Defendants provide no analysis on these issues, but rather cherry-pick a series of unpublished district court opinions they say agree with them. AB 39-40. But, of course, "[j]udicial investigation" is not "an exercise in looking over a crowd and picking out your friends." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). More is required, and Defendants fail to provide assistance.

In sum, at a minimum, this Court should hold that the district court imposed an erroneous "settled law" requirement into the ADA. Resuscitating her ADA and RA claims will mean that the district court

will have to address the *Cummings* issues on remand; it may be most efficient for this Court to address them now, as they are purely legal issues and are adequately briefed by Ms. Griffith and *amici*. *See* OB 61-64; Brief for Disability Rights Educ. & Def. Fund et al. at 20-26.

## V. This Court Should Remand to the District Court to Address Ms. Griffith's Municipal Liability Claims In the First Instance, But Should It Reach the Issue, She Stated a *Monell* Claim.

The district court did not address Ms. Griffith's municipal liability claims because it erroneously concluded that none of her constitutional claims survived. OB 64; A.116-17. Rather than spending their time and effort in their brief responding to the issues that were *actually* raised by the opening brief, *see, e.g.*, *supra* at 8, 11, 15, 19, Defendants spill much ink trying to convince this Court to reach—and reject—Ms. Griffith's municipal liability claims in the first instance, AB 40-45. It should not. *See, e.g., Forth v. Laramie County Sch. Dist. No. 1*, 85 F.4th 1044, 1070 (10th Cir. 2023) (reversing and remanding for district court to consider question as to deliberate indifference because "[w]here an issue has not been ruled on by the court below, [this Court] generally favor[s] remand for the district court to examine the issue").

If this Court is inclined to address the merits of Ms. Griffith's municipal liability claim, it should hold that she stated a claim. First, contrary to Defendants' assertion, AB 41, Ms. Griffith's Complaint identifies several policies and customs that resulted in constitutional violations. Specifically, Ms. Griffith alleged that constitutional violations arose from two official policies: El Paso County's "policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion," A.53; *see also* A.27, A.36-37, A.56-57, and the County's policy allowing or requiring "male deputies to [strip] search transgender women without any supervision." A.55-57; A.41-43. Ms. Griffith also alleged that constitutional violations arose from two unofficial practices or customs: the mis-gendering of transgender detainees, A.47, and the denial of gender-conforming clothing and cosmetics to transgender detainees, A.48-50. As the Complaint lays out in detail, these policies led to the violation of Ms. Griffith's constitutional rights.

Moreover, Defendants wrongly contend that Ms. Griffith's municipal liability claim cannot succeed on the merits because "[t]he Complaint does not identify any similarly situated individuals that were

mistreated in a similar way.'" AB 42 (quoting *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008)). This Court does not require that a Complaint alleging a *Monell* violation identify specific individuals who were similarly mistreated; rather, it is sufficient for a complaint to allege, broadly, that similarly situated people were similarly mistreated. *Carney*, 534 F.3d at 1274 ("In attempting to prove the existence of such a 'continuing, persistent and widespread' custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way."); *Gates v. Unified School Dist. No. 449 of Leavenworth County, Kan.*, 996 F.2d 1035, 1040 (10th Cir. 1993). The Complaint alleges as much.

First, the Complaint alleges that "El Paso County continued to house Ms. Griffith, *and continues to house other transgender women in its custody*, in male units within the El Paso County Jail." A.37 (emphasis added). The Complaint further alleges that *"[t]ansgender women* in El Paso County custody have routinely been subjected to searches, including visual body-cavity searches, by male staff." A.41 (emphasis added). And the Complaint alleges that "El Paso County refuses to recognize

*transgender women in its custody* as the women that they are. Instead, El Paso County officials routinely refer to *these women*, including Ms. Griffith, using the male names they were assigned at birth." A.46 (emphasis added). The Complaint argues that such treatment results in widespread harm, explaining that "El Paso County is routinely discriminating against *these [transgender] women*, including Ms. Griffith, based on their sex, transgender status and/or disability and exposing them to harassment, rape, sexual assault, and other anti-transgender violence, or a heightened risk thereof." A.40 (emphasis added). Thus, the Complaint sufficiently alleges that the County's unconstitutional policies and customs are causing widespread mistreatment among detainees situated similarly to Ms. Griffith.

## VI. Defendants' Waiver Arguments Are Meritless.

Lacking in good arguments on the merits and in an apparent Hail Mary gambit to elude appellate review of the district court's decision, the Defendants argue that the firm waiver rule precludes Ms. Griffith's *entire appeal*. AB at 1, 14-16. This is incorrect for several different reasons. At the outset, Defendants claim that the district court "ruled that the firm waiver rule applies," AB 14, but it did no such thing. Had it done so, the

district court would not have gone on to adjudicate Ms. Griffith's claims, which, of course, it did.

At any rate, waiver does not apply here. In thirty pages, Ms. Griffith's Objection identified a number of specific errors made in the magistrate judge's Recommendation. S.A.132-62. These errors included, among others: "concluding that *Brown v. Zavaras* controls this case," S.A.143, and that Defendant Mustapick's cross-gender visual body-cavity search of Ms. Griffith did not violate her constitutional rights, S.A.149.[11] For each of these errors, Ms. Griffith channeled evidence and legal authorities that cast doubt upon the magistrate judge's factual and legal conclusions. *See, e.g.*, S.A.137; S.A.133-34. In so doing, Ms. Griffith easily "enable[d] the district judge to focus attention on those issues—factual and legal—that are at the heart of the dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). And if the district court was overwhelmed by the quantity of points raised in Ms. Griffith's objections, A.140, that can be chalked up to the breadth of injustices Ms. Griffith faced at the jail—

---

[11] Additional errors alleged relate to the magistrate judge's recommendations regarding personal participation, S.A.137, Ms. Griffith's conditions of confinement claim, S.A.148, her disability claims, S.A.160, and the magistrate's conclusion "that Defendants' actions satisfy rational basis review," S.A.146.

which resulted in a corresponding number of issues presented in Ms. Griffith's suit—and the number of missteps in the magistrate judge's opinion. To apply the firm waiver rule here and punish Ms. Griffith for explaining the (many) ways the magistrate judge erred in its recommendation would be counterintuitive and supremely unfair.[12]

To hold that Ms. Griffith has waived her appeal under these circumstances would also constitute a dramatic departure from this Court's precedent. First, this Court has typically applied the firm waiver rule's specificity requirement only to bar particular issues that were not objected to below—not to bar an appeal writ large, as Defendants seek here. *See, e.g.*, *Soliz v. Chater*, 82 F.3d 373, 375-76 (10th Cir. 1996); *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000); *Smith v. Colvin*, 625 F. App'x. 896, 901 (10th Cir. 2015) (unpublished); *Holliday v. Dept. of Health and Human Servs.*, 188 F.3d 518 (1999) (unpublished).

---

[12] Defendants ask this Court to penalize Ms. Griffith because she "recycled" arguments she had previously presented to the district court. AB 2. But they cite no caselaw for the proposition that a litigant cannot press arguments to the district court that have been (erroneously) rejected by the magistrate judge. And for good reason—such a rule would make no sense, since the entire point of the district court de novo review of a magistrate judge's report and *recommendation* is to consider the issues presented and catch errors in the magistrate judge's analysis. *See generally* Federal Rule of Civil Procedure 72(b).

And when this Court has applied the waiver rule to bar a litigant from seeking any appellate review of a particular issue, it has done so only in response to exceptionally cursory objections—comprised of just a few sentences—that fail to engage in any meaningful way with the issues. *See, e.g.*, *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996) (applying firm waiver rule where objection "consisted of only two sentences"); *Zumwalt v. Astrue*, 220 F. App'x. 770, 777-78 (10th Cir. 2007) (holding that a "one-sentence objection" to a conclusion made by the magistrate, embedded in a two paragraph Objection, was not sufficiently specific to preserve the right to appeal). Indeed, this Court has reserved the firm waiver rule for objections that essentially "stat[e] only 'I object.'" *see One Parcel*, 73 F.3d at 1060 (quoting *Lockert v. Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988)). That is a far cry from this case.

Even if Ms. Griffith's Objection was not sufficiently specific (and it was), this Court should still reach the issues raised in this appeal. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991) ("The waiver rule as a procedural bar need not be applied when the interests of justice so dictate."). First, the district court has already done the work of

reviewing the entirety of the magistrate judge's opinion, so the main purpose of the firm waiver rule—that is, to ensure that courts of appeals need not "consider claims that were never reviewed by the district court"—does not apply. *Thomas*, 474 U.S. at 147-48. Even if, as Defendants point out, the district court's de novo review does not *require* the Court to address the issues, *Vega v. Suthers*, 195 F.3d 573, 580 (10th Cir. 1999), it does weigh against the rule's application, *see Palmer v. Salazar*, 324 F. App'x. 729, 732 n. 1 (10th Cir. 2009) ("[T]he purposes of the firm waiver rule are outweighed by our institutional interests in resolving on the merits of the dispute before us."). "So too does 'the importance of the issues' raised by Ms. Griffith, *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010), as reflected in the many *amici* briefs supporting her—including that of the United States.[13] In sum, Defendants' grasping attempt to evade the merits here is in vain.

---

[13] As documented above, numerous errors in the district court's opinion also amount to plain error and are therefore correctable even if Ms. Griffith had failed to object. *See, e.g.*, *Diestel v. Hines*, 506 F.3d 1249, n. 3 (10th Cir. 2007) (noting plain error exception to firm waiver rule); *United States v. Trujillo-Terrazas*, 405 F.3d 814, 818 (10th Cir. 2005) (applying same). And contrary to Defendants' argument, AB 16-17, since the district court did not apply the firm waiver rule there was no prior opportunity for Ms. Griffith to argue for plain error's application.

## CONCLUSION

For these reasons, this Court should reverse the district court's order dismissing Ms. Griffith's complaint and remand for further proceedings.


Dated: December 11, 2023          Respectfully submitted,

*/s/ Devi M. Rao*
Devi M. Rao
Wynne Muscatine Graham
RODERICK & SOLANGE
  MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington DC 20002
(202) 869-3434
devi.rao@macarthurjustice.org

Andrew McNulty
Mari Newman
NEWMAN | MCNULTY
1490 N. Lafayette Street
Suite 304
Denver, CO 80218
andy@newman-mcnulty.com
(720) 850-5770

*Counsel for Plaintiff-Appellant Darlene Griffith*

29

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.     This Brief complies with type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and Circuit Rule 32(b) because it contains 5,937 words, excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

2.     This Brief complies with the typeface and type style requirements of Rule 32(a)(5) and (6) of the Federal Rules of Appellate Procedure and Circuit Rule 32(b) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook font.

Dated: December 11, 2023                    */s/ Devi M. Rao*
                                            Devi M. Rao

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2023, I electronically filed the foregoing document through the court's electronic filing system, and that it has been served on all counsel of record through the court's electronic filing system.

Dated: December 11, 2023                */s/ Devi M. Rao*
                                             Devi M. Rao

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Sophos Endpoint Advanced 2023.1.3.6, last updated on Monday, December 11, 2023, and according to the program are free of viruses.

Dated: December 11, 2023                    */s/ Devi M. Rao*
                                            Devi M. Rao